ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | FOR THE SEVENTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| BURLINGTON INDUSTRIES, INC., by | ) | CIVIL ACTION NO. 2024-CP-42-____ |
| and through its duly-appointed Receiver, | ) | |
| Peter M. McCoy, Jr., | ) | **SUMMONS** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY, TRAVELERS CASUALTY | ) | |
| AND SURETY COMPANY, formerly | ) | |
| known as AETNA CASUALTY AND | ) | |
| SURETY COMPANY, AMERICAN | ) | |
| HOME ASSURANCE COMPANY, | ) | |
| ALLSTATE INSURANCE COMPANY, as | ) | |
| successor-in-interest to NORTHBROOK | ) | |
| EXCESS AND SURPLUS INSURANCE | ) | |
| COMPANY, formerly known as | ) | |
| NORTHBROOK INSURANCE | ) | |
| COMPANY, GRANITE STATE | ) | |
| INSURANCE COMPANY, AMERICAN | ) | |
| INTERNATIONAL GROUP, INC., AIU | ) | |
| INSURANCE COMPANY, THE | ) | |
| CONTINENTAL INSURANCE | ) | |
| COMPANY, as successor-in-interest to | ) | |
| HARBOR INSURANCE COMPANY, | ) | |
| WESTPORT INSURANCE | ) | |
| CORPORATION, as successor-in-interest to | ) | |
| PURITAN INSURANCE COMPANY, | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| MUNICH REINSURANCE AMERICA, | ) | |
| INC., formerly known as AMERICAN RE- | ) | |
| INSURANCE COMPANY, OLD | ) | |
| REPUBLIC INSURANCE COMPANY, | ) | |
| PACIFIC EMPLOYERS INSURANCE | ) | |
| COMPANY, TWIN CITY FIRE | ) | |
| INSURANCE COMPANY, LEXINGTON | ) | |
| INSURANCE COMPANY, SCOTTSDALE | ) | |
| INSURANCE COMPANY, NATIONAL | ) | |
| UNION FIRE INSURANCE COMPANY | ) | |
| OF PITTSBURGH, PA, CENTURY | ) | |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

INDEMNITY COMPANY, as successor-in-    )
interest to CIGNA SPECIALTY    )
INSURANCE COMPANY, formerly known    )
as CALIFORNIA UNION INSURANCE    )
COMPANY, ZURICH AMERICAN    )
INSURANCE COMPANY, and  GREAT    )
AMERICAN ASSURANCE COMPANY,    )
formerly known as AGRICULTURAL    )
INSURANCE COMPANY    )
    )
                Defendants.    )
    )

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action,

a copy of which is hereby served on you, and to serve a copy of your Answer to the said Complaint

upon the subscribers at 2110 N. Beltline Boulevard, Columbia, South Carolina 29204, within thirty

(30) days after service hereof, exclusive of the day of such service, and if you fail to answer the

Complaint within the time aforesaid, judgment by default will be rendered against you for the relief

demanded in such Complaint.

Dated: October 21, 2024                    Respectfully submitted,

                                           *s/ Alexander R. Stalvey*
                                           Alex R. Stalvey (S.C. Bar 71739)
                                           Bannister Wyatt & Stalvey LLC
                                           24 Cleveland St., Suite 100
                                           Greenville, SC 29601
                                           Telephone: (864) 298-0084
                                           Email: astalvey@bannisterwyatt.com

                                           John K. Chandler (S.C. Bar 100837)
                                           Rikard & Protopapas LLC
                                           2110 N. Beltline Blvd.
                                           Columbia, SC 29204
                                           Telephone: (803) 978-6111
                                           Email: jchandler@rplegalgroup.com

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Duke K. McCall
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Email: duke.mccall@morganlewis.com

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | FOR THE SEVENTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| BURLINGTON INDUSTRIES, INC., by | ) | CIVIL ACTION NO. 2024-CP-42-____ |
| and through its duly-appointed Receiver, | ) | |
| Peter M. McCoy, Jr., | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONTINENTAL CASUALTY | ) | |
| COMPANY, TRAVELERS CASUALTY | ) | |
| AND SURETY COMPANY, formerly | ) | |
| known as AETNA CASUALTY AND | ) | |
| SURETY COMPANY, AMERICAN | ) | |
| HOME ASSURANCE COMPANY, | ) | |
| ALLSTATE INSURANCE COMPANY, as | ) | |
| successor-in-interest to NORTHBROOK | ) | |
| EXCESS AND SURPLUS INSURANCE | ) | |
| COMPANY, formerly known as | ) | |
| NORTHBROOK INSURANCE | ) | |
| COMPANY, GRANITE STATE | ) | |
| INSURANCE COMPANY, AMERICAN | ) | |
| INTERNATIONAL GROUP, INC., AIU | ) | |
| INSURANCE COMPANY, THE | ) | |
| CONTINENTAL INSURANCE | ) | |
| COMPANY, as successor-in-interest to | ) | |
| HARBOR INSURANCE COMPANY, | ) | |
| WESTPORT INSURANCE | ) | |
| CORPORATION, as successor-in-interest to | ) | |
| PURITAN INSURANCE COMPANY, | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| MUNICH REINSURANCE AMERICA, | ) | |
| INC., formerly known as AMERICAN RE- | ) | |
| INSURANCE COMPANY, OLD | ) | |
| REPUBLIC INSURANCE COMPANY, | ) | |
| PACIFIC EMPLOYERS INSURANCE | ) | |
| COMPANY, TWIN CITY FIRE | ) | |
| INSURANCE COMPANY, LEXINGTON | ) | |
| INSURANCE COMPANY, SCOTTSDALE | ) | |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known as CALIFORNIA UNION INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, and GREAT AMERICAN ASSURANCE COMPANY, formerly known as AGRICULTURAL INSURANCE COMPANY | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Burlington Industries, Inc., by and through its court-appointed Receiver, Peter M. McCoy, Jr. ("Burlington" or "Receiver"), brings this action against the defendants identified below and alleges, upon knowledge as to his own acts, and upon information and belief as to all other matters, the following in support of the complaint, as follows:

## <u>NATURE OF THE ACTION</u>

1.　　This is an environmental insurance coverage action for declaratory judgment brought under liability insurance policies (the "Policies") issued by the defendants to or covering plaintiff Burlington. The Court appointed the Receiver to undertake actions to administer all assets of Burlington, including without limitation its insurance policies. *See* Exhibit A, Receivership Order. By this complaint, the plaintiff seeks declarations that defendants are obligated to pay the costs and expenses of investigation and defense and/or legal liabilities, in connection with claims and/or demands brought against Burlington seeking damages because of property damage and/or injury. These claims and demands have been made, or will in the future be made, in various lawsuits, and allege various causes of action, including, without limitation, negligence, trespass,

and nuisance arising out of environmental damage and injury allegedly caused by Burlington's ownership or use of property or the conduct of business operations (the "Environmental Actions").

2.     The Receiver is informed and believes that Environmental Actions will continue to be asserted against Burlington alleging property damage or injury from Burlington's ownership and operation of plants used to manufacture textiles and soft goods, including injury from Burlington's discharge or release of allegedly hazardous substances, toxic chemicals, contaminants and products, which suits arise out of an occurrence within the meaning of the Policies.

3.     Accordingly, there are actual and justiciable controversies between plaintiff and the defendants regarding the rights of Burlington and the contractual obligations of these defendants under the insurance policies at issue herein with respect to the Environmental Actions.

4.     Plaintiff also seeks various other declarations as to Burlington's rights under various insurance policies, all in accordance with the contractual provisions of the policies, insuring obligations imposed or implied by law, and the reasonable expectations of Burlington. Claimants in the Environmental Actions specifically identified in this complaint have sought damages against Burlington in an aggregate amount sufficient to trigger all insurance policies that are potentially responsive to these claims in Burlington's comprehensive liability insurance program.

5.     Certain of the Policies contain a duty to defend, or duty to pay or reimburse defense costs, which requires each of the applicable defendants to provide a full defense in connection with the Environmental Actions. Each of the Policies also provides insurance coverage requiring each

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

of the defendants to pay all costs and expenses incurred in satisfying any legal liability in connection with the Environmental Actions, including any settlement or judgment.

6.       The Environmental Actions allege a covered occurrence, and seek damages for property damage or injury.  Accordingly, one or more of the defendants has a duty to defend or to pay or reimburse defense costs in full.  All defendants have an obligation to acknowledge coverage and to indemnify the Environmental Actions on a joint and several, "all sums" basis, in accordance with Policy obligations.

7.       Burlington has satisfied all terms and conditions of the Policies, including the tender of the Environmental Actions.  Burlington is thus entitled to the full benefit of the insurance coverage available under the Policies.

8.       Burlington brings this action for declaratory relief pursuant to the Uniform Declaratory Judgments Act.  This case involves actual, justiciable controversies between and among the parties as described herein.  As more particularly alleged herein, Burlington seeks declarations that: (1) each of the defendants with a duty to defend or obligation to pay or reimburse defense and investigation costs and expenses must provide Burlington with a complete defense in connection with the Environmental Actions, or pay or reimburse in full the underlying costs of investigation and defense of the Environmental Actions; and (2) that all of the defendants must pay in full for any and all legal liabilities incurred, to be incurred, or paid in connection with the Environmental Actions, including any and all settlements or judgments.

9.       Plaintiff also seeks all further declarations and remedies, whether in equity or at law, which are necessary and appropriate in aid of this Court's jurisdiction, including over any qualified settlement funds approved by this Court and over which this Court has continuing

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

jurisdiction and further including any and all settlement agreements (and the parties to those agreements) resulting in the funding of such qualified settlement fund.  Plaintiff seeks to determine in one proceeding all pertinent issues and grant full and complete relief to Burlington.

10.     Burlington, under legal compulsion, has incurred and paid, or will incur and pay, and will continue to incur or pay, substantial expenses in defending against, investigating and\or paying damages for property damage and/or injury in the Environmental Actions.  Burlington contends that these damages are covered in full by one or more of the liability policies issued by the defendants and that the totality of such paid or incurred liability is allocable in full to each and every "triggered" policy year, to the extent of available coverage in such year.

11.     The Receiver is informed and believes that Environmental Actions have been filed in the past and additional Environmental Actions may be filed in various jurisdictions.  The Receiver reasonably believes that the liabilities alleged by the claimants in the Environmental Actions are or will be sufficient to implicate the insuring obligations of all insurers named as defendants herein.  As such, the pertinent insurance policies are "triggered" by the Environmental Actions alleging property damage or injury taking place in whole or in part during all or any part of each defendant's policy periods.

## PARTIES

12.     Plaintiff Peter M. McCoy, Jr., the court-appointed Receiver of Burlington, a resident of South Carolina, brings this action on behalf of Burlington, a defunct corporation that was registered and licensed to do business in South Carolina when it was operating.

13.     Defendant Continental Casualty Company ("Continental Casualty") is a corporation organized under the laws of and maintaining its principal place of business in the State

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

of Illinois.  Upon information and belief, at all relevant times, Continental was and is licensed to do and is doing business in the State of South Carolina.

14.    Defendant Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company ("Aetna"), is a corporation organized under the laws of and maintaining its principal place of business in the State of Connecticut.  Upon information and belief, at all relevant times, Aetna was and is licensed to do and is doing business in the State of South Carolina.  Aetna is also at times referred to as "Travelers" and is part of the Travelers family of insurers.

15.    Defendant American Home Assurance Company ("American Home") is a corporation organized under the laws of and maintaining its principal place of business in the State of New York.  Upon information and belief, at all relevant times, American Home was and is licensed to do and is doing business in the State of South Carolina.

16.    Defendant Allstate Insurance Company, as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company ("Allstate"), is a corporation organized under the laws of and maintaining its principal place of business in the State of Illinois.  Upon information and belief, at all relevant times, Allstate was and is licensed to do and is doing business in the State of South Carolina.

17.    Defendant Granite State Insurance Company ("Granite State") is a corporation organized under the laws of and maintaining its principal place of business in the State of Illinois. Upon information and belief, at all relevant times, Granite State was and is licensed to do and is doing business in the State of South Carolina.  Granite State is also at times referred to as "AIG" and is part of the AIG family of insurers.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

18.     Defendant American International Group, Inc. ("AIG") is a corporation organized under the laws of the State of Delaware and maintaining its principal place of business in the State of New York.  Upon information and belief, at all relevant times, AIG was and is licensed to do and is doing business in the State of South Carolina.

19.     Defendant AIU Insurance Company ("AIU") is a corporation organized under the laws of and maintaining its principal place of business in the State of New York.  Upon information and belief, at all relevant times, AIU was and is licensed to do and is doing business in the State of South Carolina.  AIU is also at times referred to as "AIG" and is part of the AIG family of insurers.

20.     Defendant The Continental Insurance Company, as successor-in-interest to Harbor Insurance Company ("Harbor"), is a corporation organized under the laws of the Commonwealth of Pennsylvania and maintaining its principal place of business in the State of Illinois.  Upon information and belief, at all relevant times, Harbor was and is licensed to do and is doing business in the State of South Carolina.

21.     Defendant Westport Insurance Corporation, as successor-in-interest to Puritan Insurance Company ("Puritan"), is a corporation organized under the laws of and maintaining its principal place of business in the State of Missouri.  Upon information and belief, at all relevant times, Puritan was and is licensed to do and is doing business in the State of South Carolina.

22.     Defendant Federal Insurance Company ("Federal") is a corporation organized under the laws of the State of Indiana and maintaining its principal place of business in the State of New Jersey.  Upon information and belief, at all relevant times, Federal was and is licensed to do and is doing business in the State of South Carolina.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

23.     Defendant Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company ("American Re"), is a corporation organized under the laws of the State of Delaware and maintaining its principal place of business in the State of New Jersey.  Upon information and belief, at all relevant times, American Re was and is licensed to do and is doing business in the State of South Carolina.

24.     Defendant Old Republic Insurance Company ("Old Republic") is a corporation organized under the laws of and maintaining its principal place of business in the Commonwealth of Pennsylvania.  Upon information and belief, at all relevant times, Old Republic was and is licensed to do and is doing business in the State of South Carolina.

25.     Defendant Pacific Employers Insurance Company ("PEIC") is a corporation organized under the laws of and maintaining its principal place of business in the Commonwealth of Pennsylvania.  Upon information and belief, at all relevant times, PEIC was and is licensed to do and is doing business in the State of South Carolina.

26.     Defendant Twin City Fire Insurance Company ("Twin City") is a corporation organized under the laws of the State of Indiana and maintaining its principal place of business in the State of Connecticut.  Upon information and belief, at all relevant times, Twin City was and is licensed to do and is doing business in the State of South Carolina.

27.     Defendant Lexington Insurance Company ("Lexington") is a corporation organized under the laws of the State of Delaware and maintaining its principal place of business in the Commonwealth of Massachusetts.  Upon information and belief, at all relevant times, Lexington was and is licensed to do and is doing business in the State of South Carolina.  Lexington is also at times referred to as "AIG" and is part of the AIG family of insurers.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

28.     Defendant Scottsdale Insurance Company ("Scottsdale") is a corporation organized under the laws of the State of Ohio and maintaining its principal place of business in the State of Arizona.  Upon information and belief, at all relevant times, Scottsdale was and is licensed to do and is doing business in the State of South Carolina.

29.     Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a corporation organized under the laws of the Commonwealth of Pennsylvania and maintaining its principal place of business in the State of New York.  Upon information and belief, at all relevant times, National Union was and is licensed to do and is doing business in the State of South Carolina. National Union is also at times referred to as "AIG" and is part of the AIG family of insurers.

30.     Defendant Century Indemnity Company, as successor-in-interest to Cigna Special Insurance Company ("Cigna"), formerly known as California Union Insurance Company ("California Union"), is a corporation organized under the laws of and maintaining its principal place of business in the Commonwealth of Pennsylvania.  Upon information and belief, at all relevant times, Cigna and California Union were and are licensed to do and is doing business in the State of South Carolina.

31.     Defendant Zurich American Insurance Company, as successor-in-interest to Zurich Insurance Company ("Zurich American"), is a corporation organized under the laws of New York, with its principal place of business located in Illinois.  Upon information and belief, at all relevant times, Zurich American was and is licensed to do and is doing business in the State of South Carolina. Zurich American is also at times referred to as "Zurich" and is part of the Zurich family of insurers.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

32.     Defendant Great American Assurance Company, formerly known as Agricultural Insurance Company ("Great American"), is a corporation organized under the laws of and maintaining its principal place of business in the State of Ohio.  Upon information and belief, at all relevant times, Great American was and is licensed to do and is doing business in South Carolina.

## JURISDICTION AND VENUE

33.     This Court has jurisdiction over the matters alleged herein pursuant to S.C. Code Ann. §§ 14-1-80, 36-2-802, and 36-2-803, Article V of the Constitution of the State of South Carolina, and this Court's plenary powers. The Court appointed the Receiver and therefore has exclusive jurisdiction over claims relating to the Burlington receivership.

34.     Venue is proper in this Court as Burlington, during its operations, maintained and operated facility(ies) in the County of Spartanburg.

35.     Federal jurisdiction does not attach to this dispute by operation of the *Barton* Doctrine.  *Protopapas v. Travelers Cas. & Sur. Co.*, 94 F.4th 351 (4th Cir. 2024).  Any removal of this case to federal court would be frivolous.

## FACTUAL BACKGROUND

### *Environmental Actions*

36.     Burlington was a business organized under the laws of the State of South Carolina that ceased business operations in 2003.  Burlington was once a global manufacturer of natural and synthetic textiles and soft goods.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

37.    Burlington, by and through its duly-appointed Receiver, brings these declaratory relief claims against defendants in its capacity as the holder of insurance rights for the defense and satisfaction of the Environmental Actions against it regarding "PFAS"[1] or "forever chemicals."

38.    On June 4, 2024, the City of Columbia, doing business as Columbia Water, filed suit against Burlington in a civil action styled, *The City of Columbia d/b/a Columbia Water v. 3M Company, Inc., et al*., C/A No. 2024-CP-40-03392 (County of Richland, South Carolina). Columbia Water alleges, among other claims, environmental damage or injury of its property.

39.    On August 9, 2024, the Grand Strand Water and Sewer Authority filed suit against Burlington in a civil action styled, *Grand Strand Water and Sewer Authority v. Burlington Industries, Inc*., C/A No. 2024-CP-26-05523 (County of Horry, South Carolina).[2]  The Authority alleges, among other claims, environmental damage or injury of its property.

40.    To address potential liabilities arising from Burlington's operations and/or presence, Burlington and its predecessor and affiliated companies—including but not limited to Burlington Mills Inc., Burlington Mills Corp., Burlington Industrial Fabrics Company, BIFCO, Inc., and Burlington International—procured various limits of liability of insurance policies to protect Burlington from liability that could arise from its business activities.

---

[1] Unless otherwise delineated, the term "PFAS" or "PFAS Chemicals" in this Complaint refers to any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom (without any hydrogen, chlorine, bromine, or iodine atom attached to), collectively, related chemicals that degrade to PFAS/PFOA/PFOS, and any precursors to PFAS/PFOA/PFOS, including, but not limited to, PFOA, PFOS, Gen-X, HFPO-DA, NEtFOSAA, NMeFOSAA, PFBS, PFDA, PFDoA, PFHpA, PFHxS, PFNA, PFTrDA, PFTA, PFUnA, 11Cl0PF3OUdS, 9Cl-PF3ONS, ADONA, PFPeS, PFHpS, 4:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 6:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), 8:2 FTS (1H, 1H, 2H, 2H,-perfluorohexane sulfonic acid), PFBA, PFPeA, PFMBA, PFMPA, PFEESA, and NFDHA.
[2] The Authority subsequently filed an amended complaint, adding defendants to the environmental action.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

41.     Burlington insurance policies and limits remain responsive to the Environmental Actions.  Burlington, by and through its duly-appointed Receiver, seeks declarations making the following policies and their limits fully available to meet Burlington's defense and/or indemnity obligations in the Environmental Actions.

*The Policies*

42.     Defendant Continental Casualty issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1961 – 10/1/1962 | RD9972847 (rewritten as RD9972901) |
| 10/1/1962 – 10/1/1963 | RD9972847 (rewritten as RD9972901) |
| 10/1/1963 – 10/1/1964 | RD9972847 (rewritten as RD9972901) |

43.     Defendant Aetna issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 11/11/1971 – 11/11/1972 | 01 XN 186 WCA |
| 12/13/1971 – 11/11/1972 | 01 XN 189 WCA |
| 11/11/1972 – 11/11/1973 | 01 XN 186 WCA |
| 11/11/1972 – 11/11/1973 | 01 XN 189 WCA |
| 11/11/1973 – 11/11/1974 | 01 XN 186 WCA |
| 11/11/1973 – 11/11/1974 | 01 XN 189 WCA |
| 10/1/1976 – 10/1/1977 | 01 XN 1144 WCA |
| 10/1/1977 – 10/1/1978 | 01 XN 1511 WCA |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| 10/1/1978 – 10/1/1979 | 01 XN 1955 WCA |
| 10/1/1985 – 10/1/1986 | 25 XN 79 SCA |
| 10/1/1985 – 10/1/1986 | 25 XN 81 SCA |
| 10/1/1985 – 10/1/1986 | 25 XN 82 SCA |
| 10/1/1986 – 10/1/1987 | 25 XN 104 WCA |
| 10/1/1986 – 10/1/1987 | 25 XN 105 WCA |

44. Defendant American Home issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 11/11/1973 – 10/1/1974 | TBD |
| 10/1/1974 – 10/1/1975 | TBD |
| 10/1/1975 – 10/1/1976 | TBD |

45. Defendant Granite State issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1976 – 10/1/1977 | TBD |
| 10/1/1977 – 10/1/1978 | TBD |
| 10/1/1978 – 10/1/1979 | TBD |

46. Defendant Allstate issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1976 – 10/1/1977 | 63-002-269 |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| 10/1/1977 – 10/1/1978 | 63-003-618 |
| 10/1/1978 – 10/1/1979 | 63-005-006 |
| 10/1/1979 – 10/1/1980 | 63-006-060 |
| 10/1/1980 – 10/1/1981 | 63-007-164 |

47.     Defendant AIG issued at least the following Policy, which provides coverage to Burlington:

| **Policy Period** | **Policy Number** |
| 10/1/1977 – 10/1/1978 | TBD |

48.     Defendant AIU issued at least the following Policy, which provides coverage to Burlington:

| **Policy Period** | **Policy Number** |
| 10/1/1978 – 10/1/1979 | TBD |

49.     Defendant Harbor issued at least the following Policies, which provide coverage to Burlington:

| **Policy Period** | **Policy Number** |
| 10/1/1979 – 10/1/1980 | HI 144697 |
| 10/1/1979 – 10/1/1980 | HI 144733 |
| 10/1/1980 – 10/1/1981 | HI 148293 |
| 10/1/1981 – 10/1/1982 | HI 150337 |
| 10/1/1981 – 10/1/1982 | HI 150338 |
| 10/1/1982 – 10/1/1983 | HI 150388 |
| 10/1/1983 – 10/1/1984 | HI 167817 |

17

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

50.    Defendant Puritan issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1979 – 10/1/1980 | ML 652622 |
| 10/1/1980 – 10/1/1981 | ML 65 26 98 |

51.    Defendant Federal issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1979 – 10/1/1980 | 79330356 |
| 10/1/1981 – 10/1/1982 | (82) 79330356 |
| 10/1/1982 – 10/1/1983 | (83) 79330356 |
| 10/1/1983 – 10/1/1984 | (84) 79330356 |
| 10/1/1984 – 10/1/1985 | 79330356 |
| 10/1/1984 – 10/1/1985 | 7935 83 52 |
| 10/1/1985 – 10/1/1985 | (86) 7935 83 52 |

52.    Defendant American Re issued at least the following Policy, which provides coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1979 – 10/1/1980 | EUR 400-91-54 |

53.    Defendant Old Republic issued at least the following Policy, which provides coverage to Burlington:

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| **Policy Period** | **Policy Number** |
|---|---|
| 10/1/1981 – 10/1/1982 | OZX 11474 |

54.     Defendant PEIC issued at least the following Policies, which provide coverage to Burlington:

| **Policy Period** | **Policy Number** |
|---|---|
| 10/1/1981 – 10/1/1982 | XCC 00 23 37 |
| 10/1/1982 – 10/1/1983 | XCC 00 23 75 |
| 10/1/1983 – 10/1/1984 | XCC 01 24 33 |
| 10/1/1984 – 4/1/1985 | XCC 01 66 11 |
| 4/1/1985 – 10/1/1985 | XCC 01 66 11 |
| 10/1/1985 – 10/1/1986 | XCC 01 68 35 |

55.     Defendant Twin City issued at least the following Policies, which provide coverage to Burlington:

| **Policy Period** | **Policy Number** |
|---|---|
| 10/1/1982 – 10/1/1983 | TXS 101177 |
| 10/1/1983 – 10/1/1984 | TBD |
| 10/1/1984 – 10/1/1985 | TXS 104029 |

56.     Defendant Lexington issued at least the following Policies, which provide coverage to Burlington:

| **Policy Period** | **Policy Number** |
|---|---|
| 10/1/1985 – 10/1/1986 | 5526017 / 5526014 |
| 10/1/1986 – 10/1/1987 | 5226098 |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

57.     Defendant Scottsdale issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1985 – 10/1/1986 | XUM 00112 |

58.     Defendant National Union issued at least the following Policies, which provide coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1985 – 10/1/1986 | 9601202 |
| 10/1/1986 – 10/1/1987 | 9601311 |

59.     Defendant California Union issued at least the following Policy, which provides coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1985 – 10/1/1986 | ZCX 00 79 52 |

60.     Defendant Zurich issued at least the following Policy, which provides coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1985 – 10/1/1986 | 73, 018-85-C |

61.     Defendant Cigna issued at least the following Policy, which provides coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1987 – 10/1/1988 | TBD |

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

62.     Defendant Great American issued at least the following Policy, which provides coverage to Burlington:

| Policy Period | Policy Number |
|---|---|
| 10/1/1994 – 10/1/1995 | TBD |

63.     Copies of these policies or secondary evidence of the foregoing insurance policies have been or will be provided to the defendants.

64.     On information and belief, defendants are aware of the liability policies issued to Burlington or its predecessor companies or its affiliated companies, have copies or specimen copies of all liability policies issued to Burlington or its predecessor companies or its affiliated companies that provide coverage for the Environmental Actions, and are aware of the terms and conditions thereof.

65.     Burlington has satisfied, shall be deemed to have satisfied, or has been or shall be relieved from satisfying, by operation of law or by virtue of the defendants' conduct, all terms and conditions of the defendants' insurance policies, including without limitation payment of premiums, satisfaction or relief from satisfying all deductibles, self-insured retentions and underlying limits of the policies issued by the defendants and are entitled to the full benefit of their insurance.

66.     The Receiver also contends, upon information and belief, that other insurers issued policies of insurance to Burlington and/or its predecessor and affiliated companies that provide coverage to Burlington and are responsive to Environmental Actions.

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

67.     Additional defendants may include one or more insurance companies.  When the identities of these additional defendants become known to Burlington, this complaint will be amended *nunc pro tunc* to state the true identity of such additional defendants.

### FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT
#### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)

68.     Burlington incorporates by reference the preceding paragraphs as though fully set forth herein.

69.     The defendants identified herein, under their Policies and applicable law, have a duty to investigate, defend, reimburse and/or indemnify Burlington completely from and against the Environmental Actions.  The defendants disagree with these assertions.  An actual and justiciable controversy exists between Burlington and these defendants concerning their obligations under the applicable Policies.

70.     Accordingly, the Receiver seeks declarations as to the interpretation and meaning of the Policies identified herein that these defendants issued to Burlington, as follows:

    a.  a declaration that the Policies cover all Environmental Actions that allege property damage, bodily injury, personal injury, injurious exposure, or progression of injury (including any combination thereof) during any Policy period due to the presence or alleged presence of certain PFAS chemicals or forever chemicals arising from Burlington's operations and/or presence;

    b.  a declaration that the Environmental Actions "trigger" the Policies as long as damage or injury is alleged during the period of the Policy;

c.   a declaration that Burlington may select the Policy or Policy years to which to assign or allocate in full loss from the Environmental Actions;

d.   a declaration and order that in the case of any claimed ambiguity in any Policy, such ambiguity shall be construed in favor of the broadest coverage afforded under the Policy;

e.   a declaration and order that each defendant's duty to defend or to pay or reimburse defense costs for the Environmental Actions is a joint, several and indivisible obligation under the Policies that provide for a duty to defend or to pay or reimburse defense costs;

f.   a declaration and order that if any allegation or cause of action in an Environmental Action is potentially covered under the Policies, then the defendant must fully defend or pay or reimburse in full the costs of defending against all of the allegations and all of the causes of action in the complaint;

g.   a declaration and order that each Policy is required to pay or reimburse all sums that Burlington becomes legally obligated or required to pay as damages by reason of the Environmental Actions;

h.   a declaration and order that each Policy must indemnify covered Environmental Actions, in full, up to its "per occurrence" limit, regardless of whether a continuing injury spans multiple policy periods;

i.   a declaration and order that coverage under the Policies for the Environmental Actions is not precluded on the basis of any purported limitation or exclusion that might be contained in the Policies, including but not limited to any so-called

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

"pollution exclusion" or any purported limitation or the payment of damages because of property damage; and

j.   a declaration and order that Burlington is not obligated to pay any portion of defense and indemnity costs for this lawsuit allocable to insolvent policies or policies issued by insurers in liquidation proceedings or that have been liquidated as long as they have available insurance that covers such liabilities.

k.   a declaration and order that excess carriers must "drop down" and that the obligations of excess carriers ripen upon one or more of the following:

   i.   the exhaustion of the underlying insurance policies;

   ii.   the operation of bankruptcy or insolvency of one or more of the underlying insurance carriers;

   iii.   the refusal of one or more of the underlying insurance carriers to cover the Environmental Actions; or

   iv.   payment of losses.

71.   The defendants dispute that Burlington is entitled to any of the foregoing declarations and orders.  Consequently, an actual and justiciable controversy exists between Burlington and these defendants concerning the defendants' obligations under the insurance policies that they sold to Burlington.

72.   A judicial declaration is necessary and appropriate at this time, and under the circumstances alleged above, so that Burlington may ascertain its rights under the defendants' policies.  Such declarations are particularly appropriate under these circumstances in that the claimants in the Environmental Actions seek to recover millions of dollars against Burlington.

Judicial declarations of Burlington's rights under the defendants' policies will obviate seriatim litigation and a multiplicity of actions that would otherwise result from the actual and justiciable controversy between Burlington and defendants concerning their respective rights and obligations under the Policies.

### PRAYER

WHEREFORE, Burlington demands judgment as follows:

A.    For the declarations, orders, and other relief sought herein;

B.    For the Receiver's attorneys' fees, costs, and expenses; and

C.    For such other and further relief as this Court deems just and proper.

Dated: October 21, 2024

<div style="text-align:right">

*s/Alexander R. Stalvey*
Alex R. Stalvey (S.C. Bar 71739)
Bannister Wyatt & Stalvey LLC
24 Cleveland St., Suite 100
Greenville, SC 29601
Telephone: (864) 298-0084
Email: astalvey@bannisterwyatt.com

John K. Chandler (S.C. Bar 100837)
Rikard & Protopapas LLC
2110 N. Beltline Blvd.
Columbia, SC 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

Duke K. McCall
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Email: duke.mccall@morganlewis.com

</div>

ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2022 May 13 8:41 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4005873
ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | FIFTH JUDICIAL CIRCUIT |
| | C/A No.: 2021-CP-40-05873 |
| BARBARA BULLARD MIMMS and JOHN MIMMS, | |
| Plaintiffs, | **ORDER APPOINTING RECEIVER OVER DEFENDANT BURLINGTON INDUSTRIES, INC.** |
| v. | |
| BURLINGTON INDUSTRIES, INC., | |
| Defendant. | |

Before the Court is Plaintiffs' Motion to Appoint a Receiver over Defendant Burlington Industries, Inc., pursuant to S.C. Code Ann. § § 15-65-10(4). This Court finds that the appointment of a receiver in this action is meritorious under the applicable statute because Burlington Industries, Inc., by virtue of its status as a dissolved corporation, has forfeited its right to do business in South Carolina and has further failed to answer this case, and therefore, Plaintiffs' request for an expedited ruling on this motion is appropriate and granted.

Therefore, this Court hereby appoints Peter McCoy as the Receiver in this case pursuant to South Carolina Law with the power and authority to fully administer all assets of Defendant, accept service on behalf of Defendant, engage counsel on behalf of Defendant, and take any and all steps necessary to protect the interests of Defendant whatever they may be. This order is inclusive of, but not limited to, the right and obligation to administer any insurance assets of Defendant, as well as any claims related to the actions or failure to act of Defendant's insurance carriers.

In addition to the powers of the Receiver as set forth herein, the Receiver shall have the following rights, authority, and powers with respect to the Defendant's property, to:

ELECTRONICALLY FILED - 2022 May 13 8:41 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4005873
ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

(1) collect all accounts receivable of Defendant and all rents due to the Defendant from any tenant;

(2) to change locks to all premises at which any property is situated;

(3) open any mail addressed to the defendant and addressed to any business owned by the Defendant; redirect the delivery of any mail addressed to the Defendant or any business of the Defendant, so that the mail may come directly to the receiver;

(4) endorse and cash all checks and negotiable instruments payable to Defendant, except paychecks for current wages;

(5) hire a real estate broker to sell any real property and mineral interest belonging to the Defendant;

(6) hire any person or company to move and store the property of Defendant;

(7) to insure any property belonging to the Defendant (but not the obligation);

(8) obtain from any financial institution, bank, credit union, savings and loan or title company, credit bureau or any other third party, any financial records belonging to or pertaining to the Defendant;

(9) obtain from any landlord, building owner, or building manager where the Defendant or the Defendant's business is a tenant, copies of the Defendant's lease, lease application, credit application, payment history and copies of Defendant's checks for rent or other payments;

(10)     hire any person or company necessary to accomplish any right or power under this Order; and

(11)    take all action necessary to gain access to all storage facilities, safety deposit boxes, real property, and leased premises wherein any property of Defendant may be situated, and to review and obtain copies of all documents related to same.

In addition, the Court expects the Receiver to investigate the existence of all insurance coverages potentially available to the company in receivership. The Receiver will provide potential insurers with lists of work sites, contractors, and insurance brokers and agents to facilitate the insurers' searches for coverage (specifically including coverage provided to any related or subsidiary companies of the company in receivership or any company for whom the company in receivership did work as an "additional insured" under coverage written to another entity). The Court expects all insurers to comply with subpoenas issued by this Court and its Receiver in effectuating these thorough searches.

The Court further orders that, as the Receiver Court, that the Receiver or Burlington Industries, Inc., may not be sued outside this Court without obtaining the Receiver's consent or an order of this Court prior to doing so.

**IT IS SO ORDERED.**

_____
The Honorable Jocelyn Newman
Circuit Court Judge
Fifth Judicial Circuit

ELECTRONICALLY FILED - 2022 May 13 8:41 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4005873
ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2022 May 13 8:41 AM - RICHLAND - COMMON PLEAS - CASE#2021CP4005873
ELECTRONICALLY FILED - 2024 Oct 22 9:24 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



Richland Common Pleas

**Case Caption:**     Barbara Bullard Mimms , plaintiff, et al vs   Burlington Industries Inc

**Case Number:**     2021CP4005873

**Type:**     Order/Appointment of Receiver

IT IS SO ORDERED.

Jocelyn Newman, Chief Judge for Administrative
Purposes, Court of Common Pleas, 5th Judicial
Circuit

Electronically signed on 2022-05-12 13:39:04    page 4 of 4



ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CENTURY INDEMNITY CO
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Requests for Production, Order Appointing Receiver Over Defendent on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201084, <u>Burlington Industries, Inc. v. CENTURY INDEMNITY CO, *et al.*</u>, 2024-CP-42-04138.

By:                                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                                     Michael Wise
General Counsel                                       Director
(803)737-6732                                         State of South Carolina
                                                      Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**



**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CONTINENTAL CASUALTY CO
c/o Stathy Darcy
151 N. Franklin Street- Legal Department
Chicago, IL 60606

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201093, Burlington Industries, Inc., *et al.* v. Continental Casualty Company, *et al.*, 2024-CP-42-04138.

By:                                    Sincerely Yours,

*Gwendolyn Faller McGriff*

Gwendolyn McGriff                      Michael Wise
General Counsel                        Director
(803)737-6732                          State of South Carolina
                                       Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland St., Ste. 100
       Greenville, SC    29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
FEDERAL INSURANCE COMPANY
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223-0000

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201096, Burlington Industries, Inc. v. FEDERAL INSURANCE COMPANY, et al., 2024-CP-42-04138.

By:                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn  McGriff                     Michael Wise
General Counsel                        Director
(803)737-6732                          State of South Carolina
                                       Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland Street, Suite 100
       Greenville, SC    29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
GRANITE STATE INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201098, Burlington Industries, Inc., et al. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:

Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       26 Cleveland St., Ste 100
       Greenville, SC   29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
MUNICH REINSURANCE AMERICA, INC.
ATTN: General Counsel
555 College Road East
Princeton, NJ 08543-5241

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201097, Burlington Industries, Inc., *et al.* v. Continental Casualty Company, *et al.*, 2024-CP-42-04138.

By:

Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       26 Cleveland St., Ste 100
       Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



## South Carolina
## Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
NATIONAL UNION FIRE INS CO OF PITTSBURGH PA
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201099, <u>Burlington Industries, Inc. v. NATIONAL UNION FIRE INS CO OF PITTSBURGH PA, *et al.*</u>, 2024-CP-42-04138.

By:                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland Street, Suite 100
       Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**



**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
OLD REPUBLIC INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201095, Burlington Industries, Inc. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:                                          Sincerely Yours,

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander R. Stalvey
         24 Cleveland St., Ste. 100
         Greenville, SC   29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
PACIFIC EMPLOYERS INSURANCE CO
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201087, <u>Burlington Industries, Inc. v. Continental Casualty Company, et al.</u>, 2024-CP-42-04138.

By:

Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alex R. Stalvey
        24 Cleveland St., Ste. 100
        Greenville, SC     29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
TWIN CITY FIRE INSURANCE COMPANY
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223-0000

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201086, <u>Burlington Industries, Inc. v. TWIN CITY FIRE INSURANCE COMPANY, *et al.*</u>, 2024-CP-42-04138.

By:                                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601



# South Carolina
# Department of Insurance

Capitol Center
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
WESTPORT INSURANCE CORPORATION
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201090, Burlington Industries, Inc. v. WESTPORT INSURANCE CORPORATION, et al., 2024-CP-42-04138.

By:                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland Street, Suite 100
       Greenville, SC   29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**



**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ZURICH AMERICAN INSURANCE COMPANY
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201088, Burlington Industries, Inc. v. ZURICH AMERICAN INSURANCE COMPANY, *et al.*, 2024-CP-42-04138.

By:                                                    Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                      Michael Wise
General Counsel                          Director
(803)737-6732                            State of South Carolina
                                         Department of Insurance

Attachment

CC:      Alexander R. Stalvey
         24 Cleveland Street, Suite 100
         Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 07 11:05 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

Capitol Center
**1201 Main Street, Suite 1000**
Columbia, South Carolina 29201

Mailing Address:
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AMERICAN HOME ASSURANCE CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201134, <u>Burlington Industries, Inc. v. AMERICAN HOME ASSURANCE CO</u>, <i>et al.</i>, 2024-CP-42-04138.

By:                                          Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                            Michael Wise
General Counsel                              Director
(803)737-6732                                State of South Carolina
                                             Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC   29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CONTINENTAL INSURANCE COMPANY (THE)
ATTN: Stathy Darcy, SVP
151 North Franklin Street - Law Dept
Chicago, IL 60606

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201138, <u>Burlington Industries, Inc. v. CONTINENTAL INSURANCE COMPANY (THE), et al.</u>, 2024-CP-42-04138.

By:                                          Sincerely Yours,

Gwendolyn Faller McGriff

Gwendolyn McGriff                            Michael Wise
General Counsel                              Director
(803)737-6732                                State of South Carolina
                                             Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138





# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**



**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
GREAT AMERICAN ASSURANCE COMPANY
301 E Fourth Street
301 EAST FOURTH STREET
Cincinnati, OH 45202

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201135, <u>Burlington Induestries, Inc. v. GREAT AMERICAN ASSURANCE COMPANY, et al.</u>, 2024-CP-42-04138.

By:

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
24 Cleveland Street, Suite 100
Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

Capitol Center
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

Mailing Address:
**P.O. Box 100105, Columbia, S.C. 29202-3105**

ELECTRONICALLY FILED - 2024 Nov 13 11:06 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
SCOTTSDALE INSURANCE COMPANY
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201136, Burlington Industries, Inc. v. SCOTTSDALE INSURANCE COMPANY, *et al.*, 2024-CP-42-04138.

By:                                          Sincerely Yours,

*Gwendolyn Faller McGriff*

Gwendolyn McGriff                            Michael Wise
General Counsel                              Director
(803)737-6732                                State of South Carolina
                                             Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CONTINENTAL INSURANCE COMPANY (THE)
ATTN: Stathy Darcy, SVP
151 North Franklin Street - Law Dept
Chicago, IL 60606

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201138, <u>Burlington Industries, Inc. v. CONTINENTAL INSURANCE COMPANY (THE), et al.</u>, 2024-CP-42-04138.

By:

*Gwendolyn Faller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601





# South Carolina
# Department of Insurance

Capitol Center
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

Mailing Address:
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AMERICAN HOME ASSURANCE CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201134, <u>Burlington Industries, Inc. v. AMERICAN HOME ASSURANCE CO, *et al.*,</u> 2024-CP-42-04138.

By:                                      Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                        Michael Wise
General Counsel                          Director
(803)737-6732                            State of South Carolina
                                         Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC    29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
GREAT AMERICAN ASSURANCE COMPANY
301 E Fourth Street
301 EAST FOURTH STREET
Cincinnati, OH 45202

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201135, <u>Burlington Induestries, Inc. v. GREAT AMERICAN ASSURANCE COMPANY, et al.</u>, 2024-CP-42-04138.

By:

*Gwendolyn Fuller McSheriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander R. Stalvey
           24 Cleveland Street, Suite 100
           Greenville, SC    29601



# South Carolina
# Department of Insurance

Capitol Center
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

Mailing Address:
**P.O. Box 100105, Columbia, S.C. 29202-3105**

ELECTRONICALLY FILED - 2024 Nov 13 10:20 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 4, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
SCOTTSDALE INSURANCE COMPANY
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 4, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201136, <u>Burlington Industries, Inc. v. SCOTTSDALE INSURANCE COMPANY, et al.</u>, 2024-CP-42-04138.

By:

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
         24 Cleveland Street, Suite 100
         Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 13 10:16 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA    )

COUNTY OF SPARTANBURG    )

)

BURLINGTON INDUSTRIES, INC., by
and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

          Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY, TRAVELERS CASUALTY
AND SURETY COMPANY, formerly
known as AETNA CASUALTY AND
SURETY COMPANY, AMERICAN
HOME ASSURANCE COMPANY,
ALLSTATE INSURANCE COMPANY, as
successor-in-interest to NORTHBROOK
EXCESS AND SURPLUS INSURANCE
COMPANY, formerly known as
NORTHBROOK INSURANCE
COMPANY, GRANITE STATE
INSURANCE COMPANY, AMERICAN
INTERNATIONAL GROUP, INC., AIU
INSURANCE COMPANY, THE
CONTINENTAL INSURANCE
COMPANY, as successor-in-interest to
HARBOR INSURANCE COMPANY,
WESTPORT INSURANCE
CORPORATION, as successor-in-interest to
PURITAN INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY,
MUNICH REINSURANCE AMERICA,
INC., formerly known as AMERICAN RE-
INSURANCE COMPANY, OLD
REPUBLIC INSURANCE COMPANY,
PACIFIC EMPLOYERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, LEXINGTON
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, NATIONAL
UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, CENTURY
INDEMNITY COMPANY, as successor-in-
interest to CIGNA SPECIALTY
INSURANCE COMPANY, formerly known
as CALIFORNIA UNION INSURANCE

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

CIVIL ACTION NO. 2024-CP-42-04138

1

ELECTRONICALLY FILED - 2024 Nov 13 10:16 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

COMPANY, ZURICH AMERICAN )
INSURANCE COMPANY, and GREAT )
AMERICAN ASSURANCE COMPANY, )
formerly known as AGRICULTURAL )
INSURANCE COMPANY )
)
           Defendants. )
)

## **CERTIFICATE OF SERVICE BY U.S. CERTIFIED MAIL**

**1.  Summons & Complaint-filed 10.22.2024**
**2.  Receiver's First Set of Requests for Production of Documents to America International Group, Inc.**

was this 30th day of October, 2024, mailed via certified mail, postage prepaid to:

America International Group, Inc.
1271 Avenue of the Americas
New York, NY 10020

Tiffany McKinney
P.O. Box 10007
Greenville, SC 29603

---

**SENDER:** *COMPLETE THIS SECTION*

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

America International Group. Inc.
1271 Avenue of the Americas
New York, NY 10020

9590 9402 8821 4005 3918 58

2. Article Number *(Transfer from service label)*

7004 0550 0001 5076 3539

PS Form **3811**, July 2020 PSN 7530-02-000-9053

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____  ☐ Agent
                      ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt



# South Carolina
# Department of Insurance

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

—————

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

November 5, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
AIU INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 5, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201146, <u>Burlington Industries, Inc. v. AIU INS CO, et al.</u>, 2024-CP-42-04138.

By.

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland Street, Suite 100
       Greenville, SC   29601

ELECTRONICALLY FILED - 2024 Nov 19 3:59 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Nov 19 3:59 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
P.O. Box 100105, Columbia, S.C. 29202-3105

October 15, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
ALLSTATE INS CO
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223-0000

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201085, Burlington Industries, Inc., et al. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander Stalvey
        24 Cleveland Street, Ste. 100
        Greenville, SC    29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

ELECTRONICALLY FILED - 2024 Nov 19 3:59 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 5, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
LEXINGTON INSURANCE COMPANY
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 5, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-45-170. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201145, Burlington Industries, Inc. v. LEXINGTON INSURANCE COMPANY, *et al.*, 2024-CP-42-04138.

By:                                         Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                           Michael Wise
General Counsel                             Director
(803)737-6732                               State of South Carolina
                                            Department of Insurance

Attachment

CC:     Alexander R. Stalvey
        24 Cleveland Street, Suite 100
        Greenville, SC 29601



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000;
Columbia, South Carolina 29201

———————

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

ELECTRONICALLY FILED - 2024 Nov 19 3:59 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

November 5, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
TRAVELERS CASUALTY AND SURETY COMPANY
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On November 5, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201144, Burlington Industries, Inc. v. TRAVELERS CASUALTY AND SURETY COMPANY, *et al.*, 2024-CP-42-04138.

By:

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:   Alexander R. Stalvey
      24 Cleveland Street, Suite 100
      Greenville, SC   29601



# South Carolina
# Department of Insurance

**Capital Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director



**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
CONTINENTAL CASUALTY CO
c/o Stathy Darcy
151 N. Franklin Street- Legal Department
Chicago, IL 60606

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201093, Burlington Industries, Inc., et al. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:                                                     Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                                  Michael Wise
General Counsel                                      Director
(803)737-6732                                        State of South Carolina
                                                           Department of Insurance

Attachment

CC:    Alexander R. Stalvey
          24 Cleveland St., Ste. 100
          Greenville, SC    29601

ELECTRONICALLY FILED - 2024 Nov 22 12:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
GRANITE STATE INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201098, <u>Burlington Industries, Inc., et al.</u> v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:

*Gwendolyn Faller McGriff*

Gwendolyn McGriff
General Counsel
(803)737-6732

Sincerely Yours,

Michael Wise
Director
State of South Carolina
Department of Insurance

Attachment

CC:     Alexander R. Stalvey
26 Cleveland St., Ste 100
Greenville, SC   29601

ELECTRONICALLY FILED - 2024 Nov 22 12:31 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

---

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
MUNICH REINSURANCE AMERICA, INC.
ATTN: General Counsel
555 College Road East
Princeton, NJ 08543-5241

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201097, Burlington Industries, Inc., et al. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:                                             Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff                               Michael Wise
General Counsel                                 Director
(803)737-6732                                   State of South Carolina
                                                Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       26 Cleveland St., Ste 100
       Greenville, SC   29601

ELECTRONICALLY FILED - 2024 Nov 22 12:31 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



# South Carolina
# Department of Insurance

Capitol Center
1201 Main Street, Suite 1000
Columbia, South Carolina 29201

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director

Mailing Address:
P.O. Box 100105, Columbia, S.C. 29202-3105

ELECTRONICALLY FILED - 2024 Nov 22 12:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
OLD REPUBLIC INS CO
c/o Corporation Service Company
508 Meeting Street
West Columbia, SC 29169

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov.** When replying, please refer to File Number 201095, Burlington Industries, Inc. v. Continental Casualty Company, et al., 2024-CP-42-04138.

By:                                          Sincerely Yours,

*Gwendolyn Faller McGriff*

Gwendolyn McGriff                            Michael Wise
General Counsel                              Director
(803)737-6732                                State of South Carolina
                                             Department of Insurance

Attachment

CC:    Alexander R. Stalvey
       24 Cleveland St., Ste. 100
       Greenville, SC   29601



# South Carolina
# Department of Insurance

**Capitol Center**
**1201 Main Street, Suite 1000**
**Columbia, South Carolina 29201**

———————

**Mailing Address:**
**P.O. Box 100105, Columbia, S.C. 29202-3105**

**HENRY McMASTER**
Governor

**MICHAEL WISE**
Director



ELECTRONICALLY FILED - 2024 Nov 22 12:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

October 31, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
PACIFIC EMPLOYERS INSURANCE CO
c/o CT Corporation System
2 Office Park Court, Suite 103
Columbia, SC 29223

Dear Sir:

On October 31, 2024, I accepted service of the attached Summons and Complaint, Order, Requests for Production on your behalf. I am, hereby, forwarding that accepted process on to you pursuant to the provisions of S.C. Code Ann. § 38-5-70. By forwarding accepted process on to you, I am meeting a ministerial duty imposed upon me by S.C. Code Ann. § 15-9-270. I am not a party to this case. The State of South Carolina Department of Insurance is not a party to this case. It is important for you to realize that service was effected upon your insurer on my date of acceptance for service.

**You must promptly acknowledge in writing your receipt of this accepted process to hsmith@doi.sc.gov**. When replying, please refer to File Number 201087, Burlington Industries, Inc. v. Continental Casualty Company, *et al.*, 2024-CP-42-04138.

By:                        Sincerely Yours,

*Gwendolyn Fuller McGriff*

Gwendolyn McGriff              Michael Wise
General Counsel                Director
(803)737-6732                  State of South Carolina
                               Department of Insurance

Attachment

CC:     Alex R. Stalvey
         24 Cleveland St., Ste. 100
         Greenville, SC 29601

ELECTRONICALLY FILED - 2024 Dec 19 9:35 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | FOR THE SEVENTH JUDICIAL CIRCUIT |

Burlington Industries, Inc., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

*Plaintiff*,

vs.

Continental Casualty Company, *et al.*,

*Defendants*.

Civil Action Number: 2024-CP-42-04138

**MOTION FOR PRO HAC VICE ADMISSION OF W. BRAD NES FOR THE RECEIVER FOR BURLINGTON INDUSTRIES INC**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that W. Brad Ness, of Morgan Lewis & Bockius, LLP, 1717 Main St., Suite 3200, Dallas, TX 75201-7347 be admitted pro hac vice in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court; and

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and Service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*; and

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Prior to filing this Motion, I conferred with opposing counsel and have received no response at this time in opposition.

Mr. Nes is a member in good standing with his local bar association and the Verified Application for Admission Pro Hac Vice in the State of South Carolina setting for the necessary information required by Rule 404(d) is attached to and incorporated into this motion.

Respectfully submitted,

*/s/ John K. Chandler*
John K. Chandler (SC Bar 100837)
Rikard & Protopapas, LLC
2110 N. Beltline Boulevard
Columbia, South Carolina 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

**Attorney for the Receiver**

Dated: December 19, 2024

ELECTRONICALLY FILED - 2024 Dec 19 9:35 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF SPARTANBURG | ) | FOR THE SEVENTH JUDICIAL CIRCUIT |
| | ) | |
| BURLINGTON INDUSTRIES, INC., by | ) | CIVIL ACTION NO. 2024-CP-42-04138 |
| and through its duly-appointed Receiver, | ) | |
| Peter M. McCoy, Jr., | ) | **DEFENDANT ALLSTATE INSURANCE** |
| | ) | **COMPANY'S, SOLELY AS** |
| Plaintiff, | ) | **SUCCESSOR IN INTEREST TO** |
| | ) | **NORTHBROOK EXCESS AND** |
| v. | ) | **SURPLUS INSURANCE COMPANY,** |
| | ) | **FORMERLY NORTHBROOK** |
| CONTINENTAL CASUALTY | ) | **INSURANCE COMPANY, ANSWER TO** |
| COMPANY, TRAVELERS CASUALTY | ) | **PLAINTIFF'S COMPLAINT,** |
| AND SURETY COMPANY, formerly | ) | **SEPARATE DEFENSES, AND** |
| known as AETNA CASUALTY AND | ) | **DEMAND FOR JURY TRIAL** |
| SURETY COMPANY, AMERICAN | ) | |
| HOME ASSURANCE COMPANY, | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| as successor-in-interest to | ) | |
| NORTHBROOK EXCESS AND | ) | |
| SURPLUS INSURANCE COMPANY, | ) | |
| formerly known as NORTHBROOK | ) | |
| INSURANCE COMPANY, GRANITE | ) | |
| STATE INSURANCE COMPANY, | ) | |
| AMERICAN INTERNATIONAL | ) | |
| GROUP, INC., AIU INSURANCE | ) | |
| COMPANY, THE CONTINENTAL | ) | |
| INSURANCE COMPANY, as successor- | ) | |
| in-interest to HARBOR INSURANCE | ) | |
| COMPANY, WESTPORT INSURANCE | ) | |
| CORPORATION, as successor-in-interest | ) | |
| to PURITAN INSURANCE COMPANY, | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| MUNICH REINSURANCE AMERICA, | ) | |
| INC., formerly known as AMERICAN | ) | |
| RE-INSURANCE COMPANY, OLD | ) | |
| REPUBLIC INSURANCE COMPANY, | ) | |
| PACIFIC EMPLOYERS INSURANCE | ) | |
| COMPANY, TWIN CITY FIRE | ) | |
| INSURANCE COMPANY, LEXINGTON | ) | |
| INSURANCE COMPANY, | ) | |
| SCOTTSDALE INSURANCE | ) | |
| COMPANY, NATIONAL UNION FIRE | ) | |
| INSURANCE COMPANY OF | ) | |
| | ) | |

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| PITTSBURGH, PA, CENTURY | ) |
| INDEMNITY COMPANY, as successor- | ) |
| in-interest to CIGNA SPECIALTY | ) |
| INSURANCE COMPANY, formerly | ) |
| known as CALIFORNIA UNION | ) |
| INSURANCE COMPANY, ZURICH | ) |
| AMERICAN INSURANCE COMPANY, | ) |
| and GREAT AMERICAN ASSURANCE | ) |
| COMPANY, formerly known as | ) |
| AGRICULTURAL INSURANCE | ) |
| COMPANY | ) |
| Defendants. | ) |
| | ) |

Defendant Allstate Insurance Company ("Allstate"), solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company ("Northbrook"), Answers the Complaint of Plaintiff Burlington Industries, Inc., by and through its court-appointed Receiver, Peter M. McCoy, Jr. ("Plaintiff") as set forth below. Except as specifically admitted, every allegation is denied.

## **NATURE OF THE ACTION**

1-11.  Allstate states that the allegations of paragraphs 1 through 11 of Plaintiff's Complaint merely attempt to categorize the nature of this action and/or assert legal conclusions, and thus, no response thereto is required.  To the extent the allegations of paragraphs 1 through 11 of Plaintiff's Complaint contain factual allegations directed to Allstate and/or purports to impute liability to it, Allstate denies the allegations.  Allstate lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

## **PARTIES**

12-15.  Allstate is without sufficient knowledge or information to admit or deny the allegations of paragraphs 12 through 15 of Plaintiff's Complaint, and therefore, no response is required. To the extent a response is required, Allstate leaves Plaintiff to its proofs.

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

16. Answering the allegations of paragraph 16 of Plaintiff's Complaint, Allstate admits only that it is an insurance company organized and existing under Illinois law, with its principal place of business in Northbrook, Illinois and that Allstate is authorized to conduct insurance business in South Carolina. Except as admitted, denied.

17-32. Allstate is without sufficient knowledge or information to admit or deny the allegations of paragraphs 17 through 32 of Plaintiff's Complaint, and therefore, no response is required. To the extent a response is required, Allstate leaves Plaintiff to its proofs.

## JURISDICTION AND VENUE

33-35. Allstate states that the allegations of paragraphs 33 through 35 of Plaintiff's Complaint merely attempt to categorize the nature of this action and/or assert legal conclusions, and thus, no response thereto is required. To the extent the allegations of paragraphs 33 through 35 of Plaintiff's Complaint contain factual allegations directed to Allstate and/or purports to impute liability to it, Allstate denies the allegations.

## FACTUAL BACKGROUND

### *Environmental Actions*

36-41. Allstate states that the allegations of paragraphs 36 through 41 of Plaintiff's Complaint merely attempt to categorize the nature of this action and/or assert legal conclusions, and thus, no response thereto is required. To the extent the allegations of paragraphs 36 through 41 of Plaintiff's Complaint contain factual allegations directed to Allstate and/or purports to impute liability to it, Allstate denies the allegations. Allstate lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### *The Policies*

42-45. Allstate is without sufficient knowledge or information to admit or deny the allegations of paragraphs 42 through 45 of Plaintiff's Complaint, and therefore, no response is required. To the extent a response is required, Allstate leaves Plaintiff to its proofs.

46. Answering the allegations of paragraph 46 of Plaintiff's Complaint, Allstate admits only that certain excess Northbrook Policies were issued to Burlington, and that the insurance policies are written documents that speak for themselves and any attempt to characterize the terms and conditions contained therein are specifically denied. Allstate lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

47-62. Allstate is without sufficient knowledge or information to admit or deny the allegations of paragraphs 47 through 62 of Plaintiff's Complaint, and therefore, leaves Plaintiff to its proofs.

63-67. Allstate states that the allegations of paragraphs 63 through 67 of Plaintiff's Complaint merely attempt to categorize the nature of this action and/or assert legal conclusions, and thus, no response thereto is required. To the extent the allegations of paragraphs 63 through 67 of Plaintiff's Complaint contain factual allegations directed to Allstate and/or purports to impute liability to it, Allstate denies the allegations. Allstate lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations.

### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT
#### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)

68. Allstate incorporates by reference its responses to paragraphs 1 through 67 of Plaintiff's Complaint as though fully set forth herein.

69-72. Allstate states that the allegations of paragraphs 69 through 72 of Plaintiff's Complaint merely attempt to categorize the nature of this action and/or assert legal conclusions,

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

and thus, no response thereto is required. To the extent the allegations of paragraphs 69 through 72 of Plaintiff's Complaint contain factual allegations directed to Allstate and/or purports to impute liability to it, Allstate denies the allegations. Allstate lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations

### SEPARATE DEFENSES

### FIRST SEPARATE DEFENSE

Plaintiff's Complaint, and each claim for relief alleged therein, fails to state a claim against Allstate upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

### SECOND SEPARATE DEFENSE

Plaintiff's claims are barred to the extent that there is no justiciable case or controversy, they improperly seek an advisory opinion and are not ripe for adjudication by this Court.

### THIRD SEPARATE DEFENSE

Some or all of the claims and rights, if any, against Allstate may be barred, in whole or in part, by the applicable statute of limitations.

### FOURTH SEPARATE DEFENSE

Some or all of the claims and rights, if any, against Allstate may be barred, in whole or in part, by the doctrine of unclean hands.

### FIFTH SEPARATE DEFENSE

Some or all of the claims and rights, if any, against Allstate may be barred, in whole or in part, by the doctrine of laches.

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SIXTH SEPARATE DEFENSE

Some or all of the claims and rights, if any, against Allstate may be barred, in whole or in part, by the doctrines of waiver.

## SEVENTH SEPARATE DEFENSE

Some or all of the claims and rights, if any, against Allstate may be barred, in whole or in part, by the doctrine of estoppel.

## EIGHTH SEPARATE DEFENSE

To the extent that it is determined that the insured (or its agents or representatives) negligently or intentionally misrepresented, failed to disclose, or omitted material facts regarding its acts, practices or conditions or other material information in connection with any application for insurance issued by Northbrook or any risk assumed by Northbrook, the claims set forth in Plaintiff's Complaint may be barred insofar as Northbrook may have relied upon such misrepresentation or omission in issuing the Northbrook Policies.

## NINTH SEPARATE DEFENSE

Plaintiff's Complaint as against Allstate is barred in whole or in part to the extent that the insured engaged in intentional, deliberate, reckless or illegal conduct.

## TENTH SEPARATE DEFENSE

Plaintiff's Complaint as against Allstate is barred to the extent that the insured and/or Plaintiff failed to perform its obligations and duties and comply with all conditions precedent and subsequently owed under the Northbrook Policies at issue and/or any applicable underlying policies.

## ELEVENTH SEPARATE DEFENSE

Plaintiff's claims for coverage are barred to the extent that Plaintiff failed to provide adequate cooperation, information and assistance, as is required by Northbrook Policies.

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## TWELFTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that any of the costs for which Plaintiff are allegedly liable have not yet been incurred.

## THIRTEENTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that Plaintiff's obligations to pay the alleged claims against it have not been finally determined by judgment or settlement.

## FOURTEENTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the insured's and/or Plaintiff's acts or omissions that gave rise to the alleged claims against Plaintiff were in violation of law or public policy.

## FIFTEENTH SEPARATE DEFENSE

Plaintiff's claims for coverage are barred by the terms, conditions, definitions, exclusions, limits of liability and other provisions of the Northbrook Polices, as well as by the terms, conditions, definitions, exclusions, limits of liability and other provisions of the applicable policies of insurance underlying those policies which may be incorporated by reference in the Northbrook Policies.

## SIXTEENTH SEPARATE DEFENSE

To the extent that the insured and/or Plaintiff, by their actions or inaction, failed to mitigate, minimize or avoid any damages allegedly sustained, any recovery against Allstate must be reduced accordingly.

## SEVENTEENTH SEPARATE DEFENSE

Plaintiff's claims for coverage against Allstate are barred to the extent that the insured and/or Plaintiff failed to provide Allstate with timely notice of the alleged claims against it, as is required in the Northbrook Policies.

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## EIGHTEENTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the alleged claims against Plaintiff did not arise from "property damage" as those terms are defined in the Northbrook Policies.

## NINETEENTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage for property damage not resulting during the effective periods of the Northbrook Policies.

## TWENTIETH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the relief sought in the alleged claims against Plaintiff does not constitute "damages" as that term is used in the Northbrook Policies or policies to which the Northbrook Policies follow form.

## TWENTY-FIRST SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to any person or entity other than the insured named in the Northbrook Policies.

## TWENTY-SECOND SEPARATE DEFENSE

The Northbrook Policies do not provide coverage for fines, penalties, punitive damages or exemplary damages.

## TWENTY-THIRD SEPARATE DEFENSE

To the extent the Northbrook Policies are held to provide coverage for defense costs of the alleged claims against Plaintiff, such coverage is limited to reasonable costs and fees.

## TWENTY-FOURTH SEPARATE DEFENSE

Plaintiff's Complaint as against Allstate is barred to the extent that it seeks coverage for claims for equitable or injunctive relief, including any and all costs incurred by or on behalf of Plaintiff in complying with or seeking to avert an injunctive or equitable order or action.

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## TWENTY-FIFTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage for any claims alleged in Plaintiff's Complaint to the extent that such claims were not caused by or did not arise out of an "occurrence" within the meaning of the Northbrook Policies.

## TWENTY-SIXTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the claims for coverage arose out of damage to property owned or alienated by the insured and/or Plaintiff or to property rented to, used by, or in the care, custody or control of the insured and/or Plaintiff.

## TWENTY-SEVENTH SEPARATE DEFENSE

To the extent the Northbrook Policies are held to provide coverage for the alleged claims against Plaintiff, such coverage is limited by the ultimate net loss provision of the Northbrook Policies.

## TWENTY-EIGHTH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage unless and until the underlying coverage and self-insured retention have been properly exhausted.

## TWENTY-NINTH SEPARATE DEFENSE

Plaintiff's claims are barred to the extent Plaintiff failed to join all necessary and/or indispensable parties to this action.

## THIRTIETH SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the alleged claims against Plaintiff arose from conditions, risks, or damages known, or which reasonably should have been known, to any insured prior to the inception or during the policy periods of the Northbrook Policies.

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## THIRTY-FIRST SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the alleged property damage for which Plaintiff seek coverage was expected or intended.

## THIRTY-SECOND SEPARATE DEFENSE

The Northbrook Policies do not provide coverage to the extent that the alleged claims against Plaintiff arose from a loss in progress prior to the inception or during the policy periods of the Northbrook Policies.

## THIRTY-THIRD SEPARATE DEFENSE

To the extent other valid and collectible insurance with any other insurer is available to Plaintiff which covers a loss also allegedly covered by the Northbrook Policies, any coverage provided by the Northbrook Policies, to the extent the Northbrook Policies are held to provide such coverage, shall be in excess of and shall not contribute with such other insurance.

## THIRTY-FOURTH SEPARATE DEFENSE

The Northbrook Policies do not drop down to provide coverage in the event that any insurer whose policies underlie Northbrook's policies has or does become insolvent.

## THIRTY-FIFTH SEPARATE DEFENSE

To the extent that the Northbrook Policies are held to provide coverage for the alleged claims, its obligations under the policies may be precluded or limited by the existence of other insurance coverage.

## THIRTY-SIXTH SEPARATE DEFENSE

To the extent that the underlying claims involve voluntary payment or assumption of an obligation to pay or any expense in connection with the underlying claims without consent or approval of Allstate, there is no coverage.

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### THIRTY-SEVENTH SEPARATE DEFENSE

Allstate may have no obligation under the Northbrook Policies to the extent that Plaintiff has impaired or prejudiced any right to subrogation, indemnification, or contribution that Allstate may have.

### THIRTY-EIGHT SEPARATE DEFENSE

To the extent the Northbrook Policies are held to provide coverage for the claims alleged in Plaintiff's Complaint and are also covered, in whole or in part, under any other insurance policy issued to Plaintiff prior to the inception dates of the Northbrook Policies, the limit of liability of the Northbrook Policies shall be reduced by any amounts due to Plaintiff on account of such loss under such prior insurance.

### THIRTY-NINTH SEPARATE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent the Plaintiff failed to maintain in full effect all policies underlying the Northbrook Policies during the applicable policy periods, thereby breaching a condition precedent of the Northbrook Policies, and Allstate shall only be liable to the same extent as it would have been had the named insured complied with this condition.

### FORTIETH SEPARATE DEFENSE

Plaintiff's claims may be barred, in whole or in part, because of any pollution exclusion contained in the Northbrook Policies and/or any policies to which the Northbrook policies "follow form."

### FORTY-FIRST SEPARATE DEFENSE

There may be no actual case or controversy between Plaintiff and Allstate to the extent that Plaintiff has not sufficiently alleged that its liability with respect to the underlying claims alleged

{80335759:2}
4934-9050-4971, v. 1

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

in Plaintiff's Complaint will exhaust or has exhausted any and all coverage, self-insurance, and deductibles underlying the Northbrook Policies.

### FORTY-SECOND SEPARATE DEFENSE

Plaintiff's claims may be barred, in whole or in part, because of an executed settlement agreement and release between Allstate and the insured.

### FORTY-THIRD SEPARATE DEFENSE

To the extent applicable, Allstate incorporates the affirmative defenses raised by its co-defendants in this matter.

### FORTY-FOURTH SEPARATE DEFENSE

Plaintiff's claims may be barred, in whole or in part, in the event that Plaintiff's claims were discharged in bankruptcy.

### FORTY-FIFTH SEPARATE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff does not have standing to assert the same.

### FORTY-SIXTH SEPARATE DEFENSE

Plaintiff's Complaint contains insufficient information to permit Allstate to raise all appropriate defenses; therefore, Allstate reserves its rights to amend and/or supplement this Answer with additional separate defenses.

**WHEREFORE**, Allstate Insurance Company ("Allstate"), solely as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company ("Northbrook"), prays that judgment be entered as follows:

1.     Dismissing with prejudice Plaintiff's Complaint against Allstate in its entirety;

2.     Declaring that Allstate has no duty to indemnify Plaintiff for defense costs,

ELECTRONICALLY FILED - 2024 Dec 30 2:42 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

settlement payments and/or judgments arising out of the Site until and unless Plaintiff can establish that the policies, retentions and/or deductibles underlying the Northbrook Policies have been properly exhausted and that all terms and conditions set forth in the policies allegedly issued by Northbrook, or to which the Northbrook Policies follow form to, have otherwise been met;

3.      Declaring that, should the Court find that coverage exists for some or all of the claims asserted, this Court allocate any and all obligations and rights of the parties pursuant to applicable law; and

4.      Awarding Allstate attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

## JURY DEMAND

Allstate demands a trial by jury on all issues so triable.


Dated: December 30, 2024                    Hamilton, Stephens, Steele & Martin, PLLC

                                            */S/ Carmela E. Mastrianni*
                                            Carmela E. Mastrianni (SC Bar No. 103909)
                                            525 N. Tryon St., Ste. 1400
                                            Charlotte, North Carolina 28202
                                            cmastrianni@lawhssm.com

                                            and

                                            WINDELS MARX LANE & MITTENDORF, LLP

                                            */S/ Andrew K. Craig*
                                            Andrew K. Craig, Esq. (Pro Hac Vice Forthcoming)
                                            One Giralda Farms
                                            Madison, NJ  07940
                                            (973) 966-3200
                                            acraig@windelsmarx.com

                                            Attorneys for Third Party Defendant
                                            Allstate Insurance Company, solely as successor in
                                            interest to Northbrook Excess & Surplus Insurance
                                            Company, formerly Northbrook Insurance Company

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | FOR THE SEVENTH JUDICIAL |
| COUNTY OF SPARTANBURG ) | CIRCUIT |
| ) | |
| BURLINGTON INDUSTRIES, INC., by ) | Civil Action No.  2024-CP-42-04138 |
| and through its duly-appointed Receiver, ) | |
| Peter M. McCoy, Jr., ) | |
| ) | |
| Plaintiff, ) | **ANSWER OF DEFENDANTS** |
| ) | **CENTURY INDEMNITY COMPANY,** |
| vs. ) | **FEDERAL INSURANCE COMPANY,** |
| ) | **AND PACIFIC EMPLOYERS** |
| CONTINENTAL CASUALTY ) | **INSURANCE COMPANY TO** |
| COMPANY, et al., ) | **PLAINTIFF'S COMPLAINT** |
| ) | **WITH SEPARATE DEFENSES** |
| Defendants. ) | |
| ) | |

Defendants Century Indemnity Company, successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company ("Century"), Federal Insurance Company ("Federal"), and Pacific Employers Insurance Company ("PEIC") (hereinafter collectively the "Responding Insurers" for purposes of this pleading only) answer the Complaint of Plaintiff Burlington Industries, Inc. ("Burlington"), by and through Peter M. McCoy, Jr. ("Receiver"), as follows:

<u>**"NATURE OF THE ACTION"**</u>

1.    Paragraph 1 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff.  Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, except deny that Plaintiff is entitled to any relief against the Responding Insurers.

1

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

2.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3.     Paragraph 3 of the Complaint contains legal conclusions to which no answer is required.   To the extent an answer is required, the Responding Insurers deny the allegations of Paragraph 3 insofar as they relate to the Responding Insurers and deny knowledge or information sufficient to form a belief as to the truth of the allegations insofar as they pertain to other Defendants.

4.     Paragraph 4 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1, except deny that Plaintiff is entitled to any relief against the Responding Insurers.

5.     The Responding Insurers deny the allegations of Paragraph 5 insofar as they relate to the Responding Insurers and respectfully refer the Court to the terms of the insurance policies at issue herein issued by the Responding Insurers ("the Responding Insurers' Policies"), which speak for themselves.  The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 insofar as they relate to other Defendants.

6.     The Responding Insurers deny the allegations of Paragraph 6 insofar as they relate to the Responding Insurers and respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves.  The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 insofar as they relate to other Defendants.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

7.      The Responding Insurers deny the allegations of paragraph 7 insofar as they relate to the Responding Insurers and deny knowledge or information sufficient to form a belief as to the truth of the allegations insofar as they relate to other Defendants.

8.      Paragraph 8 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny that Plaintiff is entitled to any relief against the Responding Insurers.

9.      Paragraph 9 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny that Plaintiff is entitled to any relief against the Responding Insurers.

10.      Paragraph 10 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny that Plaintiff is entitled to any relief against the Responding Insurers and respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves.

11.      Paragraph 11 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny that Plaintiff is entitled to any relief against the Responding Insurers and respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## "PARTIES"

12.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

15.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint.

16.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint.

17.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint.

18.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint.

20.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Federal denies the allegations contained in paragraph 22 of the Complaint, except admits it is an Indiana corporation with its principal place of business in New Jersey and that it is

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

authorized to do business in South Carolina.  Century and PEIC deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22.

23.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25.     PEIC denies the allegations contained in paragraph 25 of the Complaint, except admits it is a Pennsylvania corporation with its principal place of business in Pennsylvania and that it is authorized to do business in South Carolina.  Century and Federal deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25.

26.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint.

28.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the Complaint.

29.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of the Complaint.

30.     Century denies the allegations contained in paragraph 30 of the Complaint, except admits it is a Pennsylvania corporation with its principal place of business in Pennsylvania and that it is authorized to do business in South Carolina.  Federal and PEIC deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

31.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 31 of the Complaint.

32.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of the Complaint.

<u>**"JURISDICTION AND VENUE"**</u>

33.     Paragraph 33 of the Complaint contains conclusions of law and not allegations of fact and, accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny the allegations of paragraph 33 and respectfully refer all questions of law to the Court.

34.     Paragraph 34 of the Complaint contains conclusions of law and not allegations of fact and, accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny the allegations of paragraph 34 and respectfully refer all questions of law to the Court.

35.     Paragraph 35 of the Complaint contains conclusions of law and not allegations of fact and, accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny the allegations of paragraph 35 and respectfully refer all questions of law to the Court.

<u>**"FACTUAL BACKGROUND"**</u>

<u>***"Environmental Actions"***</u>

36.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 of the Complaint.

37.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of the Complaint.

38.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of the Complaint.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

39.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of the Complaint.

40.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of the Complaint, except deny that Plaintiff is entitled to any relief against the Responding Insurers under the Responding Insurers' Policies.

41.     Paragraph 41 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions. Accordingly, no answer is required.  To the extent an answer is required, the Responding Insurers deny that Plaintiff is entitled to any relief against the Responding Insurers and respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves.

*"The Policies"*

42.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of the Complaint.

43.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of the Complaint.

44.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of the Complaint.

45.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of the Complaint.

46.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of the Complaint.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

47.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of the Complaint.

48.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 of the Complaint.

49.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 49 of the Complaint.

50.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 50 of the Complaint.

51.     Federal denies the allegations of paragraph 51 of the Complaint, except admits it issued the following excess liability insurance policies to Burlington Industries, Inc.:

| POLICY NO. | POLICY PERIOD |
| --- | --- |
| 79330356 | 10/1/81 – 10/1/82 |
| 79330356 | 10/1/82 – 10/1/83 |
| 79330356 | 10/1/83 – 10/1/84 |
| 79358352 | 10/1/84 – 10/1/85 |
| 79358352 | 10/1/85 – 10/1/86 |

Century and PEIC deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51 of the Complaint.

52.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52 of the Complaint.

53.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of the Complaint.

54.     PEIC denies the allegations of paragraph 54 of the Complaint, except admits it issued the following excess liability insurance policies to Burlington Industries, Inc.:

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| POLICY NO. | POLICY PERIOD |
|:---:|:---:|
| XCC 002337 | 10/1/81 – 10/1/82 |
| XCC 002375 | 10/1/82 – 10/1/83 |
| XCC 012433 | 10/1/83 – 10/1/84 |
| XCC 016611 | 10/1/84 – 10/1/85 |
| XCC 016835 | 10/1/85 – 10/1/86 |

Century and Federal deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 54 of the Complaint.

55.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 55 of the Complaint.

56.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 56 of the Complaint.

57.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 57 of the Complaint.

58.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 58 of the Complaint.

59.     Century denies the allegations of paragraph 59 of the Complaint, except admits California Union Insurance Company issued the following excess liability insurance policy to Burlington Industries, Inc.:

| POLICY NO. | POLICY PERIOD |
|:---:|:---:|
| ZCX 007952 | 10/1/85 – 10/1/86 |

Federal and PEIC deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59 of the Complaint.

60.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 60 of the Complaint.

9

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

61.     Century denies the allegations of paragraph 61 of the Complaint.  Federal and PEIC deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 61 of the Complaint.

62.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 62 of the Complaint.

63.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 63 of the Complaint.

64.     In response to paragraph 64 of the Complaint, the Responding Insurers admit they issued certain excess liability insurance policies to Burlington Industries, Inc. as stated above.  The Responding Insurers respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves and deny the policies provide coverage for the Environmental Actions. Otherwise, the Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 64 of the Complaint.

65.     The Responding Insurers deny the allegations of paragraph 65 insofar as they relate to the Responding Insurers and deny knowledge or information sufficient to form a belief as to the truth of the allegations insofar as they relate to other Defendants.

66.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 66 of the Complaint.

67.     The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 67 of the Complaint.

### "FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT
### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)"

68.     In response to paragraph 68 of the Complaint the Responding Insurers repeat and incorporate by reference their responses to paragraphs 1-67 as if fully set forth herein.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

69.     The Responding Insurers deny the allegations contained in paragraph 69 of the Complaint insofar as they pertain to the Responding Insurers and respectfully refer all questions of law to the Court.  The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 69 insofar as they pertain to other Defendants..

70.     Paragraph 70 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiffs and contains legal conclusions.  Accordingly, no answer is required.  To the extent an answer is required, and to the extent the allegations pertain to them, the Responding Insurers deny the allegations of paragraph 70, deny that Plaintiff is entitled to any relief against them, and respectfully refer the Court to the terms of the Responding Insurers' Policies, which speak for themselves.  The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 70 of the Complaint insofar as they pertain to other Defendants.

71.     In response to paragraph 71 of the Complaint, the Responding Insurers admit they dispute that Plaintiff is entitled to any relief against them in this action and respectfully refer all questions of law to the Court.  The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 71 insofar as they pertain to other Defendants.

72.     Paragraph 72 of the Complaint does not contain allegations of fact, but purports to characterize the nature of this action and the relief sought by Plaintiff and contains legal conclusions.  Accordingly, no answer is required.  To the extent an answer is required, and to the extent the allegations pertain to them, the Responding Insurers deny the allegations of paragraph 72, deny that Plaintiff is entitled to any relief against them, and respectfully refer the Court to the terms of the

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Responding Insurers' Policies, which speak for themselves. The Responding Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72 of the Complaint insofar as they pertain to other Defendants.

<div align="center">

**SEPARATE DEFENSES**

</div>

By way of further answer, the Responding Insurers assert the following separate defenses. By listing any matter as a separate defense, the Responding Insurers do not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law. The Responding Insurers reserve the right to add, modify, or delete defenses as future circumstances may warrant. Nothing stated or not stated herein shall be construed as a waiver of any defenses that the Responding Insurers may have under any of their policies or at law or in equity.

<div align="center">

**FIRST DEFENSE**

</div>

The Complaint fails to state a claim against the Responding Insurers upon which relief may be granted.

<div align="center">

**SECOND DEFENSE**

</div>

The Complaint fails to state the existence of an actual, justiciable controversy with respect to the Responding Insurers which would be ripe for adjudication by the Court, including because the Responding Insurers' policies are excess policies and there is no allegation that underlying coverage has or will be exhausted by the underlying claims.

<div align="center">

**THIRD DEFENSE**

</div>

The claims set forth in the Complaint may be barred by an applicable statute of limitations and/or contractual limitations period.

<div align="center">

**FOURTH DEFENSE**

</div>

The Court lacks personal jurisdiction over the Responding Insurers.

<div align="center">

12

</div>

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**FIFTH DEFENSE**

The claims against the Responding Insurers may be barred to the extent it is determined that the Receiver lacks authority to assert claims on behalf of Burlington.

**SIXTH DEFENSE**

The Complaint should be dismissed to the extent Plaintiff failed to join all necessary and/or indispensable parties.

**SEVENTH DEFENSE**

The claims set forth in the Complaint may be barred by the doctrines of waiver, estoppel, laches, res judicata and/or unclean hands.

**EIGHTH DEFENSE**

Plaintiff's claims may be barred, in whole or in part, to the extent it fails to furnish proof of the existence, terms, conditions or limits of any insurance policy allegedly issued by the Responding Insurers. The Responding Insurers are not liable in connection with any alleged policy whose existence, terms, conditions, provisions and limits have not been proven.

**NINTH DEFENSE**

Coverage for the underlying claims may be barred, in whole or in part, to the extent the policyholder failed to disclose, misrepresented or concealed facts material to the risks undertaken by the Responding Insurers.

**TENTH DEFENSE**

The policies at issue do not provide coverage for any person or entity not specifically named as an insured under the policies.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### ELEVENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent Plaintiff has failed to comply with policy conditions, including, but not limited to, the requirement that the policyholder give proper and timely notice of alleged occurrences or claims and that it assist and cooperate in the handling of claims.

### TWELFTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent Plaintiff has made payments, assumed obligations and/or incurred expenses relating to the claim voluntarily and/or without the prior knowledge, approval and consent of the Responding Insurers.

### THIRTEENTH DEFENSE

Plaintiff's action may be barred to the extent the amount of Plaintiff's obligation to pay has not yet been finally determined.

### FOURTEENTH DEFENSE

The Responding Insurers have no duty to defend the underlying claims(s) under the terms of the Responding Insurers' Policies.

### FIFTEENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the underlying claims do not involve sums the policyholder has paid or will become legally obligated to pay as damages.

### SIXTEENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the underlying claims seek equitable or injunctive relief, including cleanup costs or other costs incurred in complying with or seeking to avert an injunctive or other equitable order or action.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### SEVENTEENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the underlying claims seek recovery for costs of complying with any federal, state or local laws, regulations, ordinances or rules.

### EIGHTEENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the events which gave rise to the underlying claims do not constitute an "accident" or "occurrence" within the meaning of the policies at issue.

### NINETEENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent any alleged injury or damage was expected or intended by the policyholder.

### TWENTIETH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims arose from losses in progress, risks or losses known to the policyholder prior to the inception date of any policy at issue, non-fortuitous events, and/or otherwise uninsurable risks.

### TWENTY-FIRST DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the underlying claims arose from injury or damage caused by the policyholder's wrongful, intentional or illegal conduct or involve the violation of any statute, regulation, ordinance or public policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### TWENTY-SECOND DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims are not for damages on account of "property damage," "bodily injury," or "personal injury" within the meaning of the policies at issue.

### TWENTY-THIRD DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims arose out of injury or damage which did not take place while a policy at issue was in effect.

### TWENTY-FOURTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims arose out of liability assumed by the policyholder under contract.

### TWENTY-FIFTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims involve damage to, destruction of or loss of use of property owned or occupied by, leased or rented to, used by, alienated by, managed by, or in the care, custody or control of the policyholder.

### TWENTY-SIXTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, by the pollution exclusions contained in the Responding Insurers' Policies.

### TWENTY-SEVENTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent such underlying claims seek fines, penalties and/or punitive or exemplary damages.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### TWENTY-EIGHTH DEFENSE

Coverage for the underlying claims may be barred, in whole or in part, to the extent the policyholder has impaired any subrogation, indemnity or contribution rights of the Responding Insurers. Any amounts recovered by the policyholder from any entity or person relating to the underlying claims may serve to offset or reduce any amounts sought under the alleged policies at issue.

### TWENTY-NINTH DEFENSE

Coverage for the underlying claims, if any, may be barred, in whole or in part, to the extent Plaintiff failed to mitigate, take all reasonable and appropriate steps to mitigate, minimize, and/or avoid damages and/or prevent injury or damage, or avoid any of its alleged losses or damages, or to the extent costs incurred were unreasonable or excessive.

### THIRTIETH DEFENSE

Coverage for the underlying claims may be barred in whole or in part by releases contained in prior settlement agreements between the Responding Insurers and Burlington.

### THIRTY-FIRST DEFENSE

Coverage for the underlying claims may be barred in whole or in part to the extent the liabilities were discharged in bankruptcy.

### THIRTY-SECOND DEFENSE

To the extent any other collectible insurance is available to Plaintiff for the underlying claims, the Responding Insurers' policies at issue would apply, if at all, only to the extent provided in the "other insurance" clause contained and/or incorporated by reference within those policies.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### THIRTY-THIRD DEFENSE

The Responding Insurers' potential share of any covered injury or damage at issue in the underlying claims(s) is limited to that portion of the injury or damage which occurred during the Responding Insurers' respective policy periods. To the extent any covered injury or damage occurred over a period of time that included one or more of the Responding Insurers' policies, liability for that injury or damage must be allocated over the entire period in which the injury or damage occurred.

### THIRTY-FOURTH DEFENSE

Any obligation the Responding Insurers may have to provide coverage for the underlying claims is subject to the applicable per occurrence and aggregate limits of the policies and any such obligation ceases upon the exhaustion of those limits.

### THIRTY-FIFTH DEFENSE

To the extent any policy at issue is subject to a deductible or self-insured retention, any obligation of the Responding Insurers under such policy applies only in excess of such deductible or self-insured retention.

### THIRTY-SIXTH DEFENSE

The Responding Insurers have no potential obligation with respect to the underlying claims unless and until there has been complete and proper exhaustion of all underlying insurance coverage.

### THIRTY-SEVENTH DEFENSE

This action is barred by the lack of standing or jurisdiction to the extent that Burlington was not incorporated in South Carolina, was dissolved, or otherwise lacks capacity to sue and/or be sued.

ELECTRONICALLY FILED - 2024 Dec 30 4:27 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## **THIRTY-EIGHTH DEFENSE**

The Complaint does not describe the underlying claims or identify the alleged policies with sufficient particularity to enable the Responding Insurers to determine all their legal, contractual, and equitable rights. The Responding Insurers reserve the right to invoke any and all other defenses available to them pursuant to law, equity and the terms of any policies at issue and to amend and/or supplement this Answer accordingly.

WHEREFORE, having fully answered the Complaint, Century, Federal, and PEIC pray the same be dismissed with costs taxed against the Plaintiff, and for such additional relief as the Court may deem appropriate.

s/ Kevin K. Bell
_____
Kevin K. Bell [SC Bar No. 65495]
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, SC  29211
(803) 227-1111
kbell@robinsongray.com

Robert F. Walsh [*pro hac vice to be filed*]
WHITE AND WILLIAMS LLP
1650 Market Street, Suite 1800
Philadelphia, PA  19103
(215) 864-7045
walshr@whiteandwilliams.com

*Counsel for Century Indemnity Company,*
*Federal Insurance Company, and Pacific Employers*
*Insurance Company*

Date:  December 30, 2024

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | FOR THE SEVENTH JUDICIAL CIRCUIT |
| BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr., | CIVIL ACTION NO. 2024-CP-42-04138 |
| Plaintiff, | |
| v. | **ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT OLD REPUBLIC INSURANCE COMPANY** |
| CONTINENTAL CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, AMERICAN HOME ASSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AIU INSURANCE COMPANY, THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known | **(Jury Trial Demanded)** |

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

as CALIFORNIA UNION INSURANCE
COMPANY, ZURICH AMERICAN
INSURANCE COMPANY, and GREAT
AMERICAN ASSURANCE COMPANY,
formerly known as AGRICULTURAL
INSURANCE COMPANY,

                    Defendants.

Defendant Old Republic Insurance Company ("Old Republic") responds to the Complaint

filed by Plaintiff Burlington Industries, Inc. ("Burlington") as follows:

## **FOR A FIRST DEFENSE**

1.      Every allegation of the Complaint not specifically admitted herein is denied.

2.      Old Republic admits so much of Paragraph 1 as alleges that Burlington seeks

declaratory relief.  Old Republic denies the remaining allegations of Paragraph 1, and denies that

Burlington is entitled to the relief requested as to Old Republic.

3.      Old Republic lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 2 and therefore denies those allegations.

4.      Old Republic denies so much of Paragraphs 3 as pertaining to Defendant's

insurance policy number OZX 11474 for policy period October 1, 1981 to October 1, 1982 (the

"Policy").  Old Republic lacks knowledge or information sufficient to form a belief as to the

remaining allegations of Paragraph 3 and therefore denies those allegations.

5.      Old Republic admits so much of Paragraph 4 as alleges that Burlington seeks

declaratory relief.  Old Republic denies the remaining allegations of Paragraph 4, and denies that

Burlington is entitled to the relief requested as to Old Republic.

6.      Old Republic denies so much of Paragraphs 5-7 as pertaining to the Policy.  Old

Republic lacks knowledge or information sufficient to form a belief as to the remaining allegations

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

of Paragraphs 5-7 and therefore denies those allegations.

7.      Old Republic admits so much of Paragraphs 8-9 as alleges that Burlington seeks declaratory relief.  Old Republic denies the remaining allegations of Paragraphs 8-9, and denies that Burlington is entitled to the relief requested as to Old Republic.

8.      Old Republic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraphs 10-23 and therefore denies those allegations.

9.      Old Republic admits the allegations in Paragraph 24.

10.     Old Republic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraphs 25-32 and therefore denies those allegations.

11.     The allegations of Paragraph 33 constitute conclusions of law, which require no response.  To the extent a response may be deemed required, Old Republic denies the allegations of Paragraph 33.

12.     Old Republic admits the allegations in Paragraph 34 for venue purposes only.

13.     The allegations of Paragraph 35 constitute conclusions of law, which require no response.  To the extent a response may be deemed required, Old Republic denies the allegations of Paragraph 35.

14.     Old Republic denies so much of Paragraph 36 as alleges that Burlington was organized under the laws of South Carolina.  On information and belief, Old Republic admits the remaining allegations in Paragraph 36.

15.     Old Republic admits so much of Paragraph 37 as alleges that Burlington seeks declaratory relief.  Old Republic denies the remaining allegations of Paragraph 37, and denies that Burlington is entitled to the relief requested as to Old Republic.

16.     Old Republic admits so much of Paragraphs 38-39 as alleges that lawsuits were

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

filed, which speak for themselves, and denies any allegations of this Paragraph or of the Complaint that are inconsistent with the contents of those lawsuits.

17.     Old Republic admits so much of Paragraph 38 as alleges that a lawsuit was filed, which speaks for itself, and denies any allegations of this Paragraph or of the Complaint that are inconsistent with the contents of that lawsuit.

18.     Old Republic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 40 and therefore denies those allegations.

19.     Old Republic admits so much of Paragraph 41 as alleges that Burlington seeks declaratory relief.  Old Republic lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 41 and therefore denies those allegations.

20.     Old Republic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraphs 42-52 and therefore denies those allegations.

21.     Old Republic admits so much of Paragraph 53 as alleges that Old Republic issued the Policy, which speaks for itself, and denies any allegations of this Paragraph or of the Complaint that are inconsistent with the contents of the Policy.

22.     Old Republic lacks knowledge or information sufficient to form a belief as to the allegations of Paragraphs 54-63 and therefore denies those allegations.

23.     Old Republic denies so much of Paragraphs 64-67 as pertaining to Old Republic. Old Republic lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraphs 64-67 and therefore denies those allegations.

### **FOR A FIRST DEFENSE TO THE FIRST CAUSE OF ACTION**

24.     In response to Paragraph 68, Old Republic repeats its responses to Paragraphs 1-67 above.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

25.     The allegations of Paragraph 69 constitute conclusions of law, which require no response.  To the extent a response may be deemed required, Old Republic denies the allegations of Paragraph 69.

26.     Old Republic admits so much of Paragraph 70 as alleges that Burlington seeks declaratory relief.  Old Republic denies the remaining allegations of Paragraph 70, including all sub-parts, and denies that Burlington is entitled to the relief requested as to Old Republic.

27.     The allegations of Paragraphs 71-72 constitute conclusions of law, which require no response.  To the extent a response may be deemed required, Old Republic denies the allegations of Paragraphs 71-72.

28.     Old Republic denies the Wherefore clause, and denies that Burlington is entitled to the relief requested as to Old Republic.

## FOR A SECOND DEFENSE

29.     This Court does not have personal jurisdiction over Old Republic.

## FOR A THIRD DEFENSE

30.     Burlington fails to state a claim against Old Republic for which relief can be granted.

## FOR A FOURTH DEFENSE

31.     Burlington's claims against Old Republic are not justiciable as they are not ripe.

## FOR A FIFTH DEFENSE

32.     Burlington lacks standing and/or its claims are otherwise barred in whole or in part by Burlington's prior bankruptcy.

## FOR A SIXTH DEFENSE

33.     The Receiver bringing this action was not validly appointed and therefore has no standing or authority to bring this action.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## FOR A SEVENTH DEFENSE

34.     To the extent the Receiver bringing this action was validly appointed, which is not admitted, bringing this action is outside the scope of the Receiver's authority under the order establishing the receivership.

## FOR AN EIGHTH DEFENSE

35.     To the extent Burlington states a valid claim, which is not admitted, coverage is barred, in whole or in part, by the terms of the Policy.  Old Republic incorporates the Policy as a whole as a defense to the Complaint, including but not limited to the coverage provisions, exclusions, conditions, and limit of liability provisions.

## FOR A NINTH DEFENSE

36.     To the extent Burlington states a valid claim, which is not admitted, coverage is barred, in whole or in part, by the terms of underlying insurance, which are incorporated into the Policy.  Old Republic incorporates the underlying insurance as a whole as a defense to the Complaint.

## FOR A TENTH DEFENSE

37.     To the extent Burlington states a valid claim, which is not admitted, coverage is barred, in whole or in part, by the Prior Insurance and Non Cumulation of Liability condition in the Policy, which states in pertinent part:

1.     PRIOR INSURANCE AND NON CUMULATION OF LIABILITY

It is agreed that if any loss covered hereunder is also covered in whole or in part under any other excess policy issued to the Assured prior to the inception date hereof the limit of liability hereon as stated in Items 5 and 6 of the Declarations shall be reduced by any amounts due to the Assured on account of such loss under such prior insurance.

* * *

38.     Burlington alleges that amounts are due to it under excess policies issued to

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Burlington prior to the inception date of the Policy. If Burlington proves these contentions, then the limit of liability of the Policy shall be reduced by any amounts due to Burlington under the prior excess policies.

## FOR AN ELEVENTH DEFENSE

39.     To the extent Burlington states a valid claim, which is not admitted, coverage is barred, in whole or in part, by the Maintenance of Underlying Umbrella condition in the Policy, which states in pertinent part:

2.     MAINTENANCE OF UNDERLYING UMBRELLA
* * *
It is a condition of this policy that Underlying Umbrella policies shall be maintained in full effect during the currency hereof except for any reduction of the aggregate limits contained therein solely by payment of claims in respect of accidents and/or occurrences occurring during the period of this policy.

40.     Upon information and belief, some of the underlying umbrella policies for the policy period of the Policy may no longer be in effect based on by prior settlements entered into by Burlington, without payment of the full policy limits for claims in respect of accidents and/or occurrences occurring during the policy period of the Policy.

41.     If Burlington failed to maintain the underlying umbrella policies in full effect, coverage may not be available under the Policy due to breach of this condition.

## FOR A TWELFTH DEFENSE

42.     To the extent Burlington states a valid claim, which is not admitted, upon information and belief coverage is barred, in whole or in part, by the terms of prior settlements entered into by Burlington.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## **FOR A THIRTEENTH DEFENSE**

43.     To the extent Burlington states a valid claim, which is not admitted, coverage is barred, in whole or in part, by incorporated exclusions from underlying umbrella policies.

44.     The Maintenance of Underlying Umbrella condition in the Policy states in pertinent part:

2.     MAINTENANCE OF UNDERLYING UMBRELLA

This policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella policies stated in Item 2 of the Declarations prior to the happening of an occurrence for which claim is made hereunder.

* * *

45.     Item 2 of the Declarations states "Underlying Umbrella Policies various as per schedule on file w/company."  Upon information and belief, the Underlying Umbrella Policies include policy no. 950071 issued by First State Insurance Company for policy period October 1, 1981 to October 1, 1982 (the "First State Policy").

46.     The First State Policy contains the following exclusion:

EXCLUSIONS

This policy shall not apply:

* * *

I.     this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

* * *

V.     to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

47.     The claims asserted against Burlington for which coverage is sought solely allege liability arising out of the discharge, dispersal, release, or escape of toxic chemicals or other irritants, contaminants, or pollutants into or upon land, the atmosphere, or a watercourse or body of water, and no such discharge, dispersal, release, or escape is alleged to be sudden or accidental. Upon information and belief, no policy listed in the schedule of underlying insurance in the First State Policy provides coverage for pollution liability.

48.     As a result, coverage is barred under the Policy by virtue of the incorporated exclusions from the underlying umbrella policies, including but not limited to the above-quoted exclusion in the First State Policy.

### FOR A FOURTEENTH DEFENSE

49.     Burlington's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, laches, res judicata or collateral estoppel.

### FOR A FIFTEENTH DEFENSE

50.     Burlington's claims are barred, in whole or in part, by the doctrine of unclean hands.

### FOR A SIXTEENTH DEFENSE

51.     Burlington's claims are barred, in whole or in part, by the doctrine of laches.

### FOR A SEVENTEENTH DEFENSE

52.     Burlington's claims are barred, in whole or in part, by operation of S.C. Code § 15-5-150.

### FOR AN EIGHTEENTH DEFENSE

53.     Burlington's claims are barred, in whole or in part, for failure to join indispensable parties.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### FOR A NINETEENTH DEFENSE

54.     Burlington's claims are barred, in whole or in part, by the applicable statute of limitations.

### FOR AN ADDITIONAL DEFENSE

55.     Old Republic hereby gives notice that it intends to rely upon such other affirmative defenses as may become available or apparent during the course of discovery and, thus, reserves the right to amend its Answer to assert any such defenses.

### DEMAND FOR TRIAL BY JURY

Old Republic requests a trial by jury for all issues so triable.

WHEREFORE, having fully answered the Complaint, Old Republic prays that the Complaint be dismissed as to Old Republic, with costs, and for such other relief as the Court may grant.

MURPHY & GRANTLAND, P.A.

*s/Wesley B. Sawyer*
Wesley B. Sawyer (S.C. Bar No. 100229)
4406-B Forest Drive
Columbia, South Carolina 29206
(803) 454-1233
wsawyer@murphygrantland.com

and

KENNEDYS CMK LLP

KRISTIN V. GALLAGHER (*Pro Hac Vice forthcoming*)
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
Telephone: 908.848.1220
Facsimile: 908.647.8390
kristin.gallagher@kennedyslaw.com

JEDIDIAH VANDER KLOK (*Pro Hac Vice forthcoming*)
1111 Brickell Avenue, Suite 1300

Miami, FL 33131
Telephone: 786.636.1236
Facsimile: 305.374.8066
jedidiah.vanderklok@kennedyslaw.com

ATTORNEYS FOR DEFENDANT
OLD REPUBLIC INSURANCE COMPANY

December 30, 2024
Columbia, South Carolina

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

BURLINGTON INDUSTRIES, INC., by
and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

                    Plaintiff,

v.

CONTINENTAL  CASUALTY
COMPANY, et. al.,

                    Defendants.

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

CIVIL ACTION NO. 2024-CP-42-04138

---

### DEFENDANT SCOTTSDALE INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES

---

Defendant Scottsdale Insurance Company ("Scottsdale") for its Answer and Affirmative and Other Defenses to the Complaint of Plaintiff Burlington Industries, Inc., responds as follows:

### NATURE OF THE ACTION

1.      To the extent Paragraph 1 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale admits only that this is an environmental insurance coverage action for declaratory judgment, and affirmatively states that the complaint speaks for itself. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

2.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 2 and therefore denies the same.

3.     Paragraph 3 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. To the extent a further response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of any remaining allegations in Paragraph 3 and therefore denies the same.

4.     To the extent Paragraph 4 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale admits only that the complaint seeks various declarations, and affirmatively states that the complaint speaks for itself. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

5.     To the extent Paragraph 5 contains legal allegations, no response is required. Scottsdale denies that it issued any liability insurance policies to or covering Burlington and thus, denies that it owes a duty to defend or indemnify Burlington in relation to the Environmental Actions. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

6.      To the extent Paragraph 6 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington and thus, denies that it owes a duty to defend or indemnify Burlington in relation to the Environmental Actions. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

7.      To the extent Paragraph 7 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

8.      To the extent Paragraph 8 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale admits only that the Complaint seeks declaratory relief, and affirmatively states that the Complaint speaks for itself. Scottsdale denies that it issued any liability insurance policies to or covering Burlington and thus, denies that it owes a duty to defend or indemnify Burlington in relation to the Environmental Actions. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

9.      To the extent Paragraph 9 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale admits only that the Complaint seeks declaratory relief, and affirmatively states that the Complaint speaks for itself. Scottsdale denies that it issued any liability insurance policies to or covering Burlington in relation to the Environmental Actions. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

10.      To the extent Paragraph 10 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington and thus, denies that it owes a duty to defend or indemnify in relation to the Environmental Actions. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

11.      To the extent Paragraph 11 contains legal allegations, no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## **PARTIES**

12.     Paragraph 12 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. As to the remaining allegations, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

13.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 13 and therefore denies the same.

14.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 14 and therefore denies the same.

15.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 15 and therefore denies the same.

16.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 16 and therefore denies the same.

17.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 17 and therefore denies the same.

18.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 18 and therefore denies the same.

19.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 19 and therefore denies the same.

20.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 20 and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

21.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 21 and therefore denies the same.

22.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 22 and therefore denies the same.

23.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 23 and therefore denies the same.

24.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 24 and therefore denies the same.

25.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 25 and therefore denies the same.

26.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 26 and therefore denies the same.

27.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 27 and therefore denies the same.

28.     Scottsdale admits only that it is an Ohio corporation and maintains its principal place of business in Arizona. Scottsdale denies the remaining allegations in Paragraph 28.

29.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 29 and therefore denies the same.

30.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 30 and therefore denies the same.

31.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 31 and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

32.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 31 and therefore denies the same.

## JURISDICTION AND VENUE

33.     Paragraph 33 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

34.     Paragraph 34 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. To the extent a further response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of any remaining allegations and therefore denies the same.

35.     Paragraph 35 contains legal allegations and argument to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

## FACTUAL BACKGROUND

### *Environmental Actions*

36.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 36 and therefore denies the same.

37.     Paragraph 37 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

38.     Paragraph 38 references the complaint filed in a civil action styled, *The City of Columbia d/b/a Columbia Water v. 3M Company, Inc.,* et al., C/A No. 2024-CP-40-03392 (County of Richland, South Carolina), which speaks for itself, and Scottsdale denies any allegations or characterizations inconsistent therewith. To the extent a further response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of any remaining allegations and therefore denies the same.

39.     Paragraph 39 references the complaint filed in a civil action styled, *Grand Strand Water and Sewer Authority v. Burlington Industries, Inc.*, C/A No. 2024-CP-26-05523 (County of Horry, South Carolina), which speaks for itself, and Scottsdale denies any allegations or characterizations inconsistent therewith. To the extent a further response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of any remaining allegations and therefore denies the same.

40.     Scottsdale denies that it issued any liability insurance policies to or covering Burlington Industries, Inc. or any of the other companies listed in Paragraph 40. As to the remaining allegations in Paragraph 40, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

41.     Paragraph 41 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations in Paragraph 41, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*The Policies*

42.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 42 and therefore denies the same.

43.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 43 and therefore denies the same.

44.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 44 and therefore denies the same.

45.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 45 and therefore denies the same.

46.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 46 and therefore denies the same.

47.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 47 and therefore denies the same.

48.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 48 and therefore denies the same.

49.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 49 and therefore denies the same.

50.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 50 and therefore denies the same.

51.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 51 and therefore denies the same.

52.      Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 52 and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

53.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 53 and therefore denies the same.

54.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 54 and therefore denies the same.

55.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 55 and therefore denies the same.

56.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 56 and therefore denies the same.

57.     Scottsdale denies the allegations in Paragraph 57.

58.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 58 and therefore denies the same.

59.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 59 and therefore denies the same.

60.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 60 and therefore denies the same.

61.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 61 and therefore denies the same.

62.     Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 62 and therefore denies the same.

63.     Scottsdale denies that Plaintiff has provided any copies of liability policies and/or secondary of evidence of such policy issued by it to or covering Burlington. As to the remaining allegations in Paragraph 63, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

64.    Scottsdale denies that it issued any liability insurance policies to or covering Burlington and therefore does not possess any "copies or specimen copies" of such nonexistent policies. As to the remaining allegations in Paragraph 64, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

65.    Paragraph 65 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations in Paragraph 65, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

66.    Paragraph 66 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations in Paragraph 66, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

67.    Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations in Paragraph 67 and therefore denies the same.

## FIRST CAUSE OF ACTION- DECLARATORY JUDGMENT

### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)

68.    Scottsdale incorporates and realleges as if fully set forth in this response all of its responses to Paragraphs 1–67 above.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

69.     Paragraph 69 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale denies that it issued any liability insurance policies to or covering Burlington and therefore has no duty to "investigate, defend, reimburse and/or indemnify" Burlington with respect to the Environmental Actions. As to the remaining allegations in Paragraph 69, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

70.     Paragraph 70 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale denies that it issued any liability insurance policies to or covering Burlington and therefore Burlington is not entitled to any of the relief it seeks as to Scottsdale. As to the remaining allegations in Paragraph 70, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

71.     Paragraph 71 contains legal allegations to which no response is required. Scottsdale denies that it issued any liability insurance policies to or covering Burlington. As to the remaining allegations in Paragraph 71, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

72.     Paragraph 72 contains legal allegations to which no response is required. To the extent a response is required, Scottsdale denies that it issued any liability insurance policies to or covering Burlington and therefore Burlington is not entitled to any of the relief it seeks as to Scottsdale. As to the remaining allegations in Paragraph 72, Scottsdale is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations and therefore denies the same.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SCOTTSDALE'S AFFIRMATIVE AND OTHER DEFENSES

As and for its affirmative and other defenses to the complaint, Scottsdale states as follows. By pleading these defenses, Scottsdale does not intend to alter, and shall not be deemed to have altered, the burden of proof and/or the burden of persuasion that otherwise exists with respect to any issues in this action. All defenses are pled in the alternative and do not constitute an admission of liability or coverage or that any party, individually or collectively, is entitled to any relief whatsoever.

### FIRST DEFENSE

Plaintiff's claims are barred because Scottsdale did not issue any liability policies to or for the benefit of Burlington. Accordingly, there are no specific defenses to be set forth based on the terms, conditions, exclusions, and limits of any such nonexistent insurance policy. However, in the event that policies issued by Scottsdale to or for the benefit of Burlington are located and Burlington meets its burden of establishing the material terms and conditions of any such policies, Scottsdale raises each and every defense available to Scottsdale under the terms, conditions, exclusions, and limits of such policy(ies), including (without limitation) the following:

1.   Intentional acts exclusions;

2.   Exhaustion of aggregate and/or per-occurrence limits;

3.   Pollution exclusions; and

4.   Punitive damages exclusions.

### SECOND DEFENSE

Plaintiff's claims are barred to the extent that they conflict with or exceed the terms, conditions, exceptions, and limitations of any policies that may have been issued by Scottsdale to

or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

## THIRD DEFENSE

Plaintiff's claims are barred to the extent the Environmental Actions allege an occurrence and/or accident, as those terms may be defined in any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, either prior to the effective dates of the alleged policies or subsequent to the termination and/or expiration of the alleged policies.

## FOURTH DEFENSE

To the extent that coverage under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, is conditioned on the liability of only designated insured(s), the alleged policies do not afford coverage to the extent that Plaintiff alleges Scottsdale is liable for persons that are not designated insured(s) under the alleged policies.

## FIFTH DEFENSE

Plaintiff's claims are barred to the extent any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, do not afford coverage for property damage either expected or intended from the standpoint of the insured(s) or arising from non-fortuitous events.

## SIXTH DEFENSE

Plaintiff's claims are barred to the extent any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

such policies or that such policies provide coverage, do not afford coverage for claims or losses that were known or could have reasonably been foreseen by Burlington prior to the inception or issuance of any such policies.

## SEVENTH DEFENSE

Plaintiff's claims are barred to the extent the Environmental Actions do not allege property damage, personal injury, loss, or ultimate net loss within the meaning of any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

## EIGHTH DEFENSE

To the extent that coverage exists under one or more policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, such policies are subject to the per occurrence and aggregate limits of liability set forth therein, including any and all applicable deductibles, self-insured retentions, and/or underlying insurance, as well as all policy provisions precluding the stacking or accumulation of multiple policies limits.

## NINTH DEFENSE

Plaintiff's claims are barred, or alternatively reduced, to the extent the claims exceed the applicable limitations of liability and/or aggregates contained in any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

## TENTH DEFENSE

Plaintiff's claims are barred to the extent any insured(s) had notice of the Environmental Actions and failed to give timely notice to Scottsdale in accordance with terms of any policies that

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

### ELEVENTH DEFENSE

Plaintiff's claims are barred and any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, are void *ab initio* to the extent the insured(s) failed to disclose, concealed, or misrepresented the nature of the insured(s)' operations or other facts material to the risks undertaken by Scottsdale.

### TWELFTH DEFENSE

Plaintiff's claims are barred to the extent any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, or any rights with respect to such alleged policies have been assigned in contravention of the policies' terms and conditions.

### THIRTEENTH DEFENSE

Plaintiff's claims are barred to the extent they do not allege an occurrence and/or accident, as those terms may be defined by any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, to the extent they allege intentional acts on the part of the alleged insured(s) or its employees.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**FIFTEENTH DEFENSE**

Scottsdale has no obligations under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, unless and until all deductibles, self-insured retention, underlying insurance coverage, or other primary insurance coverage applicable to the claims have been exhausted.

**SIXTEENTH DEFENSE**

Plaintiff's claims are barred to the extent that the claims do not fall within the insuring agreement of any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

**SEVENTEENTH DEFENSE**

Plaintiff's claims are barred to the extent the Environmental Actions allege property damage, as that term may be defined in any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, either prior to the effective dates of the alleged policies or subsequent to the termination and/or expiration of such policies.

**EIGHTEENTH DEFENSE**

Plaintiff's claims are barred or alternatively reduced to the extent there is other insurance applicable to the claims asserted herein.

**NINETEENTH DEFENSE**

Plaintiff's claims are barred by the equitable doctrines of laches, waiver, and/or estoppel.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## TWENTIETH DEFENSE

To the extent Scottsdale is required to pay more than its fair share of defense or indemnity costs, Scottsdale is entitled to contribution, subrogation, indemnity, reimbursement and/or equitable recoupment from one or more parties to this action.

## TWENTY-FIRST DEFENSE

To the extent policies may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, and Burlington has voluntarily incurred liabilities, assumed obligations, or paid money without prior notice to and the consent of Scottsdale, or otherwise failed to cooperate with Scottsdale, Scottsdale has no obligation to Plaintiff.

## TWENTY-SECOND DEFENSE

Plaintiff's claims are barred under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, to the extent that the expenditures for which Plaintiff seeks reimbursement or indemnification for are unreasonable, unnecessary, or were incurred pre-tender.

## TWENTY-THIRD DEFENSE

Plaintiff's claims are barred under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, to the extent that any such policies exclude coverage for damage to property owned by, occupied by, rented to, or used by Burlington, or that is in Burlington's care, custody or control.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### TWENTY-FOURTH DEFENSE

Plaintiff's claims are barred under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, to the extent that any such policies exclude coverage for damages to premises alienated by Burlington.

### TWENTY-FIFTH DEFENSE

To the extent that some or all of the liabilities for which Plaintiff seeks coverage constitute fines, penalties, punitive damages, or exemplary damages, there is no coverage under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, and such claims are excluded from coverage under the terms of the alleged policies and are further barred as contrary to public policy.

### TWENTY-SIXTH DEFENSE

Plaintiff's claims may be barred to the extent any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage, contain an "other insurance" clause and other insurance is available.

### TWENTY-SEVENTH DEFENSE

Plaintiff's claims may be barred to the extent that Burlington has impaired Scottsdale's rights of subrogation, indemnity, or contribution under any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## TWENTY-EIGHTH DEFENSE

Plaintiff claims are barred to the extent the complaint fails to state a claim against Scottsdale for which relief may be granted.

## TWENTY-NINTH DEFENSE

Plaintiff's claims may be barred by the applicable statute of limitations.

## THIRTIETH DEFENSE

Plaintiff may have failed to join all necessary and indispensable parties.

## THIRTY-FIRST DEFENSE

Plaintiff's claims may be barred to the extent that Plaintiff is not the authorized receiver for Burlington or any order creating such receivership is reversed or overturned.

## THIRTY-SECOND DEFENSE

Scottsdale moves to dismiss the Complaint pursuant to Rule 12(b)(6), SCRCP, in that the Complaint fails to state a claim upon which relief can be granted. Specifically, Plaintiff fails to allege actual factual allegations to support a claim for a declaration by this Court as to coverage under any policies that allegedly were issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of any such policies. Plaintiff's Complaint does not aver any policy language that it contends affords coverage for the claims at issue or the manner in which the claims asserted against Burlington in the Environmental Actions could trigger coverage under any policies that allegedly were issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies the existence of any such policies, or identify all of the Environmental Actions for which it seeks declarations from this Court as to coverage under any policies that allegedly were issued by Scottsdale to or for the benefit of Burlington, which Scottsdale again denies the existence of any such policies.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### THIRTY-THIRD DEFENSE

Plaintiff's claims may be barred in whole or in part, to the extent Plaintiff failed to reduce or mitigate its damages as required by law.

### THIRTY-FOURTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff fails to allege a ripe and justiciable controversy as to some or all of the Environmental Actions.

### THIRTY-FIFTH DEFENSE

Discovery is ongoing, and Scottsdale reserves the right to raise additional defenses as they become known and/or available.

### THIRTY-SIXTH DEFENSE

Scottsdale further adopts any and all defenses asserted by its alleged insured(s) in the Environmental Actions, any other insurers or alleged insurers of Burlington, and by any other parties hereto, but only to the extent such defenses are consistent with Scottsdale's defenses and/or any policies that may have been issued by Scottsdale to or for the benefit of Burlington, which Scottsdale denies both the existence of such policies or that such policies provide coverage.

WHEREFORE, Defendant Scottsdale Insurance Company requests that, this Court enter judgment in its favor and against Plaintiff Burlington Industries, Inc. in the following manner:

1.        That Plaintiff have and recover nothing of it in this action;

2.        That Burlington's claims asserted in its complaint against Scottsdale be dismissed in their entirety with prejudice;

3.        That costs and attorney fees be awarded to Scottsdale; and

4.        That Scottsdale be awarded such other and further relief as this Court may deem just and proper.

ELECTRONICALLY FILED - 2024 Dec 30 4:01 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## DEMAND FOR JURY TRIAL

Scottsdale demands a jury trial on all issued so triable.

Dated: December 30, 2024

Respectfully submitted,

MEISSNER TIERNEY FISHER & NICHOLS S.C.

*s/ Michael J. Cohen*
Michael J. Cohen
(*Pro hac vice* application pending)
mjc@mtfn.com
James M. Sosnoski
(*Pro hac vice* application pending)
sjm@mtfn.com

MEISSNER TIERNEY FISHER & NICHOLS S.C.
111 East Kilbourn Avenue, 19th Floor
Milwaukee, WI 53202-6622
Phone: (414) 273-1300
Facsimile: (414) 273-5840

and

GOLDBERG SEGALLA

*s/ David G. Harris II*
David G. Harris II, Esq.
S.C. State Bar No: 101951
dharris@goldbergsegalla.com
701 Green Valley Road, Suite 310
Greensboro, NC 27408
Phone: (336) 419-4910
Facsimile: (336) 419-4950

**Attorneys for Defendant, Scottsdale Insurance Company**

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | SEVENTH JUDICIAL CIRCUIT |

C.A. No.:  2024-CP-42-04138

BURLINGTON INDUSTRIES, INC., by
and through its duly appointed Receiver
Peter M. McCoy, Jr.,

        Plaintiff,

vs.

CONTINENTAL CASUALTY
COMPANY, TRAVELERS CASUALTY
AND SURETY COMPANY, formerly
known as AETNA CASUALTY AND
SURETY COMPANY, AMERICAN
HOME ASSURANCE COMPANY,
ALLSTATE INSURANCE COMPANY, as
successor-in-interest to NORTHBROOK
EXCESS AND SURPLUS INSURANCE
COMPANY, formerly known as
NORTHBROOKINSURANCE
COMPANY, GRANITE STATE
INSURANCE COMPANY, AMERICAN
INTERNATIONAL GROUP, INC., AIU
INSURANCE COMPANY, THE
CONTINENTAL INSURANCE
COMPANY, as successor-in-interest to
HARBOR INSURANCE COMPANY,
WESTPORT INSURANCE
CORPORATION, as successor-in-interest
to PURITAN INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY,
MUNICH REINSURANCE AMERICA,
INC., formerly known as AMERICAN RE-
INSURANCE COMPANY, OLD
REPUBLIC INSURANCE COMPANY,
PACIFIC EMPLOYERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, LEXINGTON
INSURANCE COMPANY,
SCOTTSDALE INSURANCE
COMPANY, NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, PA, CENTURY

**ANSWER AND AFFIRMATIVE
DEFENSES OF
DEFENDANT WESTPORT
INSURANCE CORPORATION**

**(Jury Trial Demanded)**

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known as CALIFORNIA UNION INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, and GREAT AMERICAN ASSURANCE COMPANY, formerly known as AGRICULTURAL INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Defendant Westport Insurance Company ("Westport"), as successor in interest to Puritan Insurance Company, by and through the undersigned attorneys, in answer to the Complaint (the "Complaint") of Plaintiff Burlington Industries, Inc., by and through its appointed Receiver, denies each and every allegation, matter and thing set forth in the Complaint except as otherwise expressly admitted, qualified or answered below.

## NATURE OF THE ACTION

1.      The allegations in Paragraph 1 of the Complaint are general statements about the nature of the underlying actions, this insurance coverage action, and the relief sought by Burlington, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport admits that this is an insurance coverage action for declaratory judgment. Westport lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 1 and therefore denies them.

2.      The allegations in Paragraph 2 of the Complaint are general statements about potential future liability claims against Burlington, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport lacks sufficient

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

information to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 and therefore denies them.

3.     The allegations in Paragraph 3 of the Complaint are conclusions of law to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport admits that Burlington contends there are justiciable controversies between Burlington and the insurer defendants but Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 and therefore denies them.

4.     The allegations in Paragraph 4 of the Complaint are statements about the nature of Burlington's claims against the defendant insurers, the nature of the relief sought by Burlington, or conclusions of law, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport admits that it entered into certain contracts of liability insurance with Burlington (the "Puritan policies"). Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 4.

5.     In response to the allegations contained in Paragraph 5 of the Complaint, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 5.

6.     The allegations in Paragraph 6 of the Complaint purport to describe the nature of the allegations in the underlying environmental actions or constitute conclusions of law to which no response from Westport is required. To the extent a response from Westport is deemed required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport lacks sufficient information to form a belief as to the truth or falsity of any allegations contained in Paragraph 6 that relate to other insurer defendants or any insurance policies issued by other insurer defendants and therefore denies them. Westport denies all other allegations contained in Paragraph 6.

7.     Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations in Paragraph 7 inconsistent therewith. Westport lacks sufficient information to form a belief as to the truth or falsity of any allegations contained in Paragraph 7 that relate to other insurer defendants or any insurance policies issued by other insurer defendants and therefore denies them. Westport denies all other allegations contained in Paragraph 7.

8.     The allegations in Paragraph 8 of the Complaint are general statements about the nature of the underlying actions, this insurance coverage action, and the relief sought by Burlington, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport admits that this is an insurance coverage action for declaratory judgment. Westport further states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations in Paragraph 8 inconsistent therewith. Westport lacks sufficient information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8 and therefore denies them.

9.     The allegations in Paragraph 9 of the Complaint are general statements about additional relief sought by Burlington, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport lacks sufficient information to

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

form a belief as to the truth or falsity of the allegations contained in Paragraph 9 and therefore denies them.

10.     Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations in Paragraph 10 inconsistent therewith.  Westport lacks sufficient information to form a belief as to the truth or falsity of any allegations contained in Paragraph 10 that relate to other insurer defendants or any insurance policies issued by other insurer defendants and therefore denies them. Westport denies all other allegations contained in Paragraph 10.

11.     The allegations in Paragraph 11 of the Complaint purport to describe the nature of the allegations in the underlying environmental actions, potential future environmental liability actions against Burlington, or constitute conclusions of law to which no response from Westport is required. To the extent a response from Westport is deemed required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith.  Westport lacks sufficient information to form a belief as to the truth or falsity of any allegations contained in Paragraph 11 that relate to other insurer defendants or any insurance policies issued by other insurer defendants and therefore denies them. Westport denies all other allegations contained in Paragraph 11.

## **PARTIES**

12.     Westport admits on information and belief that this action was brought by Burlington's receiver on behalf of Burlington. Westport lacks sufficient information to form a belief as to the truth or falsity of any remaining allegations contained in Paragraph 12 and therefore denies them.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

13.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 and therefore denies them.

14.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 and therefore denies them.

15.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 15 and therefore denies them.

16.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 and therefore denies them.

17.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 17 and therefore denies them.

18.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 18 and therefore denies them.

19.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 and therefore denies them.

20.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 and therefore denies them.

21.     Westport admits that it is successor in interest to Puritan Insurance Company and that Westport is a Missouri corporation with its principal place of business in Missouri. Westport lacks sufficient information to form a belief as to the truth or falsity of any remaining allegations contained in Paragraph 21 and therefore denies them.

22.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 and therefore denies them.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

23.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 and therefore denies them.

24.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 and therefore denies them.

25.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 and therefore denies them.

26.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 and therefore denies them.

27.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 and therefore denies them.

28.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 28 and therefore denies them.

29.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 29 and therefore denies them.

30.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 30 and therefore denies them.

31.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 and therefore denies them.

32.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 32 and therefore denies them.

## JURISDICTION AND VENUE

33.     Westport states that the allegations contained in Paragraph 33 constitute conclusions of law to which no response is required. To the extent that a response by Westport is

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

deemed required, Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 33 and therefore denies them.

34.     Westport states that the allegations contained in Paragraph 34 constitute conclusions of law to which no response is required. To the extent that a response by Westport is deemed required, Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 34 and therefore denies them.

35.     Westport states that the allegations contained in Paragraph 35 constitute conclusions of law to which no response is required. To the extent that a response by Westport is deemed required, Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 35 and therefore denies them.

## FACTUAL BACKGROUND

### *Environmental Actions*

36.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 36 and therefore denies them.

37.     Westport states that the allegations contained in Paragraph 37 constitute conclusions of law to which no response is required. To the extent that a response by Westport is deemed required, Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 and therefore denies them.

38.     On information and belief, Westport admits that the City of Columbia filed a suit against Burlington. Westport states that the remaining allegations in Paragraph 38 appear to be Burlington's characterizations of the City of Columbia lawsuit which Westport denies. Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in the City of Columbia lawsuit and therefore denies them.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

39.     On information and belief, Westport admits that the Grand Strand Water and Sewer Authority ("GSWSA") filed a suit against Burlington. Westport states that the remaining allegations in Paragraph 39 appear to be Burlington's characterizations of the GSWSA lawsuit which Westport denies. Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in the GSWSA lawsuit and therefore denies them.

40.     Westport admits that it entered into the Puritan policies with Burlington. Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 40.

41.     The allegations in Paragraph 41 of the Complaint are statements about the nature of Burlington's claims against the defendant insurers, the nature of the relief sought by Burlington, or conclusions of law, to which no response from Westport is required. To the extent that a response by Westport is deemed required, Westport admits that it entered into the Puritan policies with Burlington. Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 41.

### *The Policies*

42.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 42 and therefore denies them.

43.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 43 and therefore denies them.

44.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 44 and therefore denies them.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

45.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 45 and therefore denies them.

46.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 46 and therefore denies them.

47.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 47 and therefore denies them.

48.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 48 and therefore denies them.

49.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 49 and therefore denies them.

50.    Westport admits that it entered into the Puritan policies with Burlington.  Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 50.

51.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 51 and therefore denies them.

52.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 52 and therefore denies them.

53.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 53 and therefore denies them.

54.    Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 54 and therefore denies them.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

55.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 55 and therefore denies them.

56.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 56 and therefore denies them.

57.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 57 and therefore denies them.

58.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 58 and therefore denies them.

59.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 59 and therefore denies them.

60.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 60 and therefore denies them.

61.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 61 and therefore denies them.

62.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 62 and therefore denies them.

63.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 63 and therefore denies them.

64.     Westport admits that it entered into the Puritan policies with Burlington.  Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 64.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

65.     The allegations in Paragraph 65 of the Complaint are legal conclusions to which no response from Westport is required. To the extent a response from Westport is required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 65.

66.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 66 and therefore denies them.

67.     Westport lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 67 and therefore denies them.

### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT
#### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)

68.     Westport repeats and realleges Paragraphs 1 through 67 above as if set forth in full herein.

69.     The allegations in Paragraph 69 of the Complaint are legal conclusions to which no response from Westport is required. To the extent a response from Westport is required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 69.

70.     The allegations in Paragraph 70 of the Complaint are statements of the relief sought by Burlington or legal conclusions to which no response from Westport is required. To the extent a response from Westport is required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith.  Westport denies all other allegations contained in Paragraph 70.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

71.     Westport admits that it disputes that Burlington is entitled to the relief Burlington seeks through this action. The remaining allegations in Paragraph 71 of the Complaint are legal conclusions to which no response from Westport is required. To the extent a response from Westport is required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith.  Westport denies all other allegations contained in Paragraph 71.

72.     The allegations in Paragraph 72 of the Complaint are legal conclusions to which no response from Westport is required. To the extent a response from Westport is required, Westport states that the policy periods, terms, conditions, limitations, exclusions, and limits of liability of the Puritan policies speak for themselves and denies any allegations inconsistent therewith. Westport denies all other allegations contained in Paragraph 72.

### WESTPORT'S AFFIRMATIVE DEFENSES

73.     Based upon Burlington's Complaint and the limited information currently available, and subject to Westport's rights to amend and supplement its pleadings, any claims against Westport in this action may be additionally barred as follows:

### First Affirmative Defense

74.     Burlington's Complaint fails to state a claim against Westport upon which relief may be granted.

### Second Affirmative Defense

75.     On information and belief, Burlington's claims are or may be barred in whole or in part to the extent Burlington has failed to join necessary and indispensable parties to this litigation.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Third Affirmative Defense

76.      The Puritan policies do not provide insurance coverage to any entity which is not a named insured, a person insured or an additional insured under the Puritan policies.  To the extent the alleged underlying liability claims involve claims made against or obligations imposed upon persons who are not a named insured, a person insured or an additional insured under the Puritan policies, Westport has no obligation for the defense or indemnity of Burlington in connection with any such alleged claims.

### Fourth Affirmative Defense

77.      On information and belief, Westport has no obligation to provide a defense to Burlington under the Puritan policies in connection with the purported underlying liability claims.

### Fifth Affirmative Defense

78.      Westport has no current obligation to pay defense, investigative, settlement or legal expenses incurred or paid by or on behalf of Burlington for the purported underlying liability claims under certain of the Puritan policies.

### Sixth Affirmative Defense

79.      There is no coverage under the Puritan policies to the extent the alleged underlying liability claims set forth in the Complaint are outside of the scope of the insuring agreements of the Puritan policies and/or the policy or policies which underlie the Puritan policies and/or in which the Puritan policies participate and/or are excluded by the terms, conditions, exclusions and limitations in the Puritan policies and/or such other policies.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**Seventh Affirmative Defense**

80.     There is no coverage under the Puritan policies to the extent the purported underlying liability claims do not arise out of an "occurrence," "accident," or "event" as those terms are defined and/or are used in the Puritan policies and/or the policy or policies which underlie the Puritan policies.

**Eighth Affirmative Defense**

81.     If the purported underlying liability claims did arise out of an "occurrence," "accident," or "event" as those terms are defined and/or are used in the Puritan policies and/or the policy or policies which underlie the Puritan policies, there is no coverage under the Puritan policies to the extent some or all of such alleged "occurrences," "accidents," or "events" did not take place during the policy periods during which the Puritan policies were in effect.

**Ninth Affirmative Defense**

82.     There is no coverage under the Puritan policies to the extent some or all of the purported underlying liability claims do not involve allegations of "personal injury" or "property damage" as some or all of those terms are defined and/or used in the Puritan policies and/or the policy or policies which underlie the Puritan policies.

**Tenth Affirmative Defense**

83.     There is no coverage under the Puritan policies to the extent some or all of the purported underlying liability claims do not involve or seek "damages" or "expenses" as those terms are defined and/or used in the Puritan policies and/or the policy or policies which underlie the Puritan policies.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Eleventh Affirmative Defense

84.     There is no coverage under the Puritan policies to the extent some or all of the purported underlying liability claims involve damage to property owned by the insured or any goods, products or containers thereof manufactured, sold, handled or distributed, or work completed by or for the insured, out of which the occurrence arises.

## Twelfth Affirmative Defense

85.     On information and belief, Westport has no obligation to pay on Burlington's behalf any amount that does not constitute "ultimate net loss" as that term is defined and/or used in the Puritan policies and/or the policy or policies which underlie the Puritan policies.

## Thirteenth Affirmative Defense

86.     If the purported underlying liability claims do involve allegations of "personal injury" or "property damage" as some or all of those terms are defined and/or used in the Puritan policies and/or the policy or policies which underlie the Puritan policies, there is no coverage under the Puritan policies to the extent some or all of such alleged "personal injury" or "property damage" did not take place during the policy periods during which the Puritan policies were in effect.

## Fourteenth Affirmative Defense

87.     If the purported underlying liability claims do involve allegations of "personal injury" or "property damage" as some or all of those terms are defined and/or used in the Puritan policies and/or the policy or policies which underlie the Puritan policies, there is no coverage under the Puritan policies because some or all of such alleged "personal injury" or "property damage" was expected or intended from the standpoint of the insured.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Fifteenth Affirmative Defense

88.     On information and belief, purported claims for insurance coverage under the Puritan policies with respect to the purported underlying liability claims are barred by breach of the provision of one or more of the Puritan policies and/or the policy or policies which underlie the Puritan policies that no action shall lie against Westport unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of the policies.

## Sixteenth Affirmative Defense

89.     On information and belief, purported claims for insurance coverage under the Puritan policies with respect to the purported underlying liability claims are barred to the extent that Burlington has breached the conditions precedent of the Puritan policies and/or the policy or policies which underlie the Puritan policies pertaining to the insured's duties in the event of an accident, occurrence, event, legal proceeding, claim or suit, including those conditions that require the insured to give proper and timely notice to Westport and those conditions requiring the insured, in the event of a legal proceeding, claim or suit, to forward to Westport every demand, notice, summons or other process received by the insured.

## Seventeenth Affirmative Defense

90.     To the extent that Burlington has breached the condition, upon information and belief, of the Puritan policies and/or the policy or policies which underlie the Puritan policies that the insured shall cooperate with Westport, there is no coverage under the Puritan policies.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Eighteenth Affirmative Defense

91.     There is no coverage under the Puritan policies to the extent that the insured assigned its interests under the Puritan policies without Westport's written endorsement or consent.

### Nineteenth Affirmative Defense

92.     There is no coverage under the Puritan policies for any liability arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

### Twentieth Affirmative Defense

93.     To the extent that Burlington has made or agreed to make any settlement for any sum in excess of the insurance underlying the Puritan policies without Westport's consent and/or has voluntarily made payments, assumed obligations or incurred expenses in connection with the purported underlying liability claims, in violation, upon information and belief, of the Puritan policies, or the policy or policies which underlie the Puritan policies there is no coverage under the Puritan policies.

### Twenty-first Affirmative Defense

94.     To the extent that Burlington failed to disclose, concealed or misrepresented material facts, including but not limited to facts relating to the purported underlying liability claims and the basis for those claims, at the time insurance coverage was applied for with Westport, any such concealment bars coverage, constitutes material misrepresentation and is grounds for rescission of some or all of the Puritan policies.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Twenty-second Affirmative Defense

95.    Coverage for the purported underlying liability claims is or may be barred to the extent the hazards or conditions that gave rise to the purported underlying liability claims were or should have been known by Burlington prior to the inception date of some or all of the Puritan policies.

### Twenty-third Affirmative Defense

96.    Coverage for the purported underlying liability claims is or may be barred to the extent that they arise from uninsurable loss or risks.

### Twenty-fourth Affirmative Defense

97.    Coverage for the purported underlying liability claims is or may be barred to the extent that the purported underlying liability claims were or should have been known to have taken place, in whole or in part, prior to the inception of some or all of the Puritan policies.

### Twenty-fifth Affirmative Defense

98.    Coverage for the purported underlying liability claims is or may be barred to the extent that the alleged damage or injury giving rise to the purported underlying liability claims was or should have been known to have taken place, in whole or in part, prior to the inception of some or all of the Puritan policies.

### Twenty-sixth Affirmative Defense

99.    There is no coverage under the Puritan policies for the purported underlying liability claims to the extent coverage is prohibited by public policy.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Twenty-seventh Affirmative Defense

100.    On information and belief, there is no coverage under the Puritan policies for penalties, fines, punitive damages, attorneys' fees, costs and expenses other than those amounts expressly authorized under applicable statute or law.

### Twenty-eighth Affirmative Defense

101.    To the extent that Burlington has failed to mitigate, minimize or avoid the costs alleged in the purported underlying liability claims, recovery, if any, under the Puritan policies must be barred or reduced by that amount.

### Twenty-ninth Affirmative Defense

102.    To the extent Burlington's liability in connection with the purported underlying liability claims arises from willful, intentional or reckless acts, there is no coverage under the Puritan policies.

### Thirtieth Affirmative Defense

103.    On information and belief, coverage for the purported underlying liability claims is or may be barred by the doctrines of waiver, estoppel, set-off, ratification, unclean hands and/or laches, as well as other equitable doctrines and statutory or contractual limitations periods.

### Thirty-first Affirmative Defense

104.    Upon information and belief, the Puritan policies and/or the policy or policies which underlie the Westport policy or policies provide that if collectible insurance with any other insurer is available to the insured covering a loss also covered under the Puritan policies, certain limitations on any insurance provided by the Puritan policies apply.  On information and belief, if

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

any coverage exists for Burlington under the Puritan policies, Burlington also has collectible insurance with other insurance companies and the extent of said coverage with such insurers must be determined in order to determine the extent of any coverage under the Puritan policies.

### Thirty-second Affirmative Defense

105.     If any coverage exists under the Puritan policies,  any coverage provided under  the Puritan policies is limited by various provisions in the Puritan policies and, upon information and belief, the policy or policies which underlie the Puritan policies, including, without limitation, the following provisions: (i) limits of liability; (ii) per accident or occurrence and aggregate limits; (iii) ultimate net loss provisions; and (iv) other insurance provisions; and (v) deductibles and/or retention provisions.

### Thirty-third Affirmative Defense

106.     In the event that Westport is adjudicated liable to any extent to Burlington, Westport is entitled to a declaration and adjudication as to the extent and amount of any such liability, taking into account all of the applicable insurance policies which Burlington has or had with any other insurance company, any self-insurance provided by Burlington, and all other such factors as may bear on this issue.

### Thirty-fourth Affirmative Defense

107.     To the extent any applicable limits of liability of any applicable self-insured retentions, underlying policies, deductibles, and other available insurance have not been exhausted, there is no coverage under the Puritan policies.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Thirty-fifth Affirmative Defense

108.    On information and belief, Westport's liability, if any, to Burlington under the Puritan policies in connection with the purported underlying liability claims is limited to its quota share participation within its layer or layers in its coverage periods.

### Thirty-sixth Affirmative Defense

109.    Coverage for the purported underlying liability claims is or may be barred in whole or in part, and, in any event, any possible relief is limited by the terms, conditions, exclusions, and limitations contained in the Puritan policies and/or the policies of insurance that underlie the Puritan policies.

### Thirty-seventh Affirmative Defense

110.    There is no current justiciable controversy between Westport and Burlington in connection with the purported underlying liability claims because there has been no exhaustion of applicable limits of liability of any applicable self-insured retentions, underlying policies, deductibles, and other available insurance.

### Thirty-eighth Affirmative Defense

111.    To the extent that Burlington is seeking coverage and payment by Westport with respect to any purported underlying liability claims by an employee of an insured for injury in the course of employment, there is no coverage under the Puritan policies.

### Thirty-ninth Affirmative Defense

112.    Burlington's claims are barred, in whole or in part, to the extent that they are released by a prior settlement or agreement.

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### Fortieth Affirmative Defense

113.     Westport incorporates by reference any applicable defenses asserted by any other insurer Defendant in this action or any other insurers that issued underlying policies to Burlington to the extent that such defenses inure to the benefit of Westport.

### Forty-first Affirmative Defense

114.     Burlington's claim against Westport is barred to the extent that the receiver was improperly appointed, the appointment of the receiver is void as a matter of law, and/or the receiver lacks standing to assert a claim against Westport.

### ADDITIONAL DEFENSES

115.     Burlington has failed to plead its allegations with sufficient particularity to permit Westport to determine all applicable defenses.  Westport does not knowingly, intentionally waive any applicable defenses that may become available or apparent during this litigation. Instead, Westport reserves its rights to assert additional defenses once all information is obtained through discovery and investigation.

### DEMAND FOR TRIAL BY JURY

Westport requests a trial by jury for all issues so triable.

**WHEREFORE**, defendant Westport prays for judgment as follows:

1.     In favor of defendant Westport and against Burlington;

2.     Declaring that Westport has no obligation for the defense or indemnity of Burlington in connection with the purported underlying liability claims;

3.    In the alternative, declaring the respective rights and obligations of the parties pursuant to all relevant insurance policies, and declaring the limits of any obligations of Westport for the defense or indemnity of Burlington with respect to the purported underlying liability claims;

4.    Awarding Westport its attorneys' fees, costs and disbursements; and

5.    Awarding Westport such other and further relief as the Court may deem just and proper.

CASSIDY COATES PRICE, PA

By:    s/Ross B. Plyler
       Ross B. Plyler, SC Bar No. 71688
       rplyler@cassidycoates.com
       1052 North Church Street (29601)
       Post Office Box 10529
       Greenville, SC 29603
       T: 864.349.2600
       F: 864.349.0303

       COUNSEL FOR WESTPORT INSURANCE
       CORPORATION, as successor-in-interest to
       PURITAN INSURANCE COMPANY

Greenville, South Carolina
December 30, 2024

ELECTRONICALLY FILED - 2024 Dec 30 12:12 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

BURLINGTON INDUSTRIES, INC., by and
through its duly-appointed Receiver, Peter M.
McCoy, Jr.,

           Plaintiff,

           v.

CONTINENTAL CASUALTY COMPANY,
et. al.,

           Defendants.

IN THE COURT OF COMMON PLEAS
THE SEVENTH JUDICIAL CIRCUIT
CASE NO.: 2024-CP-42-04138

**NOTICE OF MOTION AND MOTION
BY DEFENDANTS CONTINENTAL
CASUALTY COMPANY AND THE
CONTINENTAL INSURANCE
COMPANY TO DISMISS THE
COMPLAINT**

**TO:    ALEX R. STALVEY, ESQUIRE, ATTORNEY FOR THE PLAINTIFF**

      YOU WILL PLEASE TAKE NOTICE that Defendants CONTINENTAL CASUALTY

COMPANY and THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to

HARBOR INSURANCE COMPANY, (collectively referred to herein as "Defendants"), by and

through their undersigned counsel, do hereby move pursuant to Rule 12(b)(6) of the South Carolina

Rules of Civil Procedure for an Order dismissing the claims against Defendants in the Complaint

by Plaintiff "Burlington Industries, Inc., by and through its duly appointed Receiver, Peter M.

McCoy, Jr." ("Plaintiff"). In the alternative, Defendants respectfully move for a more definite

statement pursuant to Rule 12(e) of the South Carolina Rules of Civil Procedure and to stay the

action until it is ripe for adjudication.

## <u>INTRODUCTION</u>

      Peter M. McCoy, Jr. filed the present action and alleged that he was appointed to act as a

receiver for Burlington Industries, Inc. on May 13, 2022, in a separate case styled *Mimms v.*

*Burlington Industries, Inc.*, C/A No. 2021-CP-40-05873 ("*Mimms*"). He attaches to his Complaint

the *Mimms* "Order Appointing Receiver Over Defendant Burlington Industries, Inc." (the "*Mimms*

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Appointment Order"), which stated that Burlington was a dissolved Delaware corporation and appointed Mr. McCoy as receiver "in this case." Mr. McCoy does not allege a basis for standing to bring the present case (or to purport to act for Burlington outside of the *Mimms* case). In addition, even if Mr. McCoy did have standing (which he does not), the claims he asserts would fail as a matter of law.

This motion is based upon the following specific grounds:

1.     This action is premised on authority allegedly granted to Mr. McCoy by the *Mimms* Appointment Order. This order in *Mimms*, however, provides no valid authority for the present action because, *inter alia*, it: (i) is void because it does not include "a clause fixing the value of the property for which the bond may be given" as required by S.C. Code §15-65-60; (ii) is not effective in any event in cases other than *Mimms*; and (iii) provides no authority in any event with respect to matters that are not property within South Carolina.

2.     The claims asserted against Defendants in this action relate to insurance policies allegedly issued to Burlington Industries, Inc. ("Burlington") and seek declaratory judgment. The Complaint requests a variety of declarations that would apply to the "Environmental Actions." This term, however, is defined only broadly and generically as "claims and demands [that] have been made, or will in the future be made, in various lawsuits, and allege various causes of action, including, without limitation, negligence, trespass and nuisance arising out of environmental damage and injury allegedly caused by Burlington's ownership or use of property or the conduct of business operations . . .." Complaint, ¶1. The term "Environmental Actions" does not refer to any specific claim or lawsuit, and the Complaint fails to state facts sufficient to constitute a justiciable cause of action.

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## ARGUMENT

**I.**     **The Complaint Should Be Dismissed Under Rule 12(b)(6)**

    **A.**     **The *Mimms* Appointment Order Does Not Provide Authority for This Action**

    3.     The Complaint in this action was filed on October 22, 2024 by "Plaintiff Burlington Industries, Inc., by and through its court-appointed Receiver, Peter M. McCoy, Jr." Mr. McCoy alleges that he is authorized to file this suit by virtue of the *Mimms* Appointment Order. *See* Complaint, ¶1 and Exhibit A thereto.

    4.     However, the *Mimms* Appointment Order and Mr. McCoy's alleged authority thereunder to file the present action are not in compliance with South Carolina law. The Complaint in this action accordingly must be dismissed. The grounds for dismissal include the following:

- Under S.C. Code §15-65-60, a court appointing a receiver before a final judgment "shall" include in the appointment order "a clause fixing the value of the property for which the bond may be given." Under S.C. Code §15-65-50, the receivership will be dissolved if a party claiming the property "shall offer a bond, in the penalty of double the value of the property, with sufficient security, approved by the clerk of the court of common pleas of the court in which the action is brought." The *Mimms* Appointment Order **does not** include this mandatory clause fixing the amount for which a bond could be given. *See* Complaint, Exh. A. Non-compliance with this statutory obligation, which has been in place for over 100 years and has been upheld by the South Carolina Supreme Court, renders the order void. *Truesdell v. Johnson*, 144 S.C. 188, 197 (1928) ("The provision for inserting a clause fixing the value of the property in the order appointing a receiver is mandatory, and without such clause the order is void.").[1] This action

---

[1] The *Truesdell* court fully quoted Subdivisions 8 and 9 of Section 524 of the Code of Civil Procedure (1922), which are substantively identical to S.C. Code Ann. §§15-65-50 and 15-65-60:

    The appellant urges that these subdivisions are applicable in all cases where a receiver is appointed before final judgment in the cause, that they are intended to assure to the person claiming or in possession of the property sought to be placed in the hands of a receiver the right to retain or to replevy the same, and that the provision in Subdivision 9 for the insertion in the order appointing the receiver of a clause fixing the value of the property is mandatory. The respondent contends that it was a condition precedent to the insertion in the order of a clause fixing the value of the property that the person in possession should "offer" the bond before the order appointing the receiver was granted, and that, as the appellant did not "offer"

therefore cannot proceed.  *See Porter v. Brown*, 149 S.C. 151, 161 n.1 (1929) (citing authority that if a receivership order is void, it "may be attacked or disregarded whenever it comes collaterally in question") (citation omitted).

- Mr. McCoy has no standing to file the present action because the *Mimms* Appointment Order is limited on its face to the *Mimms* case.  The order specifically states: "This Court finds that the appointment of a receiver *in this action* is meritorious . . . Therefore, this Court hereby appoints Peter McCoy as the Receiver *in this case* . . .."  *Mimms* Appointment Order, 1 (emphasis added).  Mr. McCoy has not been appointed receiver in the present action.  A receiver has no general authority as a receiver to sue or be sued or defend. *See In re Fifty-Four First Mortg. Bonds*, 15 S.C. 304, 314 (1881); *Gadsden v. Whaley*, 14 S.C. 210, 215 (1880) ("A receiver cannot interfere in [another case] until he has been made a party to the action by order of the court.").

- The receivership statutes in S.C. Code §15-65-10, *et seq.* likewise limit the actions of a receiver to a single "cause."  S.C. Code Ann. §§15-65-50 and 15-65-60 reflect the clear intent for a receiver appointed pursuant to Title 15 to be limited to the cause in which he or she was appointed, specifying that the appointment of a receiver is for "the cause" (singular) and referring to a receiver's actions "before final judgment" (again referring to a single case).[2]

---

the bond at the hearing on the application for appointment of a receiver, he cannot now complain of the omission of the clause fixing the value of the property.

We do not agree with the respondent's position. The appointment of a receiver, as we have said, is a drastic measure, and the Legislature has made provision for protecting the interests of the person claiming or in possession of the property for which a receiver is sought. . . .

Nor do we agree with the respondent that the order of the Judge directing the receiver to make an inventory of the assets of the company was equivalent to a clause fixing the value of the property. All other considerations aside, the law does not provide for vacating the appointment of the receiver upon the filing of a bond with penalty fixed according to the *inventory value* of the property, and the appointment of the receiver would not be vacated upon a bond with penalty so fixed--the penalty must be double the value of the property *as fixed in the order appointing the receiver*. The provision for inserting a clause fixing the value of the property in the order appointing a receiver is mandatory, and without such clause the order is void.

*Truesdell v. Johnson*, 144 S.C. at 203-204 (emphasis in original).

[2] S.C. Code Ann. §15-65-50 ("No receiver of the property of any . . . corporation shall be appointed *before final judgment in the cause* if the party claiming the property so sought to be placed in the hands of a receiver . . . shall offer a bond . . . to meet and satisfy any decree or *judgment* or order that may be made *in the cause*.") (emphasis added); S.C. Code Ann. §15-65-60 ("Whenever the court . . . shall appoint a receiver *before final judgment in the cause* there shall be inserted in the

4

- Because Mr. McCoy was appointed pursuant to S.C. Code §15-65-10(4) in a *pendente lite* receivership, "the sole object of the Receivership is to preserve the property, to answer the purposes of a decree, as between the parties to *the suit,* without affecting the interest of third persons not parties." *Clinkscales v. Pendleton Mfg. Co.*, 9 S.C. 318, 323 (1878) (emphasis added). The *Mimms* Appointment Order was entered in the *Mimms* suit and is therefore limited to that case. As a matter of law, it does not confer expansive authority outside of *Mimms* to file the present action.

- Under S.C. Code §15-65-10(4), a receiver's authority with respect to a foreign corporation applies only to "property within this State . . .." Here, the Complaint relates solely to coverage under liability insurance policies for unspecified ongoing and future claims. An insured's potential recovery under an insurance company for its liability is not "property" unless and until there is a judgment of liability against the insured, and the insured has satisfied all conditions to coverage. *See Howard v. Allen*, 254 S.C. 455, 460-61 (1970). Furthermore, the situs of intangible property such as a contractual obligation under a liability insurance policy is the domicile of the alleged insurers of Burlington – none of which are alleged by the Complaint to be domiciled in South Carolina. *See H.J. Baker & Bro. v. Doe*, 88 S.C. 69, 76 (1911).

5.     For the above reasons, Mr. McCoy's appointment under the *Mimms* Appointment Order was void ab initio and, in any event, limited to the *Mimms* case. Mr. McCoy has no authority under the *Mimms* Appointment Order to act as receiver in the present case, and the Complaint does not in any event allege matters within his purported authority.[3]

**B.     There Is No Justiciable Controversy as to Unidentified or Future Environmental Actions**

6.     The Court should dismiss the Plaintiff's claims seeking coverage for unidentified

---

order of appointment a clause fixing the value of the property for which the bond may be given, as prescribed in Section 15-65-50. And upon the due execution and filing of such bond thereafter *before final judgment in the cause* the court or judge shall vacate the appointment of such receiver . . ..") (emphasis added).

[3] Defendants hereby join in, incorporate, and adopt, to the extent applicable and not adverse to the Defendants, as if fully set forth herein, all motions to dismiss in the present action, including the briefs, replies, or responses filed or to be filed by the other defendants in this action, relating to the validity of the Burlington receivership, the *Mimms* Appointment Order, and/or the present action. This includes motions filed by any defendant that may be dismissed from this action or otherwise may not be in the case at the time of trial.

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

and future suits.  Pursuant to Rule 12(b)(6), a claim must be dismissed if it fails to state facts sufficient to constitute a cause of action.  S.C.R. Civ. P. 12(b)(6).

7.     To state a cause of action for declaratory judgment, "a party must demonstrate a justiciable controversy."  *Graham v. State Farm Mut. Auto. Ins. Co.,* 319 S.C. 69, 71 (1995).  A justiciable controversy exists "[w]here a concrete issue is present, and there is a definite assertion of legal rights and a positive legal duty with respect thereto, which are denied by the adverse party."  *Power v. McNair*, 255 S.C. 150, 153-54 (1970) (internal quotation and citation omitted).  "An issue that is contingent, hypothetical, or abstract is not ripe for judicial review" and there must be "a real or actual controversy between the litigants at the time of the institution of the DJ action."  *Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 595 (2013) (internal quotation and citation omitted).

8.     The Complaint seeks broad declarations regarding coverage for unspecified liabilities not yet incurred or adjudicated.  *See* Complaint, ¶¶1, 2, 70, & Prayer.  These declarations would relate to "Environmental Actions."  *Id.*  This term is given only a broad, indefinite, and generic definition – and fails to identify any specific action.[4]

9.     Although Plaintiff pleads conclusorily that "an actual and justiciable controversy exists between Burlington and these defendants concerning the defendants' obligations under the insurance policies that they sold to Burlington," the Complaint fails to identify the particular pending action or facts in which an actual controversy allegedly exists with Defendants.

---

[4] The Complaint refers only to two actions: *The City of Columbia d/b/a Columbia Water v. 3M Company, Inc., et al.*, No. 2024-CP-40-03392 (County of Richland, South Carolina); and *Grand Strand Water and Sewer Authority v. Burlington Industries, Inc*., No. 2024-CP-26-05523 (County of Horry, South Carolina).  Complaint ¶¶38, 39.  However, the definition of "Environmental Actions" does not include or otherwise refer to these suits and is not in any event limited to these matters.

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Complaint, ¶71.

10.     Plaintiff seeks a declaration as to the application of and defenses to coverage for these unspecified claims.  Specifically, Plaintiff seeks a declaration that the policies named in the Complaint "cover all Environmental Actions that allege property damage, bodily injury, injurious exposure, or progression of injury (including any combination thereof) during any Policy period." Complaint, ¶70(a).  Plaintiff seeks a declaration that "the Environmental Actions 'trigger' the Policies as long as damage or injury is alleged during the period of the Policy."  Complaint, ¶70(b). Plaintiff seeks a declaration that it "may select the Policy or Policy years to which to assign or allocate in full loss from the Environmental Actions."  Complaint, ¶70(c).  Plaintiff seeks a declaration that any ambiguity "shall be construed in favor of the broadest coverage afforded under the Policy."  Complaint, ¶70(d).  Plaintiff seeks a declaration that "each defendant's duty to pay or reimburse defense costs for the Environmental Actions is a joint, several and indivisible obligation."  Complaint, ¶70(e).  Plaintiff seeks a declaration that "if any allegation or cause of action in an Environmental Action is potentially covered under the Policies, then the defendant must fully defend or pay or reimburse in full the costs of defending against all of the allegations and all of the causes of action in the complaint."  Complaint, ¶70(f).  Plaintiff seeks a declaration that each policy is required to "pay or reimburse all sums that Burlington becomes legally obligated or required to pay as damages."  Complaint, ¶70(g).  Plaintiff seeks a declaration that each policy must indemnify, in full, up to its "per occurrence" limits regardless of whether a continuing injury spans multiple policy periods.  Complaint, ¶70(h).  Plaintiff seeks a declaration that coverage for the Environmental Actions is not precluded by any pollution exclusion or limitation based on the payment of damages.  Complaint, ¶70(i).  Plaintiff seeks a declaration that it is not obligated to pay any portion of defense or indemnity costs allocable to insolvent or liquidated policies.

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Complaint, ¶70(j).  Plaintiff seeks a declaration that excess carriers must "drop down" to provide coverage and are responsible after the insolvency or refusal to pay of an underlying insurer. Complaint, ¶70(k).

11.    The Complaint thus seeks declarations regarding Defendants' duties to Plaintiff, as well as numerous potential defenses to coverage and significant coverage issues concerning unspecified "Environmental Actions."  Without identification of specific actions and the specific facts in each action required to allege a present controversy with Defendants, the Complaint fails to present a specific, concrete matter for judicial resolution, but rather seeks declarations that are abstract, hypothetical, and contingent.

12.    Issues relating to indemnification and defenses to coverage cannot be adjudicated in a vacuum.  *See Auto-Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 595 (2013).  Similarly, obligations to defend cannot be determined without identification of the specific lawsuits at issue. Under basic principles of law, "the duty of a liability insurance company to defend a claim brought against its insured [is] determined by the allegations of the third party's complaint."  *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15 (Ct. App. 1994), *aff'd,* 321 S.C. 310 (1996).  Relief cannot be granted on the declarations concerning the defense and indemnification, nor the several enumerated issues related to the allocation of and defenses to coverage sought in the Complaint.  Accordingly, Plaintiff's declaratory judgment claims against Defendants should be dismissed pursuant to Rule 12(b)(6).

13.    For these same reasons, Plaintiff's demand for the Receiver's attorneys' fees, costs, and expenses in the Prayer for Relief is likewise deficient.  This indefinite request regarding unknown and unknowable future fees, costs, and expenses is an improper request for declaratory relief.  As discussed above, the existence of an insurer's obligations cannot be determined without

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

identification of the specific lawsuits at issue and the allegations therein.  In the absence of such allegations, there is no claim upon which relief can be granted.  Plaintiff's claims against Defendants therefore should be dismissed pursuant to Rule 12(b)(6).

## II.     In The Alternative, The Court Should Require A More Definite Statement

14.     In the alternative, and to the extent that the Court does not dismiss the claims by Plaintiff, Defendants move for more definite statement pursuant to Rule 12(e) of the South Carolina Rules of Civil Procedure.  For the reasons set forth above, the allegations in the Complaint are so vague and ambiguous that it is not reasonable to request Defendants to frame a responsive pleading.

15.     At minimum, Plaintiff should be required to set forth 1) each specific claim for which a declaration as to coverage is sought, 2) each policy that is allegedly implicated, and 3) the specific facts and material policy terms that allegedly support the declaration sought and demonstrate that an actual dispute exists.

## III.     In the Alternative, The Court Should Stay The Claims Against Defendants

16.     If the claims against Defendants are not dismissed, Defendants request that this Court stay the action until the underlying claims against Plaintiff alleged to constitute the "Environmental Actions" are resolved.

17.     Courts have broad discretion to stay proceedings as part of their inherent power to control their dockets and the order of the Court's business to safeguard the rights of litigants.  *See Williams v. Bordon's, Inc.*, 274 S.C. 275, 279 (1980).

18.     To the extent that the Court determines that this action may proceed with respect to declarations in relation to the Columbia Water and Grand Strand Water Suits, those suits were only recently filed and not sufficiently resolved to allow adjudication of the issues pled in

Plaintiff's Complaint.[5]

19.     It would be inefficient and a waste of judicial resources to litigate issues dependent on the outcome of the Columbia Water and Grand Strand Water Suits before those actions are resolved.  In order to conduct this litigation in the most efficient manner, the Court should at a minimum stay this action until the claims against Plaintiff in the Columbia Water and Grand Strand Water Suits have been adjudicated.

## CONCLUSION

20.     This Motion is based upon the foregoing, such briefing in support as may be filed later, the statutes and case law of the State of South Carolina, the pleadings filed in this matter, and such other material as may be properly received by the Court in connection therewith.

Dated: December 30, 2024                    GORDON REES SCULLY MANSUKHANI LLP

                                            By     *s/A. Victor Rawl, Jr.*
                                            _____
                                            A. Victor Rawl, Jr. (SC 9261)
                                            Email: vrawl@grsm.com
                                            677 King Street, Suite 450
                                            Charleston, SC  29403
                                            Telephone: (843) 278-5900

                                            *Counsel for Defendants Continental*
                                            *Casualty Company and The Continental*
                                            *Insurance Company*

---

[5] This Court may take judicial notice of its docket in connection with Motions to Dismiss.  *See*, S.C. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding.") and (b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

ELECTRONICALLY FILED - 2024 Dec 30 1:09 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

          Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, AMERICAN HOME ASSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AIU INSURANCE COMPANY, THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

CIVIL ACTION NO. 2024-CP-42-04138

**NOTICE OF JOINDER IN AND MOTION TO DISMISS BY DEFENDANT OLD REPUBLIC INSURANCE COMPANY**

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

as CALIFORNIA UNION INSURANCE
COMPANY, ZURICH AMERICAN
INSURANCE COMPANY, and GREAT
AMERICAN ASSURANCE COMPANY,
formerly known as AGRICULTURAL
INSURANCE COMPANY,

                Defendants.

Defendant Old Republic Insurance Company ("Old Republic") hereby gives notice that it joins in the Motion to Dismiss filed by co-Defendant Travelers Casualty and Surety Company ("Travelers"), and states:

1.      Old Republic joins Travelers' Motion to Dismiss with respect to the invalid and unlawful appointment of a receiver in the *Mimms v. Burlington Industries, Inc.* matter.  In addition and in any event, filing this action is beyond any authority purportedly granted by the receivership order, though that order is void for the reasons stated in Travelers' Motion.

2.      This Court lacks personal jurisdiction over Old Republic for the same reasons the Court lacks personal jurisdiction over Travelers as expressed in Travelers' Motion.  The Complaint alleges that Old Republic is a corporation organized under the laws of and maintaining its principal place of business in the Commonwealth of Pennsylvania, and does not allege facts to create general or specific jurisdiction over Old Republic, for the same reasons stated as to Travelers.

3.      In addition and in any event, the Complaint fails to allege a justiciable case or controversy as to Old Republic, for the same reasons stated in Travelers' Motion.  The Complaint seeks coverage under Old Republic insurance policy number OZX 11474 for policy period October 1, 1981 to October 1, 1982 (attached as Exhibit 1), which provides coverage in excess of $50,000,000, and does not include any duty to defend.  Thus, as with Travelers, the Complaint fails to state a ripe claim against Old Republic.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

4.      In the alternative, coverage is barred by pollution exclusions incorporated into Old Republic's policy, for the same reasons expressed in Travelers' Motion.  The Old Republic policy "is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the Underlying Umbrella policies…."  The Underlying Umbrella policies include policy no. 950071 issued by First State Insurance Company for policy period October 1, 1981 to October 1, 1982 (attached as Exhibit 2), which contains the following exclusion:

<center>EXCLUSIONS</center>

This policy shall not apply:

<center>* * *</center>

I.      this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

<center>* * *</center>

V.      to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

The claims asserted against Burlington for which coverage is sought solely allege liability arising out of the discharge, dispersal, release, or escape of toxic chemicals or other irritants, contaminants, or pollutants into or upon land, the atmosphere, or a watercourse or body of water, and no such discharge, dispersal, release, or escape is alleged to be sudden or accidental, and the schedule of underlying insurance in the First State Policy does not contain any pollution liability policies. Therefore, for the same reasons expressed in Travelers' Motion, no coverage is available under the Old Republic policy as a matter of law.

WHEREFORE, Old Republic respectfully requests that the Complaint be dismissed as to

Old Republic, with costs, and for such other relief as the Court may grant.

MURPHY & GRANTLAND, P.A.

*s/Wesley B. Sawyer*
Wesley B. Sawyer (S.C. Bar No. 100229)
4406-B Forest Drive
Columbia, South Carolina 29206
(803) 454-1233
wsawyer@murphygrantland.com

and

KENNEDYS CMK LLP

KRISTIN V. GALLAGHER (*Pro Hac Vice forthcoming*)
120 Mountain View Boulevard
Basking Ridge, New Jersey 07920
Telephone: 908.848.1220
Facsimile: 908.647.8390
kristin.gallagher@kennedyslaw.com

JEDIDIAH VANDER KLOK (*Pro Hac Vice forthcoming*)
1111 Brickell Avenue, Suite 1300
Miami, FL 33131
Telephone: 786.636.1236
Facsimile: 305.374.8066
jedidiah.vanderklok@kennedyslaw.com

ATTORNEYS FOR DEFENDANT
OLD REPUBLIC INSURANCE COMPANY

December 30, 2024
Columbia, South Carolina

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**Republic Insurance Company**

LOSS INFORMATION

UNDERWRITING INFORMATION

| Co. | Contract | Sub Line | Class | Maj. Line | G.A. Comm. | Brk's. Comm. | Producer | State | Off. |
|-----|----------|----------|-------|-----------|------------|--------------|----------|-------|------|
|     |          |          |       |           |            |              |          |       |      |

Renewal of

Rewrite of

Producer

Certified Copies:

Extra Dailies:

**Name of Assured:** Burlington Industries, Inc., etal   (See Endorsement # 1 )

**Address:** 3330 West Friendly Avenue
Greensboro, North Carolina   27420

**Type of Coverage:** $5,000,000 Part of $15,000,000 Excess of $50,000,000
Excess Umbrella Liability

**Limits of Liability:** $5,000,000 Part of $15,000,000 Excess of $50,000,000

**Term:**
Beginning at 12:01 A.M. on the 1st day of October 19 81
and ending at 12:01 A.M. on the 1st day of October 19 82
Standard time at the place of location of risks insured, and in accordance with terms and conditions of the form(s) attached and the Standard Clauses on the reverse side of this page

**Forms:**
At time of issuance this Policy contains a 4 page insuring Form and Endorsements 1 through 4 inclusive. Standard Clause N/A shall not apply.

(hereinafter called the Company), agrees with the assured named above, in consideration of the premium to be paid and subject to the limits of liability, exclusions, conditions and other terms of this policy, to provide insurance as set forth in the form(s) and endorsement(s) attached.

**Premium:**

|  | At Inception | 1st Anniversary | 2nd Anniversary |
|--|--------------|-----------------|-----------------|
| PREMIUM | $ 2500 | $  N/A | $  N/A |
| TOTAL | $2500 |  |  |

IN WITNESS WHEREOF, this Company has executed and attended these presents, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dated at Atlanta, Georgia
this 20th day of October , 19 81 By

ORIGINAL POLICY

ZX-2 (Ed. 1-81)

HOME OFFICE COPY

**EXHIBIT 1**

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS HEREBY UNDERSTOOD AND AGREED THAT THE
NAMED INSURED, (ENDORSEMENT #1) IS AMENDED TO INCLUDE THE FOLLOWING:

BURLINGTON INDUSTRIES, INC., and/or any subsidiary, organizations, or company
owned, controlled or coming under the active management of BURLINGTON INDUSTRIES,
INC.

ADTEX, INC.
BURLINGTON INTERNATIONAL SALES CORP. (BISC)
CRAMERTON PROPERTIES, INC.
GOODALL SANFORD INCORPORATED
BURLINGTON MILLS CORPORATION
DISTRIBULEX, INC.
SALESTEX, INC.
BURLINGTON ADMINISTRADORA LTDA.
BURLINGTON AG AND SUBSIDIARIES
BURLINGTON CARPET MILLS CANADA LTD.
BURLINGTON CANADA, INC.
BURLINGTON INDUSTRIES (IRELAND) LIMITED
BURLINGTON INTERNATIONAL, AG
BURLINGTON GmbH
BURLINGTON KNITTING CANADA LTD. (NON-OPERATING)
BURLINGTON TEPPICH-WERKE GmbH
EMOR, S.A. de C.V. (NON-OPERATING)
KLOPMAN INTERNATIONAL SpA
MOBILIS-LEES, S.A. de C.V.
SA BURLINGTON-SCHAPPE
TELTILES MORELOS, S.A. de C.V.
INSURATEX, LTD.
BURLINGTON CARPET SALES CANADA LTD.
TRICOTEX COMPANY (1969) LTD. (NON-OPERATING)
DEUTSCHE BURLINGTON GmbH
BURLINGTON MOQUETTES Sa IN LIQUIDATION
GLAND TEPPICHBODEN GmbH (MINI-GmbH)
GLADWOLLE GLADBACHER-WOLLINDUSTRIE GmbH
(MINI-GmbH)
INDUSTRIA TEXTILE SERIDO S.A.
FIBRAS TEXTILES DE MEXICO S.A. de C.V.
INTERGLAS SARL
MITSUBISHI-BURLINGTON COMPANY, LTD.
INTERGLAS-TEXTILE, GmbH
B. I. TRANSPORTATION, INC.

The Effective Date of this Endorsement is October 1, 1981          At ATLANTA, GEORGIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy #OZX 11474

Issued To: BURLINGTON INDUSTRIES, INC., ET AL

Broker/Agent: Swett & Crawford

Address: Greensboro, North Carolina

Date Of Issue: 11/21/81 By AP    End No. 5          By
                                          BACCALA & SHOOP INSURANCE SERVICES

BSIS-70

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## OLD REPUBLIC INSURANCE COMPANY

### EXCESS UMBRELLA LIABILITY

NAMED ASSURED:    As stated in Item 1 of the Declarations forming a part hereof
BURLINGTON INDUSTRIES, INC., ET AL
and/or subsidiary, associated, affiliated companies owned or con-
trolled companies as now or hereafter constituted and of which prompt
notice has been given to the Company.

### INSURING AGREEMENTS

**I. COVERAGE**

The company hereby agrees, subject to the limitations, terms and conditions
hereinafter mentioned, to indemnify the Assured for all sums which the Assured
shall be obligated to pay by reason of the liability

(a) imposed upon the Assured by law, or

(b) assumed under contract or agreement by the Named Assured and/or any officer,
director, stockholder, partner or employee of the Named Assured, while acting
in his capacity as such,

for damages, direct or consequential and expenses on account of:

(i) Personal Injuries, including death at any time resulting therefrom,

(ii) Property Damage,

(iii) Advertising Liability,

caused by or arising out of each occurrence happening anywhere in the world, and
arising out of the hazards covered by and as defined in the Underlying Umbrella
Policies stated in Item 2 of the Declarations and issued by various as per sche-
dule on file with company (hereinafter called the "Underlying Umbrella Insurers").

**II. LIMIT OF LIABILITY - UNDERLYING LIMITS**

It is expressly agreed that liability shall attach to the Company only after the
Underlying Umbrella Insurers have paid or have been held liable to pay the full
amount of their respective ultimate net loss liability as follows:

$    (as stated in Item 3     ultimate net loss in respect each occurrence, but
of the Declarations)

$    (as stated in Item 4     in the aggregate for each annual period during the
of the Declarations)     currency of this Policy separately in respect of
Products Liability and separately in respect of
Personal Injury (fatal or non-fatal) by Occupational
Disease sustained by any employee of the Assured.

and that the Company shall then be liable to pay only the excess thereof up to
a further

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

$    (as stated in Item 5     ultimate net loss in all in respect of each
     of the Declarations)      occurrence subject to a limit of

$    (as stated in Item 6     in the aggregate for each annual period during
     of the Declarations)      the currency of this policy separately in respect
                               of Products Liability and separately in respect
                               of Personal Injury (fatal or non-fatal) by Occu-
                               pational Disease sustained by any employee of
                               the Assured.

## CONDITIONS

**1. PRIOR INSURANCE AND NON CUMULATION OF LIABILITY**

It is agreed that if any loss covered hereunder is also covered in whole or in part
under any other excess policy issued to the Assured prior to the inception date
hereof the limit of liability hereon as stated in Items 5 and 6 of the Declara-
tions shall be reduced by any amounts due to the Assured on account of such loss
under such prior insurance.

Subject to the foregoing paragraph and to all the other terms and conditions of
this policy in the event that personal injury or property damage arising out of an
occurrence covered hereunder is continuing at the time of termination of this
policy the Company will continue to protect the Assured for liability in respect
of such personal injury of property damage without payment of additional premium.

**2. MAINTENANCE OF UNDERLYING UMBRELLA**

This policy is subject to the same terms, definitions, exclusions and conditions
(except as regards the premium, the amount and limits of liability and except as
otherwise provided herein) as are contained in or as may be added to the Underly-
ing Umbrella policies stated in Item 2 of the Declarations prior to the happening
of an occurrence for which claim is made hereunder.

It is a condition of this policy that Underlying Umbrella policies shall be
maintained in full effect during the currency hereof except for any reduction of
the aggregate limits contained therein solely by payment of claims in respect of
accidents and/or occurrences occurring during the period of this policy.

**3. CANCELLATION**

This policy may be cancelled by the Named Assured or by the Company or its repre-
sentatives by mailing written notice to the other party stating when, not less
than thirty (30) days thereafter, cancellation shall be effective. The mailing of
notice as aforesaid by the Company or its representatives to the Named Assured at
the address shown in this policy shall be sufficient proof of notice, and the
insurance under this policy shall end on the effective date and hour of cancella-
tion stated in the notice. Delivery of such written notice either by the Named
Assured or by the Company shall be equivalent to mailing.

If this policy be cancelled by the Named Assured, the Company shall retain
the customary short rate proportion of the premium for the period this policy has
been in force. If this policy shall be cancelled by the Company, the Company
shall retain the pro rata proportion of the premium for the period this policy has
been in force. Notice of cancellation by the Company shall be effective even
though the Company makes no payment or tender of return premium.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

4. NOTICE OF OCCURRENCE

Whenever the Assured has information from which the Assured may reasonably conclude that an occurrence covered hereunder involves injuries or damage which, in the event that the Assured shall be held liable, is likely to involve this policy, notice shall be sent as stated in Item 7 of the Declarations as soon as practicable, provided however, that failure to give notice of any occurrence which at the time of its happening did not appear to involve this policy, but which, at a later date would appear to give rise to claim hereunder, shall not prejudice such claims.

5. OTHER INSURANCE

If other valid and collectible insurance with another Insurer is available to the Assured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

## DECLARATIONS

ITEM 1.    NAMED ASSURED:  BURLINGTON INDUSTRIES, INC., ET AL

ITEM 2.    Underlying Umbrella Policies various as per schedule on file w/company

ITEM 3.    Underlying Umbrella Limits
           (Insuring Agreement II):  $50,000,000  Combined Single Limit

ITEM 4.    Underlying Umbrella Aggregate Limits
           (Insuring Agreement II):  $50,000,000  Combined Single Limit

ITEM 5.    Limit of Liability
           (Insuring Agreement II):  $ 5,000,000  Part of $15,000,000
                                                   Combined Single Limit

ITEM 6.    Aggregate Limit of Liability
           (Insuring Agreement II):  $ 5,000,000  Part of $15,000,000
                                                   Combined Single Limit

ITEM 7.    Notice of Occurrence
           (Condition 4) to:  BACCALA & SHOOP INSURANCE SERVICES
                              4400 MacArthur Boulevard #900
                              Newport Beach, California  92660

## STATE EXCEPTIONS

MARYLAND:    Condition 3., CANCELLATION, is amended as follows:  The words, "thirty (30) days" are deleted and replaced by the words, "forty-five (45) days". Condition 6., NON-RENEWAL, is added as follows:  "If the Company intends not to renew, the Company shall deliver or send by mail to the Assured, written notice of its intent not to renew at least forty-five (45) days prior to the expiration of the policy."

MICHIGAN:    Condition 3., CANCELLATION, is amended as follows:  The words, "the address shown in this policy" are deleted and replaced by the words, "the last address of the Assured known to the Company". Condition 4., NOTICE OF OCCURRENCE, is amended by the addition of the following subparagraphs:  "a) Notice of an occurrence by the Assured or on behalf of the Assured to the Company's authorized representative shall be considered as notice to the Company; and b.) Failure by the Assured to give the Company or its authorized representative notice of an occurrence within any time specified in this policy will not invalidate any claim made by the Assured, if the Assured shows that it was not

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

MICHIGAN:
(Cont.)

reasonably possible to give such notice within that prescribed time and that notice was given as soon as was reasonably possible."

Condition 6., BANKRUPTCY AND INSOLVENCY, is added as follows: "The insolvency or bankruptcy of the Assured will not relieve the Company of its liability for injury sustained or loss occasioned during the term of this policy. In the event execution of judgment against the Assured is returned unsatisfied because of such insolvency or bankruptcy, then the injured party or his legal representative(s) may maintain such action against the Company for the amount of the judgment, not to exceed the limits of liability stated in this policy."

NEW YORK:

The definition of NAMED ASSURED, is amended by the addition of the following words: "and/or officer, directors, stockholders, partners of the Assured while acting within the scope of their duties as such and of which prompt notice has been given to the Company."

The section entitled, EXCLUSIONS, is added as follows: "This policy shall not apply – 1. to any liability arising out of the violation of any statute law or regulation prohibiting discrimination or humiliation because of race, color, creed or national origin; 2. to the liability of the Assured hereunder for any loss, damage or expense caused intentionally by or at the direction of the Named Assured."

ATTACHED TO AND FORMING A PART OF POLICY:   CZE 11474

ISSUED TO:  BURLINGTON INDUSTRIES, INC., ET AL

DATED AT:  ATLANTA, GEORGIA

BY _____
                Authorized Representative

GL-218  (2/78)

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



## CANCELLATION FOR
### NON-PAYMENT OF PREMIUM

It is agreed that irrespective of any other terms or conditions contained in this policy or endorsements attached thereto, this policy may be cancelled by the company, or by Baccala & Shoop Insurance Services, in their behalf, for non-payment of any unpaid portion of the premium by delivering to the insured or by sending to the insured by mail, registered or unregistered, at the insured's address as shown herein, not less than ten days written notice stating when the cancellation shall be effective.

The Effective Date of this Endorsement is October 1, 1981.       At ATLANTA, GEORGIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy #OZX 11474

Issued To: BURLINGTON INDUSTRIES, INC., ET AL

Broker/Agent: Swett & Crawford

Address: Greensboro, North Carolina

Date Of Issue: 10/26/81   By   KDB   End. No: 4      By _____
                                                     BACCALA & SHOOP INSURANCE SERVICES

BSIS-34

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## EMPLOYEE RETIREMENT AND INCOME SECURITY ACT
### EXCLUSION ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM CHARGED, SUCH INSURANCE AS IS AFFORDED BY THIS POLICY SHALL NOT APPLY WITH RESPECT TO ANY CLAIM OR CLAIMS BROUGHT ABOUT AS A RESULT OF ANY VIOLATION OF ANY RESPONSIBILITIES, OBLIGATIONS OR DUTIES IMPOSED UPON FIDUCIARIES BY THE EMPLOYEE RETIREMENT AND INCOME SECURITY ACT OF 1974 OR AMENDMENTS THERETO.

The Effective Date of this Endorsement is October 1, 1981.          At ATLANTA, GEORGIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy #OZX 11474

Issued To:   BURLINGTON INDUSTRIES, INC., ET AL

Broker/Agent:   Swett & Crawford

Address:   Greensboro, North Carolina

Date Of Issue:   10/26/81   By   KDB   End. No. 2                    By _____

BSIS-64                                                            BACCALA & SHOOP INSURANCE SERVICES

IT IS HEREBY UNDERSTOOD AND AGREED THAT THE NAMED INSURED, AS SET FORTH IN THE DECLARATIONS PAGE, IS COMPLETED TO READ AS FOLLOWS:

Burlington Industries, Inc. and/or any subsidiary organizations, or company owned, controlled or coming under the active management of Burlington Industries, Inc.
Adtex, Inc.
Burlington International Sales Corp. (BISC)
Cramerton Properties, Inc.
Commission Service Company:
    Goodall Sanford Incorporated
Non-Operating Companies
    Burlington Mills Corporation
    Distributex, Inc.
    Salestex, Inc.
Burlington Administradora Ltda. (Holding Company in Brazil)
Burlington AG and Subsidiaries
Burlington Carpet Mills Canada, Ltd.
Burlington Canada, Inc.
Burlington Industries (Ireland), Limited
Burlington International, AG
Burlington GmbH
Burlington Knitting Canada, Ltd. (non-operating)
Burlington Teppich – Werke GmbH
Emor, S.A. de C.V. (non-operating)
Klopman International SpA
Mobilis – Lees, S.A. de C.V.
SA Burlington – Schappe
Textiles Morelos, S.A. de C.V.
Insuratex, Ltd.
Burlington Carpet Sales Canada, Ltd.
Tricotex Company(1969), Ltd. (non-operating)
Deutsche Burlington GmbH
Burlington Moquettes SA in Liquidation
Glawo Teppichboden GmbH (Mini-GmbH)
Gladwolle Gladbacher – Wollendustrie GmbH (Mini-GmbH)
Industria Textil Serido S.A.
Fibras Textiles de Mexico, S.A. de C.V.
Interglas Sarl
Mitsubishi – Burlington Company, Ltd.
Interglas – Textil, GmbH

The Effective Date of this Endorsement is October 1, 1981.          At ATLANTA, GEORGIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy #OZX 11474

Issued To: BURLINGTON INDUSTRIES, INC., ET AL

Broker/Agent: Swett & Crawford

Address: Greensboro, North Carolina

Date Of Issue: 10/26/81 By KDB End. No. 1                    By
                                        BACCALA & SHOOP INSURANCE SERVICES

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS UMBRELLA

O R O ENDORSEMENT

THE UNDERLYING UMBRELLA(S) HAS THE FOLLOWING AS INDICATED:

| | | | | |
|---|---|---|---|---|
| [ ] | GENERAL LIAB. & AUTO LIAB. | | [ ] | RECALL |
| [ ] | CONTRACTUAL LIAB. | | [ ] | FAILURE TO PERFORM |
| [ ] | P. I. | | [ ] | POLLUTION |
| [ ] | EMPLOYEE ADD'L INSURED | | [ ] | A/C PRODUCTS |
| [ ] | INCIDENTAL MALPRACTICE | | [ ] | FAILURE TO PROVIDE UTILITIES |
| [ ] | LIQUOR OR HOST LIAB. | | [ ] | CROSS SUITS |
| [ ] | B F P D | | [ ] | UNIMPAIRED AGG. |
| [ ] | X C U | | [ ] | ARCH. & ENG. E & O |
| [FF] | EMPLOYEE BENEFITS | | [ ] | WORKERS' COMPENSATION |
| [FF] | C-C-C | | [EX] | OTHER  ERISA |
| [ ] | ADVERTISING LIAB. | | EX: | NUCLEAR |
| [ ] | FIRST DOLLAR DEFENSE | | EX: | AIRCRAFT PRODUCTS |
| [ ] | AIRCRAFT LIAB. | | EX: | PUNITIVE DAMAGES |
| [ ] | WATERCRAFT LIAB. | | FP: | FOREIGN LIABILITY |
| [ ] | EMPLOYERS LIAB. | | | 60 Day Notice of Cancellation |

The Effective Date of this Endorsement is October 1, 1981.          At ATLANTA, GEORGIA
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy #OZX 11474

Issued To:  BURLINGTON INDUSTRIES, INC., ET AL

Broker/Agent:  Swett & Crawford

Address:  Greensboro, North Carolina

Date Of Issue:  10/26/81  By  KDB  End. No. ORO               By
                                                    BACCALA & SHOOP INSURANCE SERVICES

BSIS-70

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

NO **950071**

**947431**
Renewal of No

**DECLARATIONS — UMBRELLA LIABILITY POLICY**

STOCK COMPANY

**COPY**



# FIRST STATE
# INSURANCE COMPANY
WILMINGTON   DELAWARE

Administrative Offices  60 Batterymarch Street  Boston  Massachusetts 02110

*Mailed—B
Swett, Proy Am.Re
MDS 11/3*

**Item 1**   **Named Insured and Mailing Address**

BURLINGTON INDUSTRIES, INCORPORATED, ET AL
(See Endorsement #1)
3330 West Friendly Avenue
Greensboro, North Carolina  27420

**Item 2**   Policy Period   From   **October 1, 1981**        To   **October 1, 1982**

12 01 A M   Standard Time at the address of the Named Insured as stated herein

**Item 3**   Limits of Liability  The limit of the Company s liability shall be as stated herein  subject to all the terms of this policy having reference thereto

I    $ 15,000,000.____   Single limit any one OCCURRENCE combined PERSONAL INJURY PROPERTY DAMAGE and ADVERTISING INJURY or DAMAGE in excess of

    A   The amount recoverable under the underlying insurance as set out in Schedule A attached or

    B   $ 10,000.____   Ultimate net loss as the result of any one occurrence not covered by said underlying insurance

II   $ 15,000,000.____   Limit in the aggregate for each annual period with respect to

    A   The PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined  or

    B   Occupational Disease sustained by employees of the INSURED

**Item 4**   Premium

Advance Premium $  67,000.        Rate   **FLAT**        Premium Basis   ------

Minimum Premium $  67,000

If the Policy Period is more than one year and the premium is to be paid in installments  premium is payable on

Effective Date              1st Anniversary              2nd Anniversary

$ ------              $ ------              $ ------

**Item 5**   Warranted that  during the past three years  no insurer has cancelled insurance issued to the NAMED INSURED  similar to that afforded hereunder  unless otherwise stated herein

**Form numbers of endorsements forming part of this policy at inception. Named Insured Endorsements, A-3A, E-48, FF-13, FF-12, FF-11 (Employee Benefits), Foreign Liability Endorsement**

The ~~company~~ has ~~found~~ ~~these documents~~ in its business records. At this time, the company ~~does~~ not certify that these documents constitute ~~a complete~~ ~~or accurate~~ ~~copy~~ of the policy.

Countersigned by
CAMERON AND COLBY COMPANY                Authorized

C 142 1A  5 77

**EXHIBIT
2**

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

REVISED

ENDORSEMENT #4

## FOREIGN LIABILITY ENDORSEMENT

Except insofar as coverage is provided in Endorsement #7, it is agreed that such insurance as is afforded by this policy shall not apply to any liability arising out of operations conducted by the Insured outside of the United States, its territories or possessions, or Canada.

This endorsement to take effect on the 1st day of October, 1981. All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 950071 of FIRST STATE INSURANCE COMPANY.

Issued to: BURLINGTON INDUSTRIES, INCORPORATED, ET AL

CAMERON AND COLBY COMPANY

By _____

Authorized

1/27/82

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

BURL-HART000074

ENDORSEMENT #10

In consideration of the premium charged, it is agreed that Endorsement #8
is hereby considered Null and Void

This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged

Attached to and forming part of Policy No   950071 of FIRST STATE
INSURANCE COMPANY

Issued to   BURLINGTON INDUSTRIES, INCORPORATED, ET AL

CAMERON AND COLBY COMPANY

By _____
                    Authorized

4/26/82

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

BURL-HART000075

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Schedule A

**Schedule of Underlying Policies**
**Revised**

**Effective:  October 1, 1981**

**Insured: Burlington Industries, Inc., Et Al**

Policies                                          Limits of Liability

**COMPREHENSIVE GENERAL LIABILITY**

Including:                                        $1,000,000  Combined Single Limit
                                                 Bodily Injury and Property Damage
Blanket Contractual                              Liability Each Occurrence and in
Products Liability                               the Aggregate
Completed Operations
Host Liquor Law Liability
Personal Injury
Broad Form Property Damage
Incidental Medical Malpractice
Employees As Additional Insureds
Vendors Liability
Non-Owned Watercraft Liability (under 26 ft.)


**AUTOMOBILE LIABILITY**                          $1,000,000. Combined Single Limit
                                                 Bodily Injury and Property Damage
                                                 Liability Each Occurrence


**EMPLOYERS LIABILITY**                           $100,000. Each Accident


**AIRCRAFT LIABILITY**                            $100,000,000. Combined Single Limit
Including Passenger Liability                     Bodily Injury or Property Damage
                                                 Each Occurrence.


950071

Policy No _____

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

C 142 1B

BURL-HART000076

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Schedule A                    Schedule of Underlying Policies

Policies                                              Limits of Liability

**COMPREHENSIVE GENERAL LIABILITY**

Including                                             $1,000,000  Combined Single Limit
                                                     Bodily Injury and Property Damage
Blanket Contractual                                  Liability Each Occurrence and in
Products Liability                                   the Aggregate
Completed Operations
Watercraft Liability
Host Liquor Law Liability
Incidental Malpractice
Personal Injury
Broad Form Property Damage
Employees As Additional Insureds
Vendors Liability

**AUTOMOBILE LIABILITY**                             $1,000,000  Combined Single Limit
                                                     Bodily Injury and Property Damage
                                                     Liability Each Occurrence

**EMPLOYERS LIABILITY**                              $100,000  Each Accident

**AIRCRAFT LIABILITY**                               $100,000,000  Combined Single
Including Passenger Liability                         Limit Bodily Injury or Property
                                                     Damage Each Occurrence

Policy No  __950071__

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

C 142 1B
7/79

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*mailed - s!c*
*mwb*
*7/28*

ENDORSEMENT #12

It is agreed that the Schedule of Underlying Coverages is amended
to include the following

FOREIGN LIABILITY

$500,000  Combined
Single Limit Bodily Injury
and Property Damage Liability
Each Occurrence, and in the
Aggregate where applicable

This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged

Attached to and forming part of Policy No  950071 of FIRST STATE
INSURANCE COMPANY

Issued to   BURLINGTON INDUSTRIES, INCORPORATED ET AL

CAMERON AND COLBY COMPANY

By _____
                              Authorized

7/28/82

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #11

_Mailed - S/C_
_7/28_
_JMW_

FOREIGN LIABILITY ENDORSEMENT

Except insofar as coverage is provided in the schedule of underlying
insurance it is agreed that such insurance as is afforded by this policy shall
not apply to any liability arising out of operations conducted by the Insured
outside of the United States, its territories or possessions, or Canada

This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged

Attached to and forming part of Policy No  950071 of FIRST STATE
INSURANCE COMPANY

Issued to   BURLINGTON INDUSTRIES, INCORPORATED, ET AL

CAMERON AND COLBY COMPANY

By _____
                    Authorized

7/28/82

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

BURL-HART000079

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #14

*mailed - S&C/B*
*JMc/B*
*11-10-88*

It is agreed that the following Schedule of Underlying Coverages is applicable
only to    BUR-MILL COUNTRY CLUB, INC

EFFECTIVE - 10/1/81

Policies                                          Limits of Liability

COMPREHENSIVE GENERAL LIABILITY

Including

Blanket Contractual                              $500,000  Combined Single
Products Liability                               Limit Bodily Injury and
Completed Operations                             Property Damage Liability
Host Liquor Law Liability                        Each Occurrence and in the
Personal Injury                                  Aggregate where applicable
Broad Form Property Damage
Incidental Medical Malpractice
Employees as Additional Insureds
Vendors Liability
Non-Owned Watercraft Liability (under 26ft )

AUTOMOBILE LIABILITY

                                                 $500,000  Combined Single
                                                 Limit Bodily Injury and
                                                 Property Damage Liability
                                                 Each Occurrence

EMPLOYERS LIABILITY

                                                 $100,000  Each Accident

Policy No _950071_

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

BURL-HART000080

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #13

*mailed - SIC/18*
*snws*
*11-10-82*

It is agreed that Item 1 , of the Policy Declarations, Named Insured is amended to include the following

BUR-MILL COUNTRY CLUB, INC

This endorsement to take effect on the 1st day of October, 1981

All other items and conditions remain unchanged

Attached to and forming part of policy no. 950071 of FIRST STATE INSURANCE COMPANY

Issued to   BURLINGTON INDUSTRIES, INCORPORATED, ET AL

CAMERON AND COLBY COMPANY

By_____

Authorized

11/9/82

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

BURL-HART000081

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



ENDORSEMENT #1

It is agreed that Item 1 , of the Policy Declarations, Named Insured is
amended to include

Burlington Industries, Inc  and/or any subsidiary, organizations, or
company owned, controlled or coming under the active management of
BURLINGTON INDUSTRIES, INC.

ADTEX, INC
BURLINGTON INTERNATIONAL SALES CORP. (BISC)
CRAMERTON PROPERTIES, IFC
GOODALL SANFORD INCORPORATED
BURLINGTON MILLS CORPORATION
DISTRIBULEE, INC
SALESTEX, INC.
BURLINGTON ADMINISTRADORA LTDA.
BURLINGTON AG AND SUBSIDIARIES
BURLINGTON CARPET MILLS CANADA LTD.
BURLINGTON CANADA, INC.
BURLINGTON INDUSTRIES (IRELAND) LIMITED
BURLINGTON INTERNATIONAL, AG
BURLINGTON GmbH
BURLINGTON KNITTING CANADA LTD. (NON-OPERATING)
BURLINGTON TEPPICH-WERKE GmbH
EMOR, S.A  de C.V. (NON-OPERATING)
KLOPMAN INTERNATIONAL SpA
MOBILIS-LEES, S.A. de C.V.
SA BURLINGTON-SCHAPPE
TEXTILES MORELOS, S.A. de C.V.
INSURATEX, LTD
BURLINGTON CARPET SALES CANADA LTD.
TRICOTEX COMPANY (1969) LTD. (NON-OPERATING)
DEUTSCHE BURLINGTON GmbH
BURLINGTON MOQUETTES Sa IN LIQUIDATION
CLAFO TEPPICHBODEN GmbH (MINI-GmbH)
GLADWOLLE GLADBACHER-WOLLINDUSTRIE GmbH
(MINI-GmbH)
INDUSTRIA TEXTIL SERIDO S.A.
FIBRAS TEXTILES DE MEXICO S.A, de C.V
INTERGLAS SARL
MITSUBISHI-BURLINGTON COMPANY, LTD.
INTERGLAS-TEXTIL, GmbH
D. I. TRANSPORTATION, INC

Page 1 of 2

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



Endorsement 01 (continued)


This endorsement to take effect on the 1st day of October, 1981.
All other items and conditions remain unchanged

Attached to and forming part of Policy No. 950071 of FIRST STATE
INSURANCE COMPANY


Issued to:   BURLINGTON INDUSTRIES, INCORPORATED ET AL


                                    CAMERON AND COLBY COMPANY


                          By_____
                                              Authorized


10/21/81



Page 2 of 2

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

BURL-HART000083

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #2


It is hereby understood and agreed that the Cancellation Clause under
Condition 13 of the Policy is amended in part as follows:

Reference to "thirty days" is amended to read "sixty days."


This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 950071 of FIRST STATE
INSURANCE COMPANY.


Issued to:  BURLINGTON INDUSTRIES, INCORPORATED ET AL


                                CAMERON AND COLBY COMPANY


                        By_____
                                               Authorised

A-3A


10/21/81

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

BURL-HART000084




ENDORSEMENT 03

PENSION REFORM ACT

In consideration of the premium charged it is hereby agreed that
coverage afforded hereunder does not apply to any loss or claim based
upon the Employee Retirement Income Security Act of 1974, Public Law
93-406, commonly referred to as The Pension Reform Act of 1974, and
amendments thereto, or similar provisions of any Federal, State or
Local Statutory Law or Common Law.

This endorsement to take effect on the 1st day of October, 1981.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No 950071 of FIRST STATE
INSURANCE COMPANY.

Issued to   BURLINGTON INDUSTRIES, INCORPORATED ET AL

CAMERON AND COLBY COMPANY

By_____
                    Authorised

E-48

10/21/81

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

BURL-HART000085

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

 

ENDORSEMENT #4


FOREIGN LIABILITY ENDORSEMENT


Except insofar as coverage is provided in the schedule of underlying insurance it is agreed that such insurance as is afforded by this policy shall not apply to any liability arising out of operations conducted by the Insured outside of the United States, its territories or possessions, or Canada.

This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged.

Attached to and forming part of Policy No  950071 of FIRST STATE INSURANCE COMPANY.

Issued to   BURLINGTON INDUSTRIES, INCORPORATED ET AL


CAMERON AND COLBY COMPANY


By_____
                          Authorized

FF-13



10/21/81

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



ENDORSEMENT #5

<u>OWNED OR NON-OWNED AIRCRAFT LIABILITY</u>

It is agreed that exclusion (D) is hereby deleted.

If is further agreed that under Coverage 1(A) and 1(B) liability arising
out of the ownership, maintenance, operation, use, loading or unloading
of aircraft owned by the Insured, or, without crew, loaned to, leased
to, rented to or chartered by or on behalf of the Insured shall apply
but only insofar as coverage is available to the Insured in the
underlying Aircraft Liability Policy as set forth in Schedule A.

This endorsement to take effect on the 1st day of October, 1981.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 950071 of FIRST STATE
INSURANCE COMPANY.

Issued to:  BURLINGTON INDUSTRIES, INCORPORATED ET AL

CAMERON AND COLBY COMPANY

By_____
                        Authorized

FF-12

10/21/81

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



ENDORSEMENT 06

FOLLOWING-FORM ENDORSEMENT

It is agreed that this policy shall not apply to any liability for
personal injury or property damage arising out of EMPLOYEE BENEFITS
LIABILITY unless such liability is covered by valid and collectible
underlying insurance as described in the schedule of underlying
insurance, and then only for such hazards for which coverage is
afforded under said underlying insurance.

This endorsement to take effect on the 1st day of October, 1981
All other items and conditions remain unchanged.

Attached to and forming part of Policy No. 950071 of FIRST STATE
INSURANCE COMPANY

Issued to.  BURLINGTON INDUSTRIES, INCORPORATED ET AL


                                    CAMERON AND COLBY COMPANY



                                    By_____
                                                    Authorized

FF-1


10/21/81


The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT 07

Foreign Liability

It is agreed that the Foreign Liability Underlying limits are as follows

Comprehensive General Liability -

$500,000.   Combined Single Limit
            Bodily Injury & Property Damage
            Liability Each Occurrence and
            in the Aggregate

Automobile Liability -

$250,000.   Bodily Injury - Each Person
$500,000.   Each Accident

$250,000    Property Damage - Each Accident

This endorsement to take effect on the 1st day of October, 1981. All other items and conditions remain unchanged

Attached to and forming part of Policy No  950071 of FIRST STATE INSURANCE COMPANY.

Issued to:  BURLINGTON INDUSTRIES, INCORPORATED ET AL

CAMERON AND COLBY COMPANY

By_____
                    Authorized

10/21/81

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

BURL-HART000089

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #8

CARE, CUSTODY, AND CONTROL ENDORSEMENT

It is agreed that this policy shall not apply to any liability
for property damage to property:

(1)  owned or occupied by or rented to the insured,

(2)  used by the insured, or

(3)  in the care, custody, or control of the insured or
     as to which the insured is for any purpose exercising
     physical control.

unless such liability is covered by valid and collectible underlying
insurance as described in the schedule of underlying insurance, and
then only for such hazards for which coverage is afforded under said
underlying insurance.

This endorsement to take effect on the 1st day of October, 1981.
All other items and conditions remain unchanged.

Attached to and forming part of Policy No.  950071 of the FIRST STATE
INSURANCE COMPANY.

Issued to:  BURLINGTON INDUSTRIES, INCORPORATED, ET AL.


                                   CAMERON AND COLBY COMPANY


                          By  _____
                                        Authorized

The company located these documents in its
business records. At this time, the company
does not certify that these documents constitute
a complete and accurate copy of the policy.

10/21/81

BURL-HART000090

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ENDORSEMENT #9

It is agreed that Umbrella Policy Jacket Form #C-142-2 (8-80), is amended in part to delete the following phrase from the Exclusions Section of the jacket:

    H.  to any liability of any INSURED arising out of racial, religious, sex, or age discrimination.

This endorsement to take effect on the 1st day of October, 1981. All other items and conditions remain unchanged.

Attached to and forming part of Policy No.  950071 of First State Insurance Company.

Issued to:  BURLINGTON INDUSTRIES, INCORPORATED, ET AL.

CAMERON AND COLBY COMPANY

By _____
                                Authorized

10/21/81

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

BURL-HART000091

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# FIRST STATE

UMBRELLA LIABILITY POLICY

First State Insurance Company



FIRST STATE INSURANCE COMPANY (hereinafter the Company) Agrees with the INSURED, named in the Declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the Declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

### I.  COVERAGE

To indemnify the INSURED for ULTIMATE NET LOSS, as defined hereinafter, in excess of RETAINED LIMIT, as herein stated, all sums which the INSURED shall be obligated to pay by reason of the liability imposed upon the INSURED by law or liability assumed by the INSURED under contract or agreement for damages and expenses, because of:

A. PERSONAL INJURY, as hereinafter defined;
B. PROPERTY DAMAGE, as hereinafter defined;
C. ADVERTISING INJURY OR DAMAGE, as hereinafter defined,

to which this policy applies, caused by an OCCURRENCE, as hereinafter defined, happening anywhere in the world.

### II.  UNDERLYING LIMIT—RETAINED LIMIT

The Company shall be liable only for the ULTIMATE NET LOSS in excess of the greater of the INSURED'S:

A. UNDERLYING LIMIT—an amount equal to the limits of liability indicated beside the underlying insurance listed in the Schedule A of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the INSURED; or

B. RETAINED LIMIT—The amount specified in Item 3 I B of the Declarations as the result of any one occurrence not covered by said underlying insurance, and which shall be borne by the INSURED.

### III.  LIMITS OF LIABILITY

Regardless of the number of persons and organizations who are INSUREDS under this policy and regardless of the number of claims made and suits brought against any or all INSUREDS, the total limit of the Company's liability for ULTIMATE NET LOSS resulting from any one OCCURRENCE shall not exceed the amount specified in Item 3 I of the declarations.

The Company's liability shall be further limited to the amount stated as the annual aggregate limit in Item 3 II of the declarations on account of all OCCURRENCES during each policy year arising out of:

A. either the PRODUCTS HAZARD or COMPLETED OPERATIONS HAZARD or both combined; or

B. occupational disease by all employees of the INSURED.

In the event that the aggregate limits of liability of the underlying policies listed in the schedule of underlying insurance, are exhausted solely as the result of OCCURRENCES taking place after the inception date of this policy, this policy shall, subject to the Company's limit of liability and to other terms of this policy, with respect to OCCURRENCES which take place during the period of this policy, continue in force as underlying insurance for the remainder of the policy year of the underlying policy or until the aggregate limit of liability as stated in Item 3 II is exhausted, but not for broader coverage than was provided by the exhausted underlying insurance.

In the event that the aggregate limits of liability of the underlying insurance are exhausted or reduced as the result of OCCURRENCES taking place prior to the inception date of this policy, the Company shall only be liable to the same extent as if the aggregate limits had not been so exhausted or reduced.

For the purpose of determining the limit of the Company's liability:

(a) all PERSONAL INJURY and PROPERTY DAMAGE arising out of con-

tinuous or repeated exposure to substantially the same general conditions, and

(b) all ADVERTISING INJURY OR DAMAGE involving the same injurious material or act, regardless of the number or kind of media used, or frequency of repetition thereof, whether claim is made by one or more persons

shall be considered as arising out of one OCCURRENCE.

### IV.  DEFENSE—SETTLEMENT

A. With respect to any OCCURRENCE not covered, as warranted, by the underlying policies listed in Schedule A hereof, whether collectible or not, or not covered by any other underlying insurance collectible by the INSURED, but covered by the terms and conditions of this policy, except for the RETAINED LIMIT stated in Item 3 I B of the Declarations, the Company shall:

1. defend any suit against the insured alleging PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE and seeking damages therefore, even if such suit is groundless, false or fraudulent; but the COMPANY may make such investigation, negotiation or settlement of any claim or suit as it deems expedient. The INSURED shall promptly reimburse the COMPANY for any amount paid in the satisfaction of cases defended hereunder within the retained limit after making proper deduction for all recoveries and salvage collectible, but excluding all loss expense and legal expense.

2. with respect to any suit defended under the terms of this coverage, in addition to the applicable limit of liability under this policy, the COMPANY will:

(a) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds;

(b) pay all expenses incurred by the COMPANY, all costs taxed against the INSURED in any such suit and all interest accruing after the entry of judgment until the COMPANY has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the COMPANY'S liability thereon;

(c) pay reasonable expenses incurred by the INSURED at the COMPANY'S request in assisting the COMPANY in the investigation or defense of any claim or suit including actual loss of earnings not to exceed $25 per day, but the COMPANY shall not be required to reimburse the INSURED for salaries of employees of the INSURED.

In jurisdictions where the COMPANY may be prevented by law or otherwise from carrying out this agreement, the COMPANY shall pay any expense incurred with its written consent in accordance with this agreement.

B. When underlying insurance, whether or not listed in Schedule A, does apply to an OCCURRENCE, the COMPANY shall have no duty to pay defense, investigation, settlement or legal expenses covered by such underlying insurance; however, the COMPANY shall have the right and opportunity to associate with the INSURED and any underlying insurer in the defense and control of any claim or suit reasonably likely to involve the COMPANY under this policy.

The company located these documents in its business records in the ordinary course of business as a custodian of records.

C-142-2  5-77

BURL-HART000092

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP420413B

## EXCLUSIONS

This policy shall not apply:

A. under Coverage I (A), to any obligation for which the INSURED or any of its insurers may be held liable under any worker's or unemployment compensation, disability benefits or similar law, provided, however, that this exclusion does not apply to liability of others assumed by the NAMED INSURED under contract;

B. under Coverage I (B), to injury to or destruction of or loss of (1) property owned by the INSURED or (2) property rented to, occupied or used by or in the care, custody or control of the INSURED to the extent the INSURED is under contract to provide insurance therefore; or (3) any goods, products or containers thereof, manufactured, sold, handled or distributed, or work completed by or for the INSURED, out of which the OCCURRENCE arises.

C. under Coverage I (A) and I (B) for PERSONAL INJURY or PROPERTY DAMAGE, or under I (B) to loss of use of tangible property which has not been physically injured or destroyed, resulting from:
   (1) a delay in or lack of performance by or on behalf of the INSURED of any contract or agreement or
   (2) the failure of the INSURED'S products or work performed by or on behalf of the INSURED to meet the level of performance, quality, fitness or durability warranted or represented by the INSURED; but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the INSURED'S products or work performed by or on behalf of the INSURED after such products or work performed by or on behalf of the INSURED have been put to use by any person or organization other than an INSURED.
   (3) damages claimed for the withdrawal, inspection, repair, replacement or loss of use of the INSUREDS products or work completed by or for the INSURED, or of any property of which such products or work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

D. under Coverage I (A) and I (B), to liability arising out of the ownership, maintenance, operation, use, loading, or unloading of aircraft owned by the insured, or, without crew, loaned to, leased to, rented to or chartered by or on behalf of the INSURED.

E. under Coverage I (C), to liability for (1) failure of performance of contract, (2) infringement of trade mark, service mark or trade name of goods or services sold, offered for sale or advertised, but this shall not relate to titles or slogans, (3) incorrect description of any article or commodity, or (4) mistake in advertised price.

I. under any Liability Coverage, to injury, sickness, disease, death or destruction.
   (a) with respect to which an INSURED under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization;

II. under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization;

III. under any Liability Coverage, to injury, sickness, disease, death or destruction, resulting from the hazardous properties of nuclear material, if:
   (a) the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an INSURED; or
   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an INSURED of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this policy;
   "hazardous properties" means source material, special nuclear material or byproduct material;
   "source material", "special nuclear material" and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;
   "spent fuel" means any fuel element or fuel component, solid or liquid which has been used or exposed to radiation in a nuclear reactor;
   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;
   "nuclear facility" means:
   (a) any nuclear reactor,
   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,
   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,
   (d) any structure, basin, excavation, premises or place prepared or used where any of the foregoing is located, all operations conducted on such site and all premises used for operations;
   "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; with respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

G. to any liability of the INSURED directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or naturalization or requisition or destruction of damage to property by or under the order of any government or public or local authority.

H. to any liability of any INSURED arising out of racial, religious, sex or age discrimination.

I. this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:
   I. to liability of any INSURED hereunder for assault and battery committed by or at the direction of the INSURED except liability for personal battery committed for the purpose of preventing or eliminating danger in the operation of aircraft, or for the purpose of preventing PERSONAL INJURY or PROPERTY DAMAGE; it being understood and agreed that this exclusion shall not apply to the liability of the NAMED INSURED for PERSONAL INJURY to their employees, unless such liability is already excluded under Exclusion (A) above;
   II. with respect to any watercraft owned by an INSURED, while away from premises owned, rented or controlled by the INSURED, except liability of the NAMED INSURED for watercraft not owned by them; it being understood and agreed that this exclusion shall not apply to the liability of the NAMED INSURED for personal injury to their employees, unless such liability is already excluded under Exclusion (A) above;
   III. to liability of any INSURED or any employee of said INSURED with respect to personal injury to or death of another employee of the same employer injured in the course of such employment;
   IV. to liability arising out of (1) the ownership, maintenance, operations, use, loading or unloading of any mobile equipment while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity; or (2) the operation or use of any snowmobile or trailer designed for use therewith;
   V. to the liability of any INSURED for loss of, damage to, the property of another INSURED;
   VI. to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

The content referenced within these documents in its business, trade or activity to trade, the company does not share any responsibility for damage to the property of another INSURED or a company.

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## DEFINITIONS

When used in this policy, the following words and phrases shall have the following meaning:

**A. ADVERTISING INJURY OR DAMAGE:** means

(1) libel, slander or defamation,

(2) any infringement of copyright or title or slogan,

(3) piracy or unfair competition or idea misappropriation under an implied contract,

(4) any invasion of right of privacy;

committed or alleged to have been committed during the policy period, in any advertisement, publicity article, broadcast or telecast and arising out of insured's advertising activities.

**B. AIRCRAFT:**

Means any heavier than air or lighter than air aircraft designed to transport persons or property.

**C. AUTOMOBILE:**

Means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

**D. COMPLETED OPERATIONS HAZARD:**

1. Includes personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the INSURED. "Operations" include materials, parts or equipment furnished in connection therewith.

Operations shall be deemed completed at the earliest of the following times:

(a) when all operations to be performed by or on behalf of the insured under the contract have been completed,

(b) when all operations to be performed by or on behalf of the insured at the site of the operations have been completed, or

(c) when that portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

2. The completed operations hazard does not include personal injury or property damage arising out of:

(a) operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof;

(b) the existence of tools, uninstalled equipment or abandoned or unused materials.

**E. INSURED:**

Each of the following is an INSURED to the extent set forth below:

(1) the NAMED INSURED, meaning the NAMED INSURED stated in item 1 of the declarations and any subsidiary, owned or controlled companies as now or hereafter constituted and of which prompt notice has been given to the Company;

(2) any person (other than an employee of the NAMED INSURED) or organization while acting as real estate manager for the NAMED INSURED;

(3) any INSURED (not being the NAMED INSURED under this policy) included in the schedule of underlying insurance, but not for broader coverage than is available to such INSURED under the scheduled underlying insurance;

(4) except with respect to the ownership, maintenance, operation, use, loading or unloading of automobiles, aircraft or watercraft, any officer, director or stockholder of the NAMED INSURED, while acting within the scope of his duties as such; but this subparagraph (4) shall not apply if it restricts the insurance granted under subparagraph (3) above;

(5) if the NAMED INSURED is designated in the declarations as a partnership or joint venture, any partner or member thereof, but only with respect to the liability incurred in the operation of that partnership or joint venture; however, this policy does not apply to any automobiles owned by or registered in the name of any partner.

**F. INSURED'S PRODUCTS:**

Means goods or products manufactured, sold, handled or distributed

by the INSURED or by others trading under the INSURED'S name, including any container thereof (other than a vehicle), but the INSURED'S products shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

**G. MOBILE EQUIPMENT:**

Means a vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled:

(1) not subject to motor vehicle registration, or

(2) maintained for use exclusively on premises owned by or rented to the INSURED, including the ways immediately adjoining, or

(3) designed for use principally off public roads, or

(4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills, concrete mixers (other than the mix-in-transit type), graders, scrapers, rollers and other road construction or repair equipment, air compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

**H. OCCURRENCE:**

With respect to Coverage I (A) and I (B) "OCCURRENCE" shall mean an accident or event including continuous repeated exposure to conditions, which results, during the policy period, in PERSONAL INJURY or PROPERTY DAMAGE neither expected nor intended from the standpoint of the INSURED. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one OCCURRENCE.

With respect to Coverage I (C), all damages involving the same injurious material or act, regardless of the frequency of repetition thereof, the number or kind of media used, and the number of claimants shall be deemed to arise out of one "OCCURRENCE."

**I. PERSONAL INJURY:**

The term PERSONAL INJURY wherever used herein means:

(1) bodily injury, sickness, disease, disability or shock, including death at any time resulting therefrom, mental anguish and mental injury,

(2) false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution,

(3) Libel, slander, defamation of character, humiliation or invasion of the rights of privacy, unless arising out of advertising activities,

which occurs during the policy period.

**J. PRODUCTS HAZARD:**

Includes PERSONAL INJURY and PROPERTY DAMAGE arising out of the INSURED'S products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs away from premises owned by or rented to the INSURED and after physical possession of such products has been relinquished to others.

**K. PROPERTY DAMAGE:**

The term PROPERTY DAMAGE wherever used herein means:

(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, and

(2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an OCCURRENCE during the policy period.

**L. ULTIMATE NET LOSS:**

Means the sums paid as damages in settlement of a claim or in satisfaction of a judgment for which the INSURED is legally liable after making deductions for all other recoveries, salvages and other insurances (whether recoverable or not) other than the underlying insurance and excess insurance purchased specifically to be in excess of this policy and also includes investigation, adjustment, appraisal and defense costs paid or incurred by the INSURED with respect to damages covered hereunder. "ULTIMATE NET LOSS" does not include (a) costs and expenses which an underlying insurer has paid or incurred or is obligated to pay to or on behalf of the INSURED, (b) office costs and expenses of the INSURED and salaries and expenses of employees of the INSURED or (c) general retainer fees of counsel retained by the INSURED. These costs and expenses, to the extent not paid by an underlying insurer, shall be borne equally by the COMPANY and the INSURED. If the COMPANY elects, it may, at its option, defend the insured portion paid by such INSURED. THE NAMED INSURED shall maintain adequate records of the information necessary for premium computation on the basis stated in the Declarations and shall send copies of such records to the COMPANY at the end of the policy period, as the COMPANY may direct.

**CONDITIONS**

**A. Premium Computation:** The deposit premium stated in the Declarations is an advance premium only unless otherwise specified. Upon termination of this policy, the earned premium shall be computed in accordance with the rates and minimum premium applicable to this insurance as stated in the Declarations. If the earned premium thus computed exceeds the advance premium paid, the NAMED INSURED shall pay the

The company has reviewed these documents in its business records. At this time, the company does not certify that these documents constitute a true and correct copy.

BURL-HART000094

ELECTRONICALLY FILED - 2024 Dec 30 4:05 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONDITIONS (continued)

B. Inspection and Audit: The COMPANY shall be permitted but not obligated to inspect the NAMED INSURED'S p[illegible]rty and operations at any time. Neither the COMPANY'S right to mak[illegible]spections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the NAMED INSURED or others, to determine or warrant that such property or operations are safe or healthful, or are in compliance with any law, rule or regulation.

The COMPANY may examine and audit the NAMED INSURED'S books and records at any time during the policy period and extensions thereof and within three years after the final termination of this policy, as far as they relate to the subject matter of this insurance.

C. Severability of Interest: The term "INSURED" is used severally and not collectively except with respect to Insuring Agreement II (UNDERLYING LIMITS—RETAINED LIMITS), Insuring Agreement III( LIMITS OF LIABILITY) and Condition H (Other insurance). The inclusion in this policy of more than one INSURED shall not operate to increase the COMPANY'S total liability for all INSURED'S covered by this policy beyond the limits set forth in Item 3 I, 3 I B and 3 II of the Declarations.

D. Notice of Occurrence, Claim or Legal Proceeding: Upon the happening of an OCCURRENCE reasonably likely to involve the COMPANY hereunder, written notice shall be given as soon as practicable to the COMPANY or any of its authorized agents. Such notice shall contain particulars sufficient to identify the INSURED and the fullest information obtainable at the time.

The INSURED shall give like notice of any claim made or legal proceeding commenced on account of such occurrence. If legal proceedings are begun, the INSURED, when requested by the COMPANY, shall forward to it each paper thereon, or a copy thereof, received by the INSURED or the INSURED'S representatives, together with copies of reports of investigations made by the INSURED with respect to such claim proceedings.

E. Action Against COMPANY: No action shall lie against the COMPANY unless, as a condition precedent thereto, the INSURED shall have fully complied with all the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED after actual trial or by written agreement of the INSURED, the claimant and the COMPANY.

F. Appeals: In the event the INSURED or the INSURED'S underlying insurer elects not to appeal a judgment in excess of the RETAINED LIMIT, the COMPANY may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the COMPANY for ULTIMATE NET LOSS exceed the amount set forth in Insuring Agreement II (UNDERLYING LIMIT—RETAINED LIMIT) and Insurance Agreement III (LIMITS OF LIABILITY) for any one OCCURRENCE plus the taxable costs, disbursements and interests incidental to such appeal.

G. Payment of ULTIMATE NET LOSS: Coverage under this policy shall not apply unless and until the INSURED, or the INSURED'S underlying insurer, shall be obligated to pay the amount of the UNDERLYING LIMIT or RETAINED LIMIT on account of PERSONAL INJURY, PROPERTY DAMAGE or ADVERTISING INJURY or DAMAGE. When the amount of ULTIMATE NET LOSS has finally been determined, the COMPANY shall promptly indemnify the INSURED the amount of ULTIMATE NET LOSS falling within the terms of this policy.

H. Other Insurance: If other collectible insurance with any other INSURER is available to the INSURED covering a loss covered hereunder, except insurance purchased to apply in excess of the sum of the RETAINED LIMIT and LIMIT OF LIABILITY hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance. If collectible insurance under any other policy(ies) of the COMPANY is available to the INSURED, covering a loss also covered hereunder (other than underlying insurance of which the insurance afforded by this policy is in excess), the COMPANY'S total liability shall in no event exceed the greater or greatest limit of liability applicable to such loss under this or any other such policy(ies). If other collectible insurance under any policy(ies) of the COMPANY is available to the INSURED, the ULTIMATE NET LOSS as the result of any one OCCURRENCE not covered by underlying insurance shall not be cumulative.

I. Underlying Insurance: If underlying insurance applicable in any one OCCURRENCE is exhausted by payment of judgment or settlement on behalf of the INSURED, the COMPANY shall be obligated to assume charge of the settlement or defense of any claim or proceeding against the INSURED resulting from the same occurrence, but only where this policy applies immediately in excess of such underlying insurance, without the intervention of excess insurance of another insurer.

J. Bankruptcy and Insolvency: In the event of the bankruptcy or insolvency of the INSURED or any entity comprising the INSURED, the COMPANY shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

K. Subrogation: In the event of any payment under this policy, the COMPANY shall be subrogated to all the INSURED'S rights of recovery against any person or organization and the INSURED shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The amount recovered as subrogation shall be apportioned in the inverse order of payment of ULTIMATE NET LOSS to the extent of the actual payment. The expenses of all such recovery proceedings shall be apportioned in the ratio of respective recoveries.

L. Changes: Notice to or knowledge possessed by any person shall not effect a waiver or change in any part of this policy or stop the COMPANY from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part hereof, signed by an authorized representative of the COMPANY.

M. Assignment: Assignment of interest under this policy shall not bind the COMPANY until its consent is endorsed hereon; if, however, the NAMED INSURED shall be adjudged bankrupt or insolvent, this policy shall cover the NAMED INSURED'S legal representative as NAMED INSURED; provided that notice of cancellation addressed to the INSURED named in the Declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

N. Cancellation: This policy may be canceled by the NAMED INSURED by surrender thereof to the COMPANY or any of its authorized agents, or by mailing to the COMPANY written notice stating when thereafter such cancellation shall be effective. This policy may be canceled by the COMPANY by mailing to the NAMED INSURED at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the NAMED INSURED or by the COMPANY shall be equivalent to mailing. If the NAMED INSURED cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the COMPANY cancels, earned premium shall be computed pro rata.

Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter. The check of the COMPANY or its representative, mailed or delivered, shall be sufficient tender of any refund due the NAMED INSURED.

If this policy insures more than one NAMED INSURED, cancellation may be effected by the first of such NAMED INSUREDS for the account of all INSUREDS; and notice of cancellation by the COMPANY to such first NAMED INSURED shall be notice to all INSUREDS. Payment of any unearned premium to such first NAMED INSURED shall be for the account of all interests therein.

O. Maintenance of Underlying Insurance: It is warranted by the insured that the underlying policy(ies) listed in Schedule A, or renewals or replacements thereof not more restrictive in coverage, shall be maintained in force during the currency of this policy, except for any reduction in the aggregate limit(s) contained therein solely by payment of claims in respect of OCCURRENCES happening during the period of this policy. In the event of failure by the INSURED so to maintain such policy(ies) in force, the insurance afforded by this policy shall apply in the same manner it would have applied had such policy(ies) been so maintained in force.

P. Employers' Liability—Common Law Defenses: As a condition to the recovery of any loss under this policy, with respect to personal injury to or the death of any employee arising out of and in the course of employment by the NAMED INSURED, the NAMED INSURED warrants that it has not and will not abrogate its common law defenses under any worker's compensation or occupational disease law by rejection thereof, or otherwise. In the event the NAMED INSURED should, at any time during the policy period, abrogate such defenses, such insurance as is afforded with respect to such employee shall automatically terminate at the same time.

Q. Service of Suit Clause: It is agreed that in the event of the failure of this COMPANY to pay any amount claimed to be due hereunder, this COMPANY, at the request of the INSURED, will submit to the jurisdiction of any Court of Competent jurisdiction within the United States and will comply will all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the State or Commonwealth wherein the PROPERTY covered by this policy is located, and that in any suit instituted against it upon this contract this COMPANY will abide by the final decision of such Court or any Appellate Court in the event of an appeal. The one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the State or Commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this COMPANY in any such suit and/or upon the INSURED'S request to give a written undertaking to the INSURED that they will enter a general appearance upon this COMPANY'S behalf in the event such a suit shall be instituted.

R. Terms of Policy Conformed to Statute: Terms of this policy which are in conflict with the statutes of the State wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

The company located these documents in its business records. At this time, the company does not certify that these documents constitute a complete and accurate copy of the policy.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC., by and through its duly appointed Receiver Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, et al.,

Defendants.

Civil Action No.: 2024-CP-42-04138

## DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS THE PURPORTED BURLINGTON INDUSTRIES, INC. RECEIVER'S COMPLAINT AND DISCONTINUE THE BURLINGTON RECEIVERSHIP

Defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company ("Travelers"), by and through undersigned counsel, hereby moves, pursuant to Rule 12 of the South Carolina Rules of Civil Procedure ("SCRCP"), S.C. Code Ann. § 15-65-10, and the other authorities discussed herein, for an order (i) dismissing with prejudice all claims asserted against Travelers in the Complaint of Plaintiff "Burlington Industries, Inc., by and through its duly appointed Receiver, Peter M. McCoy, Jr." ("Burlington" or the "Receiver") (the "Complaint") and (ii) discontinuing the Burlington Receivership.

1

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## INTRODUCTION

Burlington is a dissolved Delaware corporation.[1]  There is no evidence that it has any assets or property in South Carolina, and no one has alleged the existence of any such property. The Honorable Judge Jocelyn Newman nonetheless appointed Mr. McCoy as Burlington's Receiver in a separate case, *Mimms*, under S.C. Code § 15-65-10(4), even though that statute expressly states that a South Carolina court may appoint a receiver only over a dissolved foreign corporation's "property within" South Carolina.  The Appointment Order[2] purports to give the Receiver "the power and authority [to] fully administer all assets of Burlington" and to oversee any and all of its property, without regard to where the property is located, effectively creating a nationwide state court receivership.  *See* Appointment Order.  The Appointment Order is unlawful and should be disregarded and discontinued by this Court and vacated by the ordering court.[3]  For that reason and several others, as summarized below, the Receiver's claim here must be dismissed with prejudice.

---

[1] Although the Complaint seeks opaquely to avoid the fact that Burlington is not a South Carolina entity, Compl. ¶ 36 (alleging that "Burlington was a business organized under the laws of the State of South Carolina …"), the Court can take judicial notice of the fact that Burlington was incorporated in Delaware, because that fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  SCRE 201(b). Specifically, publicly-available corporate filings certified by the Delaware and North Carolina Secretaries of State show that Burlington was incorporated in Delaware as "Burlington Mills Corporation" in 1937 and that it changed its name to Burlington Industries, Inc. in 1955.  *See* Ex. 1, Certificate of Amendment; Ex. 2, Application for Domestication by a Foreign Corporation.

[2] Compl., Ex. A (Burlington Receivership Appointment Order).

[3] Travelers is not asking this Court to vacate the Appointment Order.  But the Court can disregard the Appointment Order because it was void as a matter of law when issued, as is more fully discussed in this brief. *See Porter v. Brown*, 149 S.C. 151 n.1, 146 S.E. 810, 814 (1929) ("If the court is without jurisdiction to appoint a receiver the order is void and may be attacked or disregarded whenever it comes collaterally in question.  [] If it appears upon the face of the proceedings that a Court's order appointing a receiver was without authority of law, and,

2

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

<u>First</u>, a South Carolina state court does not have the power to appoint a Receiver over a dissolved foreign corporation such as Burlington, which is not alleged to currently have any assets or property in South Carolina.  The power of a receiver is no greater than that of the court that appointed him, and it extends only to the boundaries of the territorial jurisdiction of the appointing court, here, South Carolina.  There is no evidence of any Burlington assets or property in South Carolina over which a South Carolina state court, and by extension a Receiver, has any power to act.  Insurance policies allegedly issued to Burlington, a dissolved *Delaware* company, by Travelers and other foreign insurance companies, are not assets or property located in South Carolina.  The Appointment Order was thus unlawful from the start and must be vacated.  Because the Appointment Order has always been unlawful, this Court should disregard it and dismiss this action with prejudice because the Receiver is without authority or standing to pursue his claims in this case or to take any other actions purportedly on Burlington's behalf.

<u>Second</u>, the Court lacks personal jurisdiction over Travelers.  Travelers is not incorporated in South Carolina, does not have its principal place of business in South Carolina, and is not otherwise "essentially at home" in South Carolina.  This means the Court lacks general personal jurisdiction over Travelers.  The Court also cannot exercise specific personal jurisdiction over Travelers in this case because the Receiver's sole claim against Travelers does not arise out of or relate to any contacts between Travelers and South Carolina.

<u>Third</u>, the Receiver's Complaint fails to state a claim against Travelers because all of the insurance policies under which the Receiver is seeking coverage declarations contain pollution exclusions that unambiguously bar coverage for the "Environmental Actions" as a matter of law.

---

therefore, void, the order may be assailed collaterally and with impunity by anybody.") (concurring opinion, citation omitted).

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Complaint includes a single declaratory judgment count, which seeks a declaration that Travelers and the other Defendants "have a duty to investigate, defend, reimburse and/or indemnify Burlington completely from and against the Environmental Actions", along with coverage-related declarations concerning the parties' rights and obligations under Burlington's alleged insurance policies. Yet half of the Travelers policies placed at issue in the Complaint contain absolute pollution exclusions that bar any coverage for damages arising out of contamination by pollutants, including PFAS chemicals, from premises Burlington owned or occupied. These exclusions preclude coverage for the "Environmental Actions" as a matter of law. The remaining Travelers policies at issue in this action contain what are called qualified, or "sudden and accidental," pollution exclusions that bar coverage for claims "arising out of the discharge, dispersal, release or escape of … alkalis, toxic chemicals … or other irritants, contaminants or pollutants into or upon land … or any watercourse or body or water … [unless] such discharge, dispersal, release or escape is sudden or accidental." The Complaint contains no allegations of any kind that the alleged routine discharges of PFAS chemicals by Burlington were sudden or accidental. Instead, the Complaint alleges specifically that the "environmental damage and injury allegedly [was] caused by Burlington's ownership or use of property or the conduct of business operations," which South Carolina courts have ruled cannot satisfy the sudden or accidental exception as a matter of law.

Fourth, even if the qualified pollution exclusions don't clearly bar coverage for the "Environmental Actions," there is no present justiciable case or controversy between the Receiver and Travelers. The at-issue Travelers policies containing the qualified policies exclusions are high-level excess policies that contain no duty to defend. As for the duty to indemnify, each Travelers policy with a qualified pollution exclusion has an attachment point of

$25 million or higher. The Complaint contains no allegation that the policies underlying the at-issue Travelers policies have been exhausted. Further, based on the specifically identified underlying "Environmental Actions" and South Carolina law requiring pro rata allocation of long tail injuries like those alleged here, the likelihood that those Travelers policies will ever be attached based on the current allegations is so slim that it renders any decision on the Complaint as it relates to the at-issue Travelers policies purely hypothetical and speculative. Unless and until the Receiver is able to allege exposure that has any reasonable chance of reaching Travelers' excess layers, no justiciable case or controversy exists and the Complaint should be dismissed as to Travelers.

Thus, Travelers respectfully requests that this Court issue an order dismissing the Receiver's claims against Travelers with prejudice.

## **BACKGROUND**

### A.     **Asbestos tort plaintiffs (the Mimms) move to appoint a Receiver over Burlington in the *Mimms* Case.**

Barbara and John Mimms, plaintiffs in a different environmental tort case venued in a different South Carolina circuit court, filed a "Motion to Appoint a Receiver over Defendant Burlington Industries, Inc., pursuant to S.C. Code § 15-65-10(4)." *See Mimms v. Burlington Industries, Inc.*, No. 2021-CP-40-05873 (S.C. Court of Common Pleas, Richland County), Motion to Appoint, filed Mar. 24, 2022. In their three-page motion, the Mimms asserted that "Burlington is a dissolved Delaware corporation" that "apparently[] disposed of its assets," and that, "apparently, all that remains of Burlington is its insurance coverage." *Id.* at 1-2 . The Mimms asked the court, the Honorable Jocelyn Newman, to appoint Peter McCoy as Burlington's Receiver under S.C. Code § 15-65-10(4), which they admit authorizes a South Carolina court to appoint a receiver only over a dissolved foreign corporation's "property within

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

this state," *id.* at 2, *i.e.*, it does not authorize appointment of a receiver over out-of-state property. Yet the Mimms did not allege, and made no effort to prove, that Burlington has any "property within this state." *Id.* Instead, they offered a single, conclusory sentence to support their requested relief: "It is undisputed that Burlington, because of its dissolution, has forfeited its rights to do business in South Carolina." *Id.*

> **B.    Judge Newman appoints Peter McCoy as Burlington's Receiver in the *Mimms* case, without any allegation or evidence that Burlington has any property in South Carolina.**

On May 12, 2022, without a hearing or evidentiary showing of any kind, Judge Newman issued the Appointment Order granting the Mimms's motion and appointing Mr. McCoy as Burlington's Receiver in the *Mimms* case, relying on S.C. Code § 15-65-10(4). *See* Appointment Order. The Appointment Order specifically says: "this Court hereby appoints Peter McCoy … Receiver *in this case*," *i.e.*, the *Mimms* case. Appointment Order at 1 (emphasis added). The Appointment Order purports to give the Receiver "the power and authority to fully administer all assets of [Burlington], accept service on behalf of [Burlington], engage counsel on behalf of [Burlington], and take any and all steps necessary to protect the interests of [Burlington] whatever they may be." *Id.* at 1. Among other things, it authorizes the Receiver to "collect all accounts receivable of [Burlington] and all rents due to [Burlington] from any tenant," to "change locks to all premises at which any property is situated," to "hire a real estate broker to sell any real property," and to "take all action necessary to gain access to all storage facilities, safety deposit boxes, real property, and leased premises wherein any property of [Burlington] may be situated." *Id.* at 1–2.

The Appointment Order does not find that Burlington has any assets or property in South Carolina over which a South Carolina court—and by extension its Receiver—has any authority

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

to act.  To the contrary, the Appointment Order suggests that the Receiver somehow has

unfettered power over any and all assets or property of Burlington located anywhere in the

world.  The Appointment Order also lacks a clause fixing the value of the property for which a

bond may be given, as prescribed in § 15-65-50.

C.     **The Receiver files a third-party coverage action against Travelers and other insurers in the *Mimms* case but subsequently dismisses Travelers without prejudice.**

On December 1, 2021, Mr. and Ms. Mimms, filed suit against Burlington seeking

damages for alleged bodily injury and "devaluation of their property."  *Mimms v. Burlington*

*Industries, Inc.*, Case No. 2021-CP-40-05873 (5th Judicial Dist., Richland Cnty.), Compl. ¶¶ 8-

10 (the "*Mimms* Compl.").  The Mimms contend that their alleged injuries were caused by

Burlington's ownership and operation of a nearby industrial plant, resulting in the alleged release

of PCBs and other hazardous substances that eventually made their way onto the Mimms's

property.  *See id*.  The Mimms asserted causes of action for negligence and recklessness,

trespass, and nuisance.  *See id*. at ¶¶ 44-78.

On October 21, 2022, Burlington, now under the control of a Receiver, filed a Third-

Party Complaint against Burlington's alleged insurers, including Travelers, even though the

Mimms's action was a personal injury and property damage case that had nothing to do with

insurance coverage issues.  Indeed, the Mimms did not name Travelers, or any other insurance

company, as defendants in their action.  This is not surprising given that Travelers has never

owned or operated the industrial plant that allegedly released the hazardous substances at issue in

the *Mimms* action.  The Burlington Receiver's Third-Party Complaint nevertheless included

allegations and declaratory judgment claims against Travelers, which mirror the sole claim here,

in an improper attempt to litigate insurance coverage issues with respect to the Mimms's claims

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

and other, unidentified claims that the Receiver "believes" "ha[d] been asserted" and hypothetical claims that "will be asserted against Burlington." *See Mimms* Compl. ¶¶ 3-10.

Travelers filed on December 15, 2022, a motion to dismiss the Receiver's third-party complaint in the *Mimms* action. On May 25, 2024, the court denied without explanation Travelers' motion to dismiss in a Form 4 order. *Mimms v. Burlington Industries, Inc.*, Case No. 2021-CP-40-05873 (5th Judicial Dist., Richland Cnty.), May 25, 2023 Form 4 Order. The Receiver then stipulated on August 13, 2024 to a dismissal of its third-party coverage complaint without prejudice as to Travelers. *Mimms v. Burlington Industries, Inc.*, Case No. 2021-CP-40-05873 (5th Judicial Dist., Richland Cnty.), Receiver's Stipulation of Dismissal without Prejudice as to Travelers Casualty and Surety Company and St. Paul Surplus Lines Insurance Company.

**D.    The Receiver files another coverage complaint against Travelers and other insurers in this action.**

On October 22, 2024, the Receiver filed the Complaint against Travelers and other alleged Burlington insurers in the instant case. *See* Compl. dated Oct. 22, 2024. Broadly, the Complaint asserts "an environmental insurance coverage action for declaratory judgment brought under liability insurance policies … issued by defendants to or covering plaintiff Burlington." Compl. ¶ 1. The Receiver seeks declarations related to insurance coverage for "Environmental Actions," which he defines as "claims and demands [that] have been made, or will in the future be made, in various lawsuits, and allege various causes of action, including, without limitation, negligence, trespass, and nuisance arising out of environmental damage and injury allegedly caused by Burlington's ownership or use of property or the conduct of business operations." Compl. ¶ 1. The Receiver alleges on information and belief "that Environmental Actions will continue to be asserted against Burlington alleging property damage or injury from Burlington's ownership and operation of plants used to manufacture textiles and soft goods …." Compl. ¶ 2.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The "Environmental Actions" allegedly relate to "PFAS Chemicals," which the Receiver defines as "any per- or poly-fluoroalkyl substance that contains at least one fully fluorinated methyl or methylene carbon atom." Compl. ¶ 37, n.1.

The Receiver alleges that Travelers issued the following policies to Burlington:

| POLICY NO. | PERIOD | ATTACHMENT | POLLUTION EXCLUSION |
|---|---|---|---|
| 01 XN 186 WCA | 11/11/1971 – 11/11/1974 | $25M | Qualified |
| 01 XN 189 WCA | 12/13/1971 – 10/1/1974 | $25M | Qualified |
| 01 XN 1144 WCA | 10/1/1976 – 10/1/1977 | $50M | Qualified |
| 01 XN 1511 WCA | 10/1/1977 – 10/1/1978 | $50M | Qualified |
| 01 XN 1955 WCA | 10/1/1978 – 10/1/1979 | $25M | Qualified |
| 25 XN 79 WCA | 10/1/1985 – 10/1/1986 | $10M | Absolute |
| 25 XN 81 WCA | 10/1/1985 – 10/1/1986 | $25M | Absolute |
| 25XN 82 WCA | 10/1/1985 – 10/1/1986 | $50M | Absolute |
| 25 XN 104 WCA | 10/1/1986 – 10/1/1987 | $20M | Absolute |
| 25 XN 105 WCA | 10/1/1986 – 10/1/1987 | $25M | Absolute |

(the "Travelers Policies"). Compl. ¶ 43 (attachment point and pollution exclusion columns added by Travelers); *see also* Ex. 3, O'Neill Aff., ¶¶ 3-12, Exs. A-J.

As indicated above, the five pre-1985 policies contain what is commonly referred to as a "qualified" or "sudden and accidental" pollution exclusion, which reads:

> It is agreed that the policy does not apply to EXCESS NET LOSS arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal or escape is sudden or accidental.

*See, e.g.*, Ex. 3, O'Neill Aff., Ex. C at Trav_SUB_012438; *see also* Ex. 3, O'Neill Aff., Exs. A-B, D-E. The later five policies, commencing in in 1985 and after, contain "absolute" pollution exclusions that have no exception for the sudden and accidental discharge of pollutants:

I.      This policy does not apply:

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

    A. to <u>excess net loss</u> arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by <u>pollutants</u>

       1. at or from premises owned by, rented to, or occupied by [Burlington] …

II.     As used in this endorsement:

    …

    "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

*See, e.g.*, O'Neill Aff., Ex. H at TRAV_SUB_012506-07 (emphasis in original); *see also* O'Neill Aff., Exs. F-G, I-J.

In the Complaint's only count, the Receiver seeks various coverage-related declarations. Compl. ¶¶ 68–72. The Receiver requests, among other things, broad declarations that defendants "have a duty to investigate, defend, reimburse and/or indemnify Burlington completely from and against the Environmental Actions." *Id.* ¶ 69.

## **ARGUMENT**

**I.     The purported Burlington Receiver's Complaint should be dismissed with prejudice because the receivership is and always has been unlawful where Burlington is a dissolved foreign corporation and there is no evidence that it has any assets or property in South Carolina.**

    **A.     The appointment of a Receiver is an extraordinary remedy that should be made only when absolutely necessary to protect in-state property.**

"The appointment of a receiver is a drastic remedy, and should be granted only with reluctance and caution." *Midlands Util., Inc. v. S.C. Dep't of Health & Env't Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989) (citation omitted). "[A]s a rule, a receiver will not be appointed during the progress of a cause, unless there is the strongest reason to believe that the plaintiff is entitled to the relief demanded in his complaint, and there is danger that the property

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

will be materially injured before the case can be determined." *Richland Cnty. v. S.C. Dep't of Revenue*, 422 S.C. 292, 313, 811 S.E.2d 758, 769 (2018). Under South Carolina law, "an adjudication of a receivership is a harsh and drastic remedy, one to be granted only with great caution . . . ." *Penn. Mut. Life Ins. Co. v. Cudd*, 172 S.E. 787, 788–89 (S.C. 1934); *see also, e.g.*, 65 Am. Jur. 2d Receivers § 9 (2024) ("The appointment of a receiver is an extraordinary remedy, considered harsh, dangerous, severe, and drastic, only to be made cautiously, reluctantly, and with circumspection in cases of clear necessity to protect the plaintiff's property interests and rights. In general, a receiver should only be appointed in extreme cases, and clear and urgent cases when necessary for the protection of the parties and on a clear showing of a danger of irreparable loss or a danger of material injury." (footnotes and citations omitted)).

Further, a receiver is not supposed to be an advocate for one side or another. Rather, "[a] receiver is an indifferent person between parties . . . . He is an officer of the court; his appointment is provisional. He is appointed in [sic] behalf of all parties, and not of the complainant or of the defendant only. He is appointed for the benefit of all parties who may establish rights in the cause." *Booth v. Clark*, 58 U.S. 322, 331 (1854); *see also Penn. Mut. Life Ins. Co.*, 172 S.E. at 788–89 ("This court . . . has also, time after time, indicated that the receiver appointed should be untrammelled [sic] in his relations, entirely indifferent between the parties, and absolutely fair and impartial, for the receiver not only represents all the parties interested in the estate, but he is an officer of the court.").

Here, in seeking the appointment of Mr. McCoy as Burlington's Receiver, the Mimms plaintiffs simply suggested—without any proof of any kind—that Burlington "apparently[] disposed of its assets," and that, "apparently, all that remains of [Burlington] is its insurance coverage." *See Mimms v. Burlington Industries, Inc.*, No. 2021-CP-40-05873 (S.C. Court of

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Common Pleas, Richland Cnty.), Motion to Appoint, filed Mar. 24, 2022.  The Mimms did not allege, let alone prove, that Burlington has any assets or property in South Carolina.  And the *Mimms* court did not find that any in-state assets or property exist.  Nonetheless, without a hearing or evidentiary presentation of any kind, the *Mimms* court quickly granted the Mimms's motion and issued the Appointment Order, purporting to appoint Mr. McCoy as Burlington's Receiver in the *Mimms* case.  Appointment Order at 1.

     In so doing, the *Mimms* court clearly exceeded its authority and overstepped South Carolina's well-settled limitations on the drastic remedy of a receivership.  South Carolina's appellate courts have made clear that a motion to appoint a receiver should be granted only with "reluctance and caution," *Midlands Util., Inc.*, 301 S.C. at 228, and only when "there is the strongest reason to believe that the plaintiff is entitled to the relief demanded in his complaint, and there is danger that the property will be materially injured before the case can be determined," *Richland Cnty.*, 422 S.C. at 313 (quoting *Pelzer v. Hughes*, 27 S.C. 408, 416, 3 S.E. 781, 785 (1887)) (internal quotation marks omitted); *see also Penn. Mut. Life Ins. Co.*, 172 S.E. at 788–89 ("adjudication of a receivership is a harsh and drastic remedy, one to be granted only with great caution").  Here, the Mimms presented absolutely no evidence to support their motion, much less evidence of in-state property that would be "materially injured" if a receiver is not appointed.  The Receivership is improper and has been from the outset and should be disregarded by this Court and dissolved by the *Mimms* court.  To be clear, however, Travelers is not asking this Court to vacate the Appointment Order.  But this Court can disregard the Appointment Order because it was void as a matter of law when issued.  *See Porter*, 149 S.C. 151, n.1, 146 S.E. at 814 ("If the court is without jurisdiction to appoint a receiver the order is void and may be attacked or disregarded whenever it comes collaterally in question.  [] If it appears upon the face

of the proceedings that a Court's order appointing a receiver was without authority of law, and, therefore, void, the order may be assailed collaterally and with impunity by anybody.") (concurring opinion, citation omitted).

### B. A South Carolina state court does not have the power to appoint a receiver over out-of-state assets or property.

It is undisputed that Burlington is a dissolved Delaware corporation and that the *Mimms* court relied on this fact in its Appointment Order. *See supra* at 4. The court based its appointment decision solely on section 15-65-10(4) of South Carolina's receivership statute, *see id.*, which provides that a South Carolina state court may appoint a receiver over a foreign corporation only with respect to its "property within this State," if any. The South Carolina statute states in no uncertain terms:

> A receiver may be appointed by a judge of the circuit court, either in or out of court . . . . [w]hen a corporation has been dissolved, is insolvent or in imminent danger of insolvency or has forfeited its corporate rights, *and, in like cases, of the property within this State of foreign corporations* . . . .

S.C. Code § 15-65-10(4) (emphasis added); *see also, e.g.*, *Protopapas v. Whittaker, Clark & Daniels, Inc.*, No. 23-4151 (ZNQ), 2024 WL 2796449, at *6 (D.N.J. May 31, 2024) ("The enacting statute in question limits the power of a receiver over a foreign corporation to 'the property within this state.' S.C. § 15-65-10(4). This is intuitive – traditionally, a state court's power is limited to its territorial boundaries." (citations omitted)).

Therefore, a South Carolina court may appoint a receiver only over Burlington's "property within" South Carolina. Here, however, there is no allegation or evidence that any such property exists, and the *Mimms* court did not find that any such property exists. The Appointment Order is thus unlawful on its face as it purports to give the Receiver unfettered power over any and all assets and property of Burlington located anywhere in the world.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The South Carolina Supreme Court has confirmed that the statute means what it says: if a foreign corporation has property in South Carolina, a South Carolina court may appoint a receiver over that in-state property; if a foreign corporation has no in-state property, no receiver may be appointed. *See Boynton v. Consol. Indem. & Ins. Co.*, 185 S.E. 731, 737 (S.C. 1936) (reversing appointment of receiver where there was a "total failure of any proof" that the foreign company "has property in this state"). Here, as in *Boynton*, the appointment must be terminated and discontinued because there was a "total failure of any proof" that Burlington "has property in this state."

The circumscribed nature of state receiverships over foreign corporations is a basic principle of state receivership law. "That a receiver has no extraterritorial authority is too well settled to require the citation of authority." *Frink v. Nat'l Mut. Fire Ins. Co.*, 74 S.E. 33, 36 (S.C. 1912). South Carolina law is clear: South Carolina courts have no power or jurisdiction to appoint a receiver over a foreign corporation that has no assets in this State. *See id.*; *Boynton*, 185 S.E. at 737 (reversing appointment of receiver over a foreign corporation without "property in this state"); *Pollock v. Carolina Interstate Bldg. & Loan Ass'n*, 25 S.E. 977, 980 (S.C. 1896) ("'The power of a receiver only extends to the boundaries of the territorial jurisdiction of the court appointing him.'" (quotation omitted)).

The boundaries of the state court's authority are consistent with United States Supreme Court precedent, which recognizes that a receiver appointed by a state court has jurisdiction only over in-state assets, if any exist. *See Booth*, 58 U.S. at 332 (holding with respect to a New York appointed receiver, "whatever may be the receiver's rights under a creditor's bill, to the possession of the property of the debtor in the State of New York, or the permissions which may be given to him to sue for such property, we understand the decisions of that State as confining

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

his action to the State of New York."); *Hale v. Allinson*, 188 U.S. 56, 68 (1903) ("We do not think anything has been said or decided in this court which destroys or limits the controlling authority of" *Booth*); *Great W. Mining & Mfg. Co. v. Harris*, 198 U.S. 561, 576 (1905) (a "receiver's right to sue in a foreign jurisdiction is not recognized upon principles of comity, and the court of his appointment can clothe him with no power to exercise his official duties beyond its jurisdiction.").

Many other cases are in accord.  *See, e.g.*, *McGraw v. Mott*, 179 F. 646, 654 (4th Cir. 1910) ("the receiver appointed by the court in one state has no power to take charge of, sell, or dispose of property in another state, or to institute suits in the courts of such other state, except by way of comity"; "[t]hat a receiver is an officer of the court appointing him, and can exercise no power or maintain any legal status except within the territorial limits of the court, is settled."); *Coltrane v. Templeton*, 106 F. 370, 375 (4th Cir. 1901) ("The receiver appointed in the Maryland district has no extraterritorial existence."); *Fowler v. Osgood*, 141 F. 20, 24 (8th Cir. 1905) ("the only method for reaching the property or assets of an insolvent corporation in a jurisdiction foreign to that where the receiver in chancery is appointed is by resort to an ancillary receivership where the property or asset sought to be recovered has its situs or where the debtor resides."); 17A FLETCHER CYC. CORP. § 8554, *Jurisdiction and power to appoint receivers— General receivers* ("But where the corporation has no property in the state, there would be nothing for the receiver to take under control, and the appointment would be an idle act that the courts cannot be called upon to perform.") (collecting cases); *id.* § 8555, *Receivers to take charge of local assets* ("While denying the power to appoint a general receiver, the authorities agree that equity has jurisdiction to prevent the dissipation and misapplication of assets of the foreign corporation within the state, and if necessary, to appoint a receiver of the assets . . .")

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

(collecting cases); 75 C.J.S. RECEIVERS § 475 ("In accordance with the general rule as to extraterritorial rights, neither the court nor the receiver appointed by it has authority over property beyond the boundaries of its territorial jurisdiction.").

This in-state-only limitation is rooted in the constitutional requirement that a state law cannot have extraterritorial effect; to suggest otherwise would run afoul of, at least, the Commerce Clause, which gives Congress alone the authority to regulate interstate commerce:

> The South Carolina Supreme Court has written repeatedly that South Carolina statutes have no extraterritorial effect because the general rule is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction.
>
> * * *
>
> The principle that state laws may not generally operate extraterritorially is one of constitutional magnitude. One state may not "project its legislation" into another, as the Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State."

*Carolina Trucks & Equip., Inc. v. Volvo Trucks of N.A., Inc.*, 492 F.3d 484, 489–90 (4th Cir. 2007) (cleaned up).  A receiver's ability to marshal property across state lines undoubtedly involves interstate commerce, as Congress has limited when such authority exists and has made such a remedy available only through the federal courts.  *See* 28 U.S.C. §§ 754, 3103.  By attempting to displace federal receivership law with a South Carolina statute, the Court's Appointment Order directly contradicts the Supremacy Clause as well.  *See* U.S. CONST. art. VI, cl. 2.  Attempting to enforce a South Carolina receivership statute against an entity over which it has no personal jurisdiction also violates the Due Process Clause.  *See Cockrell v. Hillerich & Bradsby Co.*, 363 S.C. 485, 491–92, 611 S.E.2d 505, 508 (2005).

The Appointment Order should be vacated and the Receivership should be discontinued because a South Carolina state court simply does not have the power or jurisdiction to appoint a

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

South Carolina state court Receiver over a dissolved foreign corporation's foreign property. Because the Appointment Order has always been unlawful, this Court should disregard it and find that the purported Burlington Receiver had no authority or standing to bring this action and has no authority or standing to maintain this action. *See Porter*, 149 S.C. 151, n.1, 146 S.E. at 814. Without that authority or standing, this action must be dismissed with prejudice.

**C.     Burlington's insurance policies are not South Carolina property.**

To the extent the Receiver argues that Burlington's alleged insurance policies constitute assets or property located in South Carolina, any such argument must be rejected. The South Carolina Supreme Court has made clear that liability insurance policies are not property subject to in rem jurisdiction. *See Howard v. Allen*, 254 S.C. 455, 459, 176 S.E.2d 127, 128 (1970) ("We are not convinced that the contractual obligations of defendant's insurer are a debt subject to attachment under the law of this state and a review and analysis of decisions from other states would, we think, serve no useful purpose.").

As a matter of law, the situs of intangible property such as a contractual obligation under an insurance policy is the domicile of the debtor/obligor—here, neither Travelers nor any of the other alleged Burlington insurers is domiciled in South Carolina. *See, e.g.*, *H.J. Baker & Bro. v. Doe*, 70 S.E. 431, 433 (S.C. 1911) ("'The general rule of law is well settled that for the purposes of founding administration, all simple contract debts are assets at the domicile of the debtor.'" (citation omitted)); *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371–72 (5th Cir. 2004) *decision clarified on reh'g*, 389 F.3d 503 (5th Cir. 2004) ("[C]ourts consistently hold that the situs of a debt obligation is the situs of the debtor . . . . [T]his rule's general operation has been recognized by the Supreme Court." (citations omitted)); *Long v. Baldt*, 464 F. Supp. 269, 273 n.3 (D.S.C. 1979) ("the situs of the debt lies with the debtor").

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Receiver admits that Travelers is incorporated in and has its principal places of business in Connecticut.  *See* Compl. ¶ 14; *see also* Ex. 4, Affidavit of Ann B. Mulcahy ¶¶ 3–4. The other Defendants are also indisputably domiciled outside of South Carolina.  *See* Compl. ¶¶ 13-32.  As a matter of law, insurance policies that non-South Carolina-domiciled insurance companies allegedly issued to Delaware-incorporated Burlington and delivered to its North Carolina headquarters are not South Carolina property.

Because Burlington is a dissolved foreign corporation, and there is no evidence that it has any assets or property in South Carolina, the Appointment Order has been improper since its issuance and therefore must be disregarded by this Court, resulting in a complete dismissal of this action.  *See Porter*, 149 S.C. 151, n.1, 146 S.E. at 814.

> **D.     The Appointment Order also fatally omits a clause fixing the value of the property for which [a] bond may be given.**

Even if the *Mimms* court had authority to impose a receivership over Burlington, the Burlington Receiver was not properly appointed because the Appointment Order failed to specify the value of the property to be held in receivership.  South Carolina law requires that courts appointing a receiver before final judgment "shall" include in the appointment order "a clause fixing the value of the property for which [a] bond may be given."  S.C. Code § 15-65-60. Because "[t]he appointment of a receiver is a drastic remedy, and should be granted only with reluctance and caution," *Midlands Util.*, 301 S.C. at 228, 391 S.E.2d at 538, South Carolina courts have long held that failure to satisfy statutory safeguards, like the bond requirement, voids the appointment order. *Truesdell v. Johnson*, 144 S.C. 188, 142 S.E. 343, 348 (1928) ("The provision for inserting a clause fixing the value of the property in the order appointing a receiver is mandatory, and without such clause the order is void.").  Thus, the Appointment Order is void

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

because it is missing the required "clause fixing the value of the property for which [a] bond may be given." *See id*.

> **E.**     **For the same reasons, the purported Burlington Receiver does not have standing or authority to pursue claims, including this action, on Burlington's behalf.**

Standing is a "fundamental requirement in instituting an action." *Joseph v. S.C. Dep't of Lab., Licensing & Regul.*, 417 S.C. 436, 466, 790 S.E.2d 763, 779 (2016). In order for a party to have standing to bring an action, the party must have "a real, material, or substantial interest in the subject matter of the action." *Id.*; *see also Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 600, 550 S.E.2d 287, 291 (2001). "No justiciable controversy is presented unless the plaintiff has standing to maintain the action." *Brock v. Bennett*, 313 S.C. 513, 519, 443 S.E.2d 409, 413 (Ct. App. 1994). "Once it is determined a plaintiff has no standing to prosecute, the court must dismiss the action." *Id.* It is black-letter law that a plaintiff may not seek recovery on a claim that belongs to another, or that he otherwise lacks a right to bring. *See, e.g.*, *Furman Univ. v. Livingston*, 244 S.C. 200, 204, 136 S.E.2d 254, 256 (1964) ("It is fundamental that one without interest in the subject matter of a law suit has no legal standing to prosecute it."); *Duke Power Co. v. S.C. Pub. Serv. Comm'n*, 284 S.C. 81, 96, 326 S.E.2d 395, 404 (1985) ("In order to have standing to present a case before the courts of this State, a party must have a personal stake in the subject matter of the lawsuit.") (citation omitted).

Here, the purported Receiver does not allege any personal right or interest in the matters asserted in his Complaint. Instead, his right to sue is wholly dependent on, and derivative of, his claimed authority as Receiver for Burlington. *See Nat'l Cash Reg. Co. v. Burns*, 217 S.C. 310, 313, 60 S.E.2d 615, 617 (1950) ("A primary concept of the law of receivers is that a receiver stands in the shoes of the debtor …."); *In re Am. Slicing Mach. Co.*, 118 S.E. 303, 304 (S.C.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

1923) ("[I]t is clear that the appointment by the court can vest in the receiver no greater interest than the insolvent possessed."). The power of a receiver is no greater than that of the court that appointed him and extends only to the boundaries of the territorial jurisdiction of the appointing court, here, South Carolina. As explained above, there is no evidence of any Burlington assets or property in South Carolina over which a South Carolina state court, and by extension the Receiver, has any power to act. The purported Receiver thus lacks standing to administer or liquidate Burlington's alleged insurance policies or to otherwise pursue any claims on Burlington's behalf.

      **F.**      **The purported Receiver's appointment is confined to the *Mimms* case in which he was appointed.**

Finally, the Receiver was purportedly appointed in the *Mimms* case only. Despite the issues with the Appointment Order discussed above, the order specifically says that the Receiver's appointment is limited to the *Mimms* case. *See* Appointment Order at 1 ("this Court hereby appoints Peter McCoy be and hereby is appointed Receiver *in this case*," *i.e.*, the *Mimms* case) (emphasis added). The words of the Appointment Order control the scope of the Receiver's purported authority. *See Protopapas*, 2024 WL 2796449, at *5–8 (holding that the scope of the receiver's authority is bound by the four corners of the appointment order, and rejecting the receiver's argument that subsequent remarks made by Justice Toal could expand or alter the receiver's authority). By filing a new lawsuit and attempting to operate beyond the *Mimms* case, the Receiver's litigation conduct exceeds the boundaries of his authority.

**II.**      **The Court lacks personal jurisdiction over Travelers.**

Under Rule 12(b)(2), SCRCP, a court must grant a motion to dismiss where the plaintiff fails to allege plausible facts supporting the exercise of personal jurisdiction over the non-resident defendant. *See Power Prods. & Servs. Co. v. Kozma*, 379 S.C. 423, 430, 665 S.E.2d

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

660, 664 (Ct. App. 2008). "The party seeking to invoke personal jurisdiction over a non-resident defendant . . . bears the burden of establishing jurisdiction." *Id.* (citation omitted). "When a nonresident defendant attacks the allegations of a complaint based on jurisdiction, the court is not confined to the allegations of the complaint but may resort to affidavits or other evidence to determine jurisdiction." *Id.* (citation omitted). "Personal jurisdiction over a nonresident defendant is a question to be resolved upon the facts of each particular case." *Id.* (citation omitted). Because South Carolina's long-arm statute has been interpreted to apply coextensively with the limits of due process, the sole question eventually "becomes whether the exercise of personal jurisdiction in this case would violate the strictures of due process." *Id.* (citation omitted); *see also, e.g.*, *S. Plastics Co. v. S. Com. Bank*, 310 S.C. 256, 260, 423 S.E.2d 128, 130 (1992) ("the question becomes whether the exercise of personal jurisdiction over the [nonresident defendant] comports with due process.").

"Due process requires that there exist minimum contacts between the defendant and the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Hidria, USA, Inc. v. Delo*, 415 S.C. 533, 541, 783 S.E.2d 839, 843 (Ct. App. 2016) (citation omitted). There are two prongs to the due process analysis: "(1) the 'power' prong, under which minimum contacts grant a court the 'power' to adjudicate the action; and (2) the 'fairness' prong, which requires the exercise of jurisdiction to be 'reasonable' or 'fair.'" *Id.* (citation omitted). The plaintiff bears the burden of satisfying both; if either prong fails, the exercise of personal jurisdiction over the nonresident defendant does not comport with the requirements of due process. *See id.* (citations omitted). Here, there is no basis for the Court to exercise either general or specific personal jurisdiction over Travelers.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### A.       The Court does not have general jurisdiction over Travelers.

The Receiver does not allege, and cannot show, that Travelers is subject to general personal jurisdiction in South Carolina.  "General jurisdiction is the State's right to exercise personal jurisdiction over a defendant even though the suit does not arise out of or relate to the defendant's contacts with the forum[.]"  *Coggeshall v. Reprod. Endocrine Assocs. of Charlotte*, 376 S.C. 12, 16, 655 S.E.2d 476, 478 (2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15 (1985)).  A nonresident corporation must have substantial contacts with the forum state to support a court's exercise of general jurisdiction when the nonresident's contacts do not directly relate to the plaintiff's cause of action.  *See Cockrell*, 611 S.E.2d at 508 (citations omitted).

Subject to the constraints imposed by federal due process, general jurisdiction is determined under S.C. Code Ann. § 36-2-802, which states: "A court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, doing business, or maintaining his or its principal place of business in, this State as to any cause of action."  For general jurisdiction to attach, the foreign corporation's activities or affiliations within the forum state must be "so continuous and systematic as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citation and internal quotation marks omitted); *see also Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, 3:15-cv-01300-JMC, 2016 WL 6781057, at *5 (D.S.C. Nov. 16, 2016) ("general jurisdiction requires affiliations so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State, *i.e.*, comparable to a domestic enterprise in that State" (citation and internal quotation marks omitted)).  "[O]nly a limited set of affiliations with a forum" can satisfy the "essentially at home" requirement.  *Daimler*, 571 U.S. at 137.  Thus, in order to haul a

nonresident corporation into court to answer for claims that have nothing to do with the corporation's activities in or contacts with the forum state, the corporation must have substantial contacts with the forum state. *See Gibson v. Confie Ins. Grp. Holdings, Inc.*, 2:16-CV-02872-DCN, 2017 WL 2936219, at *5 (D.S.C. July 10, 2017) ("The threshold level of contacts with the forum state required for the exercise of general jurisdiction is significantly higher than for specific jurisdiction and must be fairly extensive." (citation omitted)).

A corporation typically will be found "at home" only in its state of incorporation and the state in which it has its principal place of business. *See Sutton v. Motor Wheel Corp.*, No. 3:17-01161-MGL, 2018 WL 2197535, at *3 (D.S.C. May 14, 2018) (citation omitted); *see also Daimler*, 571 U.S. at 137 ("the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'" (citations omitted)).  Only "in an exceptional case" may "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [] be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19.  This exception is very limited, and plaintiffs face a heavy burden in proving it applies.  *See Daimler*, 571 U.S. at 138 (rejecting as "unacceptably grasping" the proposition that a party can be subject to general jurisdiction in every state in which it "engages in a substantial, continuous, and systematic course of business").[4]

---

[4] *See also, e.g.*, *Companion Prop. & Cas. Ins. Co.*, 2016 WL 6781057, at *7 (noting a party asserting general jurisdiction under *Daimler*'s "exceptional case" exception "faces a heavy burden," and rejecting argument that foreign corporation was at home in South Carolina (citations omitted)); *Maseng v. Lenox Corp.*, 483 F. Supp. 3d 360, 368–69 (D.S.C. 2020) ("Lenox's contacts with South Carolina are limited to one retail store in Myrtle Beach, South Carolina and the marketing, distribution, and sale of its own products in various retail stores in South Carolina. The Myrtle Beach retail store is one of the 20 retail stores that Lenox operates in 12 states. . . . Thus, while this contact is certainly systematic and continuous, it is not substantial enough to render Lenox 'at home' in South Carolina."); *Sunny Days Entm't, LLC v. Traxxas,*

Here, there is no basis for the assertion of general jurisdiction over Travelers. Travelers is incorporated in and has its principal places of business in Connecticut, *see supra* at 19, and the Receiver cannot possibly meet his heavy burden of showing that Travelers' contacts with South Carolina are so continuous and systematic as to render Travelers essentially at home in South Carolina.

The Receiver does not even allege that Travelers is subject to general jurisdiction in South Carolina, let alone explain how it could be. That is reason alone to reject any argument that Travelers is at home in South Carolina. But even if the Court were to look past this pleading deficiency, Travelers' limited activities in South Carolina are plainly insufficient to render Travelers at home in South Carolina. As set forth in the accompanying Affidavit of Ann B. Mulcahy:

- Travelers is incorporated in and has its principal place of business in Connecticut (*see* Ex. 4 at ¶ 3);

- Its business operations are managed principally from its Connecticut offices (*see id.* at ¶ 4);

- None of its senior officers or directors is located in South Carolina (*see id.* at ¶ 5);

- It does not own or rent office space in South Carolina (*see id.* at ¶ 7.c);

- It does not have any loan applications with South Carolina banks or financial institutions (*see id.* at ¶ 7.d); and

- It does not hold meetings of directors in South Carolina (*see id.* at ¶ 7.e).

---

*L.P.*, 376 F. Supp. 3d 654, 660–61 (D.S.C. 2019) (nonresident company that sold toys to South Carolina customers through brick and mortar stores and online not subject to general jurisdiction in South Carolina); *Fidrych v. Marriott Int'l, Inc.*, No. 2:17-2195-BHH, 2018 WL 9811052, at *6 (D.S.C. Aug. 3, 2018) *aff'd in part, vacated in part, remanded*, 952 F.3d 124 (4th Cir. 2020) (nonresident corporation with 90 hotels and certificate of authority to transact business in South Carolina not subject to general jurisdiction in South Carolina).

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Simply put, Travelers is not "at home" in South Carolina, and the Receiver does not assert otherwise.  Travelers' limited contacts with South Carolina relate solely to its insuring relationship with certain South Carolina businesses and residents.  And Burlington, a dissolved Delaware corporation, is not one such business.

**B.      The Court also lacks specific jurisdiction over Travelers.**

Specific jurisdiction exists where the plaintiff's claims arise out of or relate to the defendant's substantial contacts with the forum state.  *See Coggeshall*, 655 S.E.2d at 478 ("Specific jurisdiction is the State's right to exercise personal jurisdiction because the cause of action arises specifically from a defendant's contacts with the forum" (citation omitted)); *Maseng*, 483 F. Supp. 3d at 365 ("A defendant has minimum contacts with a jurisdiction sufficient to subject it to specific jurisdiction in the forum state if 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" (quotation omitted)).  Because South Carolina's long-arm statute has been interpreted to be coextensive with the limits of due process, the dispositive question for purposes of specific jurisdiction is whether the exercise of jurisdiction would comport with due process. *See Coggeshall*, 655 S.E.2d at 478; *S. Plastics Co.*, 423 S.E.2d at 131.

To comport with due process in the specific jurisdiction context, the Receiver must allege plausible facts sufficient to satisfy both the "power" prong and the "fairness" prong.  *See Hidria, USA, Inc.*, 783 S.E.2d at 843.  "The court must (1) find that the defendant has the requisite minimum contacts with the forum, without which, the court does not have the 'power' to adjudicate the action and (2) find the exercise of jurisdiction is reasonable or fair." *Power Prods. & Servs. Co.*, 665 S.E. 2d at 665 (citation omitted).  "'If either prong fails, the exercise of personal jurisdiction over the defendant fails to comport with the requirements of due process.'"

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*Id.* (quotation omitted). The Receiver does not come close to alleging specific jurisdiction facts sufficient to satisfy his burden as to either the "power" or the "fairness" prong.

1.      **The power prong is not met.**

"A minimum contacts analysis requires a court to find that the defendant directed its activities to a resident of this State and that the cause of action arises out of or relates to those activities." *S. Plastics Co.*, 423 S.E.2d at 131 (citation omitted). Here, Travelers did not purposefully avail itself of the privileges of conducting business activities in South Carolina in connection with the Receiver's sole declaratory judgment claim in this case, given that there are no factual allegations (let alone evidence) that Travelers did anything in South Carolina that could serve as the basis for the Receiver's claim against Travelers.

In his Complaint, the Receiver alleges only that "[t]his Court has jurisdiction over the matters alleged herein pursuant to S.C. Code Ann. §§ 36-2-802 and 36-2-803, Article V of the Constitution of the State of South Carolina, and the Court's plenary powers," and that "[t]he Court appointed the Receiver." Compl. ¶ 33. There are no jurisdictional allegations specific to Travelers. This is reason alone to find that specific personal jurisdiction is lacking. *See Sullivan v. Hawker Beechcraft Corp.*, 397 S.C. 143, 150, 723 S.E.2d 835, 839 (Ct. App. 2012) (the mere "repeating of the [long-arm] statute is insufficient to support a finding of personal jurisdiction").

Beyond this pleading deficiency, the Receiver cannot demonstrate the minimum, claim-specific contacts between Travelers and South Carolina necessary to meet the constitutional requirements of due process. The Receiver's claim against Travelers does not arise from or relate to Travelers' contacts with South Carolina. The Receiver seeks insurance-related declarations that have nothing to do with Travelers' limited contacts with South Carolina. The Receiver has not alleged, and cannot allege, that Travelers directed any Burlington-related

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

activities at residents of South Carolina, or that the Receiver's claims against Travelers in this case arise out of any such in-state activities. Indeed, neither Burlington nor Travelers is a South Carolina company, and Travelers is not alleged to have ever manufactured, distributed, or sold allegedly hazardous substances or PFAS chemicals in South Carolina or elsewhere.

To the extent the Receiver argues that Travelers should have foreseen that Burlington would be subject to environmental lawsuits in South Carolina, foreseeability alone is insufficient to establish personal jurisdiction. *See Cockrell*, 611 S.E.2d at 509 ("The foreseeability that is critical to due process analysis" is that "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." (citation omitted)). The Receiver cannot avoid the absence of jurisdiction over Travelers by attempting to impute the South Carolina contacts of Burlington or others, if any; the relevant contacts for jurisdictional purposes "must center on the contacts generated by the defendant and not on the unilateral actions of some other entity[.]" *Id.* at 508 (citation omitted); *see also Moosally v. W.W. Norton & Co.*, 358 S.C. 320, 334, 594 S.E.2d 878, 885 (Ct. App. 2004) ("Because the due process requirements must be met as to each defendant, we must assess individually each defendant's contacts with South Carolina." (citations omitted)); *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" (citation omitted) (emphasis in original)). The United States Supreme Court has made clear that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

U.S. 408, 417 (1984) (citations omitted).[5]  Thus, contacts that persons other than Travelers may have had with South Carolina are irrelevant to the question of whether Travelers has sufficient minimum contacts with South Carolina to give rise to specific personal jurisdiction over Travelers in this case.

Because the Receiver fails to allege facts sufficient to demonstrate that Travelers conducted activities in South Carolina to serve as the basis for his claim against Travelers, the exercise of personal jurisdiction over Travelers would violate due process under the power prong of the due process analysis.

### 2.     The fairness prong also is not met.

It would also be unreasonable and unfair for the Court to exercise personal jurisdiction over Travelers in this case.  Under the fairness prong of the due process analysis, a court should consider: "(1) the duration of the activity of the nonresident within the state; (2) the character and circumstances of the commission of the nonresident's acts; (3) the inconvenience resulting to the parties by conferring or refusing to confer jurisdiction over the nonresident; and (4) the State's interest in exercising jurisdiction."  *Power Prods. & Servs. Co.*, 655 S.E.2d at 665 (citation omitted).  Each of these considerations weighs in favor of declining to exercise jurisdiction over Travelers in this case.

---

[5] *See also, e.g.*, *Wallace v. Yamaha Motors Corp., U.S.A.*, No. 9:19- cv-0730-DCN, 2019 WL 6170419, at *3 (D.S.C. Nov. 20, 2019) *aff'd sub nom. Wallace v. Yamaha Motors Corp., U.S.A.*, No. 19-2459, 2022 WL 61430 (4th Cir. Jan. 6, 2022) (finding personal jurisdiction could not be exercised over a nonresident motorcycle manufacturer for product liability claims stemming from a vehicular accident because "conduct of plaintiffs or third parties that creates a connection between the defendant and the forum state will be disregarded"); *Sutton v. Motor Wheel Corp.*, 2018 WL 2197535, at *5 (finding personal jurisdiction did not exist over the defendant, a tire manufacturer, based on the contacts of a distributor of defendant's tires that was authorized to transact business in South Carolina).

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

With respect to the first two factors, Travelers' activities in South Carolina are not only limited, but they are entirely unrelated to the facts and circumstances of the Receiver's claims against Travelers. As explained, Travelers is incorporated in Connecticut, its principal place of business is in Connecticut, none of its senior officers or directors is located in South Carolina, and it does not own or rent office space in South Carolina. *See supra* at 25–26. In addition, Burlington is a dissolved Delaware corporation, not a South Carolina corporation, and Travelers is not alleged to have done anything in or directed to South Carolina that forms the basis for the Receiver's claims against Travelers in this case.

With respect to the third factor, no party would be inconvenienced if this Court were to find that it does not have jurisdiction over Travelers as it does not reside in South Carolina, and Burlington is a dissolved Delaware corporation.

Finally, South Carolina's interest in exercising jurisdiction over Travelers here is virtually nonexistent. Travelers is a Connecticut corporation whose contacts with South Carolina are extremely limited and unrelated to the claim in this case. *See supra* at 25-29.

Thus, even if the Receiver could establish the minimum contacts necessary to meet the constitutional requirements of due process under the power prong (it cannot), the Court should not exercise jurisdiction over Travelers under the fairness prong because it would be neither reasonable nor fair.

**III.    The Receiver's action fails to state a claim as a matter of law because coverage for the "Environmental Actions" is excluded as a matter of law under the pollution exclusions in the Travelers Policies.**

Even if the Court were to find that the Receiver was properly appointed and that it can exercise personal jurisdiction over Travelers, the Receiver's Complaint should still be dismissed because it fails to state a claim for relief as a matter of law. This is because coverage for the

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

alleged damage is barred under the clear and unambiguous pollution exclusions in the Travelers Policies.

"At the outset of any action for a declaratory judgment it must be determined whether the pleadings state a cause of action." *West v. West*, 263 S.C. 146, 148, 208 S.E.2d 530, 532 (1974) (citations omitted).  It is well-established that "a court may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 993 F. Supp. 2d 581, 589 (D.S.C. 2014) (quotation omitted); *see also Romero v. Nat'l Gen. Ins. Co.*, 663 F. Supp. 3d 489, 492 n.2 (D.S.C. 2023) ("courts may consider 'documents incorporated into the complaint by reference ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'") (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

"Under South Carolina law, 'an insurer's duty to defend is based on the allegations of the underlying complaint' and the terms of the policy." *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 993 F. Supp. 2d 581, 589 (D.S.C. 2014) (quoting *B.L.G. Enters, Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 536, 514 S.E.2d 327, 330 (1999)); *see also Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 319 S.C. 12, 15 (Ct. App. 1994), *aff'd*, 321 S.C. 310 (1996) ("the duty of a liability insurance company to defend a claim brought against its insured [is] determined by the allegations of the third party's complaint.").  "If the facts alleged in a complaint against an insured fail to bring a claim within policy coverage, an insurer has no duty to defend." *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 677 S.E.2d 574, 578 (2009); *see also Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 379 S.C. 573, 577, 666 S.E.2d 897,

899 (2008). "If an insurer has no duty to defend, it has no duty to indemnify." *Kinsale Ins. Co.*

*v. Seaboard Ventures Inc.*, 670 F. Supp. 3d 272, 277 (D.S.C. 2023).

"Insurance policies are subject to the general rules of contract construction." *USAA*

*Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 655, 661 S.E.2d 791, 797 (2008) (quoting *B.L.G.*

*Enters., Inc.*, 334 S.C. at 535, 514 S.E.2d at 330). "Courts must enforce, not write, contracts of

insurance, and their language must be given its plain, ordinary and popular meaning." *Id.*

(quoting *Sloan Const. Co. v. Cent. Nat. Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818,

819 (1977)). "When a contract is unambiguous, clear, and explicit, it must be construed

according to the terms the parties have used." *Id.* (quoting *B.L.G. Enters., Inc.*, 334 S.C. at 535,

514 S.E.2d at 330). Thus, "an insurer has no duty to defend[—much less indemnify—]an

insured where the damage was caused for [sic] a reason unambiguously excluded under the

policy." *Id.*

Here, the Receiver seeks a declaration that Travelers and the other Defendants "under

their Policies and applicable law, have a duty to investigate, defend, reimburse and/or indemnify

Burlington completely from and against the Environmental Actions,"[6] along with other specific

coverage-related declarations as to the "interpretation and meaning" of the at-issue policies.

---

[6] For easy reference, Paragraph 1 of the Receiver's Complaint defines "Environmental Actions" as follows:

> By this complaint, the plaintiff seeks declarations that defendants are obligated to pay the costs and expenses of investigation and defense and/or legal liabilities, in connection with claims and/or demands brought against Burlington seeking damages because of property damage and/or injury. These claims and demands have been made, or will in the future be made, in various lawsuits, and allege various causes of action, including, without limitation, negligence, trespass, and nuisance arising out of environmental damage and injury allegedly caused by Burlington's ownership or use of property of the conduct of business operations (the "Environmental Actions").

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Compl. ¶¶ 69-70.  The Receiver also alleges that the "Environmental Actions" stem from "Burlington's ownership and operation of plants used to manufacture textiles and soft goods, including injury from Burlington's discharge or release of allegedly hazardous substances, toxic chemicals, contaminants and products …."  Compl. ¶ 2.

  The Travelers Policies bar coverage for liability "arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body or water …."  *See, e.g.*, Ex. 3, O'Neill Aff., Ex. C at Trav_SUB_012438; *see also* Ex. 3, O'Neill Aff., Ex. H at TRAV_SUB_012506-07.  Courts, including those applying South Carolina law, hold that these types of exclusions bar coverage for claims like the "Environmental Actions" at issue here.  *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 642, 594 S.E.2d 455, 460 (2004) ("After reviewing the record, we find that the contamination at the various sites was caused by [the insured's] routine business operations and was, therefore, not unexpected and accidental. For that reason, we hold that [the insured's] claims do not fall within the exception to the pollution exclusion, and thus the insurance companies are not liable for the environmental cleanup in this case."); *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 910 F. Supp. 2d 828, 836 (D.S.C. 2012), *aff'd sub nom. Ross Dev. Corp. v. PCS Nitrogen Inc.*, 526 F. App'x 299 (4th Cir. 2013) (holding that qualified and absolute pollution exclusions substantively similar to those at issue here bar coverage for property damage caused by the insured's placement of pyrite slag into the ground, which "[t]he court f[ound] … constitutes the 'disposal' of 'waste'"); *see also* 9 Couch on Ins. § 127:14, Absolute pollution exclusion ("The majority of courts have held that the clause is 'clear and

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

unambiguous,' commonly finding that the insured's activities fall within the absolute pollution exclusion provisions.").

While the pre-1985 Travelers Policies contain qualified pollution exclusions, the qualification does not change the fact that coverage for the "Environmental Actions" is excluded under those policies as a matter of law.  Insureds, like Burlington here, bear the burden of proving that an exception to an exclusion applies to restore coverage otherwise barred by the exclusion.  *Helena Chem. Co.*, 357 S.C. at 642 n.2, 594 S.E.2d at 460 ("We agree with the trial court that it is the insured who bears the burden of proving an exception to the exclusion.").  The qualified pollution exclusions contain an exception if the discharge, dispersal, release, or escape of the pollutant is "sudden and accidental."  *See, e.g.,* Ex. 3, O'Neill Aff., Ex. C at Trav_SUB_012438.  The Complaint contains no allegations that Burlington's release or discharge of PFAS was sudden and accidental.  Instead, the Complaint alleges that the release or discharge was caused by Burlington's routine "operation of plants used to manufacture textiles and soft goods."  Compl. ¶ 2.  The South Carolina Supreme Court has held that "contamination … caused by [an insured's] routine business operations … do[es] not fall within the exception to the [qualified] pollution exclusion …."  *Helena Chem. Co.*, 357 S.C. at 642, 594 S.E.2d at 460.

In short, the Complaint fails to state a claim against Travelers as a matter of law because the pollution exclusions in the Travelers Policies bar coverage for the "Environmental Actions."

**IV.  Even if the "Environmental Actions" are not barred by the qualified pollution exclusions, the Receiver's claim is not justiciable because the Complaint does not allege a reasonable likelihood that the Travelers Policies will be triggered.**

Even if allegations existed that demonstrate an "Environmental Action" arose from a sudden and accidental discharge that could satisfy the exception in the qualified pollution

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

exclusions in the pre-1985 Travelers Policies,[7] the Complaint still fails to allege a justiciable case or controversy as to the pre-1985 Travelers Policies because the Complaint lacks any allegation that the policies underlying the Travelers Policies have been or likely will be exhausted. "The existence of an actual controversy is necessary in order to invoke the jurisdiction of the court for a declaratory judgment." *West v. West*, 263 S.C. 146, 148, 208 S.E.2d 530, 532 (1974) (citations omitted). "A justiciable controversy is described as a concrete and substantial controversy and not merely a dispute of a contingent, hypothetical, or abstract character." *Id*. Many courts have held that a declaratory judgment action involving an excess insurer's coverage obligations are not ripe without allegations demonstrating a reasonable likelihood that the subject claims will exhaust the underlying limits and reach higher-level excess policies. *See, e.g.*, *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 319 (Colo. App. 2006) ("As set forth above, damages claims against an excess insurer are not ripe until the plaintiff has exhausted the primary insurance coverage. Further, a claim for declaratory relief is not ripe unless the plaintiff can show there is a reasonable likelihood that the excess policy will be reached. Plaintiff made no such showing here."); 16A Couch on Ins. § 227:41, Involving Excess Insurer ("Accordingly, the usual view on when a declaratory judgment involving an excess liability insurer's coverage is ripe is that while absolute proof that the excess insurer's policies will be triggered is not required, courts may dismiss such claims when the plaintiff does not show a reasonable likelihood that claims against the excess insurer will mature."). Here, the Receiver makes no attempt to even allege underlying exhaustion, let alone the reasonable prospect of future exhaustion, so his claim as to Travelers is purely speculative and hypothetical at this time.

---

[7] To be clear, this section does not address the Travelers Policies effective in 1985 and beyond because those policies contain absolute pollution exclusions, which will bar coverage for all "Environmental Actions."

Indeed, based on what is alleged there is no reasonable likelihood that the limits of Travelers' high-level excess policies will be reached. *See, e.g.*, *DiCocco*, 140 P.3d at 319; 16A Couch on Ins. § 227:41, Involving Excess Insurer. The applicable insurance allocation method is essential to analyzing whether alleged claims have a reasonable likelihood of reaching excess liability policies and thus are ripe for judicial review. Here, whether the law of North Carolina (where the policies were delivered) or South Carolina (where this case is venued) controls, pro rata—or time-on-the-risk—allocation applies.[8] *See Crossmann Communities of N. Carolina, Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 63, 717 S.E.2d 589, 601 (2011) ("hold[ing] that the proper method for allocating damages in a progressive property damage case is to assign each triggered insurer a pro rata portion of the loss based on that insurer's time on the risk"); *Radiator Specialty Co. v. Arrowood Indem. Co.*, 2022-NCSC-134, ¶ 92, 383 N.C. 387, 422, 881 S.E.2d 597, 621 ("we further hold that the trial court properly applied pro rata allocation"). Under the time-on-the-risk approach, "each triggered insurer must indemnify only for the portion of the loss attributable to property damage that occurred during its policy period." *Crossmann*, 395 S.C. at 52, 717 S.E.2d at 595; *Radiator Specialty*, 2022-NCSC-134 at ¶ 92, 383 N.C. at 422, 881 S.E.2d at 621. Thus, every policy below Travelers in effect from the date of first contamination on would have to respond and pay its pro rata share of the environmental damages caused by Burlington's activities before any liability could reach the Travelers excess policies.

Here, the lowest attachment point for any Travelers policy is $10 million, and the lowest attachment point for the Travelers Policies with the qualified pollution exclusion is $25 million.

---

[8] It is unclear at this time what law will govern in this action. This issue does not need to be resolved at this stage, however, because the law of South Carolina and North Carolina–the two most likely candidates—align on the insurance allocation method in continuous injury actions.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*See* Ex. 3, O'Neill Aff., Exs. A-B, E.  Yet the Receiver has identified in his Complaint just two specific "Environmental Actions" pending against Burlington.  Compl. ¶¶ 38-39.  What's more, the Complaint identifies scores of insurance policies covering various periods from 1961 to 1995.  Compl. ¶¶ 42-62.  Because any damages that are ultimately proven will need to be allocated across all triggered policies and the Travelers Policies with qualified pollution exclusions don't attach unless and until losses in the pertinent periods total $25 million, there is no reasonable likelihood that the "Environmental Actions" will reach the pre-1985 Travelers Policies.  Without any real possibility of attachment, any coverage declaration as to the pre-1985 Travelers Policies would be merely advisory.  Yet South Carolina "courts … have no jurisdiction to issue advisory opinions."  *Booth v. Grissom*, 265 S.C. 190, 192, 217 S.E.2d 223, 224 (1975); *see also In re Chance*, 277 S.C. 161, 161, 284 S.E.2d 231, 231 (1981) (noting South Carolina courts have "consistently refrained" from issuing advisory opinions); *Brockington v. Brockington*, 277 S.C. 304, 306, 286 S.E.2d 381, 382 (1982) (similar).  Thus, even if the qualified pollution exclusions somehow do not bar coverage under the pre-1985 Travelers Policies, the allegations in the Complaint fail to state a ripe claim against Travelers.

## **CONCLUSION**

For all the foregoing reasons and others appearing in the record, Travelers respectfully requests that this Court dismiss with prejudice the Receiver's claim against Travelers and discontinue the Burlington Receivership.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: /s/ *M. Todd Carroll*
    S.C. Bar No. 74000
    todd.carroll@wbd-us.com
    M. Elizabeth O'Neill
    S.C. Bar No. 104013
    elizabeth.oneill@wbd-us.com
    1221 Main Street, Suite 1600
    Columbia, SC 29201
    (803) 454-6504

Attorney for Defendant Travelers Casualty
and Surety Company, formerly known as The
Aetna Casualty and Surety Company

December 30, 2024

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Exhibit 1

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

-2832-

### CERTIFICATE OF AMENDMENT
### OF
### AMENDED CERTIFICATE OF INCORPORATION
### OF
### BURLINGTON MILLS CORPORATION

Pursuant to Section 242 of the General
Corporation Law of Delaware

We, the undersigned, J. Spencer Love and Stephen L. Upson, President and Secretary, respectively, of Burlington Mills Corporation, a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware, DO HEREBY CERTIFY:

That, in accordance with the provisions of Section 242 of the said General Corporation Law, the Board of Directors of the Corporation duly adopted a resolution setting forth and declaring the advisability of the amendment of the Certificate of Incorporation, (as heretofore amended) as hereinafter set forth, and duly called a meeting of Stockholders of the Corporation entitled to vote in respect thereof for the consideration of such amendment; that at the said meeting of stockholders the persons or bodies corporate holding a majority of all of the issued and outstanding shares of stock of said Corporation entitled to vote voted in favor of said amendment; that said amendment reads as follows:

"The Certificate of Incorporation of the Corporation, as amended, be and the same is further amended by changing Article FIRST thereof to read as follows:

"FIRST
"The name of the corporation is BURLINGTON INDUSTRIES, INC."

That the said amendment has been duly adopted in accordance with the provisions of Section 242 of the General Corporation Law, and that the capital of the Corporation will not be reduced under or by reason of said amendment.

IN WITNESS WHEREOF, we have hereunto subscribed our names and affixed the seal of said Corporation, this 3rd day of February, 1955.

/s/ J. Spencer Love
                                    President


/s/ Stephen L. Upson
                                    Secretary


xxCorporatexSealxx
BURLINGTON MILLS CORPORATION
CORPORATE SEAL
1937
DELAWARE

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF DELAWARE   )
                    )      ss:
County of New Castle )

BE IT REMEMBERED, that on the 3rd day of February, 1955,
personally came before me, M. Ruth Mannering, a Notary Public
in and for the State and County aforesaid, duly commissioned
and sworn to take acknowledgments or proof of deeds, J. Spencer
Love, President of Burlington Mills Corporation, a Delaware
corporation, the Corporation described in the foregoing certificate,
known to me personally to be such, and he, the said J. Spencer
Love as such President, duly executed the foregoing certificate
before me, and acknowledged the said certificate to be his act
and deed and made on behalf of said Corporation; that the
signatures of the said President and of Stephen L. Upson,
Secretary of said Corporation, to such certificate, are in the
handwriting of said President and Secretary of said Corporation,
respectively; that the seal affixed to said certificate is the
common or corporate seal of said Corporation; and that the
act of sealing, executing, acknowledging and delivering the
said certificate was duly authorized by the Board of Directors
of said Corporation.

In witness whereof, I have hereunto set my hand and seal of
office the year and day aforesaid.

<div style="text-align:right;">

**M. Ruth Mannering**
Notary Public

</div>

M. Ruth Mannering
Notary Public
Appointed Feb.11, 1953
Term **Two Years**
State of Delaware

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



## State of Delaware

## Office of Secretary of State

I, John N. McDowell, Secretary of State of the State of Delaware, do hereby certify that the above and foregoing is a true and correct copy of

Certificate of Amendment of the "BURLINGTON MILLS CORPORATION", as received and filed in this office the third day of February, A.D. 1955, at 1 o'clock P.M.

In Testimony Whereof, I have hereunto set my hand and official seal at Dover this _____ third _____ day of _____ February _____ in the year of our Lord one thousand nine hundred and _____ fifty-five.



FILED
FEB 10 1955
THAD EURE
SECRETARY OF STATE

John N. McDowell
Secretary of State

M. D. Tomlinson
Ass't. Secretary of State

FORM 120

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



CERTIFIED COPY

CERTIFICATE OF AMENDMENT

OF

BURLINGTON MILLS CORPORATION

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Exhibit 2

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Application for Domestication by a Foreign Corporation

THE _____ BURLINGTON MILLS CORPORATION, a corporation _____ COMPANY

organized under the Laws of the State of _____ Delaware _____, does hereby make the following statement in compliance with the provisions of Section 1181 of The Consolidated Statutes of North Carolina.

FIRST—The name of the corporation is _____ BURLINGTON MILLS CORPORATION

SECOND—The location of the registered office is at No. 100 _____, West Tenth _____ Street, Wilmington, Delaware _____, and the location of the principal office in North Carolina is at Piedmont Heights, / Postoffice Burlington, N. C., County of _____ Alamance _____, and William S. Coulter _____ is the agent upon whom process may be served.

THIRD—The character of the business is _____ textile manufacturing.

FOURTH—The amount of the authorized capital stock is $ 600,000.00. The amount actually issued and outstanding is $ none.

FIFTH—The names and addresses of all the directors and officers are as follows:

| NAMES OF DIRECTORS | ADDRESS | DATE OF ELECTION OR APPOINTMENT | TERM OF OFFICE |
|---|---|---|---|
| Thomas J. Mallon | 450 Seventh Ave., New York City. | | |
| Ervin A. Schutz | 450 Seventh Ave., New York City. | | |
| Marion Smith | 450 Seventh Ave., New York City. | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

OFFICERS:

| | | |
|---|---|---|
| PRESIDENT | Thomas J. Mallon | 450 Seventh Ave., New York City. |
| VICE-PRESIDENT | Ervin A. Schutz | 450 Seventh Ave., New York City. |
| 2D VICE-PRESIDENT | | |
| TREASURER | Thomas J. Mallon | 450 Seventh Ave., New York City. |
| SECRETARY | Ervin A. Schutz | 450 Seventh Ave., New York City. |

SIXTH—The copy herewith attached is a true and correct copy of the charter or articles of agreement and all amendments.

Witness our hands, the 20th day of February 193

(CORPORATE SEAL)

BURLINGTON MILLS CORPORATION

BY _____, President

_____, Secretary

FILED
MAR 1 1937
THAD EURE
SECRETARY OF STATE

SECTION 1181 OF THE CONSOLIDATED STATUTES:

Every foreign corporation before being permitted to do business in this State, insurance companies excepted, shall file in the office of the Secretary of State a copy of its charter or articles of agreement, attested by its president and secretary, under its corporate seal, and a statement attested in like manner of the amount of its capital stock authorized, the amount actually issued, the principal office in this State, the name of the agent in charge of such office, the character of the business which it transacts, and the names and postoffice addresses of its officers and directors. And such corporation shall pay to the Secretary of State, for the use of the State, twenty cents for every one thousand dollars of the total amount of the capital stock authorized to be issued by such corporation, but in no case less than twenty-five dollars nor more than two hundred and fifty dollars, and also a filing fee of five dollars. Such corporation may withdraw from the State upon filing in the office of the Secretary of State a statement signed by its president and secretary and attested by its corporate seal, setting forth the fact that such corporation desires to withdraw, and such payment to the Secretary of State of a fee of five dollars. Every corporation failing to comply with the provisions of this section shall forfeit to the State five hundred dollars, to be recovered, with costs, in an action to be prosecuted by the Attorney-General, who shall produce such action whenever a fine shall appear that this section has been violated * * * *

40 cents per thousand by 1935 General Assembly. Minimum Tax, $40.00; Maximum Tax $500.00.

ELECTRONICALLY FILED - 2024 Dec 30 4:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



Application for Domestication

OF THE

BURLINGTON MILLS CORPORATION

organized under the Laws of the State of

Delaware

Directors, Officers, etc.

Principal Office in North Carolina
Piedmont Heights,
Postoffice Burlington ———— N. C.

FILED
MAR 1 1937
THAD EURE
SECRETARY OF STATE

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

#2832



ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# CERTIFICATE OF INCORPORATION

OF

# BURLINGTON MILLS CORPORATION

Filed in the Office of the Secretary of State of Delaware on February 15,
1937.  Recorded with Recorder of Deeds for New Castle County, Delaware.
on February 15, 1937.

THE COURT PRESS

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## CERTIFICATE OF INCORPORATION

OF

## BURLINGTON MILLS CORPORATION

---

### FIRST

The name of the corporation is BURLINGTON MILLS CORPORATION.

### SECOND

The principal office or place of business of the corporation in the State of Delaware is to be located at No. 100 West 10th Street, in the City of Wilmington, County of New Castle; and the name and address of its resident agent is The Corporation Trust Company, 100 West 10th Street, Wilmington, Delaware.

### THIRD

The nature of the business or objects or purposes to be transacted, promoted or carried on by the corporation are as follows:

(a) To manufacture, produce, sell at wholesale or retail, import, export, distribute and generally deal in textile products of every kind and description and any and all articles of which they form a part; to purchase or otherwise acquire, weave, spin, dye, print, throw, double, finish, bleach, convert, adapt, knit, produce, prepare, manufacture, consign as consignor, handle as consignee, sell and otherwise deal in rayon, silk, cotton, flax, hemp, jute, wool and other fibrous substances and yarns, cloths, goods, fabrics and other products made therefrom, whether woven, knit, textiled, netted, looped, printed or otherwise processed; to manufacture, produce, purchase, adapt, convert, prepare, use, consign as con-

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

2

signor, handle as consignee, sell or otherwise deal in any and all kinds of machinery, appliances, articles and things required, used, or which may be used, in connection with or incident to weaving,, spinning, printing, dyeing, throwing, doubling, finishing, bleaching, converting, adapting, knitting, purchasing, producing, preparing, manufacturing, consigning as consignor, handling as consignee, selling or otherwise dealing in rayon, silk, cotton, flax, hemp, jute, wool, and other fibrous substances and yarns, cloths, goods, fabrics and other products made therefrom.

(b) To carry on the trade or business of warehousemen, storers, packers and carriers of personal property of every description for the account of others, especially textiles and products made from textiles, and to issue warrants or receipts, and enter into contracts relating to said warehousing business with persons, firms or corporations warehousing goods with the corporation.

(c) To manufacture, purchase, or acquire in any lawful manner, and to hold, own, mortgage, pledge, sell, consign, transfer or in any manner dispose of and to deal and trade in goods, wares, merchandise and property of any and every kind and description and wherever situated; and to establish, maintain and operate branches, agencies, depots and warehouses for said purposes.

(d) To act as agent (other than fiscal or transfer), factor, or broker, on commission or otherwise, for individuals, copartnerships, joint stock associations, business trusts or corporations, foreign or domestic, including governments or governmental authorities; to aid and assist, promote and conserve the interests of, and afford facilities for the convenient transaction of business, by or for its principals and patrons, in all parts of the world, and as such agent, factor or broker, to guarantee the payment or collectibility of accounts of the customers.

3

(e) To engage in any general mercantile manufacturing business or trading enterprise or business of any kind or character whatsoever within and without the State of Delaware, and to do all things incidental to such business.

(f) To purchase, take, own, hold, deal in, mortgage or otherwise encumber, and to lease as lessor or lessee, sell, exchange, transfer, or in any other manner whatsoever acquire or dispose of real and personal property or any interest therein situated within or without the State of Delaware.

(g) To acquire all or any part of the good will, rights, franchises, and assets, tangible or intangible, of any person, firm, association or corporation; to pay for the said good will, rights, property, franchises and assets, in whole or in part, in cash, stock, bonds or other securities of this company, and/or by undertaking or assuming the whole or any part of the liabilities of the transferor; to hold or in any manner to dispose of the whole or any part of the property so purchased; to conduct in any lawful manner the whole or any part of any business so acquired, and to exercise all the powers necessary or convenient in and about the conduct and management of such business.

(h) To subscribe for, or cause to be subscribed for, buy, own, hold for investment or otherwise, purchase, receive, or acquire, and to sell, negotiate, guarantee, assign, transfer, exchange, mortgage, pledge or otherwise dispose of, and deal in, any shares of capital stock, bonds, securities, scrip, coupons, mortgages, debentures, debenture stock, notes, acceptances, drafts, and other securities or evidences of indebtedness issued or created by any corporation, public, quasi-public, or private, domestic or foreign, and any trust or other certificates of, or receipts evidencing, interest in any such securities; to issue in exchange therefor its own stocks, bonds, or other obligations; and, while owner of any such stocks,

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

4

bonds and other evidences of indebtedness or interest therein, to exercise all the rights, powers and privileges of ownership, including the right to vote thereon for any and all purposes.

(i) To make advances or loans, with or without security, so far as may be permitted by law.

(j) To purchase, lease, erect or otherwise acquire, exchange, sell, let or otherwise dispose of, own, maintain, develop and improve any and all properties, real and personal, plants, depots, factories, warehouses, stores, buildings, dwellings or other places useful in connection with the business of the corporation; to build, buy, lease as lessee, establish, equip or otherwise acquire, and to maintain and operate mills, machinery, offices, dwellings and other real and personal properties of all kinds.

(k) To enter into, make, perform and carry out contracts of every sort and kind, for any lawful purpose, with any person, firm, association or corporation, private, public or municipal, or body politic, and with the government of the United States, or any state, territory or colony thereof, or any foreign government or colony or dependency thereof.

(l) To acquire, hold, own, and dispose of options, grants, concessions, and franchises, or interests therein; to cause to be formed, organized, incorporated, merged or reorganized, and to promote, finance and aid in any way permitted by law the formation, merger or reorganization of any corporation, joint stock company, syndicates, partnerships, and associations of all kinds, domestic or foreign; to finance and assist financially or otherwise companies, corporations, joint stock companies, syndicates, partnerships and associations; to enter into contracts of underwriting, subscribe for and endorse the bonds, stocks, securities, debentures, notes or undertakings of any such corporation, joint stock companies, syndicates, partnerships and associations of all kinds, domestic or foreign, and to buy, sell and deal in the same,

5

or any interest therein, to make any guarantee in connection therewith or otherwise for the payment of money or for the performance of any obligation or undertaking, and to act as manager of such underwriting agreements.

(m) To purchase, hold, sell and transfer the shares of its own capital stock provided it shall not use its funds or property for the purchase of its own shares of capital stock when such use would cause any impairment in its capital except as otherwise permitted by law, and provided further that such shares of its own capital stock so acquired and held shall not be entitled to vote nor to receive dividends.

(n) To apply for, obtain, register, lease, purchase, develop or otherwise acquire, and to hold, use, own, operate, sell, assign, lease or otherwise dispose of and to grant licenses in respect of, mortgage, pledge or otherwise turn to account, or deal in, trademarks and trade names, labels, designs, brands, patents, copyrights, inventions, improvements and processes relating to or useful in connection with any business of this corporation.

(o) To aid by loan, subsidy, guaranty or in any other manner whatsoever, any corporation, joint stock company or association whose bonds, stocks, securities or other obligations are in any manner held or guaranteed by this corporation; to guarantee the payment of dividends on any shares of the capital stock of any of the corporations, joint stock companies or associations in which this corporation has or may at any time have an interest, and to become surety in respect of, endorse or otherwise guarantee the payment of the principal of or interest on any scrip, bonds, coupons, mortgages, debentures, debenture stock, securities, notes, drafts, bills of exchange or evidences of indebtedness, issued or created by any such corporations, joint stock companies or associations; to become surety for or guarantee the carrying out and performance of any and all contracts, leases and obligations of every kind of any corporations, joint

6

stock companies or associations, and, in particular, of any corporation, joint stock company or association any of whose shares, scrip, bonds, coupons, mortgages, debentures, debenture stock, securities, notes, drafts, bills of exchange or evidences of indebtedness, are at any time held by or for this corporation, and to do any acts or things which in the judgment of the Board of Directors of this corporation are proper and necessary.

(p) To borrow or raise moneys for any of the purposes of the corporation and, from time to time, without limit as to amount, to draw, make, accept, endorse, execute and issue promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment of any thereof and of the interest thereon by mortgage upon or pledge, conveyance or assignment in trust of the whole or any part of the property, rights and franchises of the corporation, whether at the time owned or thereafter acquired and to issue, sell, pledge or otherwise dispose of such bonds or other obligations of the corporation for its corporate purposes, so far as may be permitted by the laws of the State of Delaware.

(q) To have one or more offices and conduct its business and promote its objects within the State of Delaware, in other states of the United States, the District of Columbia, the territories, colonies, and dependencies of the United States and in foreign countries without restriction as to place or amount.

(r) To purchase and acquire securities, assets and property of every kind and description at judicial, judiciary trustee's, pledgee's, mortgagee's, or liquidating or public or private sales, and to carry on a general salvage, liquidation and realization business.

(s) To buy, sell and otherwise deal in notes, acceptances, open accounts and other similar evidences of in-

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

7

debtedness; to loan money and to take notes, acceptances, open accounts and other similar evidences of indebtedness as collateral security therefor, and, without limit as to amount, to draw, make, accept, endorse, discount, guarantee, execute and issue promissory notes, bills of exchange, drafts, warrants, and all kinds of obligations and certificates and negotiable or transferable instruments.

(t) In general, to carry on any other business in connection with the foregoing whether manufacturing or otherwise and to do any and all things and to exercise any and all powers necessary or incidental or advisable in connection with the accomplishing of one or more of the purposes of the corporation, or which shall at any time appear to be conducive to, or for the benefit of, said corporation in connection therewith which may now or hereafter be lawful for the corporation to do or exercise, and to do any or all of the things hereinbefore set forth to the same extent as natural persons might or could do.

But if this corporation shall undertake to do any of the things hereinabove set forth in any state other than the State of Delaware, in the District of Columbia, in any territory, colony or dependency of the United States or in any foreign country or in any colony or dependency thereof, then as to such jurisdictions and each of them this corporation shall be deemed to have such powers insofar only as such jurisdictions respectively permit corporations within their several respective jurisdictions to be organized for or to execute such powers.

The objects, purposes and powers specified in the foregoing clauses of this Article THIRD shall, except where otherwise expressed, be in no wise limited or restricted by reference to, or inference from, the terms of any other clause in this certificate of incorporation, but the objects, purposes and powers specified in each of the foregoing clauses of this article and in each of the articles or paragraphs of this certificate

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

8

of incorporation shall be regarded as independent objects, purposes and powers and shall, in addition, include (and shall not restrict in any manner) all general powers conferred upon corporations by the laws of the State of Delaware, and the specification of certain objects, purposes and powers shall not be deemed to exclude others, although they be of like nature.

## FOURTH

The total number of shares of stock which the corporation shall have authority to issue is Six Hundred Thousand (600,000) of the par value of One ($1.00) Dollar per share, amounting in the aggregate to Six Hundred Thousand ($600,000.00) Dollars.

The minimum amount of capital with which the corporation shall commence business is One Thousand ($1,000.00) Dollars.

No holder of any of the shares of the capital stock of the corporation shall be entitled as such, as of right, to purchase or subscribe for any stock of any class whether now or hereafter authorized, and whether issued for cash, property or services, as a dividend or otherwise, or any bonds, certificates of indebtedness, debentures or other securities convertible into stock of the corporation or carrying or evidencing any right to purchase stock of any class, but any such stock or other securities convertible into, or carrying or evidencing any right to purchase stock, may be issued and disposed of pursuant to resolution of the Board of Directors to such persons, firms, corporations or associations and upon such terms as may be deemed advisable by the Board of Directors in the exercise of its discretion.

## FIFTH

The corporation shall have the power to create and issue, whether or not in connection with the issue and sale of any shares of stock or other securities of the corporation, rights

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

9

or options entitling the holders thereof to purchase from the corporation any shares of its capital stock of any class, now or hereafter created.

The Board of Directors may, from time to time, provide for the creation and issuance of such rights or options in a resolution or resolutions setting forth the terms upon which, the time or times, which may be limited or unlimited in duration, at or within which and the price or prices at which any such shares may be purchased from the corporation upon the exercise of any such right or option provided that such resolution shall be conformable to the General Corporation Laws of the State of Delaware, especially Section 14 thereof or any other statutes which may hereafter be enacted and control the creation and issuance thereof.

## SIXTH

The names and places of residence of the incorporators are as follows:

| Names | Residences |
|---|---|
| Alfred Jervis | Wilmington, Delaware |
| B. R. Jones | Wilmington, Delaware |
| J. P. Murray | Wilmington, Delaware |

## SEVENTH

The corporation shall have perpetual existence.

## EIGHTH

The private property of the stockholders shall not be subject to the payment of corporate debts to any extent whatever.

## NINTH

All corporate powers of the corporation shall be exercised by the Board of Directors except as otherwise provided by

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

10

law. In furtherance and not in limitation of the powers conferred by law the Board of Directors is expressly authorized:

(a) Subject always to by-laws made by the stockholders, to make, alter or repeal the by-laws of the corporation but any by-laws made by the Board of Directors may be altered, amended or repealed by the stockholders at any annual meeting or at any special meeting provided that notice of such proposed alteration, amendment or repeal is included in the notice of such special meeting.

(b) To authorize and cause to be executed mortgages and liens upon the real and personal property of the corporation.

(c) To set apart out of any of the funds of the corporation available for dividends a reserve or reserves for any proper purpose or to abolish any such reserve in the manner in which it was created.

(d) By resolution or resolutions, passed by a majority of the whole Board to designate one or more committees, each committee to consist of two or more of the Directors of the corporation, which, to the extent provided in said resolution or resolutions or in the by-laws of the corporation, shall have and may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation, and may have power to authorize the seal of the corporation to be affixed to all papers which may require it. Such committee or committees shall have such name or names as may be stated in the by-laws of the corporation or as may be determined from time to time by resolution adopted by the Board of Directors.

(e) When and as authorized by the affirmative vote of the holders of a majority of the stock issued and outstanding having voting power given at a stockholders' meeting duly called for that purpose, or when authorized

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

11

by the written consent of the holders of a majority of the voting stock issued and outstanding, to sell, lease or exchange all of the property and assets of the corporation, including its good will and its corporate franchises, upon such terms and conditions and for such consideration, which may be in whole or in part shares of stock in, and/or other securities of, any other corporation or corporations, as the Board of Directors shall deem expedient and for the best interests of the corporation.

(f) Subject to the provisions of the statutes and laws of the State of Delaware now or hereafter enacted, the corporation may, in its by-laws, confer powers upon the Board of Directors in addition to the foregoing and in addition to the powers and authorities expressly conferred upon it by statute.

(g) Any or all of the directors may be removed at any time forthwith, with or without cause, by a majority vote of all classes of stock entitled to vote for the election of a director or directors, at a special meeting of all of the stockholders of the corporation held for that purpose provided, however, that such proposed action is stated in the notice of the meeting.

(h) Any officer elected or appointed by the Board of Directors may be removed, with or without cause, at any time by the affirmative vote of a majority of the Board of Directors. Any other officer or employee of the Corporation may be removed, with or without cause, at any time by a vote of the Board of Directors or by any committee or superior officers upon whom such power of removal may be conferred by the by-laws or by vote of the Board of Directors.

## TENTH

Subject to the provisions of the law and statutes of the State of Delaware, the number of directors of the corporation

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

12

shall be fixed from time to time by the by-laws but shall not
be less than three. The by-laws may also prescribe the
number of directors necessary to constitute a quorum of the
board which number shall not be less than one-third of the
total number of directors nor less than two directors.

### ELEVENTH

Election of directors shall be by ballot whenever requested
by any person entitled to vote, but unless so requested, may be
held in any way approved at the stockholders' meeting. At
all times, each holder of stock of the corporation which shall
at the time possess voting power in respect of any matter,
shall be entitled to one vote on such matter for each share
of such stock then standing in his name on the books of the
corporation, except as otherwise required by law. Directors
need not be stockholders of the corporation, and need not
be residents of the State of Delaware.

### TWELFTH

The stockholders and directors may, if the by-laws so
provide, hold their meetings and have an office or offices
outside the State of Delaware. Subject to the provisions of
the laws of the State of Delaware, the books of the corpora-
tion may be kept outside the State of Delaware.

### THIRTEENTH

In the absence of fraud no contract or other transaction
of the corporation shall be affected or invalidated in any
way by reason of the fact that any of the directors or officers
of the corporation are in anywise interested in or connected
with any other party to such contract or transaction or are
themselves parties to such contract or transaction; and each
and every director and officer of the corporation shall be
relieved from any liability or disability whatsoever that might

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

13

otherwise exist from thus contracting with this corporation for the benefit of himself or any person or persons, firm, association or corporation in which he may in any wise be interested or with which he may be connected, provided that such interest or relation shall be fully disclosed or otherwise known to the Board of Directors at its meeting at which such contract or transaction is authorized or confirmed, and provided further that such contract or transaction shall be fair and reasonable at the time at which it is entered into.

### FOURTEENTH

The corporation reserves the right to amend, alter, change, rescind or repeal any provision contained in this certificate of incorporation in the manner now or hereafter prescribed by statute and all rights and powers conferred upon the stockholders therein are granted subject to this reservation.

We, the undersigned, being each of the incorporators hereinbefore named, for the purpose of forming a corporation to do business both within and without the State of Delaware, and in pursuance of the General Corporation Law of the State of Delaware, being Chapter 65 of the Revised Code of Delaware, and the acts amendatory thereof and supplemental thereto, do make this certificate, hereby declaring and certifying that the facts herein stated are true, and accordingly have hereunto set our hands and seals this 13th day of February, A. D. 1937.

ALFRED JERVIS        (Seal)
B. R. JONES        (Seal)
J. P. MURRAY        (Seal)

In the presence of:
  HAROLD E. GRANTLAND

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

14

State of Delaware,
County of New Castle, } ss.:

BE IT REMEMBERED that on this 13th day of February, A. D. 1937, personally came before me HAROLD E. GRANTLAND, a Notary Public for the State of Delaware, ALFRED JERVIS, B. R. JONES, and J. P. MURRAY, all of the parties to the foregoing certificate of incorporation, known to me personally to be such, and severally acknowledged the said certificate to be the act and deed of the signers respectively and that the facts therein stated are truly set forth.

GIVEN under my hand and seal of office the day and year aforesaid.

HAROLD E. GRANTLAND.

HAROLD E. GRANTLAND,
     Notary Public.

Appointed Jan. 11, 1937,
State of Delaware,
Term Two Years.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

We, Thomas J. Mallon, President, and Ervin A. Schutz, Secretary of Burlington Mills Corporation, do hereby certify that the foregoing is a true and complete copy of the certificate of incorporation of Burlington Mills Corporation, of the whole thereof and of all the amendments thereto.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed the corporate seal of Burlington Mills Corporation, and certify that it was affixed hereto by authority of the Board of Directors.

_____
President

_____
Secretary

STATE OF NEW YORK )
                 ) SS:
COUNTY OF NEW YORK )

THOMAS J. MALLON and ERVIN A. SCHUTZ, being severally duly sworn, depose and say that they are respectively President and Secretary of Burlington Mills Corporation and that they have read the foregoing certificate, subscribed by them, and that the same is true.

Sworn to before me this

26th day of February, 1937.

MARION SMITH
NOTARY PUBLIC, NEW YORK COUNTY
CLERK'S No. 769, REGISTER'S No. 7S1042
COMMISSION EXPIRES MARCH 30, 1937

_____
President

_____
Secretary

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



FILED

MAR 1 1937

THAD EURE
SECRETARY OF STATE

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Exhibit 3

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

---

BURLINGTON INDUSTRIES, INC., by and through its duly appointed Receiver Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, AMERICAN HOME ASSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, formerly known as NORTHBROOKINSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AIU INSURANCE COMPANY, THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY

Civil Action No.: 2024-CP-42-04138

1

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

OF PITTSBURGH, PA, CENTURY
INDEMNITY COMPANY, as successor-in-
interest to CIGNA SPECIALTY
INSURANCE COMPANY, formerly known
as CALIFORNIA UNION INSURANCE
COMPANY, ZURICH AMERICAN
INSURANCE COMPANY, and GREAT
AMERICAN ASSURANCE COMPANY,
formerly known as AGRICULTURAL
INSURANCE COMPANY,

Defendants.

### AFFIDAVIT OF M. ELIZABETH O'NEILL IN SUPPORT OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION TO DISMISS THE PURPORTED BURLINGTON INDUSTRIES, INC. RECEIVER'S COMPLAINT

M. Elizabeth O'Neill, duly sworn, deposes and says:

1.     I am a partner at the law firm of Womble Bond Dickinson (US) LLP, counsel for defendant Travelers Casualty and Surety Company ("Travelers") in this action.  I am competent to testify to the following facts and have personal knowledge of the truth of the matters set forth below.

2.     I submit this affidavit in support of Travelers' Motion to Dismiss the Purported Burlington Industries, Inc. Receiver's Complaint.

3.     Attached as Exhibit A is a copy of excess overlayer indemnity policy number 01 XN 186 WCA.

4.     Attached as Exhibit B is a copy of excess overlayer indemnity policy number 01 XN 189 WCA.

5.     Attached as Exhibit C is a copy of excess overlayer indemnity policy number 01 XN 1144 WCA.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

6.     Attached as Exhibit D is a copy of excess overlayer indemnity policy number 01 XN 1511 WCA.

7.     Attached as Exhibit E is a copy of excess overlayer indemnity policy number 01 XN 1955 WCA.

8.     Attached as Exhibit F is a copy of excess overlayer indemnity policy number 25 XN 79 WCA.

9.     Attached as Exhibit G is a copy of excess overlayer indemnity policy number 25 XN 81 WCA.

10.    Attached as Exhibit H is a copy of excess overlayer indemnity policy number 25 XN 82 WCA.

11.    Attached as Exhibit I is a copy of excess overlayer indemnity policy number 25 XN 104 WCA.

12.    Attached as Exhibit J is a copy of excess overlayer indemnity policy number 25 XN 105 WCA.

Dated the 30th day of December 2024.



M. Elizabeth O'Neill

Subscribed and sworn to before me, the undersigned authority on this 30th day of December, 2024.

Notary Public

3

MY COMMISSION EXPIRES OCTOBER 27, 2026

# EXHIBIT A - TRAV_SUB_012453

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## INCOMPLETE POLICY

This notification is affixed to a policy in which certain pages of the policy are illegible, including the one(s) listed below. After a diligent search of company records available as of this date, we could not locate a more legible record.

portions of page 2 are illegible.

_____

_____

_____

_____

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____
Name of Insuring Company(ies)

01 XN 186 WCA              11/11/71-11/11/74              07/11/2022
_____          _____              _____
Policy Number(s)            Policy Period(s)                  Date

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL                                                TRAV_SUB_012453

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



EXCESS OVERLAYER INDEMNITY POLICY

THE AETNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Aetna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of
this policy, agrees with the Insured named in the declarations as follows:

POLICY No. _01X8 186 WCA_

Section I. DECLARATIONS

BURLINGTON INDUSTRIES

POLICY PERIOD:
From _11/11/71_ To _11/11/74_
12:01 A.M. standard time at
the address of Insured

PREMIUM:
[X] Flat charge

[ ] Adjustable at a rate of
_____ per $1000 of _____

Minimum Premium _____

Total Advance Premium _5000._

3 Year Policy Installments
1st Anniversary _____
2nd Anniversary _____

($5,000,000. MAXIMUM) QUOTA SHARE OF
CLAIM EACH OCCURRENCE

($5,000,000. MAXIMUM) QUOTA SHARE OF
$25,000,000. ANNUAL AGGREGATE

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. _1313-A_

2. CONTAMINATION AND POLLUTION EXCLUSION

Section 2. INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an
accident or occurrence during the policy period, subject to the limits of liability
stated in Section I, and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the
terms of the Controlling Underlying Insurance.

CONFIDENTIAL                                                    TRAV_SUB_012454

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

"EXCESS NET LOSS" means that part of

the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages,

which is in excess of

any self-insured retention and the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date_____ Countersigned by_____
Authorized Representative

CONFIDENTIAL

TRAV_SUB_012455

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115





Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONFIDENTIAL

TRAV_SUB_012456

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012457

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3.  SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| POLICY NUMBER | INSURER | COVERAGE | LIMITS OF LIABILITY | | |
|---|---|---|---|---|---|
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | HOME INS. CO. | EXCESS LIABILITY | 20,000,000. | 20,000,000. | 20,000,000. |
| | LIBERTY MUTUAL | UMBRELLA | 5,000,000. | 5,000,000. | 5,000,000. |

CONTROLLING INSURANCE

| | | | | | |
|---|---|---|---|---|---|
| LIBERTY MUTUAL | UMBRELLA | 5,000,000. | 5,000,000. | 5,000,000. |

This schedule applies to the above policies and any renewals or replacements thereof.

CONFIDENTIAL

TRAV_SUB_012458

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**    Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1.    if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2.    if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3.    if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**    Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**    Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**    In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**    No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012459

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION          In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES          Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT          Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION          This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL                                                            TRAV_SUB_012460

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death, or destruction

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954 or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue

The Aetna Casualty and Surety Company
Hartford, Connecticut

*[signature]* a. Hise
President

(12138-A)

CONFIDENTIAL     TRAV_SUB_012461

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

    **"hazardous properties"** include radioactive, toxic or explosive properties;

    **"nuclear material"** means source material, special nuclear material or byproduct material;

    **"source material"** , **"special nuclear material"**, and **"byproduct material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    **"waste"** means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

    **"nuclear facility"** means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    With respect to injury to or destruction of property, the word **"injury"** or **"destruction"** includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

**Hartford, Connecticut**

*President*

For attachment to the following policy forms:
(CA, JS, AL, SJ, MP, JP, SK, GS, PS, DR, DP, DG, DB, DH, DO)

(13113-A)

CONFIDENTIAL

TRAV_SUB_012462

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY POLICY
(EXCLUSION—CONTAMINATION OR POLLUTION)

It is agreed that the policy does not apply to EXCESS NET LOSS
arising out of the discharge, dispersal, release or escape of smoke,
vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or
gases, waste materials or other irritants, contaminants or pollutants
into or upon land, the atmosphere or any watercourse or body of
water; but this exclusion does not apply if such discharge, dispersal,
release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the
policy unless otherwise stated herein.
    (The information below is required only when this endorsement is issued subsequent to preparation of policy)

| Endorsement effective | Policy No. | | Endorsement No. | |
|---|---|---|---|---|
| Named Insured | | | | |
| Additional Premium $ | Return Premium $ | | Hi | PD |
| | | In Advance $ | $ | |
| | | 1st Annus $ | $ | |
| | | 2nd Annus $ | $ | |

The Aetna Casualty and Surety Company

The Standard Fire Insurance Company    Countersigned by _____

Hartford, Connecticut    Authorized Representative

Printed in U.S.A.

CONFIDENTIAL    TRAV_SUB_012463

# EXHIBIT B - TRAV_SUB_012475

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## INCOMPLETE POLICY

This notification is affixed to a policy in which certain pages of the policy are illegible, including the one(s) listed below. After a diligent search of company records available as of this date, we could not locate a more legible record.

portions of page 2 are illegible.

_____

_____

_____

_____

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____
Name of Insuring Company(ies)

01 XN 189 WCA          12/13/71-10/01/74          07/11/2022
_____          _____          _____
Policy Number(s)          Policy Period(s)              Date

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL

TRAV_SUB_012475

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



EXCESS OVERLAYER INDEMNITY POLICY

THE AETNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Aetna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the insured named in the declarations as follows:

POLICY NO. 01 XN 189WCA

### Section 1. DECLARATIONS

NAMED INSURED AND ADDRESS

BURLINGTON INDUSTRIES
GREENSBORO, NORTH CAROLINA

POLICY PERIOD:
From 12/13/71 To 10/1/74
12:01 A.M. standard time at the address of Insured

PREMIUM:

☒ Flat charge

☐ Adjustable at a rate of _____ per $1000 of

RECEIVED DEC 1971

Minimum Premium ____4,005.____
Total Advance Premium ____4669.____

LIMITS OF LIABILITY:

20% ($5,000,000 MAXIMUM) QUOTA SHARE OF $25,000,000.EACH OCCURRENCE

20% ($5,000,000 MAXIMUM) QUOTA SHARE OF $25,000,000.ANNUAL AGGREGATE

3 Year Policy Installments
1st Anniversary _____
2nd Anniversary _____

ENDORSEMENTS:  1. Broad Form Nuclear Energy Exclusion, Form No. 13113-A
2. CONTAMINATION AND POLLUTION EXCLUSION

### Section 2. INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

HOME OFFICE COPY

CONFIDENTIAL

TRAV_SUB_012476

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

"EXCESS NET LOSS" means that part of

the total of all sums which the INSURED becomes legally obligated to pay or
has paid, as damages on account of any one accident or occurrence, and which
would be covered by the terms of the Controlling Underlying Insurance, if
written without any limit of liability, less realized recoveries and salvages,

which is in excess of

any self-insured retention and the total of the applicable limits of liability
of all policies described in Section 3. Schedule of Underlying Insurance;
whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or
defense of claims or suits, or interest on any judgment which accrues after entry of
the judgment.

Date_____ _____Countersigned by_____

                                            Authorized Representative

CONFIDENTIAL

TRAV_SUB_012477

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY



Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012479

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

SECTION 3.  SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| POLICY NUMBER | INSURER | COVERAGE | LIMITS OF LIABILITY | | |
| --- | --- | --- | --- | --- | --- |
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | HOME INS. CO. | EXCESS LIABILITY | 90,000,000. | 90,000,000. | 90,000,000. |
| | LIBERTY MUTUAL | UMBRELLA | 5,000,000. | 5,000,000. | 5,000,000. |

CONTROLLING INSURANCE

| | LIBERTY MUTUAL | UMBRELLA | 5,000,000. | 5,000,000. | 5,000,000. |

This schedule applies to the above policies and any
renewals or replacements thereof.

CONFIDENTIAL

TRAV_SUB_012480

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**    Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**    Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**    Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**    In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**    No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012481

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION                In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES                Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT                Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION                This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL                                                                TRAV_SUB_012482

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability, or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom,

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured, or

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

*The Ætna Casualty and Surety Company*

Hartford, Connecticut

*John A. Hill*
President

(1878-A)

CONFIDENTIAL

TRAV_SUB_012483

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY POLICY
(EXCLUSION-CONTAMINATION OR POLLUTION)


It is agreed that the policy does not apply to EXCESS NET LOSS
arising out of the discharge, dispersal, release or escape of smoke,
vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or
gases, waste materials or other irritants, contaminants or pollutants
into or upon land, the atmosphere or any watercourse or body of
water; but this exclusion does not apply if such discharge, dispersal,
release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

| Endorsement effective | Policy No. | Endorsement No. | |
|---|---|---|---|
| Named Insured | | | |
| Additional Premium $ | Return Premium $ | Rf | PD |
| | | In Advance $      $ | |
| | | 1st Anniv. $      $ | |
| | | 2nd Anniv. $      $ | |

**The Ætna Casualty and Surety Company**

**The Standard Fire Insurance Company**        Countersigned by _____

Hartford, Connecticut                          (Authorized Representative)

Printed in U.S.A.

CONFIDENTIAL                                    TRAV_SUB_012484

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



CANCELLATION NOTICE AMENDED

IT IS AGREED THAT THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED
WILL NOT BE CANCELLED, EXCEPT FOR THE NON- PAYMENT OF PREMIUM, OR
REDUCED IN ANY WAY BY THE COMPANY WITHOUT SIXTY (60) DAYS PRIOR
WRITTEN NOTICE BEING SENT TO:

    BURLINGTON INDUSTRIES
    GREENSBORO, NORTH CAROLINA

IN THE EVENT OF CANCELLATION DUE TO NON- PAYMENT OF PREMIUM, THE
STANDARD (10) DAYS NOTICE OF CANCELLATION WILL APPLY.

This endorsement, issued by one of the below named companies, forms a part of the policy to which it is attached, effective on the inception of said policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective   12/31/71    Policy No.  01XN 189 WCA    Endorsement No.  1.

Named Insured    BURLINGTON INDUSTRIES.

Additional Premium $    Return Premium $

**The Ætna Casualty and Surety Company**

**The Standard Fire Insurance Company**

Hartford, Connecticut

CONFIDENTIAL

TRAV_SUB_012485

# EXHIBIT C - TRAV_SUB_012430

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# INCOMPLETE POLICY

This notification is affixed to a policy that is missing forms and/or endorsements, including the one(s) listed below, which may have been included in the originally-issued policy. After a diligent search of company records available as of this date, we could not locate these forms and/or endorsements.

Discrepancy between listing forms and content as 13113A is listed but MU13169 is used.

Portions of pages in policy are illegible.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company

Name of Insuring Company(ies)

| 01 XN 1144 WCA | 10/01/1976-10/01/1977 | 07/11/2022 |
|---|---|---|
| Policy Number(s) | Policy Period(s) | Date |

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL

TRAV_SUB_012430

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



EXCESS OVERLAYER INDEMNITY POLICY

THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows

Section 1  DECLARATIONS

NAMED INSURED AND ADDRESS

POLICY PERIOD:
From _____ To _____
12:01 A.M. standard time at the address of Insured

PREMIUM:

Flat charge

Adjustable at a rate of

_____ per $ _____ of _____

Minimum Premium _____

Total Advance Premium _____
3 Year Policy Installments
1st Anniversary _____

2nd Anniversary _____

LIMITS OF LIABILITY:

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113-A

HOME OFFICE COPY

Printed in U.S.A.

CONFIDENTIAL

TRAV_SUB_012431

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY



Insurance planned for your protection by



(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

CONFIDENTIAL

TRAV_SUB_012432

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012433

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2. INDEMNITY AGREEMENT

ÆTNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1, and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date_____     Countersigned by_____

                                         Authorized Representative

(MU-13168) 2-75

CONFIDENTIAL

TRAV_SUB_012434

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

|  | | | | LIMITS OF LIABILITY | |
|---|---|---|---|---|---|
| POLICY NUMBER | INSURER | COVERAGE | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
|  | MIDLAND | EXCESS INDEMNITY |  | 25,000,000. | 25,000,000. |
|  | A I G | EXCESS INDEMNITY |  | 10,000,000. | 10,000,000. |
|  | NORTHBROOK | EXCESS INDEMNITY |  | 14,000,000. | 14,000,000. |
|  | LIBERTY MUTUAL | EXCESS INDEMNITY |  | 1,000,000. | 1,000,000. |

CONTROLLING INSURANCE

L. LIBERTY MUTUAL   EXCESS INDEMNITY    1,000,000.   1,000,000.

This schedule applies to the above policies and any
renewals or replacements thereof.

TRAVELERS DOC MGMT Page 6 of 10

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**   Ætna Casualty shall not be liable for more than the amount of the limits stated in Section 1 with respect to EXCESS NET LOSS resulting from any one accident or occurrence, provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability is stated in expressed as a quota share percentage of a stated amount of excess loss, Ætna Casualty shall not be liable for more than that percentage of any loss to which this policy applies.

**NOTICES**   Notices as required to be given to the primary insurer shall also be given to Ætna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Ætna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**   Ætna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Ætna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Ætna Casualty, in which event the INSURED and Ætna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**   In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Ætna Casualty may elect to do so. Ætna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST ÆTNA CASUALTY**   No action shall lie against Ætna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Ætna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Ætna Casualty of any of its obligations hereunder.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Ætna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Ætna Casualty be impleaded by the INSURED or his legal representative.

**SUBROGATION**   In the event of any payment under this policy, Ætna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Ætna Casualty's liability, hereunder, then to reimburse Ætna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder, and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to affect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**CHANGES**   Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Ætna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Ætna Casualty.

**ASSIGNMENT**   Assignment of interest under this policy shall not bind Ætna Casualty until its consent is endorsed hereon.

**CANCELLATION**   This policy may be cancelled by the INSURED named in Section 1, by mailing to Ætna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Ætna Casualty by mailing to the INSURED first named in Section 1, at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Ætna Casualty cancels, earned premium shall be computed prorata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE ÆTNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

*Donald M Johnson*
President

*Stephen B Middlebrook*
Secretary

(MU-13189-1) ED 2-75            PRINTED IN U.S.A.

CONFIDENTIAL        TRAV_SUB_012436

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply.

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"**hazardous properties**" include radioactive, toxic or explosive properties;

"**nuclear material**" means source material, special nuclear material or byproduct material;

"**source material**", "**special nuclear material**", and "**byproduct material**" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"**spent fuel**" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"**waste**" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"**nuclear facility**" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"**nuclear reactor**" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "**injury**" or "**destruction**" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**
Hartford, Connecticut

*William O. Bailey*
                      *President*

(NRU-13160) ED. 11-74

PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012437

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY POLICY
### (EXCLUSION-CONTAMINATION OR POLLUTION)

It is agreed that the policy does not apply to EXCESS NET LOSS arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

Endorsement effective                    Policy No.                    Endorsement No.

Named Insured

Additional Premium $                     Return Premium $              BI                          PD

                                                                      In Advance $                $
                                                                      1st Anniv. $                $
                                                                      2nd Anniv. $                $

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company          Countersigned by _____
Hartford, Connecticut
                                                              (Authorized Representative)

(MU-13395) ED 3-75                                                    PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012438

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## EXCESS OVERLAYER INDEMNITY POLICY
## (AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the PERSONAL INJURY LIABILITY coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

| Endorsement effective | Policy No. | Endorsement No. | |
|---|---|---|---|
| Named Insured | | | |
| Additional Premium $ | Return Premium $ | BI | PD |
| | | In Advance $ | $ |
| | | 1st Anniv. $ | $ |
| | | 2nd Anniv. $ | $ |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

Countersigned by _____

(Authorized Representative)

(ML1-13385) ED. 3-75

CONFIDENTIAL

TRAV_SUB_012439

# EXHIBIT D - TRAV_SUB_012440

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## INCOMPLETE POLICY

This notification is affixed to a policy in which certain pages of the policy are illegible, including the one(s) listed below. After a diligent search of company records available as of this date, we could not locate a more legible record.

portions of page 2  are illegible including endorsement listing.

_____

_____

_____

_____

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____
Name of Insuring Company(ies)

01 XN 1511 WCA                10/01/77-10/01/78               07/11/2022
_____        _____        _____
Policy Number(s)              Policy Period(s)                    Date

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



EXCESS OVERLAYER INDEMNITY POLICY

THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

**POLICY NO.** 01-XN-1511-WGA

DECLARATIONS

NAMED INSURED AND ADDRESS

BURLINGTON INDUSTRIES INC.
GREENSBORO, NORTH CAROLINA 27420

POLICY PERIOD

From 10-1-77 To 10-1-78

PREMIUM

LIMITS OF LIABILITY

16.6% ($2,500,000 MAXIMUM) QUOTA SHARE OF
$15,000,000 EACH OCCURRENCE

16.6% ($2,500,000 MAXIMUM) QUOTA SHARE OF
$15,000,000 ANNUAL AGGREGATE

Total Advance Premium $2,000

ENDORSEMENTS 1. Broad Form Named...
2. EXCLUSION – CONTAMINATION OR POLLUTION XN-13106-4

3. AMENDMENT OF DISCRIMINATION COVERAGE XN-13106-6

NO COPY

CONFIDENTIAL

TRAV_SUB_012441

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut 06115



LIFE & CASUALTY



Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Lucille M. Nickerson
_Secretary_

_President_

CONFIDENTIAL

TRAV_SUB_012443

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2. INDEMNITY AGREEMENT

ÆTNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all policies described in Section 3. Schedule of Underlying Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date_____ Countersigned by_____

Authorized Representative

CONFIDENTIAL

TRAV_SUB_012444

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| | | | | LIMITS OF LIABILITY | |
| POLICY NUMBER | INSURER | COVERAGE | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
|---|---|---|---|---|---|
| | | EXCESS | | | |
| **4TH LAYER** | | | | | |
| TBD | MIDLAND AIG & VARIOUS | EXCESS INDEMNITY | - | 25,000,000 | 25,000,000 |
| **3RD LAYER** | | | | | |
| TBD | AIG | EXCESS INDEMNITY | - | 7,500,000 | 7,500,000 |
| TBD | PRU RE | EXCESS INDEMNITY | - | 2,500,000 | 2,500,000 |
| **2ND LAYER** | | | | | |
| TBD | NORTHBROOK | EXCESS INDEMNITY | - | 14,000,000 | 14,000,000 |
| **1ST LAYER** | | | | | |
| TBD | LIBERTY MUTUAL | UMBRELLA LIABILITY | - | 1,000,000 | 1,000,000 |

### PRIMARY

PER SCHEDULE OF UNDERLYING INSURANCE SHOWN IN POLICY NO. TBD ISSUED BY LIBERTY MUTUAL

### CONTROLLING INSURANCE

| | | |
|---|---|---|
| TBD | LIBERTY MUTUAL | UMBRELLA LIABILITY |

This schedule applies to the above policies and any renewals or replacements thereof

CONFIDENTIAL
TRAV_SUB_012445

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**
Ætna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrences; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Ætna Casualty shall not be liable for more than that percentage of any loss, to which this policy applies.

**NOTICES**
Notices, as required to be given to the primary insurer, shall also be given to Ætna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Ætna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**
Ætna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Ætna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Ætna Casualty, in which event the INSURED and Ætna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**
In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Ætna Casualty may elect to do so. Ætna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST ÆTNA CASUALTY**
No action shall lie against Ætna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Ætna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Ætna Casualty of any of its obligations hereunder.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Ætna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Ætna Casualty be impleaded by the INSURED or his legal representative.

**SUBROGATION**
In the event of any payment under this policy, Ætna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Ætna Casualty's liability, hereunder; then to reimburse Ætna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**CHANGES**
Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Ætna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Ætna Casualty.

**ASSIGNMENT**
Assignment of interest under this policy shall not bind Ætna Casualty until its consent is endorsed hereon.

**CANCELLATION**
This policy may be cancelled by the INSURED named in Section 1. by mailing to Ætna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Ætna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Ætna Casualty cancels, earned premium shall be computed prorata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE ÆTNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

William O. Bailey
_President_

Stephen B. Middlebrook
_Secretary_

(MU-13169-1) ED. 2-75

PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012446

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**The Aetna Casualty and Surety Company**

Hartford, Connecticut

CONFIDENTIAL                                        TRAV_SUB_012447

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*Donald M Johnson*
President.

For attachment to the following policy forms:

(CA, JS, AL, CS, MP, JP, SK, GS, PS, DR, DP, DG, DB, DH, DO)

J13113-A)    NEW YORK EXCEPTION—This endorsement does not apply under any Automobile Liability coverage, to injury, sickness, disease, death or destruction arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile principally garaged in the state of New York.

CONFIDENTIAL

TRAV_SUB_012448

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY POLICY
### (EXCLUSION-CONTAMINATION OR POLLUTION)

It is agreed that this policy does not apply to EXCESS NET LOSS arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective        Policy No.        Endorsement No.   2

Named Insured

Additional Premium $        Return Premium $        By:        PD

       In Advance $    $
       1st Anniv. $    $
       2nd Anniv. $    $

**The Ætna Casualty and Surety Company**
**The Standard Fire Insurance Company**
Hartford, Connecticut

Countersigned by _____

Authorized Representative

CONFIDENTIAL                    TRAV_SUB_012449

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY POLICY

(EXCLUSION—CONTAMINATION OR POLLUTION)

It is agreed that the policy does not apply to EXCESS NET LOSS arising out of the discharge dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

| Endorsement effective | Policy No. | | Endorsement No. | |
|---|---|---|---|---|
| Named Insured | | | | |
| Additional Premium $ | Return Premium $ | | BI | PD |
| | | In Advance $ | $ | |
| | | 1st Anniv. $ | $ | |
| | | 2nd Anniv. $ | $ | |

**The Ætna Casualty and Surety Company**
**The Standard Fire Insurance Company**
Hartford, Connecticut

Countersigned by _____
(Authorized Representative)

XN-13106-4

CONFIDENTIAL

TRAV_SUB_012450

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**EXCESS OVERLAYER INDEMNITY POLICY**
**(AMENDMENT OF DISCRIMINATION COVERAGE)**

It is agreed that such insurance as is afforded by the PERSONAL INJURY LIABILITY coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

| Endorsement effective | Policy No. | Endorsement No. 3 |
|---|---|---|

Named Insured

| Additional Premium $ | Return Premium $ | BI | PD |
|---|---|---|---|
| | | In Advance $ | $ |
| | | 1st Anniv. $ | $ |
| | | 2nd Anniv. $ | $ |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

Countersigned by _____
                            (Authorized Representative)

00V-13105-6)

CONFIDENTIAL                                    TRAV_SUB_012451

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*EXCESS OVERLAYER INDEMNITY POLICY*

*(AMENDMENT OF DISCRIMINATION COVERAGE)*

*It is agreed that such insurance as is afforded by the personal injury lia-*
*bility coverage does not apply to injuries sustained by any person as a result*
*of discrimination directly or indirectly related to the employment of such*
*person by the insured.*

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

| Endorsement effective | Policy No. | | Endorsement No. | |
|---|---|---|---|---|
| Named Insured | | | | |
| Additional Premium $ | Return Premium $ | | BI | PD |
| | In Advance $ | | $ | |
| | 1st Anniv. $ | | $ | |
| | 2nd Anniv. $ | | $ | |

**The Ætna Casualty and Surety Company**
**The Standard Fire Insurance Company**
Hartford, Connecticut

*XN-13106-6*

Countersigned by _____

· Authorized Representative ·

CONFIDENTIAL

TRAV_SUB_012452

# EXHIBIT E - TRAV_SUB_012486

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company

**Name of Insuring Company(ies)**

| 01 XN 1955 WCA | 10/01/1978-10/01/1979 | 07/11/2022 |
|---|---|---|
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

Kenneth Kupec, Second Vice President
BI Document Management

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY/ BROKER | CODE 2120 | NAME MARSH & McLENNAN | | COM | 100 | PAYMENT | TAX DISTRICT | TRANSACTION TYPE | LINE OF BUSINESS | CAP | ID | DATE TYPED AND INITIALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTERSIGNING CODES | | OFFICE CODE | C/S CODE | | | | A | ☐ NEW  ☒ RENEWAL | KY | 9 | | 10-23- 78 LS |
| STAT. PLAN 9 | TERRITORY STATE 32 | L/O RATE | CLASS X 87778 | LIMITS 9 | | | | FILE DEPT. | OUTSIDE RPT. | UND. APPROV. | UND. PROC. | |

EXCESS OVERLAYER INDEMNITY POLICY

THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO. 01 XN 1955 WCA

Section 1  DECLARATIONS

NAMED INSURED AND ADDRESS

BURLINGTON INDUSTRIES INC.
3330 WEST FRIENDLY AVENUE
GREENSBORO, NC 27420

POLICY PERIOD:

From 10/1/78   To 10/1/79
12:01 A.M. standard time at the address of Insured

PREMIUM:

☒ Flat charge

☐ Adjustable at a rate of

_____ per $ ____ of _____

Minimum Premium _____

Total Advance Premium 2,200
3 Year Policy Installments
1st Anniversary _____

2nd Anniversary _____

LIMITS OF LIABILITY:

16.66% ($2,500,000 MAXIMUM) QUOTA SHARE OF $15,000,000 EACH OCCURRENCE

16.66% ($2,500,000 MAXIMUM) QUOTA SHARE OF $15,000,000 ANNUAL AGGREGATE

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113-A

2. EXCLUSION - CONTAMINATION OR POLLUTION XN 13106-4
3. AMENDMENT OF DISCRIMINATION COVERAGE XN 13106-6

0734094 49

(16373-1) 4-78

Printed in U.S.A.

CONFIDENTIAL

TRAV_SUB_012487

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY





Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

CONFIDENTIAL

TRAV_SUB_012488

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Lucille M. Nickerson
Secretary

President

CONFIDENTIAL

TRAV_SUB_012489

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2.  INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____    Countersigned by _____

                                          Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 1. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| POLICY NUMBER | INSURER | COVERAGE | LIMITS OF LIABILITY | | |
| --- | --- | --- | --- | --- | --- |
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | | EXCESS | | | |
| TBD | GRANITE STATE & PRU-RE | EXCESS LIABILITY | | 10,000,000 | 10,000,000 |
| TBD | HARBROOK | EXCESS LIABILITY | | 14,000,000 | 14,000,000 |
| TBD | LIBERTY | UMBRELLA LIABILITY | | 1,000,000 | 1,000,000 |

### PRIMARY

AS PER SCHEDULE OF UNDERLYING INSURANCE SHOWN IN POLICY NUMBER TBD ISSUED BY LIBERTY.

### CONTROLLING INSURANCE

| TBD | LIBERTY | UMBRELLA LIABILITY |
| --- | --- | --- |

This schedule applies to the above policies and any renewals or replacements thereof

CONFIDENTIAL     TRAV_SUB_012491

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY** Ætna Casualty shall not be liable for more than the amount of the limits stated in Section 1, with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Ætna Casualty shall not be liable for more than that percentage of any loss, to which this policy applies.

**NOTICES** Notices, as required to be given to the primary insurer, shall also be given to Ætna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Ætna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION** Ætna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Ætna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Ætna Casualty, in which event the INSURED and Ætna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS** In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Ætna Casualty may elect to do so. Ætna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST ÆTNA CASUALTY** No action shall lie against Ætna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Ætna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Ætna Casualty of any of its obligations hereunder.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Ætna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Ætna Casualty be impleaded by the INSURED or his legal representative.

**SUBROGATION** In the event of any payment under this policy, Ætna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Ætna Casualty's liability, hereunder; then to reimburse Ætna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

**CHANGES** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Ætna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Ætna Casualty.

**ASSIGNMENT** Assignment of interest under this policy shall not bind Ætna Casualty until its consent is endorsed hereon.

**CANCELLATION** This policy may be cancelled by the INSURED named in Section 1, by mailing to Ætna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Ætna Casualty by mailing to the INSURED first named in Section 1, at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Ætna Casualty cancels, earned premium shall be computed pro-rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE ÆTNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

_William O. Bailey_
President

_Stephen B Middlebrook_
Secretary

(XN-13106-3)

CONFIDENTIAL

TRAV_SUB_012492

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured, or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*Donald M Johnson*
President.

ENDORSEMENT NO. 1

For attachment to the following policy forms:
(CA, JC, JS, AL, SJ, MP, JP, CJ, SK, GS, PS, LC, DR, DP, DG, DB, DH, DO)

(13113-A)

C.A.T. 001902
PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012493

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY POLICY
### (EXCLUSION-CONTAMINATION OR POLLUTION)

It is agreed that the policy does not apply to EXCESS NET LOSS arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

*(The information below is required only when this endorsement is issued subsequent to preparation of policy.)*

| | | |
|---|---|---|
| Endorsement effective | Policy No. | Endorsement No. 2 |
| Named Insured | | |
| Additional Premium $ | Return Premium $ | BI       PD |
| | | In Advance $    $ |
| | | 1st Anniv. $    $ |
| | | 2nd Anniv. $    $ |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0704664 - 9

Countersigned by _____
                                      (Authorized Representative)

S24-13108-4

PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012494

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY POLICY
### (AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the PERSONAL INJURY LIABILITY coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement effective                     Policy No.                     Endorsement No. 3

Named Insured

Additional Premium $                     Return Premium $               PI                     PD

                                                                         In Advance $          $
                                                                         1st Anniv. $          $
                                                                         2nd Anniv. $          $

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company               Countersigned by _____
Hartford, Connecticut     0736664  30                          (Authorized Representative)

(CSL-13106-6)

CONFIDENTIAL                                                  TRAV_SUB_012495

# EXHIBIT F - TRAV_SUB_012594

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company

**Name of Insuring Company(ies)**

| 25 XN 79 WCA | 10/01/1985-10/01/1986 | 07/11/2022 |
|---|---|---|
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

*Kenneth Kupec*
Kenneth Kupec, Second Vice President
BI Document Management

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONFIDENTIAL

TRAV_SUB_012594

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY BROKER | DATE | NAME | COMM. | PAY'T | TRANS | TYPE OF POLICY | C/T | ID | BILL ID | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|
| | 4781 | J & H | 100 | | | 10 | F | | 1 | |
| COUNTERSIGNING CODES | C/S OFFICE | C/S CODE | C/S COMM. | LMTS ID | MED. PAY | RATING ID | | TAX DIST. | DATE TYPED & INITIALS | |
| | | | | 1 | 1 | 9 | | | 11-7-85 JW | |

| | TERRITORY STATE | RATE | LINE OF BUS. | LINE DESIG. | CLASS CODE | COV. | PREM. BASIS | UND. APPROV. | UND. PROC. |
|---|---|---|---|---|---|---|---|---|---|
| D/T MED | | 000 | | X | 10888 | 3 | | | |
| MED | 32 | | | | | | | | |

## EXCESS OVERLAYER INDEMNITY POLICY

### THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO. ___ 25 XN 79 WEA ___

Section 1. DECLARATIONS

NAMED INSURED AND ADDRESS

    BURLINGTON INDUSTRIES, INC.
    3330 WEST FRIENDLY AVE.
    GREENSBORO, N.C. 27420

POLICY PERIOD:

From ___ 10-1-85 ___ To ___ 10-1-86 ___
12:01 A.M. standard time at the address of Insured

PREMIUM:

☒ Flat charge

☐ Adjustable at a rate of

    _____ per $ _____ of _____

    Minimum Premium _____

LIMITS OF LIABILITY:

    33% ($5,000,000 MAXIMUM) QUOTA SHARE OF
    $15,000,000 EACH OCCURRENCE

    33% ($5,000,000 MAXIMUM) QUOTA SHARE OF
    $15,000,000 ANNUAL AGGREGATE

    Total Advance Premium ___ $75,000 ___
3 Year Policy Installments
    1st Anniversary _____

    2nd Anniversary _____

ENDORSEMENTS 1. Broad Form Nuclear Energy Exclusion, Form No. 13113-A
        2. AMENDMENT OF DISCRIMINATION EXCLUSION  XN 13106-6
        3. POLLUTION LIABILITY EXCLUSION  XN-13179

0 1 2 2 1 6 1 0 2 2 7

OTHER COPY

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY



Insurance planned for your protection by



(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

CONFIDENTIAL

TRAV_SUB_012596

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012597

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Section 2.  INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____  Countersigned by _____

Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is exces_ of all policies listed below it.)

|  |  |  | LIMITS OF LIABILITY | | |
| --- | --- | --- | --- | --- | --- |
| POLICY NUMBER | INSURER | COVERAGE | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
|  |  | EXCESS |  |  |  |
| **LAYER III** |  |  |  |  |  |
| XCC016821 | PACIFIC EMPLOYERS | EXCESS INDEMNITY |  | 3,000,000 | 3,000,000 |
| **LAYER II** |  |  |  |  |  |
| XCC016835 | PACIFIC EMPLOYERS | EXCESS INDEMNITY |  | 3,000,000 | 3,000,000 |
| J000131131-00 | KEMPER | EXCESS INDEMNITY |  | 1,000,000 | 1,000,000 |
| **LAYER I** |  |  |  |  |  |
| XM0025697 | PACIFIC EMPLOYERS | UMBRELLA LIABILITY |  | 1,000,000 | 1,000,000 |

PRIMARY

AS PER SCHEDULE OF UNDERLYING INSURANCE AS SHOWN IN POLICY NO. XM0025697 ISSUED BY PACIFIC EMPLOYERS

CONTROLLING INSURANCE

XM0025697     PACIFIC EMPLOYERS     UMBRELLA LIABILITY

This schedule applies to the above policies and any renewals or replacements thereof.

0 1 2 2 1 6 1 0 2 2 7

(XN-13106-2) (2)

CONFIDENTIAL                                        TRAV_SUB_012599

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**   Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**   Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**   Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**   In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**   No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012600

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION     In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor.  The INSURED shall do nothing after loss to prejudice such rights.  Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests.  Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES     Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT     Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION     This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective.  This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012601

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material" , "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*William O. Bailey*

President

For attachment to the following policy forms:  Ɐ  J  L  2  L  L  LLL  ENDORSEMENT NO. 1
(GA, JC, JS, AL, SL, MP, JP, CL, SK, GS, PS, LC, DR, DF, DFC, DH, DH, DO)

(13313-A)

CAT 03 05 2
PRINTED IN U S A

CONFIDENTIAL                     TRAV_SUB_012602

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY POLICY

#### (AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the personal injury liability coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

| Endorsement effective | Policy No. | Endorsement No. | 2 | |
|---|---|---|---|---|
| Named Insured | | | | |
| Additional Premium $ | Return Premium $ | BI | | PD |
| | | In Advance $ | $ | |
| | | 1st Anniv. $ | $ | |
| | | 2nd Anniv. $ | $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 | 2 2 | 5 | 0 2 2 7

Countersigned by _____
· Authorized Representative ·

XN-13106-6

CONFIDENTIAL

TRAV_SUB_012603

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY

(POLLUTION LIABILITY EXCLUSION)

It is agreed that:

I.   This policy does not apply:

    A.   to excess net loss arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants

        1.   at or from premises owned by, rented to, or occupied by the insured; or

        2.   at or from any site or location used by or for the insured or any other person or organization for whom the insured may be legally responsible for the handling, storage, disposal, processing or treatment of waste; or

        3.   which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any other person or organization for whom the insured may be legally responsible; or

        4.   at or from any site or location on which the insured or any person or organization working directly or indirectly on behalf of the insured are performing operations,

            a.   if such pollutants are brought on or to the site or location in connection with such operations, or

            b.   which test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize such pollutants, or for the preparation of any plan relating to any of the foregoing;

    but this exclusion does not apply:

    (i)   to excess net loss sustained by an employee of the insured arising out of and in the course of the employee's employment; or

    (ii)   to excess net loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile if such discharge, dispersal, release, escape or contamination is sudden and accidental.

    B.   to any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the operation of any plan relating to any of the foregoing activities;

0 Page 2 of 2 Pages   1   0   2   2   7

CONFIDENTIAL                                                TRAV_SUB_012604

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

II. As used in this endorsement:

"Automobile" is defined in the Controlling Insurance listed in Section 3 of this policy.

"Excess Net Loss" is as defined in Section 2 of this policy.

"Insured" is as defined in Section 2 of this policy.

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement Effective          Policy No.          Endorsement No.

Named Insured

XN-13179                Page 2 of 2 Pages

CONFIDENTIAL                                        TRAV_SUB_012605

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

**EXCESS OVERLAYER INDEMNITY**
**(Amendment of Cancellation Condition)**

It is agreed that Section 4 of the policy conditions relating to "cancellation"
is amended to read as follows:

CANCELLATION  This policy may be cancelled by the INSURED named in Section
1. by mailing to Aetna Casualty written notice stating when thereafter the
cancellation shall be effective.  This policy may be cancelled by Aetna Casualty
by mailing to the INSURED first named in Section 1. at the address shown
in this policy written notice stating when not less than sixty days thereafter
such cancellation shall be effective.  The mailing of notice as aforesaid
shall be sufficient proof of notice.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy)

| Endorsement effective 10-1-83 | Policy No. 23 XN 79 WCA | Endorsement No. 4 |
| Named Insured  BURLINGTON INDUSTRIES, INC. | | |

| Additional Premium $ | Return Premium $ | BI | PD |
| | | In Advance $ | | |
| | | 1st Anniv. $ | | |
| | | 2nd Anniv. $ | | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 1 2 2   Countersigned by  0 2 2 7
· Authorized Representative ·

XN-13112

CONFIDENTIAL

TRAV_SUB_012606

# EXHIBIT G - TRAV_SUB_012607

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____

**Name of Insuring Company(ies)**

| | | |
|---|---|---|
| 25 XN 81 WCA | 10/01/1985-10/01/1986 | 07/11/2022 |
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL        TRAV_SUB_012607

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY BROKER | CODE | NAME | COMM. | PAT'T | TRANS | TYPE OF POLICY | C/I | ID | BILL TO | ACCOUNT NUMBER | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4781 | J & M | 100 | 5 | N | 10 | F | | | 1 | | |
| COUNTERSIG CODES | | C/S OFFICE | C/S CODE | C/S COMM. | LMTS ID | MED. PAY ID | RATING ID | | TAX DIST. | DATE TYPED & INITIALS | | |
| | | | | | 1 | 1 | 9 | | | 11-7-85 JM | | |
| D T MID | TERRITORY STATE RATE | LINE OF BUS. | LINE DESIG. | CLASS CODE | COV. | PREM. BASIS | UND. APPROV | UND. PROC | | | | |
| MED | 32 | 000 | X | 10888 | 3 | | | | | | | |

EXCESS OVERLAYER INDEMNITY POLICY

THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in
the declarations as follows

POLICY NO ____ 25 XN 81 MCA ____

Section 1. DECLARATIONS

NAMED INSURED AND ADDRESS

    BURLINGTON INDUSTRIES, INC.
    3330 WEST FRIENDLY AVE.
    GREENSBORO, N.C. 27420

POLICY PERIOD:

From ____ 10-1-85 ____ To ____ 10-1-86 ____
12:01 A.M. standard time at the address of
Insured

PREMIUM:

[X] Flat charge

[ ] Adjustable at a rate of

    _____ per $ _____ of _____

    Minimum Premium _____

    Total Advance Premium ___ $80,000
3 Year Policy Installments
    1st Anniversary _____

    2nd Anniversary _____

LIMITS OF LIABILITY

    40% ($10,000,000 MAXIMUM) QUOTA SHARE OF
    $25,000,000 EACH OCCURRENCE

    40% ($10,000,000 MAXIMUM) QUOTA SHARE OF
    $25,000,000 ANNUAL AGGREGATE

ENDORSEMENTS   1. Broad Form Nuclear Energy Exclusion, Form No. 13113 A

    2.   AMENDMENT OF DISCRIMINATION EXCLUSION   XN 13106-6
    3.   POLLUTION LIABILITY EXCLUSION   XN-13179

0 1 2 2 1 - 6 1 0 2 2 5

OTHER COPY

CONFIDENTIAL

TRAV_SUB_012608

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115





(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONFIDENTIAL

TRAV_SUB_012609

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012610

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2.  INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____  Countersigned by _____

　　　　　　　　　　　　　　　　　　Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL　　　　　　　　　　　　　　　　　　　　　　　TRAV_SUB_012611

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*SECTION 3. SCHEDULE OF UNDERLYING INSURANCE*

*(Each policy or group of quota-share policies listed is excess of all policies listed below it.)*

| POLICY NUMBER | INSURER | COVERAGE | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
|---|---|---|---|---|---|
| | | | | *LIMITS OF LIABILITY* | |
| | | *EXCESS* | | | |
| **LAYER IV** | | | | | |
| 25 XN 79 SCA | AETNA C & S | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| 5526017 | LEXINGTON | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| XUN00112 | SCOTTSDALE | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| **LAYER III** | | | | | |
| XCC016021 | PACIFIC EMPLOYERS | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| **LAYER II** | | | | | |
| XCC016039 | PACIFIC EMPLOYERS | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| 358015131-00 | KEMPER | EXCESS INDEMNITY | | 1,000,000 | 1,000,000 |
| **LAYER I** | | | | | |
| XMU023497 | PACIFIC EMPLOYERS | UMBRELLA LIABILITY | | 1,000,000 | 1,000,000 |

*PRIMARY*

AS PER SCHEDULE OF UNDERLYING INSURANCE AS SHOWN IN POLICY NO. XMU023497 ISSUED BY PACIFIC EMPLOYERS

*CONTROLLING INSURANCE*

XMU023497    PACIFIC EMPLOYERS    UMBRELLA LIABILITY

*This schedule applies to the above policies and any renewals or replacements thereof.*

0 1 2 2 1 6 1 0 2 2 5

(XN-13106-2) (2)

CONFIDENTIAL                                    TRAV_SUB_012612

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**   Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1.  if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2.  if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3.  if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**   Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**   Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**   In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**   No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012613

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION          In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES          Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT          Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION          This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012614

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I.  Under any Liability Coverage, to injury, sickness, disease, death or destruction

   (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.  Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.  Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

   (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

   (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

   (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.  As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties;

   "nuclear material" means source material, special nuclear material or byproduct material;

   "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

   "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

   "nuclear facility" means

   (a) any nuclear reactor,

   (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

   (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

   (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

   With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*William O. Bailey*
President

For attachment to the following policy forms:     0  1  2  2  1  5  1     ENDORSEMENT NO. 1
(CA, JC, JS, AL, SJ, MP, JP, CJ, SK, GS, PS, LC, DR, DP, DG, DB, DH, DO)

(13113-A)

CAT. 001902
PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012615

EXCESS OVERLAYER INDEMNITY POLICY

(AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the personal injury lia-
bility coverage does not apply to injuries sustained by any person as a result
of discrimination directly or indirectly related to the employment of such
person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the
policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

| Endorsement effective | Policy No. | Endorsement No. 2 | |
|---|---|---|---|
| Named Insured | | | |
| Additional Premium $ | Return Premium $ | BI | PD |
| | | In Advance $          $ | |
| | | 1st Anniv. $          $ | |
| | | 2nd Anniv. $          $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

Countersigned by _____
                              Authorized Representative

XS-11106-6

CONFIDENTIAL                                    TRAV_SUB_012616

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY

#### (POLLUTION LIABILITY EXCLUSION)

It is agreed that:

I.  This policy does not apply:

    A.  to excess net loss arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants

        1.  at or from premises owned by, rented to, or occupied by the insured; or

        2.  at or from any site or location used by or for the insured or any other person or organization for whom the insured may be legally responsible for the handling, storage, disposal, processing or treatment of waste; or

        3.  which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any other person or organization for whom the insured may be legally responsible; or

        4.  at or from any site or location on which the insured or any person or organization working directly or indirectly on behalf of the insured are performing operations,

            a.  if such pollutants are brought on or to the site or location in connection with such operations, or

            b.  which test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize such pollutants, or for the preparation of any plan relating to any of the foregoing;

    but this exclusion does not apply:

    (i)  to excess net loss sustained by an employee of the insured arising out of and in the course of the employee's employment; or

    (ii)  to excess net loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile if such discharge, dispersal, release, escape or contamination is sudden and accidental.

    B.  to any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the operation of any plan relating to any of the foregoing activities;

0 | 2 2 | 6 | 0 2 2 5
Page 1 of 2 Pages

CONFIDENTIAL

TRAV_SUB_012617

II. As used in this endorsement:

"Automobile" is defined in the Controlling Insurance listed in Section 3 of this policy.

"Excess Net Loss" is as defined in Section 2 of this policy.

"Insured" is as defined in Section 2 of this policy.

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement Effective          Policy No.               Endorsement No. 3

Named Insured

XN-13179                       Page 2 of 2 Pages

CONFIDENTIAL                                        TRAV_SUB_012618

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY
(Amendment of Cancellation Condition)

It is agreed that Section 4 of the policy conditions relating to "cancellation" is amended to read as follows:

CANCELLATION  This policy may be cancelled by the INSURED named in Section 1. by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective.  This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than sixty days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.

This endorsement issued by one of the below named companies forms a part of the policy to which attached effective on the inception date of the policy unless otherwise stated herein.

The information below is required only when this endorsement is issued subsequent to preparation of policy

| Endorsement effective | 10-1-85 | Policy No. | 75 XN 81 WCA | Endorsement No. | 4 |
| Named Insured | BURLINGTON INDUSTRIES, INC. | | | | |
| Additional Premium $ | | Return Premium $ | | | |

| | | | |
|---|---|---|---|
| | | In Advance $ | |
| | | 1st Annir. $ | |
| | | 2nd Annir. $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 1 2 2  Countersigned by  0 2 2 5

XN-13112                                        Authorized Representative

CONFIDENTIAL                                        TRAV_SUB_012619

# EXHIBIT H - TRAV_SUB_012496

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____

**Name of Insuring Company(ies)**

| 25 XN 82 WCA | 10/01/1985-10/01/1986 | 07/11/2022 |
|---|---|---|
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL           TRAV_SUB_012496

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY BROKER | CODE | NAME | | COMM. | PAT'T | TRANS. | TYPE OF POLICY | C/T | ID | BILL ID | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 761 | J & H | | 100 | 5 | N | 10 | F | | 1 | |
| COUNTERSIGNING CODES | C/S OFFICE | C/S CODE | C/S COMM. | LMTS ID | MED. PAY. ID | RATING ID | | | TAX DIST. | DATE 1 · PLD & INITIALS | |
| | | | | 1 | 1 | 9 | | | | 11-7-85 JW | |

| | TERRITORY STATE | LINE OF RATE | LINE OF BUS. | LINE DESIG. | CLASS CODE | COV. | PREM. BASIS | UND. APPROV. | UND. PROC. | |
| O/T. MED ▶ | | 000 | | X | 10888 | 3 | | | | |
| MED ▶ | 32 | | | | | | | | | |

### EXCESS OVERLAYER INDEMNITY POLICY

### THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO. __25 XN 82 WCA__

Section 1. DECLARATIONS

NAMED INSURED AND ADDRESS

POLICY PERIOD:

BURLINGTON INDUSTRIES, INC.
3330 WEST FRIENDLY AVE.
GREENSBORO, N.C. 27420

From __10-1-85__ To __10-1-86__
12:01 A.M. standard time at the address of
Insured

PREMIUM:

☒ Flat charge

☐ Adjustable at a rate of

_____ per S____ of _____

Minimum Premium _____

LIMITS OF LIABILITY:

2353 %
20% ($10,000,000 MAXIMUM) QUOTA SHARE OF
$50,000,000 EACH OCCURRENCE

23.53 425

20% ($10,000,000 MAXIMUM) QUOTA SHARE OF
$50,000,000 ANNUAL AGGREGATE
425

Total Advance Premium __$50,000__
3 Year Policy Installments
1st Anniversary _____
2nd Anniversary _____

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113 A
2. AMENDMENT OF DISCRIMINATION EXCLUSION XN 13186-6
3. POLLUTION LIABILITY EXCLUSION XN-13179

0 1 2 2 1 5 1 0 2 2 6

OTHER COPY

CONFIDENTIAL

TRAV_SUB_012497

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY





Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

TRAVELERS DOC MGMTPage 3 of 14

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

Lucille M. Nickerson
Secretary

President

CONFIDENTIAL

TRAV_SUB_012499

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2. INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____ Countersigned by _____

Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL

TRAV_SUB_012500

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies
listed below it.)

|  |  |  | LIMITS OF LIABILITY | | |
|---|---|---|---|---|---|
| POLICY NUMBER | INSURER | COVERAGE | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| **LAYER V** |  | EXCESS |  |  |  |
| 25 XN 61 WCA | AETNA C & S | EXCESS INDEMNITY |  | 10,000,000 | 10,000,000 |
| XU001373 | FIRST STATE | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| TBD | NATIONAL UNION | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| XCX007952 | CAL UNION | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| **LAYER IV** |  |  |  |  |  |
| 25 XN 79 SCA | AETNA C & S | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| 5526017 | LEXINGTON | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| XUM00117 | SCOTTSDALE | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| **LAYER III** |  |  |  |  |  |
| XCC016821 | PACIFIC EMPLOYERS | EXCESS INDEMNITY |  | 5,000,000 | 5,000,000 |
| **LAYER II** |  |  |  |  |  |
| XCC016839 | PACIFIC EMPLOYERS | EXCESS INDEMNITY |  | 3,500,000 | 3,000,000 |
| 3S0015131-00 | KEMPER | EXCESS INDEMNITY |  | 1,000,000 | 1,000,000 |
| **LAYER I** |  |  |  |  |  |
| XM0025497 | PACIFIC EMPLOYERS | UMBRELLA LIABILITY |  | 1,000,000 | 1,000,000 |

### PRIMARY

AS PER SCHEDULE OF UNDERLYING INSURANCE AS SHOWN IN POLICY NO. XM0025497 ISSUED BY
PACIFIC EMPLOYERS

### CONTROLLING INSURANCE

XM0025497      PACIFIC EMPLOYERS      UMBRELLA LIABILITY

This schedule applies to the above policies and any
renewals or replacements thereof.

0  1  2  2  1  6  1  0  2  2  6

(XN-13106-2) (2)

CONFIDENTIAL

TRAV_SUB_012501

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**    Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**    Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**    Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**    In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**    No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012502

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION            In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES                Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT             Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION           This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012503

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

  (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability, or

  (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

  (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

  (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

  (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility

IV. As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

  (a) any nuclear reactor,

  (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

  (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

The Aetna Casualty and Surety Company

Hartford, Connecticut

For attachment to the following policy forms:
(CA, FC, IS, AL, SI, MP, JP, CI, SK, GS, FS, LC, DR, DP, DG, DB, DH, DO)

ENDORSEMENT NO. 1

CONFIDENTIAL                    TRAV_SUB_012504

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY POLICY

(AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the personal injury lia-
bility coverage does not apply to injuries sustained by any person as a result
of discrimination directly or indirectly related to the employment of such
person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the
policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy)

| Endorsement effective | Policy No. | Endorsement No. 2 |
|---|---|---|
| Named Insured | | |
| Additional Premium $ | Return Premium $ | |

|  | In Advance $ | $ |
|---|---|---|
|  | 1st Anniv. $ | $ |
|  | 2nd Anniv. $ | $ |

The Aetna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

Countersigned by _____

XS-11106-6

CONFIDENTIAL                                 TRAV_SUB_012505

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### EXCESS OVERLAYER INDEMNITY

#### (POLLUTION LIABILITY EXCLUSION)

It is agreed that:

I.   This policy does not apply:

    A.   to excess net loss arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants

        1.   at or from premises owned by, rented to, or occupied by the insured; or

        2.   at or from any site or location used by or for the insured or any other person or organization for whom the insured may be legally responsible for the handling, storage, disposal, processing or treatment of waste; or

        3.   which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any other person or organization for whom the insured may be legally responsible; or

        4.   at or from any site or location on which the insured or any person or organization working directly or indirectly on behalf of the insured are performing operations,

            a.   if such pollutants are brought on or to the site or location in connection with such operations, or

            b.   which test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize such pollutants, or for the preparation of any plan relating to any of the foregoing;

but this exclusion does not apply:

    (i)   to excess net loss sustained by an employee of the insured arising out of and in the course of the employee's employment; or

    (ii)   to excess net loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile if such discharge, dispersal, release, escape or contamination is sudden and accidental.

    B.   to any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the operation of any plan relating to any of the foregoing activities;

0  1  2  2  1  6  1  0  2  2  6

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

II. As used in this endorsement:

"Automobile" is defined in the Controlling Insurance listed in Section 3 of this policy.

"Excess Net Loss" is as defined in Section 2 of this policy.

"Insured" is as defined in Section 2 of this policy.

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement Effective        Policy No.        Endorsement No.

Named Insured

XN-13179        Page 2 of 2 Pages

CONFIDENTIAL        TRAV_SUB_012507

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

*EXCESS OVERLAYER INDEMNITY*
*(Amendment of Cancellation Condition)*

It is agreed that Section 4 of the policy conditions relating to "cancellation" is amended to read as follows:

CANCELLATION  This policy may be cancelled by the INSURED named in Section 1. by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective.  This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than sixty days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy, unless otherwise stated herein.

( The information below is required only when this endorsement is issued subsequent to preparation of policy.)

| Endorsement effective | 10-1-85 | Policy No. | 25 XN 82 WCA | Endorsement No. | 8 |
| Named Insured | BURLINGTON INDUSTRIES, INC. | | | | |
| Additional Premium $ | | Return Premium $ | | BI | PD |
| | | | In Advance $ | $ | |
| | | | 1st Anniv. $ | $ | |
| | | | 2nd Anniv. $ | $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 | 2 2 countersigned by 0 2 2 6

XN-13112

Authorized Representative

CONFIDENTIAL

TRAV_SUB_012508

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY BROKER ► | CODE 4701 | NAME J & H | | COMM. | PAYMENT | TAX DIST. | TRANSACTION TYPE E | LINE OF BUSINESS | C A P | IO | POLICY EFF DATE 10-1-85 | DATE TYPED AND INITIALS 1/23/86 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTERSIGNING CODE ► | | C/S OFFICE | C/S CODE | C.S.COMM. | | | | | | POLICY EXPIR DATE 10-1-86 | | CB |

| STAT PLAN | TERRITORY STATE RATE | LIMITS OF LIABILITY BI | PD | MED. | DR. REC. | LINE DESIG. | FORM OR CLASS | COMP | COLL | DISC. | PREMIUM | EXPOSURE | BILL. ID | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | |

END'T FORM NO.

SPECIAL

EXCESS OVERLAYER INDEMNITY INSURANCE

IT IS AGREED THAT THE POLICY DECLARATIONS PAGE IS AMENDED IN PART TO READ:

LIMITS OF LIABILITY

23.53% ($10,000,000 MAXIMUM) QUOTA SHARE OF
$42,500,000 EACH OCCURRENCE

23.53% ($10,000,000 MAXIMUM) QUOTA SHARE OF
$42,500,000 ANNUAL AGGREGATE

This endorsement issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy)

| Endorsement effective | 10-1-85 | Policy No. | 25 XN 82 WCA | Endorsement No. | 5 | |
|---|---|---|---|---|---|---|
| Named Insured | BURLINGTON INDUSTRIES, INC. | | | | | |
| Additional Premium $ | | Return Premium $ | | | BI | PD |
| | | | In Advance $ | | $ | |
| | | | 1st Anniv $ | | $ | |
| | | | 2nd Anniv $ | | $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 1 2 2 1 6 1 0 2 2 6

Countersigned by _____

(Authorized Representative)

OTHER COPY 5

PRINTED IN U.S.A.

CONFIDENTIAL    TRAV_SUB_012509

# EXHIBIT I - TRAV_SUB_012510

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company

**Name of Insuring Company(ies)**

| 25 XN 104 WCA | 10/01/1986-10/01/1987 | 07/11/2022 |
|---|---|---|
| **Policy Number(s)** | **Policy Period(s)** | **Date** |

Kenneth Kupec, Second Vice President
BI Document Management

CONFIDENTIAL

TRAV_SUB_012510

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP420413B



**EXCESS OVERLAYER INDEMNITY POLICY**

THE A    A CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock in  rance company, herein called "Aetna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO.  75 XN 104 WCA

### Section 1. DECLARATIONS

**NAMED INSURED AND ADDRESS**

BURLINGTON INDUSTRIES, INC.
3330 WEST FRIENDLY AVE.
GREENSBORO, N.C. 27420

**POLICY PERIOD**

From 10-1-86  To  10-1-87
12:01 A.M. standard time at the address of Insured

**PREMIUM:**

X  Flat charge

Adjustable at a rate of

_____ per $ _____ of _____

Minimum Premium _____

Total Advance Premium  98,000

3 Year Policy Installments

1st Anniversary _____

2nd Anniversary _____

**LIMITS OF LIABILITY:**

5,000,000 EACH OCCURRENCE

5,000,000 ANNUAL AGGREGATE

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113 A

2.  DISCRIMINATION EXCLUSION     XN 13106-6

3.  POLLUTION LIABILITY EXCLUSION   XN 13179

RECEIVED

HOME OFFICE COPY

CONFIDENTIAL

TRAV_SUB_012511

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY BROKER ▶ | CODE | NAME | | COMM. | PAY'T | TRANS | TYPE OF POLICY 10 | C/I F | ID | BILL ID | ACCOUNT NUMBER | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTERSIGNING CODES ▶ | | C/S OFFICE | C/S CODE | C/S COMM. | LMTS ID 1 | MED. PAY ID 1 | RATING ID 9 | | TAX DIST. | | DATE TYPED & INITIALS | |

| | TERRITORY STATE | RATE | LINE OF BUS. | LINE DESIG. | CLASS CODE | COV. | PREM. BASIS | UND. APPROV. | UND. PROC. |
|---|---|---|---|---|---|---|---|---|---|
| O/T MED ▶ | | 000 | | X | 10888 | 3 | | | |
| MED ▶ | | | | | | | | | |

### EXCESS OVERLAYER INDEMNITY POLICY

### THE ÆTNA CASUALTY AND SURETY COMPANY
#### Hartford, Connecticut 06115
#### (a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO. _____

Section 1. DECLARATIONS

POLICY PERIOD:

NAMED INSURED AND ADDRESS

From _____ To _____
12:01 A.M. standard time at the address of Insured

PREMIUM:

☐ Flat charge

☐ Adjustable at a rate of

LIMITS OF LIABILITY:

_____ per $ ____ of _____

Minimum Premium _____

Total Advance Premium _____
3 Year Policy Installments
1st Anniversary _____

2nd Anniversary _____

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113-A

.(16373-1) 2-79    Printed in U.S.A.

**HOME OFFICE COPY**

CONFIDENTIAL    TRAV_SUB_012512

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY



Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

CONFIDENTIAL

TRAV_SUB_012513

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*

*President*

CONFIDENTIAL

TRAV_SUB_012514

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Section 2.  INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____ Countersigned by _____

                                               Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL

TRAV_SUB_012515

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| POLICY NUMBER | INSURER | COVERAGE | LIMITS OF LIABILITY | | |
|---|---|---|---|---|---|
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | | EXCESS | | | |
| **LAYER V** | | | | | |
| TBD | FIRST STATE | EXCESS INDEMNITY | | 3,000,000 | 3,000,000 |
| TBD | LEXINGTON | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| **LAYER IV** | | | | | |
| TBD | ST. PAUL | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| **LAYER III** | | | | | |
| TBD | PACIFIC EMPLOYERS | EXCESS INDEMNITY | | 2,000,000 | 2,000,000 |
| **LAYER II** | | | | | |
| TBD | KEMPER | EXCESS INDEMNITY | | 1,000,000 | 1,000,000 |
| **LAYER I** | | | | | |
| TBD | PACIFIC EMPLOYERS | UMBRELLA LIABILITY | | 2,000,000 | 2,000,000 |

### PRIMARY

AS PER SCHEDULE OF UNDERLYING INSURANCE SHOWN IN POLICY NO. TBD
ISSUED BY PACIFIC EMPLOYERS

### CONTROLLING INSURANCE

TBD      PACIFIC EMPLOYERS    UMBRELLA LIABILITY

This schedule applies to the above policies and any
renewals or replacements thereof.

CONFIDENTIAL

TRAV_SUB_012516

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**   Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1. if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2. if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3. if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**   Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**   Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**   In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**   No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012517

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION        In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor. The INSURED shall do nothing after loss to prejudice such rights. Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests. Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES        Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT        Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION        This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012518

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I.   Under any Liability Coverage, to injury, sickness, disease, death or destruction

(a)   with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)   resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.   Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.   Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

(a)   the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

(b)   the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

(c)   the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.   As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a)   any nuclear reactor,

(b)   any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c)   any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d)   any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Aetna Casualty and Surety Company**

**Hartford, Connecticut**

*William O. Bailey*
President

For attachment to the following policy forms:
(CA, JC, SS, AL, SI, MP, IP, CI, SK, OS, PS, LC, DR, DP, DG, DB, DH, DO)

G.A.T. 2013002
PRINTED IN U.S.A.

ENDORSEMENT NO. 1

CONFIDENTIAL                     TRAV_SUB_012519

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or byproduct material;

    "source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; .

    "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*William O. Bailey*

President

For attachment to the following policy forms:
(CA, JC, JS, AL, SJ, MP, JP, CJ, SK, GS, PS, LC, DR, DP, DG, DB, DH, DO)

.(13113-A)

CAT. 001902
PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012520

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



EXCESS OVERLAYER INDEMNITY POLICY

(AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the personal injury liability coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

The Aetna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford Connecticut

CONFIDENTIAL

TRAV_SUB_012521

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

EXCESS OVERLAYER INDEMNITY

(POLLUTION LIABILITY EXCLUSION)

It is agreed that:

I. This policy does not apply:

    A. to excess net loss arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants

        1. at or from premises owned by, rented to, or occupied by the insured; or

        2. at or from any site or location used by or for the insured or any other person or organization for whom the insured may be legally responsible for the handling, storage, disposal, processing or treatment of waste; or

        3. which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any other person or organization for whom the insured may be legally responsible; or

        4. at or from any site or location on which the insured or any person or organization working directly or indirectly on behalf of the insured are performing operations,

            a. if such pollutants are brought on or to the site or location in connection with such operations, or

            b. which test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize such pollutants, or for the preparation of any plan relating to any of the foregoing;

      but this exclusion does not apply:

        (i) to excess net loss sustained by an employee of the insured arising out of and in the course of the employee's employment; or

        (ii) to excess net loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile if such discharge, dispersal, release, escape or contamination is sudden and accidental.

    B. to any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the preparation of any plan relating to any of the foregoing activities;

Page 1 of 2 Pages

CONFIDENTIAL

TRAV_SUB_012522

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

II. As used in this endorsement:

"Automobile" is defined in the Controlling Insurance listed in Section 3 of this policy.

"Excess Net Loss" is as defined in Section 2 of this policy.

"Insured" is as defined in Section 2 of this policy.

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fume, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement Effective            Policy No.            Endorsement No.

Named Insured

XN-13179                    Page 2 of 2 pages

CONFIDENTIAL                                    TRAV_SUB_012523

# EXHIBIT J - TRAV_SUB_012524

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

The Aetna Casualty & Surety Company
_____

**Name of Insuring Company(ies)**

25 XN 105 WCA       10/01/1986-10/01/1987      07/11/2022

**Policy Number(s)**       **Policy Period(s)**      **Date**

Kenneth Kupec, Second Vice President
BI Document Management

TRAVELERS DOC MGMTPage 1 of 12

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| AGENCY NUMBER | CODE | NAME | COMM. | PART I | TRANS | TYPE OF POLICY | C/I | ID | BILL ID | ACCOUNT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|
| 4781 | | J & M | 100 | 2 | R | 10 | F | | 1 | |
| COUNTY SIGNING | C/S OFFICE | | C/S CODE | LMTS ID/MED. PAY | RATING | | | TAX DIST. | DATE TYPED & INITIALS | |
| | | | C/S COMM. | 1 | 1 | 9 | | | 11/5/86  CB | |
| | TERRITORY | LINE OF BUS. | LINE DESIG. | CLASS CODE | COV. | PREM. BASIS | UNS. APPROV. | UND. PROC. | | |
| | STATE | RATE | | | | | | | | |
| 52 | 000 | X | 10888 | 3 | | | | | | |

O/T MED ▶
MED ▶

EXCESS OVERLAYER INDEMNITY POLICY

THE ÆTNA CASUALTY AND SURETY COMPANY
Hartford, Connecticut 06115
(a stock insurance company, herein called "Ætna Casualty")

IN CONSIDERATION of the payment of the premium and subject to all of the terms of this policy, agrees with the Insured named in the declarations as follows:

POLICY NO. 25 XN 105 WCA

Section 1. DECLARATIONS

NAMED INSURED AND ADDRESS

BURLINGTON INDUSTRIES, INC.
3330 WEST FRIENDLY AVE.
GREENSBORO, N.C. 27420

POLICY PERIOD:

From 10-1-86 To 10-1-87
12:01 A.M. standard time at the address of Insured

PREMIUM:

☒ Flat charge

☐ Adjustable at a rate of

_____ per $ ____ of _____

Minimum Premium _____

LIMITS OF LIABILITY:

22.72% (5,000,000 MAXIMUM) QUOTA SHARE OF
22,000,000 EACH OCCURRENCE

22.72% (5,000,000 MAXIMUM) QUOTA SHARE OF
22,000,000 ANNUAL AGGREGATE

Total Advance Premium  62,500
3 Year Policy Installments
1st Anniversary _____

2nd Anniversary _____

ENDORSEMENTS: 1. Broad Form Nuclear Energy Exclusion, Form No. 13113 A

2. DISCRIMINATION EXCLUSION          XN 13106-6
3. POLLUTION LIABILITY EXCLUSION     XN 13179

0 1 2 2 1 6 1 0 2 2 8

- (16373-1) 2-79

Printed in U.S.A.

OTHER COPY

CONFIDENTIAL

TRAV_SUB_012525

7:25-cv-01706-DCC    Date Filed 03/12/25    Entry Number 1-1    Page 386 of 496

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut   06115



LIFE & CASUALTY



Insurance planned for your protection by

(90985) 3-70

Cat. 821829
Printed in U.S.A.

*Trademark of
The Ætna Casualty and Surety Company
and its associated companies

TRAVELERS DOC MGMTPage 3 of 12

CONFIDENTIAL

TRAV_SUB_012526

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

_Secretary_

_President_

CONFIDENTIAL

TRAV_SUB_012527

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 2.  INDEMNITY AGREEMENT

AETNA CASUALTY will indemnify the INSURED against EXCESS NET LOSS arising out of an accident or occurrence during the policy period, subject to the limits of liability stated in Section 1. and to all of the terms of this policy.

"INSURED" means any person or organization who qualifies as an Insured under the terms of the Controlling Underlying Insurance.

"EXCESS NET LOSS" means that part of the total of all sums which the INSURED becomes legally obligated to pay or has paid, as damages on account of any one accident or occurrence, and which would be covered by the terms of the Controlling Underlying Insurance, if written without any limit of liability, less realized recoveries and salvages, which is in excess of any self-insured retention and the total of the applicable limits of liability of all self-insurance and all policies described in Section 3. Schedule of Underlying Self-Insurance and Insurance; whether or not such policies are in force.

Loss shall not include any costs or expense in connection with the investigation or defense of claims or suits, or interest on any judgment which accrues after entry of the judgment.

Date _____  Countersigned by _____

                                          Authorized Representative

(XN-13106-2) (1)

CONFIDENTIAL

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## SECTION 3. SCHEDULE OF UNDERLYING INSURANCE

(Each policy or group of quota-share policies listed is excess of all policies listed below it.)

| POLICY NUMBER | INSURER | COVERAGE | LIMITS OF LIABILITY | | |
|---|---|---|---|---|---|
| | | | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
| | | EXCESS | | | |
| LAYER VI | | | | | |
| 25 XN 104 WCA | AETNA | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| LAYER V | | | | | |
| TBD | FIRST STATE | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| TBD | LEXINGTON | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| LAYER IV | | | | | |
| TBD | ST. PAUL | EXCESS INDEMNITY | | 5,000,000 | 5,000,000 |
| LAYER III | | | | | |
| TBD | PACIFIC EMPLOYERS | EXCESS INDEMNITY | | 2,000,000 | 2,000,000 |
| LAYER II | | | | | |
| TBD | KEMPER | EXCESS INDEMNITY | | 1,000,000 | 1,000,000 |
| LAYER I | | | | | |
| TBD | PACIFIC EMPLOYERS | UMBRELLA LIABILITY | | 2,000,000 | 2,000,000 |

PRIMARY

AS PER SCHEDULE OF UNDERLYING INSURANCE SHOWN IN POLICY NO. TBD ISSUED BY PACIFIC EMPLOYERS

CONTROLLING INSURANCE

TBD        PACIFIC EMPLOYERS        UMBRELLA LIABILITY

This schedule applies to the above policies and any renewals or replacements thereof.

(XN-13106-2) (2)        0 1 2 2 1 5 1 0 2 2 8

CONFIDENTIAL                                TRAV_SUB_012529

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## Section 4. CONDITIONS

**LIMITS OF LIABILITY**     Aetna Casualty shall not be liable for more than the amount of the limits stated in Section 1. with respect to EXCESS NET LOSS resulting from any one accident or occurrence; provided

1.   if limits of liability are separately stated as applicable to certain kinds of loss, such limits shall apply separately to that part of such loss which is in excess of the total of the limits of liability of the the underlying insurance policies applicable to the same kind of loss;

2.   if a single limit of liability is stated, such limit shall apply to that part of all loss which is in excess of the total of the applicable limits of liability of the underlying insurance policies; and

3.   if any limit of liability so stated is expressed as a quota-share percentage of a stated amount of excess loss, Aetna Casualty shall not be liable for more than the percentage of any loss, to which this policy applies.

**NOTICES**     Notices, as required to be given to the primary insurer, shall also be given to Aetna Casualty in the event of any accident, occurrence, claim or suit which is reasonably likely to give rise to a claim for indemnity under this policy.

The INSURED shall give Aetna Casualty notice of any change in or termination of underlying insurance, including notice of exhaustion of any aggregate limit, copies of endorsements and audits of premiums earned.

**ASSISTANCE AND COOPERATION**     Aetna Casualty shall not be called upon to assume charge of the settlement or defense of any claims made, or suits brought or proceedings instituted against the INSURED but Aetna Casualty shall have the right and shall be given the opportunity to associate with the INSURED or the INSURED'S underlying insurers, or both, in the defense and control of any claim, suit or proceeding where the claim or suit involves or appears reasonably likely to involve Aetna Casualty, in which event the INSURED and Aetna Casualty shall cooperate in all things in the defense of such claim, suit or proceeding.

**APPEALS**     In the event the INSURED or any underlying insurer elects not to appeal a judgment which exceeds the underlying limit, Aetna Casualty may elect to do so. Aetna Casualty shall be liable, in addition to the applicable limit of liability, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal.

**ACTION AGAINST AETNA CASUALTY**     No action shall lie against Aetna Casualty unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the INSURED'S obligation to pay shall have been finally determined either by judgment against the INSURED or by written agreement of the INSURED, the claimant and Aetna Casualty. Bankruptcy or insolvency of the INSURED shall not relieve Aetna Casualty of any of its obligations hereunder.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012530

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join Aetna Casualty as a party to any action against the INSURED to determine the INSURED'S liability, nor shall Aetna Casualty be impleaded by the INSURED OR his legal representative.

SUBROGATION          In the event of any payment under this policy, Aetna Casualty shall participate with the INSURED and the underlying insurers in the exercise of all the INSURED'S rights of recovery against any person or organization liable therefor.  The INSURED shall do nothing after loss to prejudice such rights.  Recoveries shall be applied first to reimburse any interest (including the INSURED) that may have paid any amount, with respect to liability in excess of the limit of Aetna Casualty's liability, hereunder; then to reimburse Aetna Casualty and any other insurer with which it may be participating on a quota-share basis, up to the amount paid hereunder; and lastly to reimburse those interests (including the INSURED), as to which this insurance is excess, who are entitled to claim the residue, if any; but a different apportionment may be made to effect settlement of a claim by agreement executed by all interests.  Reasonable expenses incurred in the exercise of rights of recovery shall be apportioned among all interests in the ratio of their respective losses for which recovery is sought.

CHANGES          Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop Aetna Casualty from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Assistant Vice President, Secretary or Assistant Secretary of Aetna Casualty.

ASSIGNMENT          Assignment of interest under this policy shall not bind Aetna Casualty until its consent is endorsed hereon.

CANCELLATION          This policy may be cancelled by the INSURED named in Section 1, by mailing to Aetna Casualty written notice stating when thereafter the cancellation shall be effective.  This policy may be cancelled by Aetna Casualty by mailing to the INSURED first named in Section 1. at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.

If such INSURED cancels, earned premium shall be computed short rate; if Aetna Casualty cancels, earned premium shall be computed pro rata; but payment or tender of unearned premium is not a condition of cancellation.

IN WITNESS WHEREOF, THE AETNA CASUALTY AND SURETY COMPANY has caused this policy to be signed by its President and a Secretary at Hartford, Connecticut, and countersigned on the Declarations page by a duly authorized agent of the Company.

XN-13106-3

CONFIDENTIAL

TRAV_SUB_012531

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

It is agreed that the policy does not apply:

I. Under any Liability Coverage, to injury, sickness, disease, death or destruction

    (a) with respect to which an Insured under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if

    (a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (2) has been discharged or dispersed therefrom;

    (b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (c) the injury, sickness, disease, death or destruction arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV. As used in this endorsement:

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or byproduct material;

    "source material" , "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

    (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

    and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

    "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

    With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This endorsement forms a part of the policy to which attached, effective from its date of issue.

**The Ætna Casualty and Surety Company**

Hartford, Connecticut

*William O. Bailey*

                                             *President*

ENDORSEMENT NO. 1

For attachment to the following policy forms:
(CA, JC, JS, AL, SJ, MP, JP, CJ, SK, GS, PS, LC, DR, DP, DG, DB, DH, DO)

-(13113-A)                    0  1  2  2  1  5  1  0  2  2  5          CAT. D01902
                                                        PRINTED IN U.S.A.

CONFIDENTIAL

TRAV_SUB_012532

EXCESS OVERLAYER INDEMNITY POLICY

(AMENDMENT OF DISCRIMINATION COVERAGE)

It is agreed that such insurance as is afforded by the personal injury liability coverage does not apply to injuries sustained by any person as a result of discrimination directly or indirectly related to the employment of such person by the insured.

This endorsement, issued by one of the below named companies, forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

( The information below is required only when this endorsement is issued subsequent to preparation of policy )

| Endorsement effective | Policy No | Endorsement No. | 2 | |
|---|---|---|---|---|
| Named Insured | | | | |
| Additional Premium $ | Return Premium $ | | BI | PD |
| | | In Advance $ | $ | |
| | | 1st Anniv $ | $ | |
| | | 2nd Anniv $ | $ | |

The Ætna Casualty and Surety Company
The Standard Fire Insurance Company
Hartford, Connecticut

0 | 2 2  Countersigned by  0 2 2 6

Authorized Representative

XN-13136-6

CONFIDENTIAL

TRAV_SUB_012533

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## EXCESS OVERLAYER INDEMNITY

### (POLLUTION LIABILITY EXCLUSION)

It is agreed that:

I.   This policy does not apply:

A.   to excess net loss arising out of the actual, alleged or threatened discharge, dispersal, release, escape or contamination by pollutants

1.   at or from premises owned by, rented to, or occupied by the insured; or

2.   at or from any site or location used by or for the insured or any other person or organization for whom the insured may be legally responsible for the handling, storage, disposal, processing or treatment of waste; or

3.   which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the insured or any other person or organization for whom the insured may be legally responsible; or

4.   at or from any site or location on which the insured or any person or organization working directly or indirectly on behalf of the insured are performing operations,

a.   if such pollutants are brought on or to the site or location in connection with such operations, or

b.   which test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize such pollutants, or for the preparation of any plan relating to any of the foregoing;

but this exclusion does not apply:

(i)   to excess net loss sustained by an employee of the insured arising out of and in the course of the employee's employment; or

(ii)  to excess net loss arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile if such discharge, dispersal, release, escape or contamination is sudden and accidental.

B.   to any loss, cost or expense arising out of any governmental direction or request imposed upon the insured to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, or for the operation of any plan relating to any of the foregoing activities;

Page 1 of 2 Pages    6 1 0 2 2 8

CONFIDENTIAL    TRAV_SUB_012534

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

II.  As used in this endorsement:

"Automobile" is defined in the Controlling Insurance listed in Section 3 of this policy.

"Excess Net Loss" is as defined in Section 2 of this policy.

"Insured" is as defined in Section 2 of this policy.

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

RICK HILL
CHARLOTTE CIA
11-19-86

This endorsement forms a part of the policy to which attached, effective from its date of issue unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of policy.)

Endorsement Effective                 Policy No.              Endorsement No.  3

Named Insured

XN-13179                    Page 2 of 2 Pages

CONFIDENTIAL

TRAV_SUB_012535

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Exhibit 4

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC., by and through its duly appointed Receiver Peter M. McCoy, Jr.,

Civil Action No.: 2024-CP-42-04138

          Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY, AMERICAN HOME ASSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, formerly known as NORTHBROOKINSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AIU INSURANCE COMPANY, THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

OF PITTSBURGH, PA, CENTURY
INDEMNITY COMPANY, as successor-in-
interest to CIGNA SPECIALTY
INSURANCE COMPANY, formerly known
as CALIFORNIA UNION INSURANCE
COMPANY, ZURICH AMERICAN
INSURANCE COMPANY, and GREAT
AMERICAN ASSURANCE COMPANY,
formerly known as AGRICULTURAL
INSURANCE COMPANY,

                Defendants.

## AFFIDAVIT OF ANN B. MULCAHY IN SUPPORT OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION TO DISMISS THE PURPORTED BURLINGTON INDUSTRIES, INC. RECEVIER'S COMPLAINT

STATE OF CONNECTICUT

COUNTY OF HARTFORD

    1.      My name is Ann B. Mulcahy.  I am employed as Associate Group General Counsel of The Travelers Indemnity Company, located in Hartford, Connecticut.  In addition, I am an Assistant Corporate Secretary of Travelers Casualty and Surety Company ("Travelers")  As such, I am familiar with the nature of the business and corporate structure of Travelers.

    2.      I am over 18 years of age.  The facts stated herein are based on my personal knowledge or have been confirmed by me in the course of my regular duties, and are, to the best of my knowledge, true and correct.  I am authorized to make this Affidavit on behalf of Travelers.

    3.      Travelers is organized under the laws of Connecticut and has its principal place of business in Connecticut.

    4.      Travelers' operations are managed principally in Connecticut, not South Carolina.

ELECTRONICALLY FILED - 2024 Dec 30 3:06 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

5.    None of the Travelers' senior officers or directors are located in South Carolina.

6.    Travelers' direct written premiums in South Carolina are immaterial to its financial positions.

7.    In addition, Travelers:

   a.  is not incorporated or headquartered in South Carolina;

   b.  does not have their principal places of business in South Carolina;

   c.  does not own or rent office space in South Carolina;

   d.  has no loan applications with South Carolina banks or financial institutions; and

   e.  does not have meetings of directors in South Carolina.

8.    Travelers is an insurance company.  It does not and, to my knowledge, has never, manufactured, sold, or distributed PFAS-containing products.

FURTHER AFFIANT SAYETH NOT.



Ann B. Mulcahy
Assistant Corporate Secretary

Subscribed and sworn to before me, the undersigned authority on this 20th day of December, 2024.



Notary Public

3

ELECTRONICALLY FILED - 2024 Dec 30 11:29 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | SEVENTH JUDICIAL CIRCUIT |

BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

CASE NO. 2024-CP-42-04138

Plaintiff,

**NOTICE OF DISMISSAL WITHOUT PREJUDICE**

vs.

CONTINENTAL CASUALTY COMPANY, et al.

**(DOES NOT END CASE AS TO OTHER PARTIES)**

Defendants.

Pursuant to Rule 41(a)(1)(A) of the South Carolina Rules of Civil Procedure, Plaintiff Burlington Industries, Inc., by and through its duly appointed Receiver, Peter M. McCoy, Jr., hereby dismisses, without prejudice, Great American Assurance Company, f/k/a Agricultural Insurance Company **only**. This dismissal does not act as an adjudication on the merits. The parties will bear their own attorneys' fees and costs.

Respectfully submitted,

*s/ Duke K. McCall III*
Duke K. McCall III (S.C. Bar 66466)
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: 202-739-3000
Email: duke.mccall@morganlewis.com

Alex R. Stalvey (S.C. Bar 71739)
Bannister Wyatt & Stalvey LLC
24 Cleveland St., Suite 100
Greenville, SC 29601
Telephone: (864) 298-0084
Email: astalvey@bannisterwyatt.com

ELECTRONICALLY FILED - 2024 Dec 30 11:29 AM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

John K. Chandler (S.C. Bar 100837)
Rikard & Protopapas LLC
2110 N. Beltline Blvd.
Columbia, SC 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

*ATTORNEYS FOR THE RECEIVER FOR BURLINGTON INDUSTRIES, INC.*

Dated: December 30, 2024

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

BURLINGTON INDUSTRIES, INC.,
by and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

| Plaintiff |
|---|

vs.

CONTINENTAL CASUALTY CO., et al.

| Defendant |
|---|

Case No.: 2024-CP-42-04138

Court of Common Pleas in and for
Spartanburg County, South Carolina

Tribunal

Mailing Address of Tribunal:
180 Magnolia Street
Spartanburg, SC 29306

Comes now  Michael J. Cohen , applicant herein, and respectfully represents the following:

　　1.  Applicant resides at:
1901 E Cumberland Blvd.

| Milwaukee, | Milwaukee, | WI | 53211 |
|---|---|---|---|
| Street Address | | | |
| City | County | State | Zip Code |

414.208.9412
Telephone

　　2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Meissner Tierney Fisher & Nichols S.C. , with offices at

111 E. Kilbourn Avenue, 19th Floor
Street Address

| Milwaukee, | Milwaukee, | WI | 53202 |
|---|---|---|---|
| City | County | State | Zip Code |
| 414.273.1300 | 414.208.9412 | 414.273.5840 | mjc@mtfn.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

　　3.  Applicant has been retained personally or as a member of the above-named law firm by
Scottsdale Insurance Company  to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

　　4.  Since  May 19  of  1986 , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of
Wisconsin  where Applicant regularly practices law.  Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| State of Wisconsin | 5/19/1986 |
| Eastern District of Wisconsin | 5/20/1986 |
| Western District of Wisconsin | 6/17/1986 |
| Seventh Circuit Court of Appeals | 1/14/1994 |
|  |  |
|  |  |
|  |  |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
| --- |

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
| --- |

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
| --- |

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
| --- |

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___David G. Harris II___ of the ___Goldberg Segalla LLP___

law firm, which has offices at:

___701 Green Valley Road, Suit 310___
Street Address

| ___Greensboro,___ | ___Guilford,___ | ___North Carolina___ | ___27408___ |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| ___336.419.4910___ | ___336.301.0101___ | ___336.419.4950___ | ___dharris@goldbergsegalla.com___ |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

101951

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| No |
|---|

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____30th____ day of ___December___ , 20 _24_

APPLICANT

# VERIFICATION

STATE OF __Milwaukee__ )

COUNTY OF __Wisconsin__ )

I, __Michael J. Cohen__ , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this __30th__ day of __December__ , 20 __24__

_____
(Notary Signature)

Notary Public for the State of __Wisconsin__

My Commission Expires: __Permanent__

DANIEL A. SIEVERT
NOTARY PUBLIC
STATE OF WISCONSIN

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this _____ day of __December__ , 20 24

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of __December__ , 20 24

_____

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



**WISCONSIN SUPREME COURT**
OFFICE OF THE CLERK
110 E. Main Street, Suite 215
P.O. Box 1688
Madison, WI 53701-1688

Telephone: 608-266-1880
TTY: 800-947-3529
Fax: 608-267-0640
http://www.wicourts.gov

Samuel A. Christensen
Clerk

## *CERTIFICATE OF GOOD STANDING*

*I, Samuel A. Christensen, Clerk of the Supreme Court of Wisconsin certify that the records of this office show that:*

*MICHAEL J. COHEN*

*was admitted to practice as an attorney within this state on May 19, 1986 and is presently in good standing in this court.*

*Dated: October 23, 2024*



*SAMUEL A. CHRISTENSEN*
*Clerk of Supreme Court*

AP-7000, 03/2005 Certificate of Good Standing

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC.,
by and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

CIVIL ACTION NO. 2024-CP-42-04138

                Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY, *et al.*,

                Defendants.

---

### MOTION FOR *PRO HAC VICE* ADMISSION OF MICHAEL J. COHEN FOR DEFENDANT SCOTTSDALE INSURANCE COMPANY

---

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Michael J. Cohen, of MEISSNER TIERNEY FISHER & NICHOLS s.c., 111 East Kilbourn Avenue, 19th Floor, Milwaukee, WI 53202-6622 be admitted *pro hac vice* in the above captioned matter to appear on behalf of Defendant Scottsdale Insurance Company in the above captioned matter. As local counsel I understand that:

1.      I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court;

2.      All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*;

ELECTRONICALLY FILED - 2024 Dec 30 5:17 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

3.     Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary;

4.     Prior to filing this Motion, I conferred with opposing counsel and have received no response at this time in opposition;

Mr. Cohen is a member in good standing with his local bar association and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary information required by Rule 404(d) is attached to and incorporated into this motion.

This the 30th day of December, 2024.

GOLDBERG SEGALLA

David G. Harris II

David G. Harris II, Esq.
State Bar No:  101951
dharris@goldbergsegalla.com
701 Green Valley Road, Suite 310
Greensboro, NC 27408
Telephone: 336.419.4910
Facsimile: 336.419.4950

*Attorneys for Defendant Scottsdale Ins. Co.*

ELECTRONICALLY FILED - 2024 Dec 31 3:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC.,
by and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

CIVIL ACTION NO. 2024-CP-42-04138

            Plaintiff,

v.

CONTINENTAL CASUALTY
COMPANY, *et al.*,

            Defendants.

---

## ORDER GRANTING MOTION FOR *PRO HAC VICE* ADMISSION OF MICHAEL J. COHEN FOR DEFENDANT SCOTTSDALE INSURANCE COMPANY

Having considered the Motion of David G. Harris II on behalf of Defendant Scottsdale Insurance Company, to admit Michael J. Cohen of MEISSNER TIERNEY FISHER & NICHOLS S.C., 111 East Kilbourn Avenue, 19th Floor, Milwaukee, WI 53202-6622, *pro hac vice*, to appear on behalf of Defendant Scottsdale Insurance Company in the above captioned matter and the Verified Application for Admission Pro Hac Vice in support thereof, it is hereby

ORDERED that said motion is granted.

*[JUDGE'S ELECTRONIC SIGNATURE TO FOLLOW]*



Spartanburg Common Pleas

**Case Caption:**     Burlington Industries, Inc. VS   Continental Casualty Company ,
                      defendant, et al

**Case Number:**     2024CP4204138

**Type:**            Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2024-12-31 14:09:29     page 2 of 2

ELECTRONICALLY FILED - 2024 Dec 31 3:07 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA
COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS
FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY; AMERICAN HOME ASSURANCE COMPANY; ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS LINES INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; AMERICAN INTERNATIONAL GROUP, INC.; AIU INSURANCE COMPANY; THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known as CALIFORNIA UNION INSURANCE

CIVIL ACTION NO.: 2024-CP-42-04138

**AFFIDAVIT OF THOMAS O'KANE**

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| COMPANY; ZURICH AMERICAN INSURANCE COMPANY; and GREAT AMERICAN ASSURANCE COMPANY, formerly known as AGRICULTURAL INSURANCE COMPANY, | |
|---|---|
| Defendants. | |

1.      I am over the age of 18 years of age and competent to testify to the matters set forth in this affidavit.  All statements I make are true and correct to the best of my knowledge and belief and, unless stated otherwise herein, are based upon my personal knowledge and/or my knowledge and review of business records as explained below.  I am employed as Vice President of Claims by Munich Reinsurance America, Inc. ("MRAm").  MRAm was formerly known as American Re-Insurance Company ("American Re").

2.      The Complaint in this matter alleges that American Re issued policy no. EUR 400-91-54 to Plaintiff Burlington Industries, Inc. ("Burlington") for the period October 1, 1979 to October 1, 1980.  I have overseen a search of available records and find evidence that American Re may have issued the following policies:

| Policy No. | Policy Period | Policy Limits | Underlying Limits |
|---|---|---|---|
| M1666346 | 10/1/77-78 | $5,000,000 | $25,000,000 |
| EUR4000706 | 10/1/78-79 | $5,000,000 | $25,000,000 |
| EUR4009154 | 10/1/79-80 | $10,000,000 | $65,000,000 |
| EUR4009272 | 10/1/80-81 | $15,000,000 | $65,000,000 |

3.      MRAm has not been able to confirm the policies identified above were issued, and has not located complete copies of any of them.  The responsive, non-privileged documents we have located will be produced in discovery.  I refer to the documents I have reviewed as the "MRAm Excess Policies" and reserve all rights with respect to the issuance and all terms, conditions, definitions, and exclusions.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

4.    The first two MRAm Excess Policies listed above appear to have been "quota share" policies, and the $5,000,000 limits were part of a "layer" of insurance that totaled $25,000,000 in each year.  Both of those policies would have required that the underlying limit of $25,000,000 be fully exhausted before they would respond to a covered claim and then, only in accordance with all of the policy terms, definitions, conditions, and exclusions.  The third MRAm Excess Policy listed also appears to be a quota share policy, and the $10,000,000 limit was part of a $15,000,000 layer of insurance.  That policy would have required that the underlying limit of $65,000,000 be fully exhausted before it would respond to a covered claim and then, only in accordance with all of the policy terms, definitions, conditions, and exclusions.  The last MRAm Excess Policy appears not to have been a quota share policy.  It would respond to a covered claim only after the underlying limit of $65,000,000 was fully exhausted and then, only in accordance with all of the policy terms, definitions, conditions, and exclusions.   In addition to the underlying limits listed for each MRAm Excess Policy, there would also likely be primary policy limits and possibly deductibles, self-insured retentions and the like that would have to be fully satisfied before any MRAm Excess Policy might respond.

5.    The first two MRAm Excess Policies were placed through Capacity Managers International, Inc. ("Capacity Brokers"), a New York, New York insurance broker, and were issued to Burlington in Greensboro, North Carolina.   Any negotiations or discussions concerning the application for and placement of these MRAm Excess Policies were likely conducted by telephone, telexes, or other communications between MRAm personnel in New York and representatives of Capacity Brokers, also in New York.

6.    The third and fourth MRAm Excess Policies were placed through another insurance broker, Johnson & Higgins Carolinas, Inc. ("J&H"), and were issued to Burlington in Greensboro,

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

North Carolina. J&H was then located in Charlotte, North Carolina. Any negotiations or discussions concerning the application for and placement of these MRAm Excess Policies were likely conducted by telephone, telexes, or other communications between MRAm personnel in an Atlanta office and representatives of J&H in Charlotte, North Carolina.

7.    At all relevant times, MRAm's principal place of business was in New York, New York. It is now located in Princeton, New Jersey.

8.    Other than the Summons and Complaint filed in this matter, I am unaware of any other claim ever reported to MRAm by or on behalf of Burlington.

9.    MRAm is a Delaware corporation, with its principal place of business in New Jersey. MRAm maintains no office in South Carolina and, to the best of my knowledge, has no employees in South Carolina.

January 3, 2025

Thomas O'Kane

Sworn to me this this 3 day of January, 2025

Notary Public

Commonwealth of Pennsylvania - Notary Seal
Reece Dobson, Notary Public
Montgomery County
My commission expires April 11, 2028
Commission number 1445689



ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA
COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS
FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY; AMERICAN HOME ASSURANCE COMPANY; ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS LINES INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; AMERICAN INTERNATIONAL GROUP, INC.; AIU INSURANCE COMPANY; THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known

CIVIL ACTION NO.: 2024-CP-42-04138

**ANSWER OF MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY TO COMPLAINT OF BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.**

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| as CALIFORNIA UNION INSURANCE COMPANY; ZURICH AMERICAN INSURANCE COMPANY; and GREAT AMERICAN ASSURANCE COMPANY, formerly known as AGRICULTURAL INSURANCE COMPANY, | |
|---|---|
| Defendants. | |

Defendant Munich Reinsurance America, Inc., formerly known as American Re-Insurance Company ("MRAm"), submits the following Answer to the October 22, 2024 Complaint of Plaintiff Burlington Industries, Inc. ("Burlington"), by and through its duly-appointed Receiver, Peter M. McCoy, Jr. ("Receiver"). This Answer is filed subject to, and with express reservation of, all objections to jurisdiction and defenses raised by and available to MRAm. Nothing herein should be construed as a waiver of those jurisdictional objections and other defenses. Each and every allegation not hereinafter specifically admitted, qualified or explained is expressly denied.

## NATURE OF THE ACTION

1.     This paragraph purports to describe allegations contained therein and requires no response. To the extent a response is required MRAm is without knowledge or information sufficient to admit or deny the allegations, and on that basis denies them.

2.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

3.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

4.     This paragraph purports to describe allegations contained therein and requires no response. To the extent a response is required MRAm is without knowledge or information sufficient to admit or deny the allegations, and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

5.      MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

6.      MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

7.      MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

8.      This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

9.      This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

10.      This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

11.      This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

## PARTIES

12.      MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

13.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

14.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

15.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

16.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

17.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

18.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

19.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

20.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

21.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

22.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

23.     MRAm admits the allegations contained in this paragraph.

24.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

25.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

26.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

27.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

28.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

29.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

30.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

31.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

32.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

## JURISDICTION AND VENUE

33.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

34.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

35.     The allegations contained in this paragraph constitute legal argument and/or legal conclusions to which no response is required. To the extent a response is required, MRAm denies the allegations insofar as they are directed to it.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## FACTUAL BACKGROUND

### *Environmental Actions*

36.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

37.     This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

38.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

39.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and leaves Plaintiff to its proofs.

40.     MRAm is without knowledge or information sufficient to admit or deny the allegations in this paragraph and on that basis denies them.

41.     This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

### *The Policies*

42.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

43.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

44.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

45.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

46.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

47.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

48.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

49.     The allegations contained in this paragraph are directed to other parties and requires no response. To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

50.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

51.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

52.     MRAm admits the allegations contained in this paragraph.

53.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

54.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

55.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

56.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

57.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

58.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

59.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

60.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

61.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

62.     The allegations contained in this paragraph are directed to other parties and requires no response.  To the extent a response is required, MRAm is without knowledge or information sufficient to admit or deny the allegations and on that basis denies them.

63.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

64.     MRAm admits the allegations contained in this paragraph.

65.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

66.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

67.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

## FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT
### (Duty to Pay or Reimburse Defense and/or Indemnity Costs)

68.     MRAm repeats and incorporates its responses to paragraphs 1 through 67 as if fully stated herein.

69.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

70.     This paragraph of Plaintiff's Complaint purports to describe the allegations contained therein.  To the extent the allegations suggest or allege that any policy issued by MRAm is obliged to respond to the claims identified, MRAm denies such allegations.

71.     MRAm denies that Plaintiff provided any notice of the Environmental Actions, and therefore has not had the opportunity to assess any claim for insurance coverage under any MRAm policy.  MRAm denies that there is an actual and justiciable controversy to the extent that any MRAm policy would be excess over other insurance and can have no current duty to Plaintiff under any such policy.

72.     MRAm denies the allegations contained in this paragraph insofar as they are directed to it.

## PRAYER FOR RELIEF

73.     MRAm denies that the Receiver and/or Burlington are entitled to the relief demanded in the "WHEREFORE" Paragraph of the Complaint and all subparts therein.

## RESERVATION OF RIGHTS AND GENERAL DENIAL

74.     MRAm's Answer and its additional defenses are based on information currently available to MRAm.  MRAm reserves the right to amend its pleading in accordance with the South

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Carolina Rules of Civil Procedure or applicable rules or law and to the extent it learns of new or additional information during discovery or otherwise. Any allegation not specifically admitted is denied. MRAm hereby asserts the following affirmative defenses in total and/or partial bar of the claims for relief and/or alleged damages sought in the Complaint. By including the following defenses, MRAm does not assume the burden of proof with respect to any defense. MRAm reserves any and all rights that arise from the fact that any policy issued or allegedly issued by American Re-Insurance Company, was issued to Burlington Industries, Inc. and to the extent that the Receiver has not or cannot demonstrate rights under such policies.

## ADDITIONAL DEFENSES

75. MRAm asserts the additional defenses set forth below. By pleading these additional defenses, MRAm does not intend to alter, and shall not be deemed to have altered, the burden of proof and/or the burden of persuasion that otherwise exists with respect to any issues in this action. All additional defenses are pled in the alternative and do not constitute an admission of liability or that any party, individually or collectively, is entitled to any relief whatsoever.

## FOR A SECOND DEFENSE

76. The Complaint fails to plead facts sufficient to state a cause of action against MRAm.

## FOR A THIRD DEFENSE

77. Burlington's claims are barred to the extent the Receiver has no legal standing, authority, rights or obligations in connection with the lawsuit filed by Plaintiff.

## FOR A FOURTH DEFENSE

78. Burlington's claims may be barred, in whole or in part, to the extent the existence, terms, and conditions of any policy allegedly issued by MRAm have not been established.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## FOR A FIFTH DEFENSE

79.     Burlington's claims may be barred, in whole or in part, to the extent that Burlington is not an insured or otherwise entitled to coverage under any policy allegedly issued by MRAm.

## FOR A SIXTH DEFENSE

80.     Burlington's claims may be barred, in whole or in part, to the extent that the underlying lawsuit does not arise from "bodily injury" or "property damage" as those terms are defined or incorporated in any policy allegedly issued by MRAm.

## FOR A SEVENTH DEFENSE

81.     Burlington's claims may be barred, in whole or in part, to the extent there was no bodily injury or property damage during the time period when any policy allegedly issued by MRAm was in effect.

## FOR AN EIGHTH DEFENSE

82.     Burlington's claims may be barred, in whole or in part, to the extent that any obligation of MRAm to pay under any policy allegedly issued by MRAm, is subject to proper allocation to all applicable policies over all years triggered.

## FOR A NINTH DEFENSE

83.     Burlington's claims are barred, in whole or in part, to the extent any alleged bodily injury or property damage was not caused by an "occurrence," as that term is defined or incorporated in any policy allegedly issued by MRAm.

## FOR A TENTH DEFENSE

84.     Burlington's claims may be barred, in whole or in part, to the extent any bodily injury or property damage was expected or intended and/or to the extent that the loss or injury was not fortuitous.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## FOR AN ELEVENTH DEFENSE

85.    Burlington's claims may be barred, in whole or in part, to the extent Burlington seeks coverage for fines, penalties, punitive or exemplary damages, or other forms of relief.

## FOR A TWELFTH DEFENSE

86.    Burlington's claims may be barred, in whole or in part, to the extent Burlington failed to provide MRAm with timely and adequate notice that complied with the provisions of any policy allegedly issued by MRAm.

## FOR A THIRTEENTH DEFENSE

87.    Burlington's claims may be barred, in whole or in part, to the extent ACL or it voluntarily made or makes any payment, assumed or assumes any obligation, or incurred or incurs any expense without first obtaining the consent of MRAm.

## FOR A FOURTEENTH DEFENSE

88.    Burlington's claims may be barred, in whole or in part, to the extent the "other insurance" clauses of any policies allegedly issued by MRAm apply.

## FOR A FIFTEENTH DEFENSE

89.    Burlington's claims may be barred, in whole or in part, to the extent Burlington takes or has taken any action that prejudices any right of subrogation or recovery MRAm may have against any person or entity.

## FOR A SIXTEENTH DEFENSE

90.    Burlington's claims may be barred, in whole or in part, to the extent that Burlington failed to comply with or otherwise violated the conditions of any policy allegedly issued by MRAm, including any cooperation clauses and/or other similar provisions.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### FOR A SEVENTEENTH DEFENSE

91.    Burlington's claims may be barred, in whole or in part, by the terms, conditions, limitations, and exclusions of the alleged MRAm policy and/or any other policy incorporated in such policies.

### FOR AN EIGHTEENTH DEFENSE

92.    To the extent MRAm is determined to have any indemnity obligation to Burlington, any such obligation is limited by the applicable per occurrence and aggregate limits of any applicable policy.

### FOR A NINETEENTH DEFENSE

93.    Burlington fails to allege a ripe and justiciable controversy with MRAm.

### FOR A TWENTIETH DEFENSE

94.    Burlington's claims may be barred, in whole or in part, by the doctrine of laches.

### FOR A TWENTY-FIRST DEFENSE

95.    Burlington's claims may be barred, in whole or in part, by the doctrines of estoppel and/or waiver.

### FOR A TWENTY-SECOND DEFENSE

96.    Burlington's claims may be barred, in whole or in part, by the doctrines of res judicata and/or collateral estoppel and/or law of the case.

### FOR A TWENTY-THIRD DEFENSE

97.    Burlington's claims may be barred, in whole or in part, to the extent the claims against MRAm were not filed within the applicable statute of limitations period or are otherwise time-barred.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## FOR A TWENTY-FOURTH DEFENSE

98.     Burlington's claims may be barred, in whole or in part, to the extent any of the relief sought is uninsurable as a matter of law or public safety.

## FOR A TWENTY-FIFTH DEFENSE

99.     Burlington's claims may be barred, in whole or in part, to the extent Burlington failed to take reasonable measures to mitigate, minimize, or avoid damages.

## FOR A TWENTY-SIXTH DEFENSE

100.     Burlington's claims may be barred, in whole or in part, to the extent that any policy allegedly issued by MRAm does not provide coverage for any of the relief sought, including but not limited to consequential damages, punitive damages, and attorneys' fees and costs.

## FOR A TWENTY-SEVENTH DEFENSE

101.     Burlington's claims may be barred, in whole or in part, to the extent the events giving rise to the claims were known prior to the time MRAm issued any alleged policy or were in progress at the inception of any policy allegedly issued by MRAm.

## FOR A TWENTY-EIGHTH DEFENSE

102.     Burlington's claims against MRAm may be barred, in whole or in part, to the extent the limit of any policy allegedly issued by MRAm has been exhausted or impaired by the payment of prior claims.

## FOR A TWENTY-NINTH DEFENSE

103.     Burlington's claims against MRAm may be barred, in whole or in part, to the extent Burlington seeks indemnity or ultimate net loss that is unreasonable or unnecessary.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### FOR A THIRTIETH DEFENSE

104.     Burlington's claims against MRAm may be barred, in whole or in part, to the extent they are released by a prior settlement or agreement.

### FOR A THIRTY-FIRST DEFENSE

105.     Burlington's claims may be barred, in whole or in part, to the extent any other entity is responsible for Burlington's defense and indemnity costs.

### FOR A THIRTY-SECOND DEFENSE

106.     Burlington's claims may be barred, in whole or in part, to the extent MRAm's obligations, if any, under any alleged policy are subject to any applicable deductible, self-insured retention, and/or retrospective premium provision contained in any alleged policy.

### FOR A THIRTY-THIRD DEFENSE

107.     Burlington's claims against MRAm may be barred, in whole or in part, by any applicable pollution exclusion contained or incorporated in any applicable policy.

### FOR A THIRTY-FOURTH DEFENSE

108.     Burlington's claims against MRAm may be barred, in whole or in part, to the extent the Court lacks subject matter jurisdiction over the Complaint, or personal jurisdiction over MRAm.

### FOR A THIRTY-FIFTH DEFENSE

109.     Burlington's claims against MRAm may be barred, in whole or in part, to the extent reimbursement of defense costs or payment of future defense costs are claimed, which are not covered under any alleged MRAm policy.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### FOR A THIRTY-SIXTH DEFENSE

110.    Burlington's claims may be barred, in whole or in part, to the extent any claims against MRAm are premature as excess insurance contracts respond, if at all, only to covered claims and only after all underlying limits and amounts, including all underlying insurance and self-insurance retentions, deductibles, and the like are exhausted by the payment of covered claims.

### FOR A THIRTY-SEVENTH DEFENSE

111.    MRAm relies on and asserts all additional defenses pled by any other defendant in this action, to the extent applicable to any policy allegedly issued by MRAm, and also reserves the right to assert any additional defenses at a later date.

### MRAm's PRAYER FOR RELIEF

Having fully answered each and every allegation contained in the Complaint, MRAm prays to the Court as follows:

1.    That Burlington have and recover nothing from MRAm;

2.    For dismissal of the Complaint with prejudice;

3.    Recovery of MRAm's costs and fees to the extent permitted by law; and

4.    Such other and further relief as the court may deem just and proper.

[*Signature on following page*]

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

MCANGUS GOUDELOCK & COURIE, L.L.C.

s/ Stephen M. Kozick
STEPHEN M. KOZICK (SC Bar No. 78343)
stephen.kozick@mgclaw.com
BENJAMIN S. STEVENS (SC Bar No. 106442)
ben.stevens@mgclaw.com
735 Johnnie Dodds Blvd., Suite 200
Mt. Pleasant, South Carolina 29464
Telephone: (843) 576-2900
Facsimile: (843) 534-0605

ATTORNEYS FOR MUNICH REINSURANCE
AMERICA, INC., f/k/a AMERICAN RE-
INSURANCE COMPANY

January 3, 2025

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA
COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS
FOR THE SEVENTH JUDICIAL CIRCUIT

| | |
|---|---|
| BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY; AMERICAN HOME ASSURANCE COMPANY; ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS LINES INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY; GRANITE STATE INSURANCE COMPANY; AMERICAN INTERNATIONAL GROUP, INC.; AIU INSURANCE COMPANY; THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY; FEDERAL INSURANCE COMPANY; MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY; OLD REPUBLIC INSURANCE COMPANY; PACIFIC EMPLOYERS INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; CENTURY INDEMNITY COMPANY, as successor-in-interest to CIGNA SPECIALTY INSURANCE COMPANY, formerly known as CALIFORNIA UNION INSURANCE | CIVIL ACTION NO.: 2024-CP-42-04138<br><br><br>**DEFENDANT MUNICH REINSURANCE AMERICA, INC., F/K/A AMERICAN RE-INSURANCE COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT OF BURLINGTON INDUSTRIES, INC., "BY AND THROUGH ITS DULY-APPOINTED RECEIVER, PETER M. MCCOY, JR."** |

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| COMPANY; ZURICH AMERICAN INSURANCE COMPANY; and GREAT AMERICAN ASSURANCE COMPANY, formerly known as AGRICULTURAL INSURANCE COMPANY,<br><br>    Defendants. | |

**TO:     ALEXANDER R. STALVEY, ESQUIRE, JOHN K. CHANDLER, ESQUIRE, AND DUKE K. MCCALL, ESQUIRE, ATTORNEYS FOR PLAINTIFF "BURLINGTON INDUSTRIES, INC., BY AND THROUGH ITS DULY-APPOINTED RECEIVER, PETER M. MCCOY, JR.":**

YOU WILL PLEASE TAKE NOTICE that Defendant Munich Reinsurance America, Inc., f/k/a American Re-Insurance Company ("MRAm") by and through its undersigned counsel, does hereby move pursuant to Rules 12(b)(1) and 12(b)(6) of the South Carolina Rules of Civil Procedure for an Order dismissing the Complaint of Burlington Industries, Inc. ("Burlington") filed by its claimed Receiver, Peter M. McCoy, Jr. ("Receiver"). This Motion is based upon the following specific grounds:

## FACTUAL AND PROCEDURAL BACKGROUND

Burlington, through the Receiver, filed the Complaint in October of 2024. The Complaint ("Compl.") seeks a declaration of insurance coverage for two specific "Environmental Actions" asserted against Burlington (Compl., ¶¶ 38-39) and other unidentified and "future" claims (Compl., ¶¶ 1-2). The Complaint alleges that MRAm issued a policy of insurance for the period October 1, 1979 to October 1, 1980 (policy no. EUR 400-91-54). (Compl. ¶ 52.) The single count Complaint asserts claims for failure to "Pay or Reimburse Defense and/or Indemnity Costs" and various specific declaratory relief. For the reasons outlined below, this claim should be dismissed.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

<u>**ARGUMENT**</u>

I.    **Dismissal is Required as the Receivership Order Does Not Properly Confer Authority of the Receiver to Pursue this Action.**

In the interest of brevity and efficiency, MRAm incorporates the legal argument of Co-Defendant, The Travelers Casualty and Surety Company ("Travelers"), as is set forth in Travelers' Motion to Dismiss.  See, Travelers' Brief at Point I.

II.   **Dismissal is Required as the Court lacks Jurisdiction over MRAm.**

In the interest of brevity and efficiency, MRAm incorporates the legal argument of Travelers in its Motion to Dismiss.  See, Travelers' Brief at Point II.  MRAm also submits the following additional facts as set forth in the Affidavit of Thomas O'Kane submitted with this Motion.

Like Travelers, MRAm is not subject to general jurisdiction of and is not "at home" in South Carolina.  MRAm is a Delaware corporation.  (O'Kane Aff.  ¶ 9.)  At the time the alleged MRAm policies were issued (1977- 1981), MRAm's principal place of business was in New York, New York.  At the present time, its principal place of business is in Princeton, New Jersey. (O'Kane Aff. ¶ 7.)  It appears that the alleged MRAm policies were issued to Burlington in North Carolina, and placed through two insurance brokers, one in New York, which dealt with MRAm's New York headquarters, and the other in Charlotte, North Carolina, which dealt with an Atlanta office of MRAm.  (O'Kane Aff. ¶¶ 5-6.)  MRAm does not maintain an office in South Carolina, nor does it have any employees in South Carolina. (O'Kane Aff. ¶ 9.)

In light of the foregoing additional facts, and the argument set forth by Travelers, the Complaint should be dismissed as to MRAm for lack of personal jurisdiction under Rule 12(b)(2), SCRCP.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

### III.   Dismissal is Required as No Justiciable Controversy is Extant Between Burlington and MRAm.

In the interest of brevity and efficiency, MRAm incorporates the legal argument of Travelers in its Motion to Dismiss.  See, Travelers' Brief at Point IV.  MRAm also submits additional facts as set forth in the O'Kane affidavit and discussed below.

Burlington and the Receiver have identified no cognizable injury that can be redressed by the Court, nor has the Receiver alleged facts demonstrating an actual or imminent injury caused by MRAm. The Receiver therefore lacks standing to bring the declaratory judgment claim alleged against MRAm, and dismissal is required pursuant to Rule 12(b)(1), SCRCP, or, in the alternative, Rule 12(b)(6).

The Complaint as against MRAm should be dismissed for lack of a justiciable controversy and failure to state a claim.  Under Rule 12(b)(6), a claim must be dismissed if it fails to state facts sufficient to constitute a cause of action, and to state a cause of action for declaratory judgment, "a party must demonstrate a justiciable controversy." *Graham v. State Farm Mut. Auto. Ins. Co.,* 319 S.C. 69, 71, 459 S.E.2d 844, 845 (1995) (internal citation omitted). A justiciable controversy exists "[w]here a concrete issue is present, and there is a definite assertion of legal rights and a positive legal duty with respect thereto, which are denied by the adverse party." *Power v. McNair,* 255 S.C. 150, 153-54, 177 S.E.2d 551, 553 (1970) (internal citation and quotation omitted). "An issue that is contingent, hypothetical, or abstract is not ripe for judicial review" because there must be "a real or actual controversy between the litigants at the time of the institution of the DJ Action." *Auto-Owners Ins. Co. v. Rhodes,* 405 S.C. 584, 595, 748 S.E.2d 781, 787 (2013) (internal citation and quotation omitted).

The policies that appear to have been issued by MRAm are summarized as follows:

| Policy No. | Policy Period | Policy Limits | Underlying Limits |
|---|---|---|---|
| M1666346 | 10/1/77-78 | $5,000,000 | $25,000,000 |
| EUR4000706 | 10/1/78-79 | $5,000,000 | $25,000,000 |
| EUR4009154 | 10/1/79-80 | $10,000,000 | $65,000,000 |
| EUR4009272 | 10/1/80-81 | $15,000,000 | $65,000,000 |

See, O'Kane Aff. ¶ 2. Thus, for the 1977-78 and 1978-79 policies to possibly be implicated, Burlington would need to have properly exhausted a minimum of $25,000,000 in each of those years. For the 1979-80 and 1980-81 policies to possibly be implicated, Burlington would need to have properly exhausted a minimum of $65,000,000 in each of those years. This exhaustion requirement does not include additional sums that would also have to be paid, including primary insurance limits, and potentially deductibles and/or self-insured retentions. In addition, a potential allocation over additional years would further increase the amounts Burlington would have to pay before there was any potential impact to any of the MRAm policies. An additional requirement, of course, would be that there was, in fact, coverage for the Environmental Actions, which has not and cannot now be demonstrated by Burlington or the Receiver.

The single declaratory judgment claim against MRAm does not allege that the primary and any other underlying insurance has been exhausted (or is even likely to be exhausted by the two identified Environmental Actions). Accordingly, the Receiver's claim against MRAm is "contingent, hypothetical, or abstract" and there is no justiciable controversy between the parties, requiring dismissal. *See Rhodes v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 1176767, at *3 (D.S.C. Mar. 30, 2017) (granting excess insurer's motion to dismiss because the plaintiff did not allege that the underlying insurance was exhausted); *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 809 F. Supp. 2d 449, 462 (D.S.C. 2011) (noting that declaratory relief claims against excess insurers are not ripe unless there is a reasonable likelihood the excess policies will be reached).

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Additionally, the Receiver's claim seeking coverage from MRAm for unidentified and future Environmental Actions lack justiciability. These are unidentified, abstract lawsuits by unidentified, unknown third parties that may never come to fruition, and South Carolina courts routinely deny plaintiffs' requests for declarations such as these that relate to future or unidentified harms. *See, e.g.*, *Thompson v. State*, 415 S.C. 560, 567, 785 S.E.2d 189, 192 (2016) (declaration about what plaintiff would be required to do in the future "would be purely advisory" and "does not present a judiciable controversy"); *Jowers v. S.C. Dept. of Health and Environmental Ctrl.*, 423 S.C. 343, 360, 815 S.E.2d 446, 455 (2018) (plaintiff's "claim for future injury is not ripe for our determination"); *Kiawah Prop. Owners Grp. v. The Public Serv. Comm'n of S.C.*, 357 S.C. 232, 243 (2004) (no "present, justiciable controversy" where plaintiff alleged only that a contract "may have some negative impact in the future"); *see also Brown-Thomas v. Hynie*, 441 F. Supp. 3d 180, 198 (D.S.C. 2019) ("In the majority of instances, a claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative.") (internal citations and quotations omitted).

Dismissal pursuant to Rule 12(b)(6) therefore is required because the Receiver's sole claim for declaratory judgment against MRAm is "contingent, hypothetical, or abstract" and not ripe for judicial review. *Rhodes*, 405 S.C. at 595, 748 S.E.2d at 787 (internal citation and quotation omitted).

**Conclusion**

For all of these reasons, MRAm respectfully requests a hearing be granted on this Motion and that this Court enter an Order dismissing with prejudice Burlington's Complaint against MRAm.

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

This Motion is based on the Rules of Civil Procedure, the relevant statutory and case law of South Carolina, the grounds stated herein, the pleadings on file, any additional memoranda in support of this Motion and any in reply, all arguments presented to the Court, and other materials properly received and considered by the Court in connection therewith.

MCANGUS GOUDELOCK & COURIE, L.L.C.

s/ Stephen M. Kozick
STEPHEN M. KOZICK (SC Bar No. 78343)
stephen.kozick@mgclaw.com
BENJAMIN S. STEVENS (SC Bar No. 106442)
ben.stevens@mgclaw.com
735 Johnnie Dodds Blvd., Suite 200
Mt. Pleasant, South Carolina 29464
Telephone: (843) 576-2900
Facsimile: (843) 534-0605

ATTORNEYS FOR MUNICH REINSURANCE AMERICA, INC., f/k/a AMERICAN RE-INSURANCE COMPANY

January 3, 2025

ELECTRONICALLY FILED - 2025 Jan 03 4:21 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 05 8:52 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

Burlington Industries, Inc., by and through its duly-appointed Receiver, Peter M. McCoy, Jr.,

*Plaintiff*,

vs.

Continental Casualty Company, *et al.*,

*Defendants*.

Civil Action Number: 2024-CP-42-04138

**PROPOSED ORDER GRANTING MOTION FOR PRO HAC VICE ADMISSION OF W. BRAD NES FOR THE RECEIVER FOR BURLINGTON INDUSTRIES INC**

Having considered the Motion of John K. Chandler, on behalf of the Receiver, to admit W. Brad Nes, of Morgan Lewis & Bockius, LLP, 1717 Main St., Suite 3200, Dallas, TX 75201-7347, *pro hac vice*, to appear on behalf of the Receiver in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

_____
Jean Hoefer Toal, Chief Justice of the
South Carolina Supreme Court, Retired,
Acting as Circuit Court Judge

This ____ Day of _____, 2024

Columbia, South Carolina

ELECTRONICALLY FILED - 2025 Jan 05 8:52 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 05 8:52 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



Spartanburg Common Pleas

**Case Caption:**     Burlington Industries, Inc. VS  Continental Casualty Company ,
                      defendant, et al

**Case Number:**     2024CP4204138

**Type:**            Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-03 11:18:54     page 3 of 3



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

January 3, 2025

The Honorable Amy W. Cox
Clerk of Court
PO Box 3483
Spartanburg, SC 29304-3483

RE:   Burlington Industries, Inc., by and through its duly-appointed Receiver, Peter M. McCoy, Jr. vs. Continental Casualty Company, et al.

Case No.: 2024-CP-42-04138

Dear Ms. Cox:

I certify that the Office of Bar Admissions has received a verified application requesting W. Brad Nes be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

Tina Bryant

Tina Bryant
Manager

cc:   W. Brad Nes
      John K. Chandler

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138



| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | ) **IN THE COURT OF COMMON PLEAS** |
| | ) |
| **COUNTY OF SPARTANBURG** | ) **CASE NO.: 2022-CP-42-04138** |
| | ) |
| | ) |
| BURLINGTON INDUSTRIES, INC., by and | ) |
| through its duly-appointed Receiver, Peter M. | )      **MOTION BY DEFENDANTS** |
| McCoy, Jr., | ) **CONTINENTAL CASUALTY COMPANY** |
| | ) **AND THE CONTINENTAL INSURANCE** |
| Plaintiff, | ) **COMPANY FOR PROTECTIVE ORDER** |
| | ) |
| v. | ) |
| | ) |
| CONTINENTAL CASUALTY COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

**TO: ALEX R. STALVEY, ESQUIRE, ATTORNEY FOR THE PLAINTIFF**

YOU WILL PLEASE TAKE NOTICE that Defendants CONTINENTAL CASUALTY COMPANY and THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, (collectively referred to herein as "Defendants"), by and through their undersigned counsel, hereby move this Court for a protective order pursuant to Rule 26(c), SCRCP. Defendants respectfully ask that this Court enter an order staying discovery against them in this action until after this Court has resolved the Defendants' Motion to Dismiss the Complaint filed on December 30, 2024 (the "Defendants' Motion to Dismiss"), as well as the motions to dismiss filed by other defendants (collectively with the Defendants' Motion to Dismiss, the "Pending Motions"). The Pending Motions currently are scheduled for hearing by the Court on February 5, 2025.

1. On May 12, 2022, the Court of Common Pleas for Richland County appointed Peter M. McCoy, Jr. as Receiver (the "Receiver") for Burlington Industries, Inc. ("Burlington") in *Mimms v. Burlington Industries, Inc.*, No. 2021-CP-40-05873 (the "*Mimms* Appointment Order").

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

2.      On October 22, 2024, the Receiver filed the present action against Defendants and other insurers.  The Complaint requests declaratory judgment against Defendants related to insurance policies allegedly issued to Burlington and seeks a variety of declarations that would apply to "Environmental Actions."  The term "Environmental Actions," as defined in the Complaint, does not refer to any specific claim or lawsuit.

3.      Along with the Complaint in this action, the Receiver served 32 separate requests for the production of documents on each of the Defendants.  *See* Exhibits 1-2.

4.      On December 30, 2024, Defendants responded to the Complaint by filing the Defendants' Motion to Dismiss, which seeks to dismiss or stay the Complaint, or in the further alternative, a more definite statement.  As set forth more fully therein, the Defendants' Motion to Dismiss sets forth the reasons that the *Mimms* Appointment Order is not valid, that the Receiver lacks authority in any event to bring this present action, that the Complaint does not allege matters within his authority in any event, and that the Complaint fails to allege facts sufficient to constitute a justiciable cause of action.  The Defendants' Motion to Dismiss is fully incorporated by reference herein.

5.      On December 30, 2024, other defendants also filed motions to dismiss in this action.

6.      SCRCP 26(c) provides that  "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense," including an order "that the discovery not be had . . . ."  Rule 26(c), SCRCP.  The timely filing and service of a motion for protective order relieves the party upon which discovery is served from any obligation to respond to the challenged discovery

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

until the motion has been resolved. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 109 (1991).[1]

7.     Discovery should not go forward against the Defendants until after a ruling has been issued on the Pending Motions, which raise threshold issues challenging the validity and application of the *Mimms* Appointment Order and thus the Receiver's standing to pursue claims (including discovery) in this action on behalf of Burlington. Furthermore, broad ranging discovery should not be permitted when the Court has not yet determined the other threshold issues that have been raised under Rule 12(b)(6), Rule 12(e), and other grounds in the Pending Motions that could limit or eliminate the need for discovery.

8.     This motion is based upon the foregoing, any briefing in support that may be filed later, the statutes and case law of the State of South Carolina, the pleadings filed in this matter, and such other material as may be properly received by the Court in connection therewith.

WHEREFORE, for the foregoing reasons and others appearing in the record, Defendants respectfully request that the Court grant this motion and order that discovery in this action against the Defendants, including without limitation the discovery requests referenced in Paragraph 3 above, shall not go forward at this time.[2]

---

[1] In any event, as a protective matter, Defendants specifically preserve, and do not waive, any and all applicable objections to the discovery requests served by Plaintiff, in whole and/or in part, including, but not limited to, objections based on the following: the attorney-client privilege, attorney work product, common interest, and any and all other applicable privileges and protections; relevancy; scope; and the vague, duplicative, and unduly burdensome nature of the discovery sought.

[2] Pursuant to Rule 11(a), SCRCP, the undersigned counsel certifies that the Receiver's counsel was consulted prior to the filing of this motion in an unsuccessful attempt to resolve this matter.

Dated: January 10, 2025                    GORDON REES MANSUKHANI LLP

                                    By     *s/A. Victor Rawl, Jr.*
                                           A. Victor Rawl, Jr. (SC 9261)
                                           Email: vrawl@grsm.com
                                           677 King Street, Suite 450
                                           Charleston, SC  29403
                                           Telephone: (843) 278-5900

                                           *Counsel for Defendants Continental*
                                           *Casualty Company and The Continental*
                                           *Insurance Company*

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# EXHIBIT 1

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
)
COUNTY OF SPARTANBURG    )    FOR THE SEVENTH JUDICIAL CIRCUIT
)
)
BURLINGTON INDUSTRIES, INC., by    )    CIVIL ACTION NO. 2024-CP-42-04138
and through its duly-appointed Receiver,    )
Peter M. McCoy, Jr.,    )    **THE RECEIVER'S FIRST SET OF**
)    **REQUESTS FOR PRODUCTION TO**
Plaintiff,    )
)    **CONTINENTAL CASUALTY**
v.    )    **COMPANY**
)
CONTINENTAL CASUALTY COMPANY,)
TRAVELERS CASUALTY AND SURETY)
COMPANY, formerly) known as AETNA  )
CASUALTY AND SURETY COMPANY,  )
AMERICAN HOME ASSURANCE    )
COMPANY, ALLSTATE INSURANCE    )
COMPANY, as successor-in-interest to    )
NORTHBROOK EXCESS AND SURPLUS)
INSURANCE COMPANY, formerly known)
as NORTHBROOK INSURANCE    )
COMPANY, GRANITE STATE    )
INSURANCE COMPANY, AMERICAN    )
INTERNATIONAL GROUP, INC., AIU    )
INSURANCE COMPANY, THE    )
CONTINENTAL INSURANCE    )
COMPANY, as successor-in-interest to    )
HARBOR INSURANCE COMPANY,    )
WESTPORT INSURANCE    )
CORPORATION, as successor-in-interest to)
PURITAN INSURANCE COMPANY,    )
FEDERAL INSURANCE COMPANY,    )
MUNICH REINSURANCE AMERICA,    )
INC., formerly known as AMERICAN RE-  )
INSURANCE COMPANY, OLD    )
REPUBLIC INSURANCE COMPANY,    )
PACIFIC EMPLOYERS INSURANCE    )
COMPANY, TWIN CITY FIRE    )
INSURANCE COMPANY, LEXINGTON    )
INSURANCE COMPANY, SCOTTSDALE)
INSURANCE COMPANY, NATIONAL    )

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| UNION FIRE INSURANCE COMPANY | ) |
| OF PITTSBURGH, PA, CENTURY | ) |
| INDEMNITY COMPANY, as successor-in- | ) |
| interest to CIGNA SPECIALTY | ) |
| INSURANCE COMPANY, formerly known | ) |
| as CALIFORNIA UNION INSURANCE | ) |
| COMPANY, ZURICH REINSURANCE | ) |
| COMPANY LTD., formerly known as | ) |
| ZURICH INTERNATIONAL | ) |
| (BERMUDA), LTD., and GREAT | ) |
| AMERICAN ASSURANCE COMPANY, | ) |
| formerly known as AGRICULTURAL | ) |
| INSURANCE COMPANY | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pursuant to Rule 34 of the South Carolina Rules of Civil Procedure, the Receiver for

Burlington Industries, Inc. ("Burlington" or the "Receiver"), hereby propounds and serves this first

set of requests for production to CONTINENTAL INSURANCE COMPANY, each to be

answered separately, in writing and under oath, within forty-five (45) days from the date of the

service hereof and served upon the undersigned.

## DEFINITIONS

a.     "Burlington" shall be used collectively to refer to Burlington Industries, Inc., and any of their affiliates, predecessors, and successors known to you.

b.     "Documents" means all email correspondence and all written or printed matter of any kind, including all the originals and all non-identical copies such as drafts, different from the originals by reason of any notation made on such copies or otherwise including, but not limited to, any correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes, telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations, including telephone conversations and meetings, bulletins, computer printouts and records, mobile telephone and cell phone bills and statements, invoices, worksheets, accountant notes, work papers and all drafts, alterations, modifications, changes and amendments of any kind and, in addition thereto, any graphic or manual records, or representations of any kind including, without limitation, photographs, charts, graphs, microfiche,

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

microfilm, video tape, records, and motion pictures, and electronic or mechanical records or representations of any kind, including without limitation, tapes, cassettes, discs, and recordings or the hard copies thereof or other data compilations, whether preserved by magnetic transcription on hard drives, disks, etc. or otherwise. If such documents consist of other data compilation, they shall be translated into a reasonably usable form through appropriate detection devices.

       c.      "All documents" means every document, as defined above, that is in your possession, custody, or control and includes documents that are not in your possession, custody, or control, which are known to you and which can be located or discovered by reasonably diligent efforts.

       d.      "Communicate" or "communicated" means any manner or form of information, memoranda, notes or message transmissions, however produced or reproduced, whether by document or orally or otherwise, between two or more persons, whether made in person, by telephone or by other means, and any and all documents containing, consisting of, or relating or referring, in anyway, either directly or indirectly, to a communication, including but not limited to documents, audio recordings, electronic or other computer generated mail, telephone or face-to-face conversations, or meetings.

       e.      "Correspondence" or "communications" mean all letters, telegrams, notices, messages, phone logs, text messages, electronic mail, instant messages (including those sent via social-networking or other messaging applications or platforms, including WhatsApp, Facebook Messenger, and Snapchat), communications sent via social-networking websites, or any other written or oral communications.

       f.      "Including" means including without limitation.

       g.      "Relate," "relating," and "reflecting" mean and include pertains, refers, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts. These terms mean, without limitation, any reference or relationship that either (1) provides information with respect to the subject inquiry or (2) might lead to individuals who, or documents that, might possess or contain information with respect to the subject of inquiry.

       h.      "And" and "or" shall be interpreted conjunctively and shall not be interpreted to exclude information otherwise within the scope of the request.

       i.      "Any," "each," or "all" mean each and every, as well as anyone.

       j.      The terms "you" and "your" shall mean and refer to the business entity answering these discovery requests and any of its merged, consolidated, or acquired predecessors, divisions, joint ventures, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, parent companies, or sister companies. "Predecessors" further means any business entity, whether or not incorporated, which had all or sum of its assets purchased by the entity answering these requests, or came to be acquired by the entity answering these requests, whether by merger, consolidation, or other means. "Subsidiaries"  further means any business entity, whether or not incorporated,

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

which is or was in any way owned or controlled, in whole or in part, by the entity answering these requests or its predecessors.

l.      "Asbestos related claims" means any claim for bodily injury or wrongful death allegedly relating to or arising from a person's exposure to asbestos or any asbestos-containing product.

## INSTRUCTIONS

a.      In answering these Requests, you are required to furnish all documents and correspondence in the possession, custody, or control of you, your attorneys, or any of your agents.

b.      If any requested document existed at one time and was in your possession, custody, or control, but has been lost, discarded or destroyed, or removed from your possession, custody or control, indicate for each such document:

(1)     the present location of any and all copies of each such document in your possession, custody, or control;

(2)     whether you claim any privilege or other reason for nonproduction with respect to each such document or copies thereof, and, if so, the factual and legal basis for the alleged privilege or non-production. In lieu of the foregoing, a copy of each such document may be supplied but said copy must indicate to which interrogatory it relates.

(3)     the identity of the document and a description of its contents indicating its date, title and type of document;

(4)     when the document was most recently in your possession, custody or control and what disposition was made of it;

(5)     the identity of any person which currently possesses the document;

(6)     a statement indicating whether the document was transferred or destroyed. State the person who transferred or destroyed the document and the person who authorized its transfer or destruction or who knows of its transfer or destruction. State the reason why the document was transferred or destroyed, and

(7)     the identities of all persons having knowledge of the contents of each document.

c.      Pursuant to South Carolina Rule of Civil Procedure 26(b)(5), if you withhold any otherwise discoverable documents or correspondence based on a privilege objection, please provide a log of all such documents and correspondence detailing the following information:

(1)     the nature of the privilege claimed (including work product);

(2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3)     the date of the document;

(4)     If a document:  its type (e-mail, text message, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document, including, where appropriate,

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

(5)    the author(s), the addressee(s), its title, the subject line, and, if not apparent, the relationship between the author(s) and addressee(s); and the general subject matter of the document or correspondence.

### **REQUESTS FOR PRODUCTION**

1. All insurance policies, of any type, that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes policies affording Burlington coverage as an "additional insured".

2. All certificates of insurance reflecting any insurance coverage that you provided to Burlington, or which affords coverage to Burlington as an "additional insured".

3. All documents that relate to the underwriting of any insurance policy that you issued to Burlington or which otherwise includes Burlington as an insured.

4. All documents that relate to any claims submitted by, or on behalf of, Burlington for coverage under any insurance policy issued to Burlington by you. This request specifically includes claims made under workers' compensation policies.

5. All documents that relate to any loss run for any insurance policy that you ever issued to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

6. All documents that relate to any correspondence between you and Burlington's defense counsel at any time, specifically including all invoices from, or payments made to, Burlington's defense counsel. This request specifically includes counsel in workers' compensation proceedings.

7. All documents that relate to the steps taken by you to determine whether you issued any insurance policy to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

8.      All documents that relate to the steps taken by you to identify the terms and conditions of each of the policies you issued to Burlington or which otherwise name Burlington as an insured or an "additional insured".

9.      All documents that relate to policies, treaties and/or arrangements obtained by you, or on your behalf, to reinsure all or a portion of the risk of any insurances policies that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes documents reflecting the related brokering activities and any subsequent claims submitted by you.

10.      All documents evidencing what you contend are the material terms and conditions of the insurance policies issued by you to Burlington.

11.      All entries from your claims registers and microfiche archives regarding your insuring relationship with Burlington.

12.      All documents regarding Burlington's history or business activities.

13.      All documents relating to the reasons why any insurance policy you issued to Burlington, or any relevant document, is now lost or destroyed.

14.      All documents reflecting any evidence of any insurance issued to, or protective of, Burlington by any insurer at any time.

15.      All documents reflecting your participation in any workers' compensation claim against Burlington.

16.      A copy of your document retention policy or policies in effect from 1986 through the present.

17.      All communications between you and any insurance broker or agent relating to Burlington.

18.      All documents relating to any notice of any Burlington claims received by you.

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

19. All documents relating to any acknowledgement by you of coverage under any of the insurance policies issued, sold, or subscribed to by you for Burlington's claims.

20. All documents reflecting any sanction whereby you were sanctioned by any court or regulator for your handling or destruction of historical liability insurance policies.

21. All underwriting manuals, procedures, and guidelines relating to general liability insurance policies issued by you from 1961 to 1995.

22. All underwriting manuals, procedures, and guidelines relating to excess and umbrella liability insurance policies issued by you from 1961 to 1995.

23. All documents relating to any payments that you have made to, or on behalf of, Burlington under any of the insurance policies issued, sold, or subscribed to by you in connection with any of Burlington's claims.

24. All documents relating to your efforts to determine the potential exposure that Burlington faced or faces from any of Burlington's claims.

25. All documents relating to any investigation conducted by you or on your behalf with respect to Burlington's request for defense/indemnity coverage for any claims.

26. All documents considered by you or on your behalf in any investigation regarding any of Burlington's claims.

27. All documents relating to any inspections, analyses, or audits, conducted by you or on your behalf in any investigation regarding any of Burlington's facilities or claims.

28. All documents you reviewed or relied on in considering whether to deny coverage, acknowledge coverage, or reserve rights as to any of Burlington's claims.

29. All communications between you and any other insurer regarding the handling of any of Burlington's claims.

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

30.   All communications between you and any other insurer regarding the payment of any of Burlington's claims.

**31.**   All documents relating to any exhaustion or impairment of any insurance policy issued, sold, or subscribed to that covers Burlington as an insured or additional insured.

32.   All documents relating to or supporting any affirmative defenses you have asserted in this lawsuit.

*s/Alex R. Stalvey*

Alex R. Stalvey (S.C. Bar 71739)
Bannister Wyatt & Stalvey LLC
24 Cleveland St., Suite 100
Greenville, SC 29601
Telephone: (864) 298-0084
Email: astalvey@bannisterwyatt.com

John K. Chandler (S.C. Bar 100837)
Rikard & Protopapas LLC
2110 N. Beltline Blvd.
Columbia, SC 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

Duke K. McCall
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Email: duke.mccall@morganlewis.com

# EXHIBIT 2

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA )

COUNTY OF SPARTANBURG )

BURLINGTON INDUSTRIES, INC., by
and through its duly-appointed Receiver,
Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY,
TRAVELERS CASUALTY AND SURETY
COMPANY, formerly) known as AETNA
CASUALTY AND SURETY COMPANY,
AMERICAN HOME ASSURANCE
COMPANY, ALLSTATE INSURANCE
COMPANY, as successor-in-interest to
NORTHBROOK EXCESS AND SURPLUS
INSURANCE COMPANY, formerly known
as NORTHBROOK INSURANCE
COMPANY, GRANITE STATE
INSURANCE COMPANY, AMERICAN
INTERNATIONAL GROUP, INC., AIU
INSURANCE COMPANY, THE
CONTINENTAL INSURANCE
COMPANY, as successor-in-interest to
HARBOR INSURANCE COMPANY,
WESTPORT INSURANCE
CORPORATION, as successor-in-interest to
PURITAN INSURANCE COMPANY,
FEDERAL INSURANCE COMPANY,
MUNICH REINSURANCE AMERICA,
INC., formerly known as AMERICAN RE-
INSURANCE COMPANY, OLD
REPUBLIC INSURANCE COMPANY,
PACIFIC EMPLOYERS INSURANCE
COMPANY, TWIN CITY FIRE
INSURANCE COMPANY, LEXINGTON
INSURANCE COMPANY, SCOTTSDALE
INSURANCE COMPANY, NATIONAL

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

CIVIL ACTION NO. 2024-CP-42-04138

**THE RECEIVER'S FIRST SET OF
REQUESTS FOR PRODUCTION TO**

**THE CONTINENTAL INSURANCE
COMPANY, as successor-in-interest to
HARBOR INSURANCE COMPANY**

1

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

UNION FIRE INSURANCE COMPANY )
OF PITTSBURGH, PA, CENTURY )
INDEMNITY COMPANY, as successor-in- )
interest to CIGNA SPECIALTY )
INSURANCE COMPANY, formerly known )
as CALIFORNIA UNION INSURANCE )
COMPANY, ZURICH REINSURANCE )
COMPANY LTD., formerly known as )
ZURICH INTERNATIONAL )
(BERMUDA), LTD., and GREAT )
AMERICAN ASSURANCE COMPANY, )
formerly known as AGRICULTURAL )
INSURANCE COMPANY )
)
        Defendants. )
)

Pursuant to Rule 34 of the South Carolina Rules of Civil Procedure, the Receiver for

Burlington Industries, Inc. ("Burlington" or the "Receiver"), hereby propounds and serves this first

set of requests for production **to** THE CONTINENTAL INSURANCE COMPANY, as successor-

in-interest to HARBOR INSURANCE COMPANY, each to be answered separately, in writing

and under oath, within forty-five (45) days from the date of the service hereof and served upon the

undersigned.

## **DEFINITIONS**

a. "Burlington" shall be used collectively to refer to Burlington Industries, Inc., and
any of their affiliates, predecessors, and successors known to you.

b. "Documents" means all email correspondence and all written or printed matter of
any kind, including all the originals and all non-identical copies such as drafts, different from the
originals by reason of any notation made on such copies or otherwise including, but not limited to,
any correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes,
telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts,
returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications,
offers, notations of any sort of conversations, including telephone conversations and meetings,
bulletins, computer printouts and records, mobile telephone and cell phone bills and statements,

2

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

invoices, worksheets, accountant notes, work papers and all drafts, alterations, modifications, changes and amendments of any kind and, in addition thereto, any graphic or manual records, or representations of any kind including, without limitation, photographs, charts, graphs, microfiche, microfilm, video tape, records, and motion pictures, and electronic or mechanical records or representations of any kind, including without limitation, tapes, cassettes, discs, and recordings or the hard copies thereof or other data compilations, whether preserved by magnetic transcription on hard drives, disks, etc. or otherwise. If such documents consist of other data compilation, they shall be translated into a reasonably usable form through appropriate detection devices.

c.      "All documents" means every document, as defined above, that is in your possession, custody, or control and includes documents that are not in your possession, custody, or control, which are known to you and which can be located or discovered by reasonably diligent efforts.

d.      "Communicate" or "communicated" means any manner or form of information, memoranda, notes or message transmissions, however produced or reproduced, whether by document or orally or otherwise, between two or more persons, whether made in person, by telephone or by other means, and any and all documents containing, consisting of, or relating or referring, in anyway, either directly or indirectly, to a communication, including but not limited to documents, audio recordings, electronic or other computer generated mail, telephone or face-to-face conversations, or meetings.

e.      "Correspondence" or "communications" mean all letters, telegrams, notices, messages, phone logs, text messages, electronic mail, instant messages (including those sent via social-networking or other messaging applications or platforms, including WhatsApp, Facebook Messenger, and Snapchat), communications sent via social-networking websites, or any other written or oral communications.

f.      "Including" means including without limitation.

g.      "Relate," "relating," and "reflecting" mean and include pertains, refers, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts. These terms mean, without limitation, any reference or relationship that either (1) provides information with respect to the subject inquiry or (2) might lead to individuals who, or documents that, might possess or contain information with respect to the subject of inquiry.

h.      "And" and "or" shall be interpreted conjunctively and shall not be interpreted to exclude information otherwise within the scope of the request.

i.      "Any," "each," or "all" mean each and every, as well as anyone.

j.      The terms "you" and "your" shall mean and refer to the business entity answering these discovery requests and any of its merged, consolidated, or acquired predecessors, divisions, joint ventures, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, parent companies, or sister companies. "Predecessors" further means any business entity, whether or not

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

incorporated, which had all or sum of its assets purchased by the entity answering these requests, or came to be acquired by the entity answering these requests, whether by merger, consolidation, or other means. "Subsidiaries" further means any business entity, whether or not incorporated, which is or was in any way owned or controlled, in whole or in part, by the entity answering these requests or its predecessors.

l.      "Asbestos related claims" means any claim for bodily injury or wrongful death allegedly relating to or arising from a person's exposure to asbestos or any asbestos-containing product.

## INSTRUCTIONS

a.      In answering these Requests, you are required to furnish all documents and correspondence in the possession, custody, or control of you, your attorneys, or any of your agents.

b.      If any requested document existed at one time and was in your possession, custody, or control, but has been lost, discarded or destroyed, or removed from your possession, custody or control, indicate for each such document:

    (1)     the present location of any and all copies of each such document in your possession, custody, or control;

    (2)     whether you claim any privilege or other reason for nonproduction with respect to each such document or copies thereof, and, if so, the factual and legal basis for the alleged privilege or non-production. In lieu of the foregoing, a copy of each such document may be supplied but said copy must indicate to which interrogatory it relates.

    (3)     the identity of the document and a description of its contents indicating its date, title and type of document;

    (4)     when the document was most recently in your possession, custody or control and what disposition was made of it;

    (5)     the identity of any person which currently possesses the document;

    (6)     a statement indicating whether the document was transferred or destroyed. State the person who transferred or destroyed the document and the person who authorized its transfer or destruction or who knows of its transfer or destruction. State the reason why the document was transferred or destroyed, and

    (7)     the identities of all persons having knowledge of the contents of each document.

c.      Pursuant to South Carolina Rule of Civil Procedure 26(b)(5), if you withhold any otherwise discoverable documents or correspondence based on a privilege objection, please provide a log of all such documents and correspondence detailing the following information:

    (1)     the nature of the privilege claimed (including work product);

    (2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

    (3)     the date of the document;

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

(4)    If a document: its type (e-mail, text message, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document, including, where appropriate, the author(s), the addressee(s), its title, the subject line, and, if not apparent, the relationship between the author(s) and addressee(s); and

(5)    the general subject matter of the document or correspondence.

## REQUESTS FOR PRODUCTION

1. All insurance policies, of any type, that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes policies affording Burlington coverage as an "additional insured".

2. All certificates of insurance reflecting any insurance coverage that you provided to Burlington, or which affords coverage to Burlington as an "additional insured".

3. All documents that relate to the underwriting of any insurance policy that you issued to Burlington or which otherwise includes Burlington as an insured.

4. All documents that relate to any claims submitted by, or on behalf of, Burlington for coverage under any insurance policy issued to Burlington by you. This request specifically includes claims made under workers' compensation policies.

5. All documents that relate to any loss run for any insurance policy that you ever issued to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

6. All documents that relate to any correspondence between you and Burlington's defense counsel at any time, specifically including all invoices from, or payments made to, Burlington's defense counsel. This request specifically includes counsel in workers' compensation proceedings.

7. All documents that relate to the steps taken by you to determine whether you issued any insurance policy to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

8.     All documents that relate to the steps taken by you to identify the terms and conditions of each of the policies you issued to Burlington or which otherwise name Burlington as an insured or an "additional insured".

9.     All documents that relate to policies, treaties and/or arrangements obtained by you, or on your behalf, to reinsure all or a portion of the risk of any insurances policies that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes documents reflecting the related brokering activities and any subsequent claims submitted by you.

10.     All documents evidencing what you contend are the material terms and conditions of the insurance policies issued by you to Burlington.

11.     All entries from your claims registers and microfiche archives regarding your insuring relationship with Burlington.

12.      All documents regarding Burlington's history or business activities.

13.     All documents relating to the reasons why any insurance policy you issued to Burlington, or any relevant document, is now lost or destroyed.

14.     All documents reflecting any evidence of any insurance issued to, or protective of, Burlington by any insurer at any time.

15.     All documents reflecting your participation in any workers' compensation claim against Burlington.

16.     A copy of your document retention policy or policies in effect from 1986 through the present.

17.     All communications between you and any insurance broker or agent relating to Burlington.

18.     All documents relating to any notice of any Burlington claims received by you.

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

19.  All documents relating to any acknowledgement by you of coverage under any of the insurance policies issued, sold, or subscribed to by you for Burlington's claims.

20.  All documents reflecting any sanction whereby you were sanctioned by any court or regulator for your handling or destruction of historical liability insurance policies.

21.  All underwriting manuals, procedures, and guidelines relating to general liability insurance policies issued by you from 1961 to 1995.

22.  All underwriting manuals, procedures, and guidelines relating to excess and umbrella liability insurance policies issued by you from 1961 to 1995.

23.  All documents relating to any payments that you have made to, or on behalf of, Burlington under any of the insurance policies issued, sold, or subscribed to by you in connection with any of Burlington's claims.

24.  All documents relating to your efforts to determine the potential exposure that Burlington faced or faces from any of Burlington's claims.

25.  All documents relating to any investigation conducted by you or on your behalf with respect to Burlington's request for defense/indemnity coverage for any claims.

26.  All documents considered by you or on your behalf in any investigation regarding any of Burlington's claims.

27.  All documents relating to any inspections, analyses, or audits, conducted by you or on your behalf in any investigation regarding any of Burlington's facilities or claims.

28.  All documents you reviewed or relied on in considering whether to deny coverage, acknowledge coverage, or reserve rights as to any of Burlington's claims.

29.  All communications between you and any other insurer regarding the handling of any of Burlington's claims.

ELECTRONICALLY FILED - 2025 Jan 10 12:38 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

30.    All communications between you and any other insurer regarding the payment of any of Burlington's claims.

31.    All documents relating to any exhaustion or impairment of any insurance policy issued, sold, or subscribed to that covers Burlington as an insured or additional insured.

32.    All documents relating to or supporting any affirmative defenses you have asserted in this lawsuit.

*s/Alex R. Stalvey*
Alex R. Stalvey (S.C. Bar 71739)
Bannister Wyatt & Stalvey LLC
24 Cleveland St., Suite 100
Greenville, SC 29601
Telephone: (864) 298-0084
Email: astalvey@bannisterwyatt.com

John K. Chandler (S.C. Bar 100837)
Rikard & Protopapas LLC
2110 N. Beltline Blvd.
Columbia, SC 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

Duke K. McCall
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Email:
duke.mccall@morganlewis.com

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF SPARTANBURG

IN THE COURT OF COMMON PLEAS

FOR THE SEVENTH JUDICIAL CIRCUIT

BURLINGTON INDUSTRIES, INC., by and through its duly appointed Receiver Peter M. McCoy, Jr.,

Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, et al.,

Defendants.

Civil Action No.: 2024-CP-42-04138

### DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER

Defendant Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company ("Travelers"), by and through undersigned counsel, hereby moves this Court for a protective order with respect to the discovery requests served on Travelers by Plaintiff Burlington Industries, Inc., through its purported receiver, Peter M. McCoy, Jr. ("Burlington" or the "Receiver").[1]  Travelers respectfully asks this Court to enter an order finding that Travelers need not respond to the Receiver's discovery requests until after the Court has resolved Travelers' pending motion to dismiss the Receiver's claims against Travelers, if at all.

---

[1] By bringing this Motion, Travelers is not waiving—and is explicitly reserving—its challenges to this Court's exercise of personal jurisdiction over Travelers as asserted in Travelers' December 30, 2024 Motion to Dismiss.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

## <u>PRELIMINARY STATEMENT</u>

In December 2021, tort plaintiffs, Mr. and Ms. Mimms, filed suit against Burlington seeking damages for alleged bodily injury and "devaluation of their property" allegedly caused by Burlington's ownership and operation of a nearby industrial plant. *Mimms v. Burlington Industries, Inc.*, Case No. 2021-CP-40-05873 (5th Judicial Dist., Richland Cnty.), Compl. ¶¶ 8–10 (the "Mimms Compl."). In the course of that action, the court—without a hearing or evidentiary showing of any kind—issued an order appointing Mr. McCoy as Burlington's Receiver in the *Mimms* case, relying on S.C. Code § 15-65-10(4). *See* Compl., Ex. A ("Appointment Order").

After the Appointment Order was issued, the purported Receiver filed a third-party complaint in the *Mimms* action against Burlington's alleged insurers, including Travelers, even though the Mimms' action was a personal injury and property damage case that had nothing to do with insurance coverage issues. *See Mimms*, Case No. 2021-CP-40-05873, Oct. 21, 2022 Third-Party Complaint. The third-party complaint sought various coverage declarations against the insurers. *Id*. Together with the third-party complaint, the Receiver also served on the third-party defendants a set of interrogatories and requests for production, to which Travelers served written objections and responses and produced over 1,200 pages of documents. Ex. 1, Klocke Aff. ¶¶ 5–6.

Regarding the third-party complaint, Travelers moved for dismissal, but its motion was summarily denied in a Form 4 order, *Mimms*, Case No. 2021-CP-40-05873, May 25, 2023 Form 4 Order. On August 13, 2024, the Receiver stipulated to a dismissal without prejudice of its third-party coverage complaint as to Travelers. *Id*., Receiver's Stipulation of Dismissal without

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Prejudice as to Travelers Casualty and Surety Company and St. Paul Surplus Lines Insurance Company.

On October 22, 2024, the Receiver then filed the Complaint against Travelers and other alleged Burlington insurers in this case. *See* Compl. (Oct. 22, 2024). Broadly, the Complaint asserts "an environmental insurance coverage action for declaratory judgment brought under liability insurance policies . . . issued by the defendants to or covering plaintiff Burlington." Compl. ¶ 1. The Receiver seeks declarations related to insurance coverage for "Environmental Actions" alleging injury or property damage caused by the release of "PFAS Chemicals" from "Burlington's ownership or use of property or the conduct of business operations." Compl. ¶¶ 1–2; 37 n.1. In the Complaint's only count, the Receiver seeks various coverage-related declarations. Compl. ¶¶ 68–72. The Receiver requests, among other things, broad declarations that defendants "have a duty to investigate, defend, reimburse and/or indemnify Burlington completely from and against the Environmental Actions." *Id*. ¶ 69. Similar to the third-party complaint in *Mimms*, the Complaint here was accompanied by 32 requests for production—26 of which are identical to requests Travelers has already responded to in *Mimms*. Ex. 1, Klocke Aff. ¶¶ 7–8.

On December 30, 2024, Travelers timely filed a motion to dismiss the Receiver's Complaint in full as to Travelers. *See* Travelers' Mot. to Dismiss. As explained in that motion, the Receiver's sole claim against Travelers must be dismissed for at least four reasons: (1) the Receiver's appointment was unlawful from the beginning, the Receiver has no standing or authority outside of the *Mimms* case in which he was appointed, and the receivership must be discontinued immediately; (2) the Court lacks personal jurisdiction over Travelers; (3) the Complaint fails to state a claim against Travelers, including because the at-issue Travelers

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

insurance policies contain pollution exclusions that bar coverage for the "Environmental Actions" alleged in the Complaint; and (4) even if some of the pollution exclusions don't bar coverage for the alleged "Environmental Actions," the purported Receiver's declaratory judgment claim does not present a justiciable controversy against Travelers. Thus, the Complaint should be dismissed against Travelers. Travelers' motion to dismiss remains pending.

The Receiver should not be entitled to obtain discovery from Travelers while Travelers' motion to dismiss remains pending because a ruling on Travelers' motion may eliminate the need for discovery altogether. It would thus be a waste of party resources, oppressive, unduly burdensome, and expensive to require Travelers to respond to the Receiver's extensive discovery requests at this time—particularly because they are largely identical to discovery requests to which Travelers has already responded. Travelers respectfully requests that this Court grant this motion for protective order and enter an order finding that Travelers need not respond to Burlington's discovery requests until after the Court rules on Travelers' motion to dismiss, if it all.

## **LEGAL STANDARD**

Discovery methods "shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unreasonably burdensome or expensive taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." SCRCP 26(a). "The court may act . . . pursuant to a motion under subsection (c) of this Rule." *Id.*

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Rule 26(c) provides that "[u]pon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense, including" an order "that the discovery not be had . . . ." Rule 26(c), SCRCP. The timely filing and service of a motion for protective order relieves the party upon which discovery is served from any obligation to respond to the challenged discovery until the motion has been resolved. *See Baughman v. Am. Tel. & Tel. Co.*, 306 S.C. 101, 109, 410 S.E.2d 537, 542 (1991). Trial courts enjoy broad discretion when ruling on discovery matters. *See Hollman v. Woolfson*, 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009) ("A trial judge's rulings on discovery matters will not be disturbed by an appellate court absent a clear abuse of discretion.") (citation omitted).

## <u>ARGUMENT</u>

The Receiver served 32 document requests on Travelers contemporaneously with his Complaint. *See* Klocke Aff. ¶ 7. The document requests seek, among many other things, "[a]ll insurance policies, of any type, that you issued to Burlington or which otherwise include Burlington as an insured," "[a]ll documents that relate to the underwriting of any insurance policy that you issued to Burlington or which otherwise includes Burlington as an insured," "[a]ll documents that relate to any claims submitted by, or on behalf of, Burlington for coverage under any insurance policy issued to Burlington by you," loss runs, correspondence with Burlington's defense counsel, "[a]ll documents regarding Burlington's history or business activities," underwriting manuals and guidelines issued between 1961 and 1995, information regarding reinsurance and reserves, and correspondence with insurance brokers and others. *See id.*, Ex. B. The discovery requests are improper. They are premature, overly broad, unduly burdensome and

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

expensive, seek irrelevant information, and they are cumulative and duplicative of the Receiver's other discovery requests—indeed, the document requests nearly mirror the requests he served on Travelers in the *Mimms* case, to which Travelers has already responded. *See* Ex. 1, Klocke Aff. ¶¶ 6–8; *see also id.*, Exs. A–B.

Further, a ruling on Travelers' potentially-dispositive motion to dismiss may do away with the need for discovery altogether. Before allowing discovery, the Court should first resolve the threshold issues of whether this Court has personal jurisdiction over Travelers, whether the Receiver has standing or authority to pursue his claim in this case, and whether the Receiver has stated a cognizable claim for relief against Travelers. *See, e.g.*, *Boudreaux Grp., Inc. v. Clark Nexsen, Owen, Barbieri, Gibson, P.C.*, No. 8:18-cv-1498-TMC, 2018 WL 9785308, at *6 (D.S.C. Nov. 20, 2018) (staying discovery pending a ruling on a potentially-dispositive motion to dismiss); *Eleazu v. Dir. US Army Network Enter. Ctr., Natick*, No. 3:20-2576-JMC-SVH, 2020 WL 6875538, at *7 (D.S.C. Nov. 23, 2020) (staying discovery pending resolution of motion to dismiss) *report and recommendation adopted sub nom. Eleazu v. US Army Network Enter. Ctr. - Natick*, No. 3:20-CV-02576-JMC, 2021 WL 4272596 (D.S.C. Sept. 21, 2021); *Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502, 505 (4th Cir. 1999) (affirming stay of discovery pending resolution of motion to dismiss); *Briggs v. T & D Plumbing & Heating Co.*, No. WDQ-10-2714, 2011 WL 2970845, at *3 (D. Md. July 19, 2011) (granting motion for protective order staying discovery until resolution of motion to dismiss).[2]

The Receiver will not be prejudiced by a temporary stay of discovery pending resolution of Travelers' motion to dismiss. As noted, Travelers has already responded to substantially

---

[2] "In construing the South Carolina Rules of Civil Procedure, our Court looks for guidance to cases interpreting the federal rules." *Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016) (citation omitted).

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

identical discovery requests from the Receiver—26 of the 32 requests for production are exactly the same as those to which Travelers previously responded in the *Mimms* case. And Travelers has already produced numerous documents in response to those requests, including insurance policies, claim files, and underwriting files. *See* Klocke Aff. ¶¶ 3–4. Cumulative and duplicative discovery such as this is improper, particularly where, as here, a dispositive motion is pending. This is not a case where a temporary stay of discovery will prejudice any party. To the contrary, a stay would conserve party and judicial resources pending resolution of Travelers' motion to dismiss. And no discovery is needed to defend against Travelers' motion.

## CONCLUSION

For the foregoing reasons and others appearing in the record, Travelers respectfully requests that the Court grant this motion and issue an order staying discovery or otherwise finding that Travelers need not respond to the Receiver's discovery requests until after the Court has ruled on Travelers' pending motion to dismiss, if at all.[3]

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: */s/ M. Todd Carroll*
    S.C. Bar No. 74000
    todd.carroll@wbd-us.com
    M. Elizabeth O'Neill
    S.C. Bar No. 104013
    elizabeth.oneill@wbd-us.com
    1221 Main Street, Suite 1600
    Columbia, SC 29201
    (803) 454-6504

---

[3] Undersigned counsel certifies that consultation in an attempt to resolve this matter would serve no useful purpose.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STEPTOE LLP

Harry Lee (*pro hac vice application forthcoming*)
hKlocke@steptoe.com
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

*Attorneys for Defendant Travelers Casualty and Surety Company*

January 13, 2024

# Exhibit 1

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | FOR THE SEVENTH JUDICIAL CIRCUIT |

| | |
|---|---|
| BURLINGTON INDUSTRIES, INC., by and through its duly appointed Receiver Peter M. McCoy, Jr., | Civil Action No.: 2024-CP-42-04138 |
| Plaintiff, | |
| v. | |
| CONTINENTAL CASUALTY COMPANY, et al., | |
| Defendants. | |

## AFFIDAVIT OF JEFFERSON KLOCKE IN SUPPORT OF DEFENDANT TRAVELERS CASUALTY AND SURETY COMPANY'S MOTION FOR PROTECTIVE ORDER

Jefferson Klocke, duly sworn, deposes and says:

1.      I am an associate at the law firm of Steptoe LLP, counsel for defendant Travelers Casualty and Surety Company ("Travelers") in this action.  I am competent to testify to the following facts and have personal knowledge of the truth of the matters set forth below.

2.      I submit this affidavit in support of Travelers' Motion for Protective Order.

3.      On June 28, 2022, the purported Receiver for Burlington Industries, Inc. (the "Receiver" or "Burlington") served on Travelers a third-party subpoena duces tecum seeking various categories of documents relating to any potential insurance policies that Travelers had issued to Burlington from 1924 to 1990.

4.      After serving responses and objections to the subpoena on July 11, 2022, Travelers began searching its records for documents responsive to the subpoena.  Those search

1

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

efforts identified various responsive documents, including copies of insurance policies, loss run and claim registry reports, claim file materials, underwriting files, and copy of a settlement agreement between Burlington and Travelers. Travelers produced responsive documents to the purported Receiver on July 18, 2022, August 12, 2022, and November 28, 2022.

5.    On October 21, 2022, the purported Receiver filed a Third-Party Complaint against Travelers and others in the action captioned *Mimms v. Burlington Industries, Inc.*, Case No. 2021-CP-40-05873 (5th Judicial Dist., Richland Cnty.). The purported Receiver also served extensive discovery requests on Travelers, including 32 Requests for Production. A true and correct copy of the discovery requests served on Travelers is attached hereto as Exhibit A.

6.    On July 20, 2023, Travelers served written objections and responses to Burlington's requests for production in the *Mimms* action. Travelers has also produced on a rolling basis 1,209 pages of documents to the purported Burlington Receiver.

7.    On October 22, 2024, the Receiver filed the Complaint against Travelers and other alleged Burlington insurers in the instant case. The Receiver also served extensive discovery requests on Travelers, including 32 Requests for Production. A true and correct copy of the discovery requests served on Travelers is attached hereto as Exhibit B.

8.    A review of the Requests for Production attached as Exhibits A and B shows that 26 of the 32 requests in each set of discovery are the exact same requests.

Dated the 13th day of January 2025.

Jefferson Klocke

Subscribed and sworn to before me, the undersigned authority on this _13_ day of January, 2025.

Subscribed and sworn to before me, in my presence, this
_13_ day of _JANUARY, 2025_, a Notary Public
in and for the _State of Maryland_

_____
Notary Public

My commission expires _05 | 17, 2027_

_____
Notary Public

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

# Exhibit A

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

STATE OF SOUTH CAROLINA

COUNTY OF RICHLAND

IN THE COURT OF COMMON PLEAS

FOR THE FIFTH JUDICIAL CIRCUIT

C/A No. 2021-CP-40-05873

BARBARA BULLARD MIMMS and JOHN MIMMS,

                            Plaintiffs,

v.

BURLINGTON INDUSTRIES, INC.,

                            Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BURLINGTON INDUSTRIES, INC., BY AND THROUGH ITS DULY-APPOINTED RECEIVER, PETER M. MCCOY, JR.,

                        Third-Party Plaintiff,

v.

AIU INSURANCE COMPANY; et al.,

                       Third-Party Defendants.

**THIRD-PARTY PLAINTIFF BURLINGTON INDUSTRIES, INC.'S FIRST SET OF REQUESTS FOR PRODUCTION TO ALL THIRD PARTY DEFENDANTS <u>EXCEPT</u> MARSH & MCLENNAN COMPANIES, INC., AND MARSH INC.**

Pursuant to Rule 34 of the South Carolina Rules of Civil Procedure, the Receiver for Burlington Industries, Inc. hereby propounds and serves this first set of requests for production upon Liberty Mutual Insurance Company, each to be answered separately, in writing and under oath, within thirty (30) days from the date of the service hereof and served upon the undersigned.

## <u>DEFINITIONS</u>

        a.    "Burlington" shall be used to refer to Burlington Industries, Inc. and any of its predecessor companies, subsidiary companies and affiliates known to you, including but not limited to Burlington Mills, Inc., Burlington Mills Corp., Burlington Industrial Fabrics Company, BIFCO, Inc, Galey & Lord, and Burlington International.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

b.      "Documents" means all email correspondence and all written or printed matter of any kind, including all the originals and all non-identical copies such as drafts, different from the originals by reason of any notation made on such copies or otherwise including, but not limited to, any correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes, telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations, including telephone conversations and meetings, bulletins, computer printouts and records, mobile telephone and cell phone bills and statements, invoices, worksheets, accountant notes, work papers and all drafts, alterations, modifications, changes and amendments of any kind and, in addition thereto, any graphic or manual records, or representations of any kind including, without limitation, photographs, charts, graphs, microfiche, microfilm, video tape, records, and motion pictures, and electronic or mechanical records or representations of any kind, including without limitation, tapes, cassettes, discs, and recordings or the hard copies thereof or other data compilations, whether preserved by magnetic transcription on hard drives, disks, etc. or otherwise. If such documents consist of other data compilation, they shall be translated into a reasonably usable form through appropriate detection devices.

c.      "All documents" means every document, as defined above, that is in your possession, custody, or control and includes documents that are not in your possession, custody, or control, which are known to you and which can be located or discovered by reasonably diligent efforts.

d.      "Communicate" or "communicated" means any manner or form of information, memoranda, notes or message transmissions, however produced or reproduced, whether by document or orally or otherwise, between two or more persons, whether made in person, by telephone or by other means, and any and all documents containing, consisting of, or relating or referring, in anyway, either directly or indirectly, to a communication, including but not limited to documents, audio recordings, electronic or other computer generated mail, telephone or face-to-face conversations, or meetings.

e.      "Correspondence" or "communications" mean all letters, telegrams, notices, messages, phone logs, text messages, electronic mail, instant messages (including those sent via social-networking or other messaging applications or platforms, including WhatsApp, Facebook Messenger, and Snapchat), communications sent via social-networking websites, or any other written or oral communications.

f.      "Including" means including without limitation.

g.      "Relate," "relating," and "reflecting" mean and include pertains, refers, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts. These terms mean, without limitation, any reference or relationship that either (1) provides information with respect to the subject inquiry or (2) might lead to individuals who, or documents that, might possess or contain information with respect to the subject of inquiry.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

h.    "And" and "or" shall be interpreted conjunctively and shall not be interpreted to exclude information otherwise within the scope of the request.

i.    "Any," "each," or "all" mean each and every, as well as anyone.

j.    The terms "you" and "your" shall mean and refer to the business entity answering these discovery requests and any of its merged, consolidated, or acquired predecessors, divisions, joint ventures, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, parent companies, or sister companies. "Predecessors" further means any business entity, whether or not incorporated, which had all or sum of its assets purchased by the entity answering these requests, or came to be acquired by the entity answering these requests, whether by merger, consolidation, or other means. "Subsidiaries" further means any business entity, whether or not incorporated, which is or was in any way owned or controlled, in whole or in part, by the entity answering these requests or its predecessors.

k.    "Asbestos related claims" means any claim for bodily injury or wrongful death allegedly relating to or arising from a person's exposure to asbestos or any asbestos-containing product.

## INSTRUCTIONS

a.    In answering these Requests, you are required to furnish all documents and correspondence in the possession, custody, or control of you, your attorneys, or any of your agents.

b.    If any requested document existed at one time and was in your possession, custody, or control, but has been lost, discarded or destroyed, or removed from your possession, custody or control, indicate for each such document:

(1)    the present location of any and all copies of each such document in your possession, custody, or control;

(2)    whether you claim any privilege or other reason for nonproduction with respect to each such document or copies thereof, and, if so, the factual and legal basis for the alleged privilege or non-production. In lieu of the foregoing, a copy of each such document may be supplied but said copy must indicate to which interrogatory it relates.

(3)    the identity of the document and a description of its contents indicating its date, title and type of document;

(4)    when the document was most recently in your possession, custody or control and what disposition was made of it;

(5)    the identity of any person which currently possesses the document;

(6)    a statement indicating whether the document was transferred or destroyed. State the person who transferred or destroyed the document and the person who authorized its transfer or destruction or who knows of its transfer or destruction. State the reason why the document was transferred or destroyed, and

(7)    the identities of all persons having knowledge of the contents of each document.

3

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

c.     Pursuant to South Carolina Rule of Civil Procedure 26(b)(5), if you withhold any otherwise discoverable documents or correspondence based on a privilege objection, please provide a log of all such documents and correspondence detailing the following information:

(1)     the nature of the privilege claimed (including work product);

(2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3)     the date of the document;

(4)     If a document: its type (e-mail, text message, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document, including, where appropriate, the author(s), the addressee(s), its title, the subject line, and, if not apparent, the relationship between the author(s) and addressee(s); and

(5)     the general subject matter of the document or correspondence.

## RELEVANT BACKGROUND INFORMATION

Please refer to the attached order in *Covil v. Pennsylvania National Corporation* for recent guidance from this Court regarding the standard for an appropriate policy search. *See* Exhibit A, Order on Discovery Motions, *Covil Corporation, by and through its duly appointed Receiver Peter D. Protopapas v. Pennsylvania National Mutual Casualty Insurance Co., et al.*; C.A. No. 2020-CP-40-02098; In the Court of Common Pleas for the Fifth Judicial District; Richland County, South Carolina (May 5, 2022) (reconsideration denied May 26, 2022).

## REQUESTS FOR PRODUCTION

1.     All documents identified in your responses to the Receiver's First Set of Interrogatories.

2.     All documents you relied upon in answering the Receiver's First Set of Interrogatories.

3.     All insurance policies, of any type, that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes policies afford Burlington coverage as an "additional insured".

4.     All certificates of insurance reflecting any insurance coverage that you provided to Burlington, or which affords coverage to Burlington as an "additional insured".

4

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

5.  All documents that relate to the underwriting of any insurance policy that you issued to Burlington or which otherwise includes Burlington as an insured.

6.  All documents that relate to any claims submitted by, or on behalf of, Burlington for coverage under any insurance policy issued to Burlington by you. This request specifically includes claims made under workers' compensation policies.

7.  All documents that relate to any and all reserve accounts you have established for any insurance policy that you ever issued to Burlington or which otherwise affords coverage to Burlington as an insured or an "additional insured".

8.  All documents that relate to any loss run for any insurance policy that you ever issued to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

9.  All subpoenas or requests you served in an effort to locate any insurance policy issued by you or any insurer to Burlington or which otherwise includes Burlington as an insured or an "additional insured", as well as all correspondence and responses that you received in response to these requests or subpoenas.

10. All documents that relate to the steps taken by you to determine whether you issued any insurance policy to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

11. All documents that relate to the steps taken by you to identify the terms and conditions of each of the policies you issued to Burlington or which otherwise name Burlington as an insured or an "additional insured".

12. All documents that relate to policies, treaties and/or arrangements obtained by you, or on your behalf, to reinsure all or a portion of the risk of any insurances policies that you issued to Burlington or which otherwise include Burlington as an insured. This request

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

specifically includes documents reflecting the related brokering activities and any subsequent claims submitted by you.

13.  All entries from your claims registers and microfiche archives regarding your insuring relationship with Burlington.

14.  All documents regarding Burlington's history or business activities.

15.  All documents relating to the reasons why any insurance policy you issued to Burlington, or any relevant document, is now lost or destroyed.

16.  All documents reflecting any evidence of any insurance issued to, or protective of, Burlington by any insurer at any time.

17.  All documents reflecting your participation in any workers' compensation claim against Burlington.

18.  All documents related to your document retention policies.

19.  All documents relating to any insurance policy, of any type, that you issued, sold, or subscribed to that covers Burlington as an insured or an additional insured.

20.  All communications between you and any insurance broker or agent relating to Burlington.

21.  All documents relating to reserves ever established by you for Burlington's claims.

22.  All documents relating to any notice of any of Burlington's claims received by you.

23.  All documents relating to any acknowledgement by you of coverage under any of the insurance policies issued, sold, or subscribed to by you for any of Burlington's claims.

24.  All documents relating to any payments that you have made to, or on behalf of, Burlington under any of the insurance policies issued, sold, or subscribed to by you in connection with any of Burlington's claims.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

25. All documents relating to your efforts to determine the potential exposure that Burlington faced or faces from any of Burlington's claims.

26. All documents relating to any investigation conducted by you or on your behalf with respect to Burlington's request for defense/indemnity coverage for any claims.

27. All documents considered by you or on your behalf in any investigation regarding any of Burlington's claims.

28. All documents relating to any inspections, analyses, or audits, conducted by you or on your behalf in any investigation regarding any of Burlington's facilities or claims.

29. All documents you reviewed or relied on in considering whether to deny coverage, acknowledge coverage, or reserve rights as to any of Burlington's claims.

30. All communications between you and any other insurer regarding the handling of any of Burlington's claims.

31. All documents relating to any exhaustion or impairment of any insurance policy that you issued, sold, or subscribed to that covers Burlington as an insured or an additional insured.

32. All documents relating to or supporting the affirmative defenses enumerated in your answer.

Respectfully submitted,

By: s/ Peter D. Protopapas
Peter D. Protopapas (SC Bar #68304)
Brian M. Barnwell (S.C. Bar #78249 )
Robert G. Rikard (SC Bar #12340)
RIKARD & PROTOPAPAS, LLC
2110 N. Beltline Blvd.
Columbia, South Carolina 29204
803-978-6111
bb@rplegalgroup.com
rgr@rplegalgroup.com
pdp@rplegalgroup.com

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

Murrell Smith (SC Bar # 66263)
Jonathan M. Robinson (SC Bar #68285)
SMITH ROBINSON
2530 Devine Street
Columbia, SC 29205
803-254-5445
murrell@smithrobinsonlaw.com
jon@smithrobinsonlaw.com

Peter M. McCoy, Jr.
MCCOY LAW GROUP LLC
15 Prioleau Street
Charleston, SC 29401
843-459-8835
peter@mccoylawgrp.com
*Attorneys for Third-Party Plaintiff*
*Burlington Industries, Inc., by and through*
*its duly-appointed Receiver, Peter M.*
*McCoy, Jr.*

November 1, 2022

# Exhibit B

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF SPARTANBURG | FOR THE SEVENTH JUDICIAL CIRCUIT |
| BURLINGTON INDUSTRIES, INC., by and through its duly-appointed Receiver, Peter M. McCoy, Jr., | CIVIL ACTION NO. 2024-CP-42-04138 |
| Plaintiff, | **THE RECEIVER'S FIRST SET OF REQUESTS FOR PRODUCTION TO** |
| v. | **TRAVELERS CASUALTY AND SURETY COMPANY, formerly known as AETNA CASUALTY AND SURETY COMPANY** |

CONTINENTAL CASUALTY COMPANY, TRAVELERS CASUALTY AND SURETY COMPANY, formerly) known as AETNA CASUALTY AND SURETY COMPANY, AMERICAN HOME ASSURANCE COMPANY, ALLSTATE INSURANCE COMPANY, as successor-in-interest to NORTHBROOK EXCESS AND SURPLUS INSURANCE COMPANY, formerly known as NORTHBROOK INSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, AMERICAN INTERNATIONAL GROUP, INC., AIU INSURANCE COMPANY, THE CONTINENTAL INSURANCE COMPANY, as successor-in-interest to HARBOR INSURANCE COMPANY, WESTPORT INSURANCE CORPORATION, as successor-in-interest to PURITAN INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, MUNICH REINSURANCE AMERICA, INC., formerly known as AMERICAN RE-INSURANCE COMPANY, OLD REPUBLIC INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, NATIONAL

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

UNION FIRE INSURANCE COMPANY )
OF PITTSBURGH, PA, CENTURY )
INDEMNITY COMPANY, as successor-in- )
interest to CIGNA SPECIALTY )
INSURANCE COMPANY, formerly known )
as CALIFORNIA UNION INSURANCE )
COMPANY, ZURICH REINSURANCE )
COMPANY LTD., formerly known as )
ZURICH INTERNATIONAL )
(BERMUDA), LTD., and GREAT )
AMERICAN ASSURANCE COMPANY, )
formerly known as AGRICULTURAL )
INSURANCE COMPANY )
　　　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　Defendants. )
　　　　　　　　　　　　　　　　　 )

Pursuant to Rule 34 of the South Carolina Rules of Civil Procedure, the Receiver for Burlington Industries, Inc. ("Burlington" or the "Receiver"), hereby propounds and serves this first set of requests for production to Travelers Casualty and Surety Company, formerly known as Aetna Casualty and Surety Company, each to be answered separately, in writing and under oath, within forty-five (45) days from the date of the service hereof and served upon the undersigned.

## DEFINITIONS

a.    "Burlington" shall be used collectively to refer to Burlington Industries, Inc., and any of their affiliates, predecessors, and successors known to you.

b.    "Documents" means all email correspondence and all written or printed matter of any kind, including all the originals and all non-identical copies such as drafts, different from the originals by reason of any notation made on such copies or otherwise including, but not limited to, any correspondence, memoranda, notes, diaries, statistics, letters, telegrams, telexes, teletypes, telefax, telecopies, minutes, agendas, contracts, reports, studies, surveys, statements, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intraoffice communications, offers, notations of any sort of conversations, including telephone conversations and meetings, bulletins, computer printouts and records, mobile telephone and cell phone bills and statements, invoices, worksheets, accountant notes, work papers and all drafts, alterations, modifications, changes and amendments of any kind and, in addition thereto, any graphic or manual records, or representations of any kind including, without limitation, photographs, charts, graphs, microfiche,

microfilm, video tape, records, and motion pictures, and electronic or mechanical records or representations of any kind, including without limitation, tapes, cassettes, discs, and recordings or the hard copies thereof or other data compilations, whether preserved by magnetic transcription on hard drives, disks, etc. or otherwise. If such documents consist of other data compilation, they shall be translated into a reasonably usable form through appropriate detection devices.

c.      "All documents" means every document, as defined above, that is in your possession, custody, or control and includes documents that are not in your possession, custody, or control, which are known to you and which can be located or discovered by reasonably diligent efforts.

d.      "Communicate" or "communicated" means any manner or form of information, memoranda, notes or message transmissions, however produced or reproduced, whether by document or orally or otherwise, between two or more persons, whether made in person, by telephone or by other means, and any and all documents containing, consisting of, or relating or referring, in anyway, either directly or indirectly, to a communication, including but not limited to documents, audio recordings, electronic or other computer generated mail, telephone or face-to-face conversations, or meetings.

e.      "Correspondence" or "communications" mean all letters, telegrams, notices, messages, phone logs, text messages, electronic mail, instant messages (including those sent via social-networking or other messaging applications or platforms, including WhatsApp, Facebook Messenger, and Snapchat), communications sent via social-networking websites, or any other written or oral communications.

f.      "Including" means including without limitation.

g.      "Relate," "relating," and "reflecting" mean and include pertains, refers, contains, concerns, describes, embodies, mentions, constitutes, constituting, supports, corroborates, demonstrates, proves, evidences, shows, refutes, disputes, rebuts, controverts, or contradicts. These terms mean, without limitation, any reference or relationship that either (1) provides information with respect to the subject inquiry or (2) might lead to individuals who, or documents that, might possess or contain information with respect to the subject of inquiry.

h.      "And" and "or" shall be interpreted conjunctively and shall not be interpreted to exclude information otherwise within the scope of the request.

i.      "Any," "each," or "all" mean each and every, as well as anyone.

j.      The terms "you" and "your" shall mean and refer to the business entity answering these discovery requests and any of its merged, consolidated, or acquired predecessors, divisions, joint ventures, subsidiaries, foreign subsidiaries, foreign subsidiaries of predecessors, parent companies, or sister companies. "Predecessors" further means any business entity, whether or not incorporated, which had all or sum of its assets purchased by the entity answering these requests, or came to be acquired by the entity answering these requests, whether by merger, consolidation, or other means. "Subsidiaries" further means any business entity, whether or not incorporated,

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

which is or was in any way owned or controlled, in whole or in part, by the entity answering these requests or its predecessors.

l.      "Asbestos related claims" means any claim for bodily injury or wrongful death allegedly relating to or arising from a person's exposure to asbestos or any asbestos-containing product.

## INSTRUCTIONS

a.      In answering these Requests, you are required to furnish all documents and correspondence in the possession, custody, or control of you, your attorneys, or any of your agents.

b.      If any requested document existed at one time and was in your possession, custody, or control, but has been lost, discarded or destroyed, or removed from your possession, custody or control, indicate for each such document:

(1)     the present location of any and all copies of each such document in your possession, custody, or control;

(2)     whether you claim any privilege or other reason for nonproduction with respect to each such document or copies thereof, and, if so, the factual and legal basis for the alleged privilege or non-production. In lieu of the foregoing, a copy of each such document may be supplied but said copy must indicate to which interrogatory it relates.

(3)     the identity of the document and a description of its contents indicating its date, title and type of document;

(4)     when the document was most recently in your possession, custody or control and what disposition was made of it;

(5)     the identity of any person which currently possesses the document;

(6)     a statement indicating whether the document was transferred or destroyed. State the person who transferred or destroyed the document and the person who authorized its transfer or destruction or who knows of its transfer or destruction. State the reason why the document was transferred or destroyed, and

(7)     the identities of all persons having knowledge of the contents of each document.

c.      Pursuant to South Carolina Rule of Civil Procedure 26(b)(5), if you withhold any otherwise discoverable documents or correspondence based on a privilege objection, please provide a log of all such documents and correspondence detailing the following information:

(1)     the nature of the privilege claimed (including work product);

(2)     if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

(3)     the date of the document;

(4)     If a document: its type (e-mail, text message, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document, including, where appropriate,

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

(5)        the author(s), the addressee(s), its title, the subject line, and, if not apparent, the relationship between the author(s) and addressee(s); and the general subject matter of the document or correspondence.

## REQUESTS FOR PRODUCTION

1.    All insurance policies, of any type, that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes policies affording Burlington coverage as an "additional insured".

2.    All certificates of insurance reflecting any insurance coverage that you provided to Burlington, or which affords coverage to Burlington as an "additional insured".

3.    All documents that relate to the underwriting of any insurance policy that you issued to Burlington or which otherwise includes Burlington as an insured.

4.    All documents that relate to any claims submitted by, or on behalf of, Burlington for coverage under any insurance policy issued to Burlington by you. This request specifically includes claims made under workers' compensation policies.

5.    All documents that relate to any loss run for any insurance policy that you ever issued to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

6.    All documents that relate to any correspondence between you and Burlington's defense counsel at any time, specifically including all invoices from, or payments made to, Burlington's defense counsel. This request specifically includes counsel in workers' compensation proceedings.

7.    All documents that relate to the steps taken by you to determine whether you issued any insurance policy to Burlington or which otherwise includes Burlington as an insured or an "additional insured".

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

8. All documents that relate to the steps taken by you to identify the terms and conditions of each of the policies you issued to Burlington or which otherwise name Burlington as an insured or an "additional insured".

9. All documents that relate to policies, treaties and/or arrangements obtained by you, or on your behalf, to reinsure all or a portion of the risk of any insurances policies that you issued to Burlington or which otherwise include Burlington as an insured. This request specifically includes documents reflecting the related brokering activities and any subsequent claims submitted by you.

10. All documents evidencing what you contend are the material terms and conditions of the insurance policies issued by you to Burlington.

11. All entries from your claims registers and microfiche archives regarding your insuring relationship with Burlington.

12. All documents regarding Burlington's history or business activities.

13. All documents relating to the reasons why any insurance policy you issued to Burlington, or any relevant document, is now lost or destroyed.

14. All documents reflecting any evidence of any insurance issued to, or protective of, Burlington by any insurer at any time.

15. All documents reflecting your participation in any workers' compensation claim against Burlington.

16. A copy of your document retention policy or policies in effect from 1986 through the present.

17. All communications between you and any insurance broker or agent relating to Burlington.

18. All documents relating to any notice of any Burlington claims received by you.

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138

19. All documents relating to any acknowledgement by you of coverage under any of the insurance policies issued, sold, or subscribed to by you for Burlington's claims.

20. All documents reflecting any sanction whereby you were sanctioned by any court or regulator for your handling or destruction of historical liability insurance policies.

21. All underwriting manuals, procedures, and guidelines relating to general liability insurance policies issued by you from 1961 to 1995.

22. All underwriting manuals, procedures, and guidelines relating to excess and umbrella liability insurance policies issued by you from 1961 to 1995.

23. All documents relating to any payments that you have made to, or on behalf of, Burlington under any of the insurance policies issued, sold, or subscribed to by you in connection with any of Burlington's claims.

24. All documents relating to your efforts to determine the potential exposure that Burlington faced or faces from any of Burlington's claims.

25. All documents relating to any investigation conducted by you or on your behalf with respect to Burlington's request for defense/indemnity coverage for any claims.

26. All documents considered by you or on your behalf in any investigation regarding any of Burlington's claims.

27. All documents relating to any inspections, analyses, or audits, conducted by you or on your behalf in any investigation regarding any of Burlington's facilities or claims.

28. All documents you reviewed or relied on in considering whether to deny coverage, acknowledge coverage, or reserve rights as to any of Burlington's claims.

29. All communications between you and any other insurer regarding the handling of any of Burlington's claims.

30. All communications between you and any other insurer regarding the payment of any of Burlington's claims.

31. All documents relating to any exhaustion or impairment of any insurance policy issued, sold, or subscribed to that covers Burlington as an insured or additional insured.

32. All documents relating to or supporting any affirmative defenses you have asserted in this lawsuit.

s/Alex R. Stalvey
Alex R. Stalvey (S.C. Bar 71739)
Bannister Wyatt & Stalvey LLC
24 Cleveland St., Suite 100
Greenville, SC 29601
Telephone: (864) 298-0084
Email: astalvey@bannisterwyatt.com

John K. Chandler (S.C. Bar 100837)
Rikard & Protopapas LLC
2110 N. Beltline Blvd.
Columbia, SC 29204
Telephone: (803) 978-6111
Email: jchandler@rplegalgroup.com

Duke K. McCall
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 739-3000
Email: duke.mccall@morganlewis.com

ELECTRONICALLY FILED - 2025 Jan 13 3:58 PM - SPARTANBURG - COMMON PLEAS - CASE#2024CP4204138